

KC **F I L E D**

DEC 2 8 2007

MICHAEL W. DOBBINS
**UNITED STATES DISTRICT COURT** CLERK, U.S. DISTRICT COURT
**FOR NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| SYL JOHNSON A/K/A, | ) | |
| SYLVESTER THOMPSON, | ) | |
| D/B/A SYL-ZEL MUSIC CO. | ) | |
| & TWILIGHT RECORD CO. | ) | Index No |
| | ) | |
| Plaintiff. | ) | |
| | ) | |
| V. | ) | |
| | ) | **JURY TRIAL REQUEST** |
| MICHAEL JACKSON, et al. | ) | |
| WILL SMITH aka Willard Smith, | ) | |
| TUPAC SHAKUR Estate, | ) | |
| KRS ONE aka Lawrence Parker | ) | |
| BOOGIE DOWN PRODUCTION aka | ) | |
| Lawrence Parker, | | |
| p/k/a PEEDI CRAKK & YOUNG CHRIS, | | |
| The Group NWA Collectively, | | |
| | | |
| SONY BMG Music Entertainment, | | |
| UNIVERSAL MUSIC GROUP, | ) | |
| MIJAC MUSIC, | ) | |
| EMI/CAPITOL RECORDS, | ) | |
| ZOMBA Enterprises Inc., | ) | |
| AMARU Entertainment, Inc. ("Amaru"), | ) | |
| UNIVERSAL PUBLISHING | ) | |
| | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| | ) | |

07CV7288
JUDGE ASPEN
MAGISTRATE JUDGE KEYS

**COMPLAINT**

Plaintiff's complaint against the defendants and allege as follows.

## Count I

1. Plaintiff, SYLVESTER THOMPSON, is a citizen and resident of the County of Cook, State of Illinois. He is engaged in the business of musical performance under the professional name and style, "SYL JOHNSON" he is engaged in business of musical compositions and publishing under the name and Style "SYL-ZEL MUSIC COMPANY".

2. On information and belief, that MICHAEL JACKSON, et al., WILL SMITH aka Willard Smith, TUPAC SHAKUR Estate, KRS ONE aka Lawrence Parker, BOOGIE DOWN PRODUCTION aka Lawrence Parker, p/k/a PEEDI CRAKK & YOUNG CHRIS, and The Group NWA Collectively, (Here in and after, referred to as "each defendant described in Exhibit A"), are professional entertainers, producers of musical recording, recording artist, whose music can be found within this judicial district.

3. On information and belief, defendant SONY/BMG MUSIC ENTERTAINMENT, UNIVERSAL MUSIC GROUP, EMI, CAPITOL RECORDS et al. and AMARU Entertainment, Inc. ("Amaru"), are companies engaged in the business of making and distributing musical recordings and phonograph records, which can be found within this judicial district.

4. On information and belief, defendants MIJAC MUSIC, UNIVERSAL PUBLISHING CO., and ZOMBA ENTERPRISES INC., are companies engaged in the business of music publishing, which can be found within this judicial district. JURISDICTION AND VENUE

5. This action arises under the copyright laws of the United States, 17 U.S.C. § 101 et. seq.

6. This Court has subject matter jurisdiction pursuant to the laws of the United States governing actions related to copyright, 28 U.S.C. § 1331 and 1338.

7. This Court has personal jurisdiction over all of the Defendants, because on information and belief, all of the Defendants transact business within the State of Illinois (including this judicial district), and all of the Defendants committed a tortuous infringing Mr. Johnson's copyright) within the State of Illinois (including this judicial district).

8. Venue in this judicial district is proper under 28 U.S.C. § 1391(a)(2), 1391 (b)(2) and 1400(a).

9. Prior to July 16, 1967, JOHN ANDREW CAMERON and JOHN ZACHARY, songwriters of plaintiff SYL-ZEL MUSIC CO. & TWILIGHT RECORD CO. who then were and continue to be citizens of the United States, in their capacities as songwriters of plaintiff's SYL-ZEL MUSIC CO., created and wrote a musical work entitled "DIFFERENT STROKES"(hereafter, "plaintiff's song).

10. Plaintiff's song contains material wholly original to its authors and is a copyrightable subject matter under the laws of the United States.

11. Prior to August 14, 1967, JOHN ANDREW CAMERON and JOHN ZACHARY duly assigned to plaintiff as a music publisher, all rights, title, and interest in and to plaintiff's song and all copyrights thereto, together with the right to register the statutory copyright therein.

12. On about July 16, 1967, plaintiff's song was published under the authority of plaintiff in phonograph records recorded by plaintiff SYLVESTER THOMPSON, under his professional name, "SYL JOHNSON", in strict conformity with the copyright laws of the United States.

13. Plaintiff is the sole owner of the copyrights regarding the plaintiff's song, "DIFFERENT STROKES," under copyright registration numbers  EU-9873 and Sru 360-720, issued by the Copyright Office of the United States on August 14, 1967

and February 26, 1996 respectively, and possess and own all rights, title, and interest therein.

14. From time to time from 1991, and continuing to date, the defendants, individually, infringed the statutory copyright in plaintiff's song, including substantially copying, publicly performing, making and distributing, or authorizing the making and distributing of, phonograph records, participating in and furthering such infringing acts, or sharing in the proceeds there from, all through substantial use of plaintiff's song in or as part of a song entitled as each defendants particular song described in Exhibit A, recorded by each of the defendants as described in Exhibit A, with the assistance of defendants SONY BMG Music Entertainment, UNIVERSAL MUSIC GROUP, MIJAC MUSIC, EMI, CAPITOL RECORDS, ZOMBA Enterprises Inc., AMARU Entertainment, Inc. ("Amaru"), and UNIVERSAL PUBLISHING, to the financial benefit of all the defendants.

15. Said infringing use occurred without the permission or license of the Plaintiff, and without compensation of any kind paid to plaintiff for such use.

16. On information and belief, the infringing acts of the defendants include, but are not limited to, the following:

(a) Each defendant participated in and contributed to the copying of plaintiff's song in the creation and recording of the Artist particular Song as described in Exhibit A.

(b) All defendants contributed to and participated in the making and distributing of phonograph records, in the United States and various other territories of the world, serving to reproduce mechanically there particular Artist described in Exhibit A, recording of the Artist particular song described in Exhibit A. which copied plaintiff's song.

(c) All defendants contributed to and participated in public performances

of there particular songs described in Exhibit A, except SONY/BMG MUSIC, Entertainment, UNIVERSAL MUSIC GROUP, and EMI, CAPITOL RECORDS particular Artist in Exhibit A's rendition of there particular song described in Exhibit A, which copied plaintiff's song.

(d) Defendants conduct violated 17 U.S.C. § 106 and Defendants are liable under 17 U.S.C. § 501.

17. Defendants' respective infringing acts were and, if continued, hereafter will be committed willfully.

## Count II

18. Plaintiff repeats and re-alleges the allegation of paragraphs 1 through 17 of Count I as and for paragraphs 1 through 17 of Count II as is fully set out herein.

19. This claim arises under title 17, United State Code, Chapter 5,sec 501-505, and sound recording act of 1995, P.L. 104-39.

20. Subsequent to 1991 and various dates thereafter, all defendants have affixed, applied, annexed, and used in connection with phonograph records distributed in and throughout the United States and other countries of the world, the descriptions and representations that the song titles listed by each defendants particular song described in Exhibit A, was solely written by the writers listed in Exhibit B, and that the defendants MIJAC MUSIC, UNIVERSAL PUBLISHING CO., and ZOMBA ENTERPRISES INC., are the sole copyright proprietors of the songs listed in Exhibit A & B, and the recording thereof by the particular Artist that is listed in Exhibit A.

21. Said defendants fail to attribute to plaintiff the authorship and copyright ownership of plaintiff's song in connection with the defendants particular songs described in Exhibit A.

22. Such failure to attribute ownership of plaintiff's song creates a false impression of the source, authorship, and ownership of plaintiff's song and the recording entitled to each defendant's particular song described in Exhibit A.

23. Plaintiff has no adequate remedy at law and the aforesaid false designations of source have caused and will continue to cause plaintiffs irreparable harm and injury.

### Count III

24. Plaintiff repeats and re-alleges herein paragraphs 1 through 17 of Count I as and for paragraphs 1 through 17 of Count III as is fully set forth herein.

25. On information and belief, the defendants committed fraud by taking segments of SYL JOHNSONS original recording "DIFFERENT STROKES" and adding same to each particular artist in Exhibit A's songs described in Exhibit A.

### Count IV

26. Plaintiff repeats and re-alleges herein paragraphs 1 through 17 of Count I as and for paragraphs 1 through 17 of Count IV as is fully set forth herein.

27. The United States has entered into international copyright relations with various countries of the world, including but not limited to through the Universal Copyright Convention.

28. On information and belief, from time to time subsequent to 1991, and various dates thereafter, each defendant described in Exhibit A'S, rendition of their particular songs described in Exhibit A, was publicly performed in various territories of the world outside the United States, including Canada, the United Kingdom and Australia which is indirect violation of plaintiff's international copyrights.

29. On information and belief, from time to time subsequent to 1991, and various dates thereafter, phonograph records serving to reproduce mechanically the particular artist listed in Exhibit A, recordings of the particular songs described in Exhibit A, were produced, distributed, and sold in various foreign territories of the world outside the United States, including Canada, the United Kingdom, and Australia, which is indirect violation of plaintiff's international copyrights.

30. By reason of the foregoing, defendants have infringed on plaintiff's international copyrights to an extent more fully specified following discovery of defendants' business records.

<u>COUNT V</u>

31. Plaintiff repeats and re-alleges the allegation of paragraphs 1 through 17 of Count I as and for paragraphs 1 through 17 of Count V as is fully set out herein.

32. On information and belief, all defendants except the Artist listed in exhibit A, previously has done business, and has purchased the composition and masters of "Different Strokes numerous times directly from Plaintiff, Syl Johnson d/b/a Syl-Zel Music, before they enter into any of these Settlement Agreements, described in Attached here to as Exhibit C and used as evidence in this case

33. Defendants should have known that the plaintiff was, and still is the Owner of the Copyright Attached here to as Exhibit D, sound recording and the composition of the recording "Different Strokes" as Performed by the Plaintiff Syl Johnson, Written by John Zachary and John C. Cameron and Published by Syl-Zel Music.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, plaintiff Pray as follows:

A. That defendants, and each of them, and their respective agents, servants, and representatives, be enjoined during the pending litigation of this action and permanently, from infringing plaintiff's copyrights in any manner, including from disposing of copies of, and making and distributing of phonograph records of, the recording of each defendants particular song described in Exhibit A, by each defendant described in Exhibit A. and from licensing and contributing to or participating in any further infringing acts.

B. That defendants, and each of them, be required to account for all gains, profits, and advantages derived by the defendants from each of their infringements of plaintiff's copyrights and to pay to plaintiffs such damages as plaintiffs have sustained in consequence of each infringement of said copyrights, or such damages as this Court shall deem appropriate within the provisions of the Copyright Law of the United States, and for all such relief as may be available to plaintiff for such infringements under the laws of each territory of the world in which infringements took place.

C. That defendants, and each of them, be required to deliver up, on oath, to be impounded during the pending litigation of this action and for destruction, all infringing copies, recordings, masters, and phonograph recordings, and all plates, molds, matrices, and other means of any kind for making infringing copies, recordings, or phonograph recordings.

D. That the defendants and their respective agents, servants, and representatives, be enjoined during the pending litigation of this action and permanently from omitting to credit plaintiff as His respective interests may appear, for his portion of the ownership of the song and recording of each defendants particular song described in Exhibit A, and His copyright ownership interests therein, on any Phonograph recordings serving to reproduce the recording of each defendants particular song described in Exhibit A, by each defendant described in Exhibit A, or any packaging or advertising for the phonograph

records.

E. That defendants and each of them be required to account for all gains, profits, and advantages derived from their false descriptions and representations as to source, and to pay to plaintiff such sum as are determined to be due thereto.

F. That defendants pay to plaintiff the costs of this action, including a reasonable attorney's fee as assessed by this Court.

G. For any and such further relief as this Court may determine is just and proper under the circumstances.

H. The plaintiff, "PRAY" for a speeding trial, due to the fact that he and his writers are Senior Citizens.

JURY DEMAND

SYL JOHNSON AKA
SYLVESTER THOMPSON Pro se
SYL-ZEL MUSIC COMPANY, Plaintiff,
3316 W.59th STREET, CHICAGO IL. 60629.
773-557-9341

By _____

**Exhibit A: Schedule of Artist**

## UNITED STATES DISTRICT COURT
## FOR NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| SYL JOHNSON A/K/A,<br>SYLVESTER THOMPSON,<br>D/B/A SYL-ZEL MUSIC CO., | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   **Index No** |
| Plaintiff. | )<br>)<br>) |
| V. | )<br>)<br>) |
| Defendants. | )<br>)<br>)<br>)   **JURY TRIAL REQUEST** |
| MICHAEL JACKSON,<br>WILL SMITH a/k/a Willard Smith, et al.,<br>TUPAC SHAKUR Estate, et al.,<br>KRS ONE a/k/a Lawrence Parker<br>BOOGIE DOWN PRODUCTION a/k/a<br>Lawrence Parker,<br>p/k/a PEEDI CRAKK & YOUNG CHRIS<br>& The Group NWA Collectively ,et al. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

| ARTIST | SONG TITLES |
|---|---|
| Michael Jackson | "Blood On The Dance Floor" |
| Will Smith a/k/a Willard Smith | "Who Stole The D.J." |
| Tupac Shakur | "Peep Game" |
| Tupac Shakur | "Nothing But Love" |
| KRS One a/k/a Lawrence Parker | "Criminal Minded" |
| Boogie Down Production a/ka Lawrence Parker | "Criminal Minded" |
| p/k/a Peedi Crakk & Young Chris | "Criminal Background" |

**The Group NWA Collectively**                "Real Nizza Don't Die"
**"Dr. Dre", a/k/a Andre Young**
**Yella", a/k/a Antoine Carraby**
**"Ice Cube", a/k/a, O'Shea Jackson**
**"M.C. Ren", a/k/a, Lorenzo Patterson**
**"Easy E", a/k/a, Eric Wright**

**Exhibit B: Schedule of Writers**

**UNITED STATES DISTRICT COURT**
**FOR NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| SYL JOHNSON A/K/A, <br> SYLVESTER THOMPSON, <br> D/B/A SYL-ZEL MUSIC CO., <br><br> Plaintiff. <br><br> V. <br><br> Defendants. <br><br> MICHAEL JACKSON, <br> WILL SMITH aka Willard Smith, et al., <br> TUPAC SHAKUR Estate, et al., <br> KRS ONE aka Lawrence Parker <br> BOOGIE DOWN PRODUCTION aka <br> Lawrence Parker, <br> p/k/a PEEDI CRAKK & YOUNG CHRIS <br> & The Group NWA Collectively | **Index No** <br><br><br> **JURY TRIAL REQUEST** |

| SONG TITLES | WRITERS |
|---|---|
| "Blood On The Dance Floor" | Michael Jackson |
| "Who Stole The D.J." | Will Smith & Jeffrey Townes |
| "Peep Game" | Tupac Shakur, Corey Lloyd, <br> Curtis Mayfield & Bobby Ervin |
| "Nothin But Love" | Tupac Shakur, Daryl Anderson, <br> M. Craig & M.A. Jr. Wood |
| "Criminal Minded" KRS One | Lawrence Parker & Scott Sterling |
| "Criminal Minded" Boogie Down Prod. | Lawrence Parker & Scott Sterling |
| "Criminal Background" | Lawrence Parker, et al. |
| "Real Niggaz Don't Die" | The D.O.C./Dr. Dre/Eazy-E/ <br> Fekaris/MC Ren/DJ Yella/Zesses |

# Exhibit C

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement is made and entered into as of ~~April~~ *May* 2003, by and between Peter Wright, 57 W. Erie St., Chicago, Illinois 60610, Sunlight Records, Inc. d/b/a Edgewater Music Co. and Twilight Records, 57 W. Erie St., Chicago, Illinois 60610, (individually and collectively, "Claimants") on the one hand, and Sony Music Entertainment Inc., 550 Madison Avenue, New York, New York 10022-3211 (hereinafter, "Sony"), on the other hand.

WHEREAS, reference is made to the musical composition entitled "Blood on the Dance Floor (Refugee Camp Edit)" (the "New Composition").

WHEREAS, the New Composition is contained on a recording by Michael Jackson (the "Artist"), released by Sony and contained on the CD single, maxi -CD single and cassette single "Blood On the Dance Floor" (34K-78007, 34T-78007 and 49K78008, respectively) (the "New Recordings") (Such New Composition and New Recordings are sometimes hereinafter referred to individually and collectively as the "New Material").

WHEREAS, Claimants have alleged that Sony has engaged in certain unauthorized uses of the musical composition "Different Strokes" (the "Preexisting Composition") and the sound recording "Different Strokes" (the "Preexisting Recording") (individually and collectively, the "Preexisting Material"), including without limitation all claims and allegations made in the letter dated November 8, 2001 from Hillel Frankel to Nancy Marcus (the "Claims").

WHEREAS, the parties wish to compromise and resolve the dispute between them concerning the Claims without admission or adjudication of fact or law;

NOW, THEREFORE, in consideration of the promises herein made and other valuable and good consideration, the receipt and sufficiency of which are hereby acknowledged, the following will constitute the agreement among Claimants and Sony, and will constitute a complete settlement of all disputes and claims arising among the parties, with respect to the alleged use of Preexisting Material in the New Material, the Claims and certain related matters as set forth below.

1.  Within 10 business days after receipt of a fully-executed copy of this Agreement, in full consideration of all rights granted herein and in settlement of all Claims, Sony shall pay Claimants a total sum of $6,500.00. Sony's check shall be made payable to Sunlight Records, Inc.

2.  Claimants hereby irrevocably grant to Sony, and their licensees and assigns the non-exclusive right and license to record, copy, distribute, perform and incorporate the Preexisting Material in the New Material and to exploit the New Material, as the New Material currently exists or as might be modified or transformed into other works including derivative works in the future, throughout the world in perpetuity, in any form, manner or medium now known or hereafter devised, including but not limited to all forms of Records (as defined below), use in audiovisual works and use in multimedia works. However, nothing herein shall give Sony the right to use a larger portion of the Preexisting Material than is currently used in the New Material.

"Records" as used in this Agreement shall mean all forms of reproductions, transmissions or communications of recordings now or hereafter known,

0140

manufactured, distributed, transmitted or communicated primarily for home use, school use, jukebox use or use in the means of transportation, including, without limitation, Records embodying sound alone and audiovisual Records. The license granted hereunder shall be retroactive to, and shall be effective *nunc pro tunc* as of the first date that the New Material was created.

3. It is understood and agreed that Claimants shall acquire no copyright interest, or any other proprietary interest, and shall receive no authorship credit or any other credit, in any now existing or future version of the New Material, and that Claimants shall have no right to exercise any rights in and to any now existing or future version of the New Material.

4. Each party hereto warrants and represents that it has the irrevocable right, power, title and authority to enter into this Agreement, to grant the rights and interests granted herein, and to perform all of its obligations under this Agreement. Each party represents to the others that it has not assigned or otherwise transferred any claim that is the subject of this Agreement.

5. Claimants warrant and represent that Sony will not be required to make any payments (other than the payments specified in Paragraph 1 of this Agreement) in connection with the inclusion of the Preexisting Material into the New Material or any derivative works thereof and that the inclusion of the Preexisting Material into the New Material and the exploitation thereof will not infringe upon or violate the rights of any person or entity. Claimants warrant and represent that they are the sole owners, authors, and composers of the Preexisting Material and all copyright rights therein.

6. Claimants will indemnify and hold harmless Sony and any of its respective affiliated persons or entities, from and against any and all claims, damages, liabilities, costs and expenses (including legal costs and reasonable counsel fees) arising out of any breach or alleged breach of any representation, warranty, obligation or undertaking by Claimants hereunder.

7. Claimants and their agents, employees, representatives, owners, members, shareholders, affiliates, partners, licensees, attorneys, transferees, predecessors, successors and assigns (the "Releasors") hereby forever release and discharge the Artist and Sony, and their respective subsidiaries, affiliates, divisions and components, and each of their partners, directors, controlling persons, advisors and employees and any and all other persons in contractual privity with any of them (the "Releasees") from any and all claims, demands, actions, causes of action, suits, sums of money, accounts, covenants, agreements, contracts, and promises, known or unknown, arising in law or in equity, which the Releasors now have, have had, or at any time may have, against the Releasees, their successors and assigns, including the Claims, by reason of any matter, cause, or thing whatsoever from the beginning of the world to the date hereof, relating to or in connection with the use of the Preexisting Material in the New Material, as such Preexisting Material is currently used in the New Material, or the Claims.

Each party hereby acknowledges that it has been informed by its respective advisors of, and that it is familiar with, Section 1542 of the Civil Code of the State of California, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

The parties hereto expressly waive and release any right or benefit which they have or may have under Section 1542 of the Civil Code of the State of California (or any other law of similar effect), to the fullest extent that they may waive all such rights and benefits pertaining to the matters released herein. It is the intention of the parties, and each of them, through this Agreement, and with the advice of counsel, to fully, finally and forever settle and release all such matters, and all claims relative thereto, in furtherance of such intention.

8.  This Agreement shall be construed in accordance with and governed by the laws of the State of New York applicable to agreements wholly to be performed therein and may not be amended or waived except in writing signed by all of the parties. Each party consents to personal jurisdiction and venue in the State and Federal courts located in the State, County and City of New York. The parties agree that any claim arising out of a breach of this Agreement may be brought only in a court of competent jurisdiction in the State, County and City of New York, and such court shall have sole and exclusive jurisdiction over any such claims.

9.  This Agreement contains the entire agreement between the parties hereto with respect to the subject matter herein and supersedes all previous oral or written and all contemporaneous oral negotiations, commitments, writings and understandings. No breach of this agreement on the part of any party shall constitute grounds for any legal action or proceedings against any other party unless the breaching party shall have given the other party written notice specifying the nature of such breach and the breaching party shall have failed to cure such breach within 30 days after receipt of such notice.

10. This Agreement is binding upon and shall inure to the benefit of the licensees, successors and/or assigns of the parties hereto. The parties may execute this Agreement in separate counterparts and/or by facsimile, each of which counterpart and/or facsimile copy shall be deemed an original instrument as against the party who has signed it. Each party's signature at the bottom hereof will signify an acceptance of, and agreement to, the terms and provisions contained herein.

11.   The settlement herein arises from a compromise of disputed claims.  Nothing herein shall be deemed an admission of liability concerning the matter settled herein.

Sony Music Entertainment Inc.

By: _____

Peter Wright

By _____

Sunlight Records, Inc,
d/b/a Edgewater Music Co.

By: _____

Twilight Records

By: _____

0152

**Sony Music Entertainment Inc.**
550 Madison Ave, 14 Floor
New York, NY 10022-3301

CHECK DATE: 05/06/2003    NO. 45618379

MU-000-000107859

| VOUCHER | INVOICE NUMBER | PURCHASE ORDER | INVOICE DATE | INVOICE AMOUNT | DISCOUNT AMOUNT | NET AMOUNT |
|---------|----------------|----------------|--------------|----------------|-----------------|------------|
| 786020 | 196655<br>AGREEMENT | | 05-02-03 | 6,500.00 | .00 | 6,500.00 |
| | | | | 6,500.00 | .00 | 6,500.00 |

PLEASE DETACH BEFORE DEPOSITING

VERIFY THE AUTHENTICITY OF THIS MULTI-TONE SECURITY DOCUMENT.    CHECK BACKGROUND AREA CHANGES COLOR GRADUALLY FROM TOP TO BOTTOM.

**Sony Music Entertainment Inc.**
550 Madison Ave, 14 Floor
New York, NY 10022-3301

62-20/311

CITIBANK DELAWARE
A SUBSIDIARY OF CITICORP
ONE PENN'S WAY
NEW CASTLE, DE 19720

NO. 45618379

DATE    AMOUNT

05/06/2003    *****6,500.00

PAY  SIX THOUSAND FIVE HUNDRED DOLLARS AND 00 CENTS  *********************************

*PAYEE NAME IN SHADED AREA BELOW*

ON BEHALF OF PAYOR
NOT VALID AFTER 90 DAYS

TO
THE
ORDER
OF

SUNLIGHT RECORDS INC*************
57 WEST ERIE STREET
CHICAGO   IL
60610

By: _Frank Cimminus_

0187

THIS MUTUAL RELEASE OF CLAIMS ("Release") is entered into as of October 19, 2001 by and between Zomba Enterprises Inc. ("ZEI"), whose address is 138 West 25th Street, New York, New York 10001; and Edgewater Music d/b/a Sunlight Records, Inc.("Edgewater"), whose address is c/o The Entertainment Law Office, Law Office Of Hillel Frankel, P.C., 208 South LaSalle, Suite 1400, Chicago, Illinois 60604.

WHEREAS, John Cameron and John Zachary are writers and composers, having written the musical composition entitled "Different Strokes", registered in the United States copyright office as _Eu-8801_ to Edgewater Music d/b/a Sunlight Records, Inc. (together with all derivatives and adaptations thereof, the "Composition"); and

WHEREAS Willard Smith and Jeffrey Townes are writers and composers, having written the musical composition entitled "Who Stole The DJ?," registered in the United States copyright office as PA 586-872 to ZEI and Jazzy Jeff And Fresh Prince Publishing Co. (which is exclusively administered by ZEI) (together with all derivatives and adaptations thereof, the "Zomba Composition"); and

WHEREAS, Edgewater is engaged in the business of music publication and administration of, among other things, the Composition; and

WHEREAS, ZEI is a corporation organized and existing under the laws of the State of New York. ZEI is engaged in the business of music publishing.

WHEREAS a portion of the Composition (the "Sample") is contained in the Zomba Composition initially performed by the recording artist professionally known as DJ Jazzy Jeff And The Fresh Prince (the "Artist").

WHEREAS, ZEI and Edgewater intend by this Release to reach an amicable agreement that, without any admission of liability, provides for a cash payment to Edgewater, and releases all claims, known or unknown, that Edgewater may have in connection with the Zomba Composition.

NOW, THEREFORE, for good and valuable consideration, including the covenants contained herein, the parties hereby agree as follows.

1.      ZEI shall make a one-time payment in the amount of Five Thousand Dollars ($5,000.00), ZEI, delivered to Edgewater at the address above, a check drawn on good and sufficient funds payable to "Edgewater Music d/b/a Sunlight Records, Inc.," taxpayer identification number _36-4000949_, promptly following ZEI's receipt of copies if this Release, fully executed by Edgewater.

2.      Edgewater (or their designees) shall be fully responsible for paying songwriter royalties or any other compensation which shall be due any other writer and/or composer of the Composition, or anyone deriving rights from them, and shall indemnify and hold harmless ZEI from any and all claims, demands, causes of action, damages and liabilities with respect thereto. It is understood that ZEI has no songwriter royalty obligations to Edgewater or anyone deriving rights from them.

3.      Edgewater acknowledges and agrees that it does not and will not have any right, title or interest in and to the Zomba Composition and that all statutory, legal, equitable and common law rights held in and to the Zomba Composition by ZEI are expressly reserved.

0118

*Publishing*



4.    ZEI agrees that if a third party seeks to secure a license from ZEI for the use of the Zomba Composition in another musical composition (the "Third Party Composition") as a so-called "sample" or interpolation, then, solely if the portion of the Zomba Composition that such third party intends to embody within the Third Party Composition contains the Sample, ZEI shall instruct and direct such third party to seek a license from Edgewater solely with respect to the Sample as it may be contained in the Third Party Composition.  For the avoidance of doubt, nothing contained herein shall in any way limit ZEI's right and ability to license any use of the Zomba Composition.

5.    All parties hereto, and each of them, covenant and agree that except as provided in this paragraph 5 or as reasonably necessary to effectuate the purposes of this Release, none of them nor their attorneys shall disclose any of the terms of this Release to any person not a party to this Release, except pursuant to an order of a court of competent jurisdiction or in response to a subpoena, after giving prior written notice to the other parties.  Notwithstanding the foregoing, nothing in this paragraph or in this Release shall prevent any party hereto, or their attorneys, from disclosing the fact of the Release and its terms, as may be reasonably necessary in connection with any audit of any party hereto.

6.    Edgewater, on behalf of itself and its respective heirs, executors, administrators, parents, subsidiaries, affiliates, predecessors, successors, assigns, directors, officers, employees, agents, insurers and attorneys, and each of them (collectively the "Edgewater Releasors"), hereby release and forever discharge ZEI and its heirs, executors, administrators, parents, subsidiaries, affiliates, predecessors, successors, assigns, directors, officers, employees, agents, insurers and attorneys, and each of them, of and from any and all claims, demands, actions, causes of action, obligations, damages and liabilities, of any kind or nature whatsoever arising out of or related to the Zomba Composition, whether or not now known, suspected or claimed, which the Edgewater Releasors have or may have against ZEI.

7.    The parties hereto, and each of them, agree that this Release represents a compromise of disputed claims and shall not be construed or asserted for any purpose as an admission by any party of liability or responsibility.

8.    Edgewater represents and warrants that it is the sole and lawful owner of all right, title and interest in and to every claim and each of the other matters which they purport to release herein, and none of Edgewater has heretofore assigned or transferred or purported to assign or transfer to any person or entity not a party to this Release any such right, title or interest.

9.    Without limiting the generality of the foregoing paragraph 7, Edgewater represents and warrants that John Cameron and John Zachary are the sole authors and composers of the Composition and that Edgewater is the sole owner of the copyright in the Composition and that Edgewater has the authority to make the representations, warranties and covenants and to give the releases provided for in this Release.

10.    This Release embodies the entire understanding and agreement between the parties hereto, with respect to the subject matter herein, superseding any and all prior or contemporaneous representations and agreements, whether written or oral.  Any modification to this Release must be in a writing signed by each of the parties hereto.

11.    Each party hereto agree to bear their own respective attorneys' fees, costs and expenses incurred in connection with the this Release.

0119



12.     Each party hereto (for these purposes "Indemnitor") shall indemnify, defend and hold the other party ("Indemnitee") harmless against and in respect of any claims, losses, damages or expenses, including, without limitation, reasonable attorneys' fees and litigation costs (together the "Damages"), that Indemnitee may incur, which arise from or relate to any breach of, or failure by Indemnitor to perform, any of Indemnitor's representations, warranties, or promises in this Release or in any exhibit or other instrument furnished or to be furnished by Indemnitor under or in connection with this Release. Indemnitee shall notify Indemnitor of any claim presented to Indemnitee by a third party.  Indemnitor shall defend any third party claim, at its sole expense, with counsel approved by the Indemnitee, except that, at Indemnitee's option, Indemnitee may defend the claim (at Indemnitor's sole expense) and shall consult with Indemnitor about choice of counsel and the conduct of the proceeding.  No such claim asserted by a third party may be settled by Indemnitee without Indemnitor's prior written consent (such consent not to be unreasonably withheld or delayed), so long as Indemnitor is actively defending such claim in a manner consistent with industry norms, unless Indemnitee shall agree not to seek indemnity from Indemnitor for any settlement payment made by Indemnitee to the claimant and further subject to the following.  If Indemnitor does not approve a settlement proposed by Indemnitee, Indemnitee may nonetheless settle the matter unless, within ten (10) business days after notice to the Indemnitor, Indemnitor furnishes to Indemnitee a surety bond or letter of credit from a national surety company or bank, in form and content satisfactory to the Indemnitee, insuring Indemnitee against the amount of the claim in addition to reasonable attorneys' fees and litigation costs expended in connection with the claim and a reasonable estimate of such fees and costs required to continue the defense.  Without limitation of the foregoing, Edgewater as Indemnitor shall indemnify ZEI as Indemnitee for any Damages which arise from or relate to any third party who asserts rights in the Composition.

13.     This Release shall be binding upon and shall inure to the benefit of the successors and assigns of all the parties hereto, and each of them.

14.     This Release shall be deemed to have been drafted with the equal participation of all parties hereto, and each of them, and no provision shall be interpreted against any party on the basis that the party is deemed to be the sole or primary drafter of the provision.

15.     Each person executing this Release on behalf of a corporation represents and warrants that he or she is duly authorized to execute this Release on behalf of the corporation and that he or she has authority by his or her signature to cause the terms of this Release to be binding on the corporation.

16.     This Release may be executed in counterparts.

17.     All notices under this agreement will be sent to the addresses first mentioned above or such other address as each party respectively may designate by notice to the other.  All notices sent under this agreement will be in writing and will be delivered by personal delivery or certified mail (return receipt requested).  All notices sent to ZEI will be sent to the attention of its Senior Vice President, Business Affairs with a copy to Grubman Indursky & Schindler, 152 West 57th Street, New York, NY 10019, to the attention of Arthur Indursky, Esq.

18.     This Release shall be construed under and interpreted solely and exclusively in accordance with the laws of the State of New York. Any litigation arising out of or related to this Release shall be brought solely and exclusively in the United States District Court for the Southern District of New York if subject matter jurisdiction exists there, or if not, in the Supreme Court for the State of New York, County of New York, and all parties hereto, and each of them, hereby consent to personal jurisdiction and venue in those courts and waive any objections to personal jurisdiction and/or venue that they may have. The parties hereto expressly waive their right to trial by jury in connection with any claim, demand or action arising out of this Release.

0120



**Zomba Enterprises Inc.**

By: _Rachelle Greenblatt_
    Rachelle Greenblatt

Its:    Senior Vice President, Music Publishing


**Edgewater Music**
d/b/a Sunlight Records, Inc.

By:    _____
       Peter Wright

Its:    President


0121

# MASTER RECORDING
# SAMPLE CLEARANCE LICENSE

LICENSE AND RELEASE made as of October 1, 2001, effective as of July 23, 1991 by and between Zomba Recording Corporation (**"Zomba"**), 137-139 West 25th Street, New York, New York 10001, and Twilight/Twinight Records in c/o Hillel Frankel Esq. The Entertainment Law Office, 208 South La Salle, Suite 1400 Chicago, IL 60604 ("Licensor").

1. Reference is made to the sound recording entitled "Different Strokes" performed by Syl Johnson (**the "Master"**). A portion of the Master (**the "Sample"**) is contained in the recording entitled "Who Stole The DJ" **"Master"**). A portion of the Master (**the "Sample"**) is contained in the recording entitled "Who Stole The DJ" performed by Zomba's recording artist DJ Jazzy Jeff and the Fresh Prince (**"Artist"**). All versions of that recording which contain the Sample are referred to below as the **"Selection"**.

2. Licensor hereby grants to Zomba, its licensees, affiliates, successors, assigns, principals, directors, officers, employees and agents (the **"Zomba Parties"**) the irrevocable, non-exclusive license and right (a) to embody the Sample in and as part of the Selection; and as part of the Selection only  (b) to reproduce, distribute and otherwise exploit the Sample, and to authorize others to reproduce, distribute, and otherwise exploit the Sample throughout the universe in perpetuity in all media, including, without limitation, all phonograph record formats, whether now known or hereafter developed.

Notwithstanding the foregoing, in the event that or any third party desires to use a portion of the Selection containing the Sample for any purpose other than as stated herein, any such use shall require the licensors express prior written consent, and any such third party licensee shall obtain a separate license from Licensor for such purpose, and Licensor shall be entitled to receive direct payment from the third party in respect of such use. Without limiting the generality of this paragraph 2, any future so-called "sampling" uses of a portion of the Selection containing the Sample shall require the licensor's consent, and we shall negotiate in good faith and issue a separate license for the use of the Sample within the Selection. Licensee shall direct any such third party who desires to obtain a so-called "sampling" license in connection with a portion of the Selection containing the Sample, to seek Licensors prior written consent.

3. Licensor, its licensees, affiliates, principals, directors, officers, agents, employees, assigns and successors (the **"Licensing Parties"**) hereby release and discharge the Zomba Parties, the Artist and/or any person or entity acting on the Artist's behalf from any and all actions, controversies, damages, judgments, claims, demands and losses of every kind whatsoever which the Licensing Parties now or hereinafter may have against the Zomba Parties, the Artist and/or any person or entity acting on the Artist's behalf with regard to the Selection, excluding only Zomba's obligation to the fee set forth in paragraph 4 below.

4. In full consideration of the rights granted in this agreement, Zomba will pay Licensor Five Thousand Dollars ($5,000) upon full execution of this agreement.

5. INTENTIONALLY DELETED

Performance

0129

6.  Licensor represents and warrants that: (a) it has the exclusive right and authority to enter into this agreement; (b) it is the owner of all right, title, and interest in and to the Master, including without limitation the copyrights thereto, throughout the world; (c) the rights granted by Licensor under this agreement will not infringe on the rights of any third party; and (d) the Zomba Parties will not be required to make any payment whatsoever for use of the Sample, except as specifically set forth in paragraph 4 above. The Licensing Parties will indemnify and hold the Zomba Parties harmless from any and all claims, damages, losses, judgments and liabilities arising from or in connection with the breach or claim of breach of any warranty, representation or agreement made by Licensor under this agreement.

7.  Licensor hereby acknowledges and agrees that the Licensing Parties do not and will not have any right, title or interest in and to the Selection. The Zomba Parties hereby acknowledge and agree that the Zomba Parties do not and will not have any right, title, or interest in and to the Master.

8.  Nothing contained in this agreement will obligate Zomba to utilize the Sample in any version of the recording entitled "Who Stole the DJ". No payments will be payable to Licensor with respect to any version of such recording which does not contain the Sample.

9.  No breach by Zomba of any of its obligations under this agreement will entitle the Licensing Parties to recover damages or affect any of the Licensing Parties' obligations under this agreement unless Zomba fails to remedy such breach within thirty (30) days following receipt of notice thereof. Failing such cure, Licensor agrees that the Licensing Parties' sole remedy will be for damages and that the Licensing Parties will not seek injunctive or other equitable relief against the Zomba Parties to restrain the sale of records produced under this agreement.

10.  All notices under this agreement will be sent to the addresses first mentioned above or such other address as each party respectively may designate by notice to the other. All notices sent under this agreement will be in writing and will be delivered by personal delivery or certified mail (return receipt requested). All notices sent to Zomba will be sent to the attention of its Senior Vice President, Business Affairs, with a copy to Grubman, Indursky & Schindler, 152 West 57th Street, New York N.Y. 10019, Attention: Arthur Indursky, Esq.

11.  The invalidity or unenforceability of any provision of this agreement will not affect the validity or enforceability of any other provision. This agreement contains the entire understanding of the parties hereto relating to the subject matter hereof and cannot be changed or terminated except by an instrument signed by an officer of each party hereto. A waiver by either party of any term or condition of this agreement in any instance will not be deemed or construed as a waiver of such term or condition for all instances, past or future.

12.  Nothing contained in this agreement will constitute a partnership or a joint venture between or among the parties to this agreement. The parties hereto will perform their obligations as independent persons or entities and not as the agents or employees of the other party (ies). No party will hold itself out contrary to the terms of this paragraph 12 and no party will be liable for any representation, act or omission of the other party (ies) contrary to the provisions of this paragraph 12.



0130

13.  This agreement is binding upon and will inure to the benefit of the respective successors and/or assigns of the parties hereto.

14.  This agreement will be governed by and subject to the laws of the State of New York applicable to contracts made and wholly to be performed in New York (without giving effect to any conflict of law principles under New York Law).  Any claim, dispute, or disagreement with respect hereto will be submitted to the courts of the State of New York, County of New York, or to the United States District Court, Southern District of New York, which courts will have exclusive jurisdiction hereof.

**ZOMBA RECORDING CORPORATION**

By _____

**TWLIGHT/TWINIGHT RECORDS**

PETER H. WRIGHT

By _____

Federal I.D. #: 364-000949

0131

PAYMENT TO    TWILIGHT/TWINIGHT RECORDS
DESC          REF#        DATE        REF
1067331                   OCT 3 2001  100301A

OCT 11 2001      139369

AMOUNT       DISCOUNT       PAID
5000.00      0.00           5000.00

139369

---

**ZOMBA RECORDING CORPORATION**
137-139 WEST 25TH STREET
NEW YORK, NY 10001

THE CHASE MANHATTAN BANK
SYRACUSE, NEW YORK
50-44/213

139369

DATE
OCT 11 2001

AMOUNT
******5,000.00

PAY  **Five Thousand  Dollars and NO Cents*************************

TO THE
ORDER OF

TWILIGHT/TWINIGHT RECORDS
D/B/A SUNLIGHT RECORDS
208 SOUTH LA SALLE, STE 1400
CHICAGO, IL
60604

⑈139369⑈ ⑆021309434⑆ 755541294⑈

Security Features Included.

0181

*Exhibit C*

# MASTER RECORDING
# SAMPLE CLEARANCE LICENSE

LICENSE AND RELEASE made as of October 1, 2001, effective as of March 12, 1991, by and between Zomba Recording Corporation ("**Zomba**"), 137-139 West 25th Street, New York, New York 10001, and Twilight/Twinight Records in c/o Hillel Frankel Esq. The Entertainment Law Office, 208 South La Salle, Suite 1400 Chicago, IL 60604 ("**Licensor**").

1.  Reference is made to the sound recording entitled "Different Strokes" performed by Syl Johnson (the "**Master**"). A portion of the Master (the "**Sample**") is contained in the recording entitled "Criminal Minded" from the album entitled "Live Hardcore Worldwide" performed by Zomba's recording artist KRS One ("**Artist**"). All versions of that recording which contain the Sample are referred to below as the "**Selection**".

2.  Licensor hereby grants to Zomba, its licensees, affiliates, successors, assigns, principals, directors, officers, employees and agents (the "**Zomba Parties**") the irrevocable, non-exclusive license and right (a) to embody the Sample in and as part of the Selection; and as part of the selection only (b) to reproduce, distribute and otherwise exploit the Sample, and to authorize others to reproduce, distribute, and otherwise exploit the Sample as part of the selection throughout the universe in perpetuity in all media, including, without limitation, all phonograph record formats, whether now known or hereafter developed.

Notwithstanding the foregoing, in the event that or any third party desires to use a portion of the Selection containing the Sample for any purpose other than as stated herein, any such use shall require the licensors express prior written consent, and any such third party licensee shall obtain a separate license from Licensor for such purpose, and Licensor shall be entitled to receive direct payment from the third party in respect of such use. Without limiting the generality of this paragraph 2, any future so-called "sampling" uses of a portion of the Selection containing the Sample shall require the licensor's consent, and we shall negotiate in good faith and issue a separate license for the use of the Sample within the Selection. Licensee shall direct any such third party who desires to obtain a so-called "sampling" license in connection with a portion of the Selection containing the Sample, to seek Licensors prior written consent.

3.  Licensor, its licensees, affiliates, principals, directors, officers, agents, employees, assigns and successors (the "**Licensing Parties**") hereby release and discharge the Zomba Parties, the Artist and/or any person or entity acting on the Artist's behalf from any and all actions, controversies, damages, judgments, claims, demands and losses of every kind whatsoever which the Licensing Parties now or hereinafter may have against the Zomba Parties, the Artist and/or any person or entity acting on the Artist's behalf with regard to the Selection, excluding only Zomba's obligation to the fee set forth in paragraph 4 below.

4.  In full consideration of the rights granted in this agreement, Zomba will pay Licensor Four Thousand Six Hundred and Thirty Four Dollars ($4634.00) upon the first such release.

5.  INTENTIONALLY DELETED



*PERFORMANCE*

0126

6.  Licensor represents and warrants that: (a) it has the exclusive right and authority to enter into this agreement; (b) it is the owner of all right, title, and interest in and to the Master, including without limitation the copyrights thereto, throughout the world; (c) the rights granted by Licensor under this agreement will not infringe on the rights of any third party; and (d) the Zomba Parties will not be required to make any payment whatsoever for use of the Sample, except as specifically set forth in paragraph 4 above. The Licensing Parties will indemnify and hold the Zomba Parties harmless from any and all claims, damages, losses, judgments and liabilities arising from or in connection with the breach or claim of breach of any warranty, representation or agreement made by Licensor under this agreement.

7.  Licensor hereby acknowledges and agrees that the Licensing Parties do not and will not have any right, title or interest in and to the Selection. The Zomba Parties hereby acknowledge and agree that the Zomba Parties do not and will not have any right, title, or interest in and to the Master.

8.  Nothing contained in this agreement will obligate Zomba to utilize the Sample in any version of the recording entitled "Criminal Minded". No payments will be payable to Licensor with respect to any version of such recording which does not contain the Sample.

9.  No breach by Zomba of any of its obligations under this agreement will entitle the Licensing Parties to recover damages or affect any of the Licensing Parties' obligations under this agreement unless Zomba fails to remedy such breach within thirty (30) days following receipt of notice thereof. Failing such cure, Licensor agrees that the Licensing Parties' sole remedy will be for damages and that the Licensing Parties will not seek injunctive or other equitable relief against the Zomba Parties to restrain the sale of records produced under this agreement.

10.  All notices under this agreement will be sent to the addresses first mentioned above or such other address as each party respectively may designate by notice to the other. All notices sent under this agreement will be in writing and will be delivered by personal delivery or certified mail (return receipt requested). All notices sent to Zomba will be sent to the attention of its Senior Vice President, Business Affairs, with a copy to Grubman, Indursky & Schindler, 152 West 57th Street, New York N.Y. 10019, Attention: Arthur Indursky, Esq.

11.  The invalidity or unenforceability of any provision of this agreement will not affect the validity or enforceability of any other provision. This agreement contains the entire understanding of the parties hereto relating to the subject matter hereof and cannot be changed or terminated except by an instrument signed by an officer of each party hereto. A waiver by either party of any term or condition of this agreement in any instance will not be deemed or construed as a waiver of such term or condition for all instances, past or future.

12.  Nothing contained in this agreement will constitute a partnership or a joint venture between or among the parties to this agreement. The parties hereto will perform their obligations as independent persons or entities and not as the agents or employees of the other party (ies). No party will hold itself out contrary to the terms of this paragraph 12 and no party will be liable for any representation, act or omission of the other party (ies) contrary to the provisions of this paragraph 12.

0127



13. This agreement is binding upon and will inure to the benefit of the respective successors and/or assigns of the parties hereto.

14. This agreement will be governed by and subject to the laws of the State of New York applicable to contracts made and wholly to be performed in New York (without giving effect to any conflict of law principles under New York Law). Any claim, dispute, or disagreement with respect hereto will be submitted to the courts of the State of New York, County of New York, or to the United States District Court, Southern District of New York, which courts will have exclusive jurisdiction hereof.

**ZOMBA RECORDING CORPORATION**

By

**TWILIGHT/TWINIGHT RECORD**

PETER N. WRIGHT

By

Federal I.D. #: 364-000949

0128



Samples (general)/krsOne/criminalminded_diffstrokes/infringement/settlement2nddraft_10_15_01.doc

THIS MUTUAL RELEASE OF CLAIMS ("Release") is entered into as of October 19, 2001 by and between Zomba Enterprises Inc. ("ZEI"), whose address is 138 West 25th Street, New York, New York 10001; and Edgewater Music d/b/a Sunlight Records, Inc.("Edgewater"), whose address is c/o The Entertainment Law Office, Law Office Of Hillel Frankel, P.C., 208 South LaSalle, Suite 1400, Chicago, Illinois 60604.

WHEREAS, John Cameron and John Zachary are writers and composers, having written the musical composition entitled "Different Strokes", registered in the United States copyright office as *EU-820* to Edgewater Music d/b/a Sunlight Records, Inc. (together with all derivatives and adaptations thereof, the "Composition"); and

WHEREAS Lawrence Parker and Scott Sterling are writers and composers, having written the musical composition entitled "Criminal Minded," registered in the United States copyright office as PA 764-504 to ZEI (together with all derivatives and adaptations thereof, the "Zomba Composition"); and

WHEREAS, Edgewater is engaged in the business of music publication and administration of, among other things, the Composition; and

WHEREAS, ZEI is a corporation organized and existing under the laws of the State of New York. ZEI is engaged in the business of music publishing.

WHEREAS  a portion of the Composition (the "Sample") is contained in the Zomba Composition initially performed by the recording artist professionally known as Boogie Down Productions (the "Artist").

WHEREAS, ZEI and Edgewater intend by this Release to reach an amicable agreement that, without any admission of liability, provides for a cash payment to Edgewater, and releases all claims, known or unknown, that Edgewater may have in connection with the Zomba Composition.

NOW, THEREFORE, for good and valuable consideration, including the covenants contained herein, the parties hereby agree as follows.

1.      ZEI shall make a one-time payment in the amount of Three Thousand Dollars ($3,000.00), ZEI, delivered to Edgewater at the address above, a check drawn on good and sufficient funds payable to "Edgewater Music d/b/a Sunlight Records, Inc.," taxpayer identification number *36-4000949*, promptly following  ZEI's receipt of copies if this Release, fully executed by Edgewater.

2.      Edgewater (or their designees) shall be fully responsible for paying songwriter royalties or any other compensation which shall be due any other writer and/or composer of the Composition, or anyone deriving rights from them, and shall indemnify and hold harmless ZEI from any and all claims, demands, causes of action, damages and liabilities with respect thereto. It is understood that ZEI has no songwriter royalty obligations to Edgewater or anyone deriving rights from them.

3.      Edgewater acknowledges and agrees that it does not and will not have any right, title or interest in and to the Zomba Composition and that all statutory, legal, equitable and common law rights held in and to the Zomba Composition by ZEI are expressly reserved.

*Publishing*

0122



4.      ZEI agrees that if a third party seeks to secure a license from ZEI for the use of the Zomba Composition in another musical composition (the "Third Party Composition") as a so-called "sample" or interpolation, then, solely if the portion of the Zomba Composition that such third party intends to embody within the Third Party Composition contains the Sample, ZEI shall instruct and direct such third party to seek a license from Edgewater solely with respect to the Sample as it may be contained in the Third Party Composition. For the avoidance of doubt, nothing contained herein shall in any way limit ZEI's right and ability to license any use of the Zomba Composition.

5.      All parties hereto, and each of them, covenant and agree that except as provided in this paragraph 5 or as reasonably necessary to effectuate the purposes of this Release, none of them nor their attorneys shall disclose any of the terms of this Release to any person not a party to this Release, except pursuant to an order of a court of competent jurisdiction or in response to a subpoena, after giving prior written notice to the other parties. Notwithstanding the foregoing, nothing in this paragraph or in this Release shall prevent any party hereto, or their attorneys, from disclosing the fact of the Release and its terms, as may be reasonably necessary in connection with any audit of any party hereto.

6.      Edgewater, on behalf of itself and its respective heirs, executors, administrators, parents, subsidiaries, affiliates, predecessors, successors, assigns, directors, officers, employees, agents, insurers and attorneys, and each of them (collectively the "Edgewater Releasors"), hereby release and forever discharge ZEI and its heirs, executors, administrators, parents, subsidiaries, affiliates, predecessors, successors, assigns, directors, officers, employees, agents, insurers and attorneys, and each of them, of and from any and all claims, demands, actions, causes of action, obligations, damages and liabilities, of any kind or nature whatsoever arising out of or related to the Zomba Composition, whether or not now known, suspected or claimed, which the Edgewater Releasors have or may have against ZEI.

7.      The parties hereto, and each of them, agree that this Release represents a compromise of disputed claims and shall not be construed or asserted for any purpose as an admission by any party of liability or responsibility.

8.      Edgewater represents and warrants that it is the sole and lawful owner of all right, title and interest in and to every claim and each of the other matters which they purport to release herein, and none of Edgewater has heretofore assigned or transferred or purported to assign or transfer to any person or entity not a party to this Release any such right, title or interest.

9.      Without limiting the generality of the foregoing paragraph 7, Edgewater represents and warrants that John Cameron and John Zachary are the sole authors and composers of the Composition and that Edgewater is the sole owner of the copyright in the Composition and that Edgewater has the authority to make the representations, warranties and covenants and to give the releases provided for in this Release.

10.      This Release embodies the entire understanding and agreement between the parties hereto, with respect to the subject matter herein, superseding any and all prior or contemporaneous representations and agreements, whether written or oral. Any modification to this Release must be in a writing signed by each of the parties hereto.

11.      Each party hereto agree to bear their own respective attorneys' fees, costs and expenses incurred in connection with the this Release.

0123



12.    Each party hereto (for these purposes "Indemnitor") shall indemnify, defend and hold the other party ("Indemnitee") harmless against and in respect of any claims, losses, damages or expenses, including, without limitation, reasonable attorneys' fees and litigation costs (together the "Damages"), that Indemnitee may incur, which arise from or relate to any breach of, or failure by Indemnitor to perform, any of Indemnitor's representations, warranties, or promises in this Release or in any exhibit or other instrument furnished or to be furnished by Indemnitor under or in connection with this Release. Indemnitee shall notify Indemnitor of any claim presented to Indemnitee by a third party. Indemnitor shall defend any third party claim, at its sole expense, with counsel approved by the Indemnitee, except that, at Indemnitee's option, Indemnitee may defend the claim (at Indemnitor's sole expense) and shall consult with Indemnitor about choice of counsel and the conduct of the proceeding. No such claim asserted by a third party may be settled by Indemnitee without Indemnitor's prior written consent (such consent not to be unreasonably withheld or delayed), so long as Indemnitor is actively defending such claim in a manner consistent with industry norms, unless Indemnitee shall agree not to seek indemnity from Indemnitor for any settlement payment made by Indemnitee to the claimant and further subject to the following. If Indemnitor does not approve a settlement proposed by Indemnitee, Indemnitee may nonetheless settle the matter unless, within ten (10) business days after notice to the Indemnitor, Indemnitor furnishes to Indemnitee a surety bond or letter of credit from a national surety company or bank, in form and content satisfactory to the Indemnitee, insuring Indemnitee against the amount of the claim in addition to reasonable attorneys' fees and litigation costs expended in connection with the claim and a reasonable estimate of such fees and costs required to continue the defense. Without limitation of the foregoing, Edgewater as Indemnitor shall indemnify ZEI as Indemnitee for any Damages which arise from or relate to any third party who asserts rights in the Composition.

13.    This Release shall be binding upon and shall inure to the benefit of the successors and assigns of all the parties hereto, and each of them.

14.    This Release shall be deemed to have been drafted with the equal participation of all parties hereto, and each of them, and no provision shall be interpreted against any party on the basis that the party is deemed to be the sole or primary drafter of the provision.

15.    Each person executing this Release on behalf of a corporation represents and warrants that he or she is duly authorized to execute this Release on behalf of the corporation and that he or she has authority by his or her signature to cause the terms of this Release to be binding on the corporation.

16.    This Release may be executed in counterparts.

17.    All notices under this agreement will be sent to the addresses first mentioned above or such other address as each party respectively may designate by notice to the other. All notices sent under this agreement will be in writing and will be delivered by personal delivery or certified mail (return receipt requested). All notices sent to ZEI will be sent to the attention of its Senior Vice President, Business Affairs with a copy to Grubman Indursky & Schindler, 152 West 57th Street, New York, NY 10019, to the attention of Arthur Indursky, Esq.

18.    This Release shall be construed under and interpreted solely and exclusively in accordance with the laws of the State of New York. Any litigation arising out of or related to this Release shall be brought solely and exclusively in the United States District Court for the Southern District of New York if subject matter jurisdiction exists there, or if not, in the Supreme Court for the State of New York, County of New York, and all parties hereto, and each of them, hereby consent to personal jurisdiction and venue in those courts and waive any objections to personal jurisdiction and/or venue that they may have. The parties hereto expressly waive their right to trial by jury in connection with any claim, demand or action arising out of this Release.

0124



**Zomba Enterprises Inc.**

By: _Rachelle Greenblatt_
**Rachelle Greenblatt**

Its:    Senior Vice President, Music Publishing

**Edgewater Music**
d/b/a Sunlight Records, Inc.

By: _Peter Wright_
Peter Wright

Its:    President

0125

## SETTLEMENT & RELEASE AGREEMENT

The following is the settlement and release agreement (the "Release Agreement") entered into as of September 2, 2003 by and between Twilight/Twinight Records, Edgewater Music, and Sunlight Records, Inc. (hereafter collectively the "Claiming Parties") c/o the Entertainment Law Office, P.C., 208 LaSalle Street Suite 1400, Chicago, IL 60604, Attn: Hillel Frankel, Esq., on the one hand, and Amaru Entertainment, Inc. ("Amaru") c/o LaPolt Law, P.C., 9000 Sunset Blvd. Suite 800, West Hollywood, CA 90069, Attn: Dina LaPolt, Esq., on the other hand, in connection with the alleged sampling (hereafter the "Subject Claim") of the master recording embodying the musical composition entitled, "Different Strokes" featuring the performances of Syl Johnson (hereafter collectively the "Subject Music") in two master recordings featuring the performances of Tupac Shakur respectively entitled, "Peep Game" and "Nothing But Love?" (hereafter the "Shakur Masters").

**NOW, THEREFORE**, in consideration of the mutual covenants contained herein, the Claiming Parties and Amaru agree as follows:

1.      **Settlement Payment to the Claiming Parties:**

        a.      As full and adequate consideration for the execution of this Release Agreement, Amaru hereby agrees to pay the Claiming Parties a one-time total flat fee of ten thousand dollars ($10,000) (hereafter the "Settlement Flat Fee") which shall be a buyout and perpetual royalty free license with respect to the Subject Music as allegedly embodied on the Shakur Masters.

        b.      It is acknowledged by the Claiming Parties that this Release Agreement and payment of the Settlement Flat Fee effects the full and complete settlement of the Subject Claim and of any related claims, present and possible, in connection therewith whether against Amaru or any successor(s), affiliated person(s) and affiliated entity(ies), designee(s), or licensee(s) including, but not limited to, Interscope Records and the Universal Music Group (Amaru and all of said parties are hereafter collectively referred to as the "Amaru Parties"). Nothing contained herein shall be construed as an admission by Amaru of liability of any kind to the Claiming Parties in connection with the Subject Music or the Shakur Masters; all such liability is expressly denied. The Claiming Parties further acknowledge and agree that under no circumstances does this Release Agreement entitle or privilege any of the Claiming Parties to any ownership interest, in whole or in part, in or to the Shakur Masters or the musical compositions contained thereon ("Shakur Songs") (as existing and otherwise), to any income right or participation (including, but not limited to, any mechanical royalties or record royalties) in connection therewith respecting any exploitation thereof past, present, or future, and/or to any right to credit or other acknowledgement in connection with any exploitation past, present, or future of the Shakur Masters and Shakur Songs (as existing and otherwise).

2.      **Amaru's Continued Unfettered Exploitation of the Shakur Masters and Shakur Songs:**

        a.      For purposes of clarity, it is acknowledged and agreed that the Amaru Parties and any of their licensees and designees have and shall continue to have the unfettered perpetual right to exploit, manufacture, sell, reproduce, adapt, distribute, transmit, broadcast, cable cast and/or otherwise exploit the Shakur Masters and the Shakur Songs (as existing and otherwise)

throughout the universe in any manner and media, in any configuration, in any and all languages, and by any method now known or hereafter discovered or conceived as the Amaru Parties, or and any of their licensees and designees may determine in their respective sole discretion, and Amaru may permit any other person, firm, or corporation to do any or all of the foregoing or refrain from doing any and all of the foregoing. The Claiming Parties irrevocably and unconditionally waive any and all droit moral and moral rights of authors (and similar or analogous rights throughout the universe) that any of the Claiming Parties may have in the Subject Music as allegedly embodied in the Shakur Masters and the Shakur Songs, and the Claiming Parties agree to execute and deliver to the Amaru Parties any further documents deemed necessary to effectuate the terms of this Agreement.

      b.    In furtherance of the foregoing, the Claiming Parties hereby represent and warrant that the Claiming Parties are fully authorized to enter into this Release Agreement and that the alleged inclusion of the Subject Music in the Shakur Masters and the Shakur Songs and the exploitation thereof by the Amaru Parties or otherwise will not infringe upon or violate the rights of any person or entity; the Claiming Parties will indemnify and hold harmless the Amaru Parties and any licensee or designees from and against any and all claims, damages, liabilities, costs, and expenses (including legal costs and reasonable attorneys' fees) arising out of or related to any breach or alleged breach of the representation and warranty made by the Claiming Parties in this paragraph 2(b) including, without limitation, any claim by or on behalf of Syl Johnson relating to the subject matter of this Release Agreement.

**3.**    **Release by the Claiming Parties and Related Parties:**  Each of the Claiming Parties, on their own behalf and on behalf of any of their respective predecessors, successors, assigns, owners, principals, shareholders, officers, directors, attorneys, partners, employees, agents, and parent, subsidiary and affiliated corporations (hereafter collectively the "Claiming and Related Parties"), do hereby relieve, release and forever discharge the Amaru Parties, and each of its respective predecessors, successors, assigns, owners, principals, shareholders, officers, directors, attorneys, partners, employees, agents, and parent, subsidiary and affiliated corporations of and from any and all claims, rights, debts, liabilities, demands, obligations, promises, acts, agreements, costs, expenses, accountings, audit rights, damages, actions, causes of action, claims, judgments or awards of whatever kind or nature, whether in law or equity, whether known or unknown, that the Claiming and Related Parties may have or hereafter may have against the Amaru Parties or any of them for or by reason of any occurrence, matter or thing, before, through, and including the date hereof based on, arising out of, or in any way connected with the Claim and the Agreement.

**4.**    **Release by the Amaru Parties:**  The Amaru Parties do hereby relieve, release and forever discharge the Claiming Parties and Related Parties, of and from any and all claims, rights, debts, liabilities, demands, obligations, promises, acts, agreements, costs, expenses, accountings, audit rights, damages, actions, causes of action, claims, judgments or awards of whatever kind or nature, whether in law or equity, whether known or unknown, that the Amaru Parties may have or hereafter may have against the Claiming and Related Parties or any of them for or by reason of any occurrence, matter or thing, before, through, and including the date hereof based on, arising directly or indirectly out of, or in any way connected with the Claim and the Agreement.

0139

**5.     Waiver:**  Each of the parties hereto acknowledges that it is aware that the parties or their attorneys may hereafter discover facts different from or in addition to the facts that they now know or believe to be true with respect to the subject matter of this Agreement, but that it is their intention hereby to, and they hereby do, fully, finally, absolutely and forever settle any and all claims, disputes and differences that now do exist, may exist or heretofore have existed between them with regard to the subject matter of this Agreement, and that in furtherance of such intention, the general releases herein given by said parties and entities shall be, and remain in effect, as full and complete general releases notwithstanding the discovery of any such different or additional facts.

EACH OF THE PARTIES ACKNOWLEDGES THAT IT IS FAMILIAR WITH SECTION 1542 OF THE CIVIL CODE OF THE STATE OF CALIFORNIA, WHICH PROVIDES AS FOLLOWS:

"A GENERAL RELEASE DOES NOT EXTEND
TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST
IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE,
WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT
WITH THE DEBTOR."

THE PARTIES HERETO DO HEREBY WAIVE AND RELINQUISH ALL RIGHTS AND BENEFITS THEY HAVE, OR MAY HAVE, UNDER SECTION 1542 OF THE CIVIL CODE OF THE STATE OF CALIFORNIA, AND ANY SIMILAR FEDERAL OR STATE STATUTE.

**6.     Indemnification:**

The Claiming and Related Parties hereby agree to and do hereby indemnify, save, and hold the Amaru Parties harmless from any and all damages, liabilities, costs, losses and expenses (including legal costs and attorneys' fees) arising out of or connected with any claim, demand or action by a third party which is inconsistent with any of the warranties, representations or covenants made by the Claiming Parties in this Agreement.

**7.     Miscellaneous:**

a.     This Agreement shall be governed by the laws of the State of California applicable to contracts performed entirely therein.

b.     This Agreement sets forth the entire agreement and understanding between the parties with respect to the subject matter hereof and supersedes and replaces all prior negotiations or agreements, written or oral.  Each party hereto acknowledges that no other party, agent, representative, or attorney of any other party, has made any promise, representation or warranty whatsoever, express or implied, not contained herein to induce them to execute this Agreement, and each party acknowledges that they have not executed this Agreement in reliance upon such promise, representation or warranty not contained herein.  No modification, amendment, waiver, termination or discharge of this Agreement shall be binding on either party hereto unless confirmed by a written instrument signed by authorized representatives of both parties.

      c.     In the event of any disagreement or dispute between the parties hereto arising out of o r r elating t o t he s ubject o f t his A greement, such d ispute s hall b e s ubmitted t o a rbitration before the American Arbitration Association in Los Angeles pursuant to the rules promulgated by said Association and California Code of Civil Procedure, and the Civil Code relating to taking depositions, obtaining discovery (including, but not limited to, C.C.P. Section 1283.05), and enforcing judgments, shall be applicable thereto. This arbitration provision shall remain in full force and effect notwithstanding the nature of any claim or defense hereunder and the prevailing party shall be awarded reasonable attorney fees in connection therewith.

AGREED TO & ACCEPTED as of the date first stated above:

Twilight/Twinight Records:

By:_____

Its:_____

Edgewater Music:

By:_____

Its:_____

Sunlight Records, Inc.:

By:_____

Its:_____

AGREED TO & ACCEPTED as of the date first stated above:

Amaru Entertainment, Inc.

By:_____

Its:_____

THIS MUTUAL RELEASE OF CLAIMS ("Release") is entered into as of October 19, 2001 by and between Zomba Enterprises Inc. ("ZEI"), whose address is 138 West 25th Street, New York, New York 10001; and Edgewater Music d/b/a Sunlight Records, Inc. ("Edgewater"), whose address is c/o The Entertainment Law Office, Law Office Of Hillel Frankel, P.C., 208 South LaSalle, Suite 1400, Chicago, Illinois 60604.

WHEREAS, John Cameron and John Zachary are writers and composers, having written the musical composition entitled "Different Strokes", registered in the United States copyright office as *EU-820l* to Edgewater Music d/b/a Sunlight Records, Inc. (together with all derivatives and adaptations thereof, the "Composition"); and

WHEREAS Lawrence Parker and Scott Sterling are writers and composers, having written the musical composition entitled "Criminal Minded," registered in the United States copyright office as PA 764-504 to ZEI (together with all derivatives and adaptations thereof, the "Zomba Composition"); and

WHEREAS, Edgewater is engaged in the business of music publication and administration of, among other things, the Composition; and

WHEREAS, ZEI is a corporation organized and existing under the laws of the State of New York. ZEI is engaged in the business of music publishing.

WHEREAS a portion of the Composition (the "Sample") is contained in the Zomba Composition initially performed by the recording artist professionally known as Boogie Down Productions (the "Artist").

WHEREAS, ZEI and Edgewater intend by this Release to reach an amicable agreement that, without any admission of liability, provides for a cash payment to Edgewater, and releases all claims, known or unknown, that Edgewater may have in connection with the Zomba Composition.

NOW, THEREFORE, for good and valuable consideration, including the covenants contained herein, the parties hereby agree as follows.

1.     ZEI shall make a one-time payment in the amount of Three Thousand Dollars ($3,000.00), ZEI, delivered to Edgewater at the address above, a check drawn on good and sufficient funds payable to "Edgewater Music d/b/a Sunlight Records, Inc.," taxpayer identification number *36-4000949* , promptly following ZEI's receipt of copies if this Release, fully executed by Edgewater.

2.     Edgewater (or their designees) shall be fully responsible for paying songwriter royalties or any other compensation which shall be due any other writer and/or composer of the Composition, or anyone deriving rights from them, and shall indemnify and hold harmless ZEI from any and all claims, demands, causes of action, damages and liabilities with respect thereto. It is understood that ZEI has no songwriter royalty obligations to Edgewater or anyone deriving rights from them.

3.     Edgewater acknowledges and agrees that it does not and will not have any right, title or interest in and to the Zomba Composition and that all statutory, legal, equitable and common law rights held in and to the Zomba Composition by ZEI are expressly reserved.

0122



4.      ZEI agrees that if a third party seeks to secure a license from ZEI for the use of the Zomba Composition in another musical composition (the "Third Party Composition") as a so-called "sample" or interpolation, then, solely if the portion of the Zomba Composition that such third party intends to embody within the Third Party Composition contains the Sample, ZEI shall instruct and direct such third party to seek a license from Edgewater solely with respect to the Sample as it may be contained in the Third Party Composition. For the avoidance of doubt, nothing contained herein shall in any way limit ZEI's right and ability to license any use of the Zomba Composition.

5.      All parties hereto, and each of them, covenant and agree that except as provided in this paragraph 5 or as reasonably necessary to effectuate the purposes of this Release, none of them nor their attorneys shall disclose any of the terms of this Release to any person not a party to this Release, except pursuant to an order of a court of competent jurisdiction or in response to a subpoena, after giving prior written notice to the other parties. Notwithstanding the foregoing, nothing in this paragraph or in this Release shall prevent any party hereto, or their attorneys, from disclosing the fact of the Release and its terms, as may be reasonably necessary in connection with any audit of any party hereto.

6.      Edgewater, on behalf of itself and its respective heirs, executors, administrators, parents, subsidiaries, affiliates, predecessors, successors, assigns, directors, officers, employees, agents, insurers and attorneys, and each of them (collectively the "Edgewater Releasors"), hereby release and forever discharge ZEI and its heirs, executors, administrators, parents, subsidiaries, affiliates, predecessors, successors, assigns, directors, officers, employees, agents, insurers and attorneys, and each of them, of and from any and all claims, demands, actions, causes of action, obligations, damages and liabilities, of any kind or nature whatsoever arising out of or related to the Zomba Composition, whether or not now known, suspected or claimed, which the Edgewater Releasors have or may have against ZEI.

7.      The parties hereto, and each of them, agree that this Release represents a compromise of disputed claims and shall not be construed or asserted for any purpose as an admission by any party of liability or responsibility.

8.      Edgewater represents and warrants that it is the sole and lawful owner of all right, title and interest in and to every claim and each of the other matters which they purport to release herein, and none of Edgewater has heretofore assigned or transferred or purported to assign or transfer to any person or entity not a party to this Release any such right, title or interest.

9.      Without limiting the generality of the foregoing paragraph 7, Edgewater represents and warrants that John Cameron and John Zachary are the sole authors and composers of the Composition and that Edgewater is the sole owner of the copyright in the Composition and that Edgewater has the authority to make the representations, warranties and covenants and to give the releases provided for in this Release.

10.      This Release embodies the entire understanding and agreement between the parties hereto, with respect to the subject matter herein, superseding any and all prior or contemporaneous representations and agreements, whether written or oral. Any modification to this Release must be in a writing signed by each of the parties hereto.

11.      Each party hereto agree to bear their own respective attorneys' fees, costs and expenses incurred in connection with the this Release.

0123



12.    Each party hereto (for these purposes "Indemnitor") shall indemnify, defend and hold the other party ("Indemnitee") harmless against and in respect of any claims, losses, damages or expenses, including, without limitation, reasonable attorneys' fees and litigation costs (together the "Damages"), that Indemnitee may incur, which arise from or relate to any breach of, or failure by Indemnitor to perform, any of Indemnitor's representations, warranties, or promises in this Release or in any exhibit or other instrument furnished or to be furnished by Indemnitor under or in connection with this Release. Indemnitee shall notify Indemnitor of any claim presented to Indemnitee by a third party.  Indemnitor shall defend any third party claim, at its sole expense, with counsel approved by the Indemnitee, except that, at Indemnitee's option, Indemnitee may defend the claim (at Indemnitor's sole expense) and shall consult with Indemnitor about choice of counsel and the conduct of the proceeding. No such claim asserted by a third party may be settled by Indemnitee without Indemnitor's prior written consent (such consent not to be unreasonably withheld or delayed), so long as Indemnitor is actively defending such claim in a manner consistent with industry norms, unless Indemnitee shall agree not to seek indemnity from Indemnitor for any settlement payment made by Indemnitee to the claimant and further subject to the following.  If Indemnitor does not approve a settlement proposed by Indemnitee, Indemnitee may nonetheless settle the matter unless, within ten (10) business days after notice to the Indemnitor, Indemnitor furnishes to Indemnitee a surety bond or letter of credit from a national surety company or bank, in form and content satisfactory to the Indemnitee, insuring Indemnitee against the amount of the claim in addition to reasonable attorneys' fees and litigation costs expended in connection with the claim and a reasonable estimate of such fees and costs required to continue the defense.  Without limitation of the foregoing, Edgewater as Indemnitor shall indemnify ZEI as Indemnitee for any Damages which arise from or relate to any third party who asserts rights in the Composition.

13.    This Release shall be binding upon and shall inure to the benefit of the successors and assigns of all the parties hereto, and each of them.

14.    This Release shall be deemed to have been drafted with the equal participation of all parties hereto, and each of them, and no provision shall be interpreted against any party on the basis that the party is deemed to be the sole or primary drafter of the provision.

15.    Each person executing this Release on behalf of a corporation represents and warrants that he or she is duly authorized to execute this Release on behalf of the corporation and that he or she has authority by his or her signature to cause the terms of this Release to be binding on the corporation.

16.    This Release may be executed in counterparts.

17.    All notices under this agreement will be sent to the addresses first mentioned above or such other address as each party respectively may designate by notice to the other.  All notices sent under this agreement will be in writing and will be delivered by personal delivery or certified mail (return receipt requested).  All notices sent to ZEI will be sent to the attention of its Senior Vice President, Business Affairs with a copy to Grubman Indursky & Schindler, 152 West 57th Street, New York, NY 10019, to the attention of Arthur Indursky, Esq.

18.    This Release shall be construed under and interpreted solely and exclusively in accordance with the laws of the State of New York. Any litigation arising out of or related to this Release shall be brought solely and exclusively in the United States District Court for the Southern District of New York if subject matter jurisdiction exists there, or if not, in the Supreme Court for the State of New York, County of New York, and all parties hereto, and each of them, hereby consent to personal jurisdiction and venue in those courts and waive any objections to personal jurisdiction and/or venue that they may have. The parties hereto expressly waive their right to trial by jury in connection with any claim, demand or action arising out of this Release.

0124



**Zomba Enterprises Inc.**

By: _Rachelle Greenblatt_
      **Rachelle Greenblatt**

Its:    Senior Vice President, Music Publishing


**Edgewater Music**
d/b/a Sunlight Records, Inc.

By:    _Peter Wright_
        Peter Wright

Its:    President

0125



09-29-03    06:40    FROM-RUBIN & WEISSMAN                                    T-584   P.002/003   F-480

**SAMPLE CLEARANCE**

Daniel R. Rubin
Eric D. Weissman

162 W. 56th St.
Suite 306
New York, N.Y. 10019
Tel: (212) 707-8804   Fax: (212) 707-8952

**LIMITED**

Via Facsimile and Mail
September 29, 2003

Hillel Frankel, Esq.
Law Offices of Hillel Frankel, P.C.
208 South LaSalle Street
Suite 1400
Chicago, IL 60604

Re: Roc-A-Fella Records, LLC -w- Edgewater Music d/b/a Sunlight Records, Inc. - Use of "Different Strokes" as embodied in "Criminal Minded" on the master recording entitled "Criminal Background" performed by Peedi Crakk & Young Chris

Dear Hillel:

I am writing on behalf of Roc-A-Fella Records, LLC to confirm that Edgewater Music d/b/a Sunlight Records, Inc. (hereinafter "Edgewater") has agreed to license to Roc-A-Fella Records, LLC and its designees, in perpetuity, throughout the world, in all sound-only recordings and promotional videos, the use of the musical composition (the "Original Composition") and the master recording (the "Original Master") entitled "Different Strokes" written and performed by Syl Johnson, as it is embodied on the master recording entitled "Criminal Minded" performed by Boogie Down Productions (the "BDP Master"). A sample from the BDP Master is embodied on the master recording (the "Peedi Crakk & Young Chris Master") entitled "Criminal Background" performed by the recording artists p/k/a Peedi Crakk & Young Chris, to be released on the LP entitled "State Property Presents the Chain Gang Vol II". In consideration of the foregoing license, Roc-A-Fella Records, LLC shall arrange to pay to Edgewater a one-time only license fee in the amount of Three Thousand ($3000.00) Dollars. The aforementioned fee is for release only on the LP entitled "State Property Presents the Chain Gang Vol II".

Edgewater warrants and represents that it wholly owns and controls the Original Composition and the Original Master and has the right to grant the rights granted herein. Edgewater shall indemnity Roc-A-Fella Records, LLC and its designees against any claims arising from Edgewater's breach of the warranties and representations contained herein.

If the foregoing does not reflect your understanding of our agreement, please notify me immediately.

0176

09-28-03    06:40    FROM-RUBIN & WEISSMAN                T-584   P.003/003   F-480

Please sign and return both copies of this letter so that we have a written record of this agreement.

Very truly yours,

Eric D. Weissman

Agreed and accepted to:

By: _____
An Authorized Signatory of
Edgewater Music d/b/a
Sunlight Records, Inc.

By: _____
An Authorized Signatory of
Roc-A-Fella Records, LLC

LP title - State Property Presents the Chain Gang Vol. II
Selection # Explicit CD - 6024 9860623-0/B 0000971-02
Release Date – August 12, 2003

state2con.17

0177

39732

Group

Edgewater Music

CHECK NO:           1090483
CHECK DATE:         12/08/03
Stub  1 of  1

| Invoice | | Description | Gross | Discounts | Amount Paid |
| Number | Date | | | | |
|---|---|---|---|---|---|
| 117979 | 12/03/03 | CRIMINAL BACKGROUND | 3,000.00 | | 3,000.00 |
| | | TOTALS: | $3,000.00 | 0.00 | $3,000.00 |

OMER SERVICE INQUIRIES: (877) 804-2230

Detach Before Cashing

versal Music Group, Inc.

Bank of America
Commercial Disbursement Account
Northbrook, IL

CHECK NO.    01090483

DATE
12/08/03

AMOUNT
$******3,000.00

Three thousand and 00/100 Dollars

Edgewater Music
c/o Sunlight Records
Attn: Hillel Frankel, ESQ
208 S LaSalle, Ste 1400
Chicago IL 60604

# SETTLEMENT AGREEMENT AND RELEASE

THIS SETTLEMENT AGREEMENT AND RELEASE (this "Agreement") is made as of July 1, 2003, by and between Sunlight Records, Inc. d/b/a Twilight/Twinight Records and Sunlight Records, Inc. d/b/a Edgewater Music, (individually and collectively "Sunlight") an Illinois corporation (Federal ID#: 36-4000949), on the one hand, and Comptown Records, Inc. d/b/a Ruthless Records ("Comptown"), a California corporation, on the other hand, with reference to the following:

WHEREAS, the master recording entitled "Real Niggaz Don't Die" (the "Master") incorporates a portion of the master recording ("Sampled Master") embodying Syl Johnson's performance of the composition entitled "Different Strokes" (the "Composition");

NOW, THEREFORE, the parties hereto hereby agree as follows:

1.  Release.

    (a)     In consideration of the Comptown's agreement to make a payment to Sunlight in the amount of Four Thousand Dollars ($4,000) and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Sunlight hereby releases Comptown and each of its subsidiaries, parents, affiliates and related entities and each of their respective present and past directors, officers, shareholders, employees, attorneys and agents (hereinafter "Releasees") from any and all rights, claims, actions and suits of all kinds and descriptions whatsoever, whether known or unknown, that Sunlight may have, now or at any time hereafter, against Releasees arising out of, in connection with, or related to the Master, including, but not limited to, any claim for copyright infringement, any actual or potential claim that any Releasee violated any promise or agreement either express or implied with Sunlight, any actual or potential claim arising from any alleged violation by any Releasee of any federal, state or local statute, any actual or potential claim for economic damages, breach of the covenant of good faith and fair dealing, and/or any actual or potential claim for attorneys' fees, costs, disbursement and/or the like.

    (b)     Sunlight understands and acknowledges that: (i) this Agreement constitutes a voluntary waiver of any and all rights and claims against Releasees whether or not Sunlight is aware of them including, without limitation, rights or claims arising under the Copyright Act of 1976, 17 U.S.C. § 101, et seq.; (ii) Sunlight has waived rights or claims pursuant to this Agreement and in exchange for consideration, the value of which exceeds payment or remuneration to which it was already entitled; and (iii) Sunlight is hereby advised to consult with an attorney concerning this Agreement prior to executing it.

    (c)     Section 1542 of the Civil Code of the State of California provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Sunlight waives any rights it may have under Section 1542 of the California Civil Code. Sunlight acknowledges and recognizes that this Agreement releases all claims existing or arising prior to the Execution Date which Sunlight may have had or may have against Releasees whether such claims are known or unknown and suspected or unsuspected. All such claims are forever barred by this

0159

Agreement. Sunlight acknowledges that it understands the significance and consequences of such release and such specific waiver of Section 1542 of the California Civil Code.

(d)    The filing or bringing by Sunlight of any claim, demand, obligation or cause of action against any Releasee hereunder in connection with any matter released hereunder shall constitute a breach of this Agreement.

2.    License.  Sunlight hereby grants to Comptown the irrevocable, worldwide, non-exclusive right and license to reproduce, distribute, publicly perform, create derivative works from, publicly display and publicly perform via digital audio transmission the Sampled Master and the Composition, each as embodied in the Master, in perpetuity, solely to the extent the Sampled Master and the Composition are currently embodied in the Master, and to grant such rights to third parties.

3.    Representation and Warranty.  Sunlight represents and warrants that Sunlight owns and controls 100% of all rights (including all copyrights) in and to the Composition and the Sampled Master, has the right to enter into this agreement and to grant to Comptown each and every right granted to Comptown herein and that the use of the Composition and the Sampled Master contemplated hereunder will not violate the rights of any third party. Sunlight shall provide Comptown with copies of all applicable copyright registrations for the Composition and the Sampled Master supporting the foregoing claim of ownership concurrently with Sunlight's execution of this Agreement.  Sunlight shall indemnify and hold Comptown free and harmless from any and all claims, liabilities, costs, losses, damages, or expenses, including reasonable attorneys' fees, arising out of any breach or failure of any covenants and warranties made by Sunlight hereunder.

4.    Acknowledgements.  Sunlight acknowledges that neither this Agreement nor anything contained herein shall be admissible in any proceeding as evidence of or an admission by the Comptown or any other Releasee of any wrongdoing or violation of any law or regulation. Notwithstanding the foregoing, this Agreement may be introduced into a proceeding solely for the purpose of enforcing this Agreement.  Sunlight acknowledges and agrees that this Agreement is not to be construed as an admission by Comptown of any liability whatsoever, including, but not limited to, any liability for any violation by Comptown of any right of Sunlight or any other person arising under any law, statute, regulation, rule, order, contract or covenant, and that any and all such liability is expressly denied.

5.    Successors and Assigns; Third Party Beneficiaries.   This Agreement is binding upon and shall inure to the benefit of the parties hereto and their respective assignors, predecessors in interest, successors, assigns, heirs and personal representatives.

6.    Severability.  If any provision of this Agreement is determined by a court of competent jurisdiction to be invalid or unenforceable, in whole or in part, the remaining provisions, and any partially invalid or unenforceable provisions, to the extent valid and enforceable, shall nevertheless be binding and valid and enforceable.

7.    Entire Agreement.  This Agreement contains the entire agreement and understanding among the parties hereto with respect to the subject matter hereof, and supersedes any and all prior and contemporaneous oral and written agreements and understandings with respect to such subject matter.

8.    Governing Law; Venue.  This Agreement shall be construed in accordance with the internal laws of the State of California, without regard to the conflicts of laws principles thereof.  Any and all legal proceedings to enforce this Agreement shall be brought in the state or

0160

federal courts sitting in the County of Los Angeles, California, the parties hereto hereby waiving any claim or defense that such forum is not convenient or proper. Each party hereby agrees that any such court shall have in personam jurisdiction over it and consents to service of process in any manner authorized by California law.

9.  Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which, together, shall be deemed to constitute a single document. Facsimile signatures hereto shall be deemed original for all purposes.

SUNLIGHT AND COMPTOWN EACH REPRESENT AND WARRANT THAT THEY (A) HAVE CAREFULLY READ AND FULLY UNDERSTAND ALL OF THE PROVISIONS OF THIS AGREEMENT; (B) HAVE BEEN GIVEN A REASONABLE PERIOD OF TIME TO CONSIDER THIS AGREEMENT; (C) HAVE BEEN PROVIDED AMPLE OPPORTUNITY TO THOROUGHLY DISCUSS ALL ASPECTS OF THIS AGREEMENT WITH THEIR RESPECTIVE ATTORNEYS AND ADVISORS OF THEIR SELECTION; AND (D) HAVE SIGNED THIS AGREEMENT KNOWINGLY, FREELY AND VOLUNTARILY.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

COMPTOWN RECORDS, INC. D/B/A RUTHLESS RECORDS

By: _____
Name: _Tomica Wright_____
Title: _CEO_____

SUNLIGHT RECORDS, INC. D/B/A TWILIGHT/TWINIGHT RECORDS

By: _____
Name: _PETER WRIGHT_____
Title: _OWNER / Pres._____

SUNLIGHT RECORDS, INC. D/B/A EDGEWATER MUSIC

By _____
Name: _PETER WRIGHT_____
Title: _OWNER / Pres.-_____

# Exhibit D

| CLASS | REGISTRATION NO. |
|---|---|
| **E** | Eu    9873 |
| | DO NOT WRITE HERE |
| | EP        EU |

## ...tion for Registration of a Claim to Copyright

...composition the author of which is a citizen or domiciliary of the United ...America or which was first published in the United States of America

...Make sure that all applicable spaces have been ...before you submit the form.   The application must ...at line 9.   For published works the application ...be submitted until after the date of publication given ... and should state the facts which existed on that ...further information, see page 4.

...and 2 should be typewritten or printed with pen and ...3 and 4 should contain exactly the same information ...1 and 2, but may be carbon copies.

Mail all pages of the application to the Register of Copyrights, Library of Congress, Washington, D.C., 20540, together with:

(a) If unpublished, one complete copy of the work and the registration fee of $6.

(b) If published, two copies of the best edition of the work and the registration fee of $6.

Make your remittance payable to the Register of Copyrights.

**...Claimant(s) and Address(es):** Give the name(s) and address(es) of the copyright owner(s).  In the case of works the name(s) should ordinarily be the same as in the notice of copyright on the copies deposited.

John Andrew Cameron
529 E. 89th Place   Chicago ILL 60619

John Zachary
6525 S. Lowe St  Chicago ILL

Different Strokes
(Give the title of the musical composition as it appears on the copies)

...: Citizenship and domicile information must be ...Where a work is made for hire, the employer is the ...Organizations formed under U.S. Federal or State ...U.S. citizens.

Authors include composers of music, authors of words, arrangers, compilers, etc.  If the copyright claim is based on new matter (see line 5) give information about the author of the new matter.

John Andrew Cameron
(Give legal name followed by pseudonym if latter appears on the copies)
Citizenship: U.S.A. X    Other _____ (Check if U.S. citizen)    (Name of country)

...in U.S.A. Yes X No ____ Address 529 E 89th Pl. Chicago   Author of Words + Music
(State which: words, music, arrangement, etc.)

John Zachary
(Give legal name followed by pseudonym if latter appears on the copies)
Citizenship: U.S.A. X    Other _____ (Check if U.S. citizen)    (Name of country)

...ed in U.S.A. Yes X No ____ Address 6525 S. Lowe Chgo.   Author of Words
(State which: words, music, arrangement, etc.)

(Give legal name followed by pseudonym if latter appears on the copies)
Citizenship: U.S.A. ____    Other _____ (Check if U.S. citizen)    (Name of country)

...ed in U.S.A. Yes ____ No ____ Address _____   Author of _____
(State which: words, music, arrangement, etc.)

**➤➤ NOTE:** Leave all spaces of line 4 blank unless your work has been PUBLISHED. ◄◄

**...] Date of Publication:** Give the date when copies of ...particular version of the work were first placed on sale, ...or publicly distributed.  The date when copies were made or printed, or the date when the work was performed should not be confused with the date of publication.  (NOTE: The full date (month, day, and year) must be given.)

_____ (Month)    _____ (Day)    _____ (Year)

**...] Place of Publication:** Give the name of the country in which this particular version of the work was first published.

**➤➤ NOTE:** Leave all spaces of line 5 blank unless the instructions below apply to your work. ◄◄

**...Previous Registration or Publication:** If a claim to copy- ...in any substantial part of this work was previously ...ered in the U.S. Copyright Office in unpublished form, or if any substantial part of the work was previously published anywhere, give requested information.

...work previously registered? Yes _____ No _____ Date of registration _____ Registration number _____

...Work previously published? Yes _____ No _____ Date of publication _____ Registration number _____

...re any substantial NEW MATTER in this version? Yes _____ No _____ If your answer is "Yes," give a brief general

# Exhibit D

7. Name and address of person or organization to whom correspondence or refund, if any, should be sent

Name  John A Cameron     Address  524 E 89th Pl

8. Send certificate to:

(Type or print name and address)

Name  John Andrew Cameron

Address  524 E 89th Place
(Number and street)

Chicago      ILL      60619
(City)          (State)       (ZIP code)

9. Certification:

(Application not acceptable unless signed)

I CERTIFY that the statements made by me in this application are correct to the best of my knowledge.

John Andrew Cameron
(Signature of copyright claimant or duly authorized agent)

## Application Forms

Copies of the following forms will be supplied by the Copyright Office without charge upon request.

Class A  Form A—Published book manufactured in the United States of America.

Class A or B  Form A–B Foreign—Book or periodical manufactured outside the United States of America (except works subject to the ad interim provisions of the copyright law).
Form A–B Ad Interim—Book or periodical in the English language manufactured and first published outside the United States of America.

Class B  Form B—Periodical manufactured in the United States of America.
Form BB—Contribution to a periodical manufactured in the United States of America.

Class C  Form C—Lecture or similar production prepared for oral delivery.

Class D  Form D—Dramatic or dramatico-musical composition.

Class E  Form E—Musical composition the author of which is a citizen or domiciliary of the United States of America which was first published in the United States of America.
Form E Foreign—Musical composition the author of which is not a citizen or domiciliary of the United States of America and which was not first published in the United States of America.

Class F  Form F—Map.

Class G  Form G—Work of art or a model or design for a work of art.

Class H  Form H—Reproduction of a work of art.

Class I  Form I—Drawing or plastic work of a scientific or technical character.

Class J  Form J—Photograph.

Class K  Form K—Print or pictorial illustration.
Form KK—Print or label used for an article of merchandise.

Class L or M  Form L–M—Motion picture.

Form R—Renewal copyright.
Form U—Notice of use of copyrighted music on mechanical instruments.

### FOR COPYRIGHT OFFICE USE ONLY

Application received

AUG 14 1967

One copy received

AUG 14 1967

Two copies received

Fee received

12403 AUG14'67

Renewal

Certificate of Registration *Exhibit D2*

Form SR

This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

For a Sound Recording
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

**SR 360–720**

EFFECTIVE DATE OF REGISTRATION

2  26  96
Month  Day  Year

SEE CONTINUATION SHEET

---

**1**

TITLE OF THIS WORK ▼ (SOCK IT TO ME)DifferentStrokes bet/Dresses too short/
Is it Becouse i;m black/One way ticket/Different strokes/Bout to
make me leave home/I hate I walk away/Love chimes/Could I be fal-

PREVIOUS, ALTERNATIVE, OR CONTENTS TITLES (CIRCLE ONE) ▼
Steppin out(SOCK IT TO ME) SYL JOHNSON GREATEST HITS.

---

**2**

**a**

NAME OF AUTHOR ▼  SYL JOHNSON

DATES OF BIRTH AND DEATH
Year Born ▼  36   Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes  ☑ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR Citizen of  U.S.A.
Domiciled in  U.S.A.

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☑ No
Pseudonymous? ☐ Yes ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed ▼
SOUND RECORDING

**NOTE**

Under the law the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was made for hire, check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**b**

NAME OF AUTHOR ▼  SYL JOHNSON

DATES OF BIRTH AND DEATH
Year Born ▼  36   Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes  ☑ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR Citizen of  U.S.A
Domiciled in  U.S.A.

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☑ No
Pseudonymous? ☐ Yes ☑ No

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed ▼
SYL JOHNSON

**c**

NAME OF AUTHOR ▼  SYL JOHNSON

DATES OF BIRTH AND DEATH
Year Born ▼  36   Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes  ☑ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR Citizen of  U.S.A.
Domiciled in  U.S.A.

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☑ No
Pseudonymous? ☐ Yes ☑ No

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed ▼
SOUND RECORDING

---

**3**

**a** YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED
~~1996~~ 1994* Year
This information must be given in all cases.

**b** DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this information ONLY if this work has been published.
Month May  Day 01  Year 95  Nation

---

**4**

**a** COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼

See instructions before completing this space.

**b** TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright ▼

APPLICATION RECEIVED
MAR 1 5 2004

ONE DEPOSIT RECEIVED
2/26/96

TWO DEPOSITS RECEIVED

FUNDS RECEIVED

DO NOT WRITE HERE
OFFICE USE ONLY

---

MORE ON BACK ▶  Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
See detailed instructions.  Sign the form at line 8.

DO NOT WRITE HERE

Exhibit D2

CHECKED BY

CORRESPONDENCE
☐ Yes

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes  ☐ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼
a. ☐ This work was previously registered in unpublished form and now has been published for the first time
b. ☐ This is the first application submitted by this author as copyright claimant
c. ☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give Previous Registration Number ▼          Year of Registration ▼

**5**

**DERIVATIVE WORK OR COMPILATION**
**Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates ▼

a

Material Added to This Work  Give a brief, general statement of the material that has been added to this work and in which copyright is claimed ▼

b

**6**

See instructions
before completing
this space.

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼          Account Number ▼

a

**7**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent  Name/Address/Apt/City/State/ZIP ▼

b      Syl-Zel Music Company

Area code an.                              Fax number
Email    syljohnson@aol.com

**CERTIFICATION*** I, the undersigned, hereby certify that I am the
Check only one ▼
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☐ authorized agent of

**8**

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge
Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Date  JANUARY 2, 1996

Handwritten signature (x) ▼
X

**9**

Certificate
will be
mailed in
window
envelope
to this
address

Name ▼
SYL JOHNSON

Number/Street/Apt ▼
Avenue

City/State/ZIP ▼
Chicago Illinois

Complete all necessary spaces
Sign your application in space 8

1 Application form
2 Nonrefundable filing fee in check or money
  order payable to Register of Copyrights
3 Deposit material

Library of Congress
Copyright Office
101 Independence Avenue S.E.
Washington, D.C. 20559-6000

17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Rev  January 2002—30,000  Web Rev January 2004  ⊕ Printed on recycled paper          U.S. Government Printing Office  2004-304-447/60 037