# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

SYL JOHNSON, a/k/a Sylvester Thompson,           )
d/b/a Syl-Zel Music,                             )
                                                 )
                    Plaintiff,                   )
                                                 )
v.                                               )
                                                 )        No. 07 C 7288
MICHAEL JACKSON d/b/a MIJAC                      )
MUSIC, WILL SMITH, AFENI SHAKUR,                 )        Honorable Marvin E. Aspen
CO-ADMINISTRATOR OF THE ESTATE                   )
OF TUPAC SHAKUR, LAWRENCE                        )
PARKER p/k/a KRS-ONE, PEDRO ZAYAS                )
p/k/a PEEDI CRAKK, CHRISTOPHER                   )
RIES P/K/A YOUNG CHRIS, SONY BMG                 )
MUSIC ENTERTAINMENT, INC., UMG                   )
RECORDINGS, INC. d/b/a UNIVERSAL                 )
MUSIC GROUP, CAPITOL RECORDS,                    )
INC., ZOMBA ENTERPRISES, INC.,                   )
AMARU ENTERTAINMENT, INC.,                       )
N.W.A., a general partnership, COMPTON           )
RECORDS, INC. d/b/a RUTHLESS                     )
RECORDS, INC., ANDRE YOUNG,                      )
ANTOINE CARRABY,                                 )
                                                 )
                    Defendants.                  )
                                                 )

## ANSWER
## OF MICHAEL JACKSON, SONY BMG MUSIC ENTERPRISES,
## UMG RECORDINGS, INC. AND CAPITOL RECORDS LLC
## <u>TO FIRST AMENDED COMPLAINT</u>

Defendants Michael Jackson ("Jackson"), Sony BMG Music Entertainment ("Sony

BMG"), UMG Recordings, Inc., and Capitol Records, LLC (formerly known as Capitol Records,

Inc.) ("Capitol"), through their attorneys, hereby answer the First Amended Complaint as

follows:

## <u>JURISDICTION AND VENUE</u>

1.      This action involves misappropriated or pirated samples from Johnson's musical
sound recording, Different Strokes, and claims Illinois common law misappropriation and other

state law claims, or, alternatively, copyright infringement pursuant to the copyright laws of the United States, 17 U.S.C. § 101, *et seq.*

**ANSWER:**     Defendants Jackson, Sony BMG, UMG, and Capitol admit that this action

purports to involve the claims described in paragraph 1. Jackson, Sony BMG, UMG, and

Capitol deny that those claims have any merit.

2.     This Court has jurisdiction over this matter under 28 U.S.C. § 1367 for the state law claims and 28 U.S.C. § 1338 (a) for the alternative federal copyright claims.

**ANSWER:**     Defendants Jackson, Sony BMG, UMG, and Capitol admit that this Court

has jurisdiction over the federal copyright claims in this matter pursuant to 28 U.S.C. § 1338(a).

Jackson, Sony BMG, UMG, and Capitol deny that the plaintiff's copyright claims have merit and

therefore state that this Court should decline to exercise jurisdiction over the state law claims

pursuant to 28 U.S.C. § 1367.

3.     Venue is predicated on 28 U.S.C. § 1391 and 1400(a) and venue is proper in this district in that Johnson recorded "Different Strokes" in this district and the infringing works which pirated portions of Johnson's work as described herein were and currently are distributed, marketed, offered for sale and sold in this district. On information and belief, personal jurisdiction is proper because each Defendant, without consent or permission of the copyright owner, disseminated copyrighted works owned or controlled by Johnson. On information and belief, illegal dissemination occurred in every jurisdiction in the United States, including the Northern District of Illinois.

**ANSWER:**     Defendants Jackson, Sony BMG, UMG, and Capitol admit that venue and

personal jurisdiction are proper in this District.

## PARTIES

4.     Johnson is a 72-year-old adult citizen of the State of Illinois. He is engaged in the business of musical performance under the assumed business name of Syl-Zel Music. Johnson also operates two Illinois corporations, Twinight Records, Inc. and Edgewater Music, Inc. and is engaged in the business of musical composition and publishing.

**ANSWER:**     Defendants Jackson, Sony BMG, UMG, and Capitol lack knowledge or

information sufficient to form a belief as to the truth of the allegations in paragraph 4.

**Michael Jackson**

5.     Upon information and belief, defendant Michael Jackson ("Jackson") is an adult citizen of the State of California.  He is engaged in the business of music composition, publishing and performance.  On information and belief Michael Jackson engages in publishing of music under the assumed name Mijac Music.  Mijac Music is an assumed name for Michael Jackson operating as a music publisher.  The infringing work at issue in this lawsuit is entitled "Blood On The Dance Floor, Refugee Camp Edit."

**ANSWER:**     Defendants Jackson and Sony BMG admit, and Defendants UMG and Capitol admit on information and belief, that Michael Jackson is an adult and that he is engaged in the business of music composition, publishing and performance.  Jackson and Sony BMG deny that "Blood on the Dance Floor" is an infringing work.  Jackson denies that he is a citizen of California and that Mijac Music is an assumed name for Michael Jackson operating as a music publisher.  Sony BMG, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 5.

**Will Smith**

6.     Upon information and belief, defendant Will Smith ("Smith") is an adult citizen of the State of California.  He is engaged in the business of music composition and performance. The infringing work by Smith at issue in this lawsuit is entitled "Who Stole The DJ?"

**ANSWER:**     Defendant Sony BMG admits the allegations of paragraph 6 except that it denies "Who Stole the DJ" is an infringing work.  Sony BMG admits, and Defendants Jackson, UMG, and Capitol admit on information and belief, that Will Smith is an adult and that he is engaged in the business of music composition and performance.  Defendants Jackson, UMG and Capitol lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 6.

**Tupac Shakur Estate**

7.     Afeni Shakur, one of the co-administrators of the Estate of Tupac Shakur is a citizen of the State of Georgia ("the Tupac Shakur Estate").  Co-administrator, Richard Fishbein, is a citizen of the State of New York.  The works involving the Tupac Shakur Estate are "Peep Game" and "Nothin' But Love."

**ANSWER:**    Defendants Jackson, Sony BMG, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7.

### Lawrence Parker - KRS One

8.    Lawrence Parker, also known as Larry Parker, and professionally known as KRS One ("Parker"), is an adult citizen of the State of California or of the State of New York.  Parker is a rap music artist who is engaged in the business of musical composition and performance. The work involving Parker at issue in this lawsuit is entitled "Criminal Minded."

**ANSWER:**    Defendants Jackson, Sony BMG, UMG, and Capitol admit upon information and belief that Lawrence Parker is known professionally as KRS One and that he is an adult who is engaged in the business of music composition and performance.  Jackson, Sony BMG, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 8.

### Pedro Zayas and Christoper Ries

9.    Defendant Pedro Zayas is professionally known as Peedi Crakk and also as Peedi Peedi ("Zayas").  Upon information and belief, Zayas is an adult citizen of the State of Pennsylvania.  He is engaged in the business of musical composition and performance and performed the sound recording for "Criminal Background" at issue in this lawsuit.

**ANSWER:**    Defendants Jackson, Sony BMG, UMG, and Capitol admit upon information and belief that Pedro Zayas has been known professionally as Peedi Crakk and is professionally known as Peedi Peedi and that he is an adult who is engaged in the business of music composition and performance.  Jackson, Sony BMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 9.

10.    Defendant Christopher Ries is professionally known as Young Chris ("Ries"). Upon information and belief, Ries is an adult citizen of the State of Pennsylvania.  He is engaged in the business of musical composition and performance and performed the sound recording for "Criminal Background" at issue in this lawsuit.

**ANSWER:**    Defendants Jackson, Sony BMG, UMG, and Capitol admit upon information and belief that Christopher Ries is known professionally as Young Chris and that he

is an adult who is engaged in the business of music composition and performance.  Jackson,

Sony BMG, UMG, and Capitol lack knowledge or information sufficient to form a belief as to

the truth of the remaining allegations in paragraph 10.


### Sony BMG Music Entertainment, Inc.

11.    Defendant Sony BMG Music Entertainment, Inc. is a Delaware general
partnership with its principal place of business in New York ("Sony").  Said defendant is
engaged in the business of manufacture, distribution, and sale of music performances in the
forms of records, tapes, and compact discs, among other media.

**ANSWER:**    Defendant Sony BMG denies that its correct name is "Sony BMG Music

Entertainment, Inc."  Sony BMG admits the remaining allegations of paragraph 11.  Defendants

Jackson, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 11.

### UMG Recordings, Inc.

12.    Defendant UMG Recordings, Inc. is a Delaware corporation with its principal
place of business in New York ("UMG").  On information and belief UMG does business as
Universal Music Group.  Said defendant is engaged in the business of manufacture, distribution,
and sale of music performances in the forms of records, tapes, and compact discs, among other
media.  Said defendant is the manufacturer, distributor and seller of certain the recordings at
issue in this lawsuit: Nothin' But Love and Peep Game.

**ANSWER:**    Defendant UMG admits that it is a Delaware corporation engaged in the

business of the manufacturing, distribution and sale of musical performances in various media.

UMG denies that its principal place of business is in New York and that it is the manufacturer,

distributor, and seller of recordings of "Nothin' But Love" and "Peep Game."  Defendants

Jackson, Sony BMG, and Capitol lack knowledge or information sufficient to form a belief as to

the truth of the allegations in paragraph 12.

**Capital [sic] Records, Inc.**

13.    Defendant Capitol Records, Inc. is a Delaware corporation with its principal place of business in the State of New York ("Capitol Records").  Its parent corporation is EMI, formerly Grammaphone Record Company.  On information and belief, Capital owns and exploits the master recording to a song entitled Real Niggaz Don't Die which contains a misappropriated or pirated sample from Different Strokes.

**ANSWER:**    Effective April 1, 2008, Capitol Records, Inc. converted from a Delaware corporation into a Delaware limited liability company and its name was changed to Capitol Records, LLC.  Defendant Capitol admits the remaining allegations of paragraph 13, except that it denies EMI was formerly "Grammaphone Record Company" and that "Real Niggaz Don't Die" contains a misappropriated or pirated sample from "Different Strokes."  Defendants Jackson, Sony BMG, and UMG lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13.

**Zomba Enterprises, Inc.**

14.    Zomba Enterprises, Inc. is a New York corporation with its principal place of business in New York ("Zomba Enterprises").  On information and belief, Zomba Enterprises is the owner of the master recording and copyright for the work at issue in this lawsuit alleged to contain a pirated or misappropriated sample entitled "Criminal Minded" and "Criminal Background".

**ANSWER:**    Defendants Sony BMG and UMG deny that Zomba Enterprises is the owner of the master recording and sound recording copyright for the work "Criminal Minded" and "Criminal Background."  Sony BMG and UMG lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 14.  Defendants Jackson and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14.

**Amaru Entertainment, Inc.**

15.    Defendant Amaru Entertainment, Inc. is a Delaware corporation with its principal place of business in Georgia ("Amaru").  Upon information and belief, said defendant is engaged in the business of manufacture, distribution and sale of music performances in the form of

records, tapes, and compact discs, among other media.  Said defendant is the manufacturer, distributor, and seller of recordings for the Tupac Shakur Estate.

**ANSWER:**     Defendants Jackson, Sony BMG, UMG and Capitol lack knowledge or

information sufficient to form a belief as to the truth of the allegations in paragraph 15.


### NWA, ANDRE YOUNG AND ANTOINE CARRABY, COMPTON RECORDS

16.     N.W.A is a partnership which operated between 1991 and 2003 and was composed of Tre Curry (the D.O.C.), Andre Young (Dr. DRE), Eric Wright (Eazy-E), Dine Fekaris, Lorenzo Patterson (M.C. Ren), Antoine Carraby (DJ Yella), and Nick Zesses ("NWA"). None of NWA's partners are Illinois citizens.  Compton Records a/k/a Ruthless Records is a California corporation with its principal place of business in California.  The work involving these defendants is Real Niggaz Don't Die.

**ANSWER:**     Defendants Jackson, Sony BMG, UMG, and Capitol admit on information

and belief that N.W.A.'s members included, at various times, Tre Curry, Andre Young, Eric

Wright, Lorenzo Patterson, and Antoine Carraby.  Jackson, Sony BMG, UMG, and Capitol lack

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in paragraph 16.

### <u>JOHNSON'S SONG - DIFFERENT STROKES</u>

17.     On or about July 16, 1967, Johnson hired writers, John Cameron and John Zachary ("the writers"), who created and wrote the musical composition ("the composition") entitled "Different Strokes" in their capacity as songwriters.  The musical composition was wholly original and is copyrightable subject matter.

**ANSWER:**     Defendants Jackson, Sony BMG, UMG, and Capitol lack knowledge or

information sufficient to form a belief as to the truth of the allegations in paragraph 17.

18.     On August 14, 1967, the writers registered the copyright in the musical composition "Different Strokes" with the United States Copyright Office, and secured Certificate of Registration No. EU 9873.  The composition copyright in the words and music was registered to John Cameron and John Zachary.

**ANSWER:**     Defendants Jackson, Sony BMG, UMG, and Capitol lack knowledge or

information sufficient to form a belief as to the truth of the allegations in paragraph 18.

19.     On or about July 16, 1967, Johnson recorded a sound recording entitled "Different Strokes" at a recording studio in Chicago, Illinois.  During the recording session, Johnson experimented with different creative sound combinations and finally settled on the idea to open the song with a combined grunt, laugh and drum beat (the "Ensemble").  The Ensemble gave the "Different Strokes" recording great distinction and popular appeal.  In 1967, "Different Strokes" was released on a 45-RPM in 1967 through Twilight Records ("Twilight").

**ANSWER:**     Defendants Jackson, Sony BMG, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19.

20.     In or about March 1972, Johnson recorded a re-mix version of "Different Strokes" at a recording studio in Chicago, Illinois.  The 1972 re-mix version included the Ensemble as to which Johnson re-recorded his grunt.  Johnson did the editing, sound remixing, equalization, balancing and addition of new sound material which was wholly original with Johnson.

**ANSWER:**     Defendants Jackson, Sony BMG, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20.

21.     The 1972 re-mix version of Different Strokes was released in 1986 through P-Vine records as an LP Album.

**ANSWER:**     Defendants Jackson, Sony BMG, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21.

22.     Johnson obtained a written assignment of the composition copyright from John Zachary effective January 1, 1995.  In 1995, John Cameron was deceased, and Johnson obtained a written assignment of Cameron's interest in the composition copyright from Jennifer Cameron, John Cameron's daughter.

**ANSWER:**     Defendants Jackson, Sony BMG, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22.

23.     On February 26, 1996, Johnson registered his copyright in "Sock It To Me" with the United States Copyright Office and deposited a copy thereof which included the 1972 re-mix of "Different Strokes."  Johnson secured Certificate of Registration No. SR0000360-720.

**ANSWER:**     Defendants Jackson, Sony BMG, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23.

24.     On February 14, 1997, Johnson registered "Surrounded" with the United States Copyright Office.

**ANSWER:**     Defendants Jackson, Sony BMG, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24.

25.     Johnson deposited a copy thereof which also included the 1972 re-mix version of Different Strokes. Johnson obtained Certificate No. SRU-360-891.

**ANSWER:**     Defendants Jackson, Sony BMG, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25.

26.     The 1972 re-mix version of "Different Strokes" features the Ensemble as the beginning of the song with Johnson as the vocalist who provided the "grunt" portion of the Ensemble.

**ANSWER:**     Defendants Jackson, Sony BMG, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26.

### DIGITAL SAMPLING TECHNOLOGY

27.     Digital sampling technology allows the copying of a recorded sound or series of sounds and incorporation of the fragment into the new work.

**ANSWER:**     Defendants Jackson, Sony BMG, UMG, and Capitol admit the allegations of paragraph 27.

28.     The process of digital recording changes sound waves into digital information; specifically, a sound is sent to a transducer (such as a microphone) which converts the sound wave into voltage variations. The signal is then sent to an analog-to-digital converter. The converter changes the analog signal into digital information by first measuring the analog voltage at regular intervals. The resulting "bits" are assigned a binary number representing the intensity of the signal at that time. A computer stores or processes the resulting sample information. To hear the sample, the process is reversed so that the voltage variations are converted into audible sound waves.

**ANSWER:**     Defendants Sony BMG, UMG, and Capitol admit, and Defendant Jackson admits on information and belief, the allegations of paragraph 28 with the qualification that it is a very general and simplistic description of digital recording technology.

29.     The process whereby music samples are pirated and recorded onto the defendant's work requires that the defendant first make a sound recording, then intentionally and deliberately record the music sample onto the defendant's sound recording. In some cases, the music sample is manipulated by showing it down, changing the pitch, speed, etc. By engaging in this process,

the defendant achieves distinction in the defendant's sound recording without having to spend the resources on creativity to develop the distinctive sound.

**ANSWER:**     Defendants Jackson, Sony BMG, UMG, and Capitol deny the allegations of paragraph 29.

## BLOOD ON THE DANCE FLOOR

30.     In 1997, Michael Jackson composed, produced and recorded Blood On The Dance Floor.  At some point after the Blood On The Dance Floor sound recording was made, either personally or through his agents, Jackson utilized digital sampling technology, pirated the Ensemble from Johnson's sound recording of "Different Strokes" and recorded it onto at least one version of Blood On The Dance Floor known as the Refugee Camp Edit.

**ANSWER:**     Defendants Jackson and Sony BMG admit that Jackson composed, co-produced, and recorded "Blood on the Dance Floor" in about 1997.  Jackson denies the remaining allegations in paragraph 30.  Sony BMG lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 30.  Defendants UMG and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30.

31.     Johnson lacks information as to whether Jackson took the Ensemble from the 1967 sound recording or from the 1972 re-mix version of Different Strokes.

**ANSWER:**     Defendants Jackson, Sony BMG, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31.

32.     On information and belief, Johnson has released versions of Blood On The Dance Floor which did not contain the pirated or misappropriated sample.

**ANSWER:**     Defendants Jackson, Sony BMG, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32.

33.     Jackson took the Different Strokes Ensemble for the Blood On The Dance Floor Refugee Camp Edit for the purpose of making the song appeal to a hip-hop audience.

**ANSWER:**    Defendant Jackson denies the allegations of paragraph 33.  Defendants Sony BMG, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 33.

34.    On information and belief, Sony BMG released a compact disc single, maxi-CD single and cassette single containing Blood On The Dance Floor, Refugee Camp Edit.

**ANSWER:**    Defendant Sony BMG admits the allegations of paragraph 34.  Defendants Jackson, UMG and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 34.

35.    Neither Jackson, nor any of Jackson's agents or representatives, nor Sony contacted Johnson nor sought a license for the pirated or misappropriated Different Strokes sample.

**ANSWER:**    Defendants Jackson and Sony BMG deny that any "Different Strokes" sample in "Blood on the Dance Floor" is pirated or misappropriated.  Jackson lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 35.  Sony BMG lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 35, except that it denies that neither Jackson nor any of Jackson's agents or representatives sought a license for a "Different Strokes" sample in "Blood on the Dance Floor."  Defendants UMG and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 35.

36.    The copyright notice for Blood On The Dance Floor failed to mention Johnson's contribution vis-à-vis the pirated or misappropriated sample.

**ANSWER:**    Defendant Sony BMG admits that the copyright notices for "Blood on the Dance Floor" did not mention Johnson.  Defendant Sony BMG denies the remaining allegations of paragraph 36.  Defendants Jackson, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 36.

37.     In 1997, Michael Jackson released an album entitled Blood On The Dance Floor which included The Refugee Camp Edit.  On information and belief, the profits earned from Blood On The Dance Floor, Refugee Camp Edit, exceed $75,000.00.

**ANSWER:**    Defendants Jackson and Sony BMG deny that the album "Blood on the Dance Floor" contained "The Refugee Camp Edit."  Jackson lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 37.  Sony BMG denies that the profits earned from "Blood on the Dance Floor, Refugee Camp Edit" exceeded $75,000.  Sony BMG lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 37.  Defendants UMG and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 37.

38.     In 2005, Johnson learned of the pirating of Different Strokes' Ensemble in Blood On The Dance Floor.  Upon learning of this, Johnson bought a CD containing Blood On The Dance Floor, Refugee Camp Edit and confirmed that Blood On The Dance Floor included the Ensemble from Johnson's Different Strokes' sound recording, though Johnson has not yet been able to determine whether the Ensemble was taken from the 1967 sound recording or the 1972 remixed version of Different Strokes.

**ANSWER:**    Defendants Jackson, Sony BMG, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 38.

39.     The infringement of Johnson's song "Different Strokes" by Blood On The Dance Floor is a continuing infringement.

**ANSWER:**    Defendants Jackson and Sony BMG deny the allegations of paragraph 39. Defendants UMG and Capitol make no answer to paragraph 39, as it asserts a legal conclusion not directed at UMG or Capitol.

## CRIMINAL MINDED

40.     In 1987, Parker (together with a since deceased person named Scott Sterling or Scott LaRock) composed a song entitled "Criminal Minded".  "Criminal Minded" was recorded by a group known as Boogie Down Productions and Parker was one of the members.  Parker

(among others), produced "Criminal Minded" and it was released March 3, 1987 by B-Boy Records, Inc. (since merged and now known as Big East Entertainment, Inc.)

**ANSWER:**    Defendants Jackson, Sony BMG, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 40.

41.    Since its release in 1987, Criminal Minded has been released on 13 albums.  The albums are: (1) Criminal Minded (1987); (2) Best of B-Boy Records (2001); (3); Hip Hop Back in the Day (1995); (4) History of Rap, Vol. 1 (1996); (5) Kurtis Blow Presents the History of Rap, Vol. 3: The Golden Age (1997); (6) Live Hardcore Worldwide (1991); (7) Criminal Minded (Plus Instrumentals) (2001); Ultimate Hip-Hop Album (2003); (8) 80's Hip-Hop Album (2003); (9) 80's Hip Hop Hits (2000); (10) Man and His Music (1991); (11) Battle For Rap Supremacy; KRS-One v. McSha (1996); (12) Retrospective (Performed by KRS-One (2000); (13) Best of KRS-One (2000).

**ANSWER:**    Defendants Jackson, Sony BMG, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 41.

42.    The Criminal Minded sound recording digitally manipulated the Ensemble by shifting the pitch and speed and repeating the Ensemble pervasively throughout with the intention of giving Criminal Minded distinction and appeal.

**ANSWER:**    Defendants Jackson, Sony BMG, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 41.

43.    The sound recording copyright for the Album entitled Criminal Minded failed to mention Johnson's contribution to the sound recording vis-à-vis the pirated or misappropriated sample.  Johnson learned of the pirated or misappropriated Different Strokes sample in Criminal Minded in 2005.

**ANSWER:**    Defendants Jackson, Sony BMG, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 43.

44.    On information and belief, Zomba Enterprises obtained the publication rights to Criminal Minded and is responsible for its widespread dissemination and sale.

**ANSWER:**    Defendants Jackson, Sony BMG, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 44.

## CRIMINAL BACKGROUND

45.     On August 5, 2003, Beanie Segal produced a sound recording entitled State Property Presents The Chain Gang, Vol. 2 ("Chain Gang, Vol. 2") which included a song called Criminal Background composed by Parker, Scott Sterling, Chad Hamilton, R. Presson, Christopher Reis, J. Thomas, Pedro Zayas and R. Presson.  Criminal Background was performed by Zayas and Ries and released on Roc-a-Fella Records.

**ANSWER:**     Defendant UMG admits that the album "State Property Presents The Chain Gang, Vol. 2" was released on Roc-A-Fella Records and included a recording titled "Criminal Background," and that "Criminal Background" was performed by Zayas and Ries. UMG lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 45.  Defendants Jackson, Sony BMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 45.

46.     Approximately 14.5 seconds into the recording track, the Chain Gang, Vol. 2 sound recording includes a pirated or misappropriated sample of Johnson's grunt (as well as the laugh) from the Different Strokes Ensemble.  Johnson lacks information as yet as to whether the sample was misappropriated or pirated from the 1967 or the 1972 sound recording of Different Strokes.

**ANSWER:**     Defendants Jackson, Sony BMG, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 46.

47.     On information and belief, Zomba Enterprise is responsible for or has contributed to the dissemination of Criminal Background.

**ANSWER:**     Defendants Jackson, Sony BMG, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 47.

48.     The copyright notice for Criminal Background failed to mention Johnson's contribution vis-à-vis the pirated or misappropriated sample.

**ANSWER:**     Defendants Jackson, Sony BMG, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 48.

49.     The pirated or misappropriated sample was included in Criminal Background without Johnson's permission or knowledge.  Johnson learned of the pirated or misappropriated sample in Criminal Background in 2005.

**ANSWER:**     Defendants Jackson, Sony BMG, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 49.


## WHO STOLE THE DJ?

50.     In 1991 and in 2000, Quincy Jones produced sound recordings entitled "Who Stole the DJ" as composed by Will Smith and Jeff Townes and performed by DJ Jazzy Jeff and The Fresh Prince.

**ANSWER:**     Defendant Sony BMG denies the allegations of paragraph 50.  Defendants Jackson, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 50.

51.     After recording "Who Stole The DJ", Will Smith or his agents, digitally manipulated the Different Strokes Ensemble, changed the pitch and the speed, and recorded in [sic] onto the Who Stole the DJ sound recording.

**ANSWER:**     Defendants Jackson, Sony BMG, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 51.

52.     The Sound Recording entitled "Who Stole The DJ" contains approximately one hundred and nine audible instances of the (manipulated) pirated or misappropriated "Different Strokes" Ensemble.  The 109 instances of the Different Strokes Ensemble sample gave "Who Stole The DJ" its distinction and popular appeal.

**ANSWER:**     Defendant Sony BMG denies that "Who Stole the DJ" contains any pirated or misappropriated sample of "Different Strokes."  Defendant Sony BMG lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 52.  Defendants Jackson, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 52.

53.     The Ensemble was included without Johnson's permission or knowledge.  At this juncture in the lawsuit, Johnson is unsure whether the Ensemble was taken from the 1967 or the 1972 Different Strokes re-mix version.

**ANSWER:**    Defendants Jackson, Sony BMG, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 53.

54.    The copyright notice for "Who Stole The DJ" failed to mention Johnson's contribution vis-à-vis the pirated or misappropriated sample.

**ANSWER:**    Defendant Sony BMG admits that the copyright notices for "Who Stole the DJ" did not mention Johnson.  Sony BMG denies that "Who Stole the DJ" contains any pirated or misappropriated sample of "Different Strokes."  Sony BMG lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 54.  Defendants Jackson, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 54.

55.    At least two albums containing "Who Stole The DJ" were released on Jive Records.  The album entitled Before the Millennium contains Who Stole The DJ and was released in 2000.

**ANSWER:**    Defendant Sony BMG denies the allegations of paragraph 55.  Defendants Jackson, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 55.

56.    On information and belief, Who Stole The DJ was a work for hire by Zomba Enterprises.  Sony is the owner of the master recording and is responsible or has contributed to the sale and dissemination of Who Stole The DJ.

**ANSWER:**    Defendant Sony BMG denies that "Who Stole the DJ" was a work for hire by Zomba Enterprises.  Sony BMG admits the remaining allegations of paragraph 56.  Defendants Jackson, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 56.

57.    The infringement or misappropriation described herein is continuing, but Johnson did not learn of it until 2005.

**ANSWER:**    Defendant Sony BMG denies any infringement or misappropriation.  Sony BMG lacks knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in paragraph 57. Defendants Jackson, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 57.

## **REAL NIGGAZ DON'T DIE**

58.    Real Niggaz Don't Die was composed by various members of the music partnership known as N.W.A., including Tracy [*sic*] Curry professionally known as D.O.C., Andre Young p/k/a Dr. Dre, Eric Wright (Easy-E) and others.

**ANSWER:**    Defendant Capitol admits on information and belief that the song "Real Niggaz Don't Die" was composed by, inter alia, various members of the group N.W.A. Defendants Jackson, Sony BMG, and UMG lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 58.

59.    In 1991 through 2003 Tre Curry (the D.O.C.), Andre Young (Dr. DRE), Eric Wright (Eazy-E), Dine [*sic*] Fekaris, Lorenzo Patterson (M.C. Ren), Antoine Carraby (DJ Yella), and Nick Zesses (operating as NWA) made sound recordings of the song Real Niggaz Don't Die which was produced by Dr. Dre and Yella on Compton a/k/a Ruthless Records.  The Real Niggaz Don't Die sound recording included a sample from the 1972 "Different Strokes" sound recording.

**ANSWER:**    Defendant Capitol admits on information and belief that Tre Curry (the D.O.C.), Andre Young (Dr. Dre), Eric Wright (Eazy-E), Lorenzo Patterson (M.C. Ren), and Antoine Carraby (DJ Yella) (operating as N.W.A.) made a sound recording of the song "Real Niggaz Don't Die," which was produced by Dr. Dre and DJ Yella.  Capitol lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 59.  Defendants Jackson, Sony BMG, and UMG lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 59.

60.    On information and belief, Capital is the owner of the master recording of the infringing work, Real Niggaz Don't Die, and is responsible for or has contributed to the mass and widespread sale and dissemination of Real Niggaz Don't Die.

**ANSWER:**    Defendant Capitol admits the allegations of paragraph 60, except that Capitol denies that "Real Niggaz Don't Die" is an infringing work.  Defendants Jackson, Sony BMG, and UMG lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 60.

61.    In approximately 1995, Capital had a dispute with Johnson regarding Johnson's claim of another instance of infringement pertaining to Johnson's Different Strokes sound recording and a Capital release known as King Tee.

**ANSWER:**    Defendant Capitol admits that, in 1995, Johnson alleged an instance of infringement pertaining to Different Strokes with respect to a Capitol release known as King Tee.  Capitol denies the remaining allegations of paragraph 61.  Defendants Jackson, Sony BMG, and UMG lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 61.

62.    Capital thus had knowledge that Johnson was the copyright owner of the "Different Strokes" sound recording.

**ANSWER:**    Defendant Capitol denies the allegations of paragraph 62.  Defendants Jackson, Sony BMG, and UMG lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 62.

63.    Defendants have released and sold the following albums which include "Real Niggaz Don't Die" on one of the album's tracks: (1) Niggaz4Life (1991); (2) Greatest Hits (1996); (3) Greatest Hits (bonus track) (2003); (4) Niggaz4Life [CD/DVD] (2003) (5) Niggaz4Life/100 Miles and Runnin' (2002); (6) Greatest Hitz [Circuit City Exclusive] (2007); (7) Best of N.W.A.: The Strength of Street Knowledge [Bonus DVD] (2007; (8) Efil4Zaggin with 100 Miles/Straight outta Compton (2005); (9) Straight Out of Compton/Niggaz4Life with 100 miles and Running (2003).

**ANSWER:**    Defendant Capitol admits upon information and belief that it and/or its affiliates and/or its predecessors in interest have released and sold various albums that include the recording titled "Real Niggaz Don't Die," including but not limited to albums titled "Efil4Zaggin" (a/k/a "Niggaz4Life"), "Greatest Hits" and/or "Greatest Hitz," and "The Best of

N.W.A.: The Strength of Street Knowledge," in various configurations.  Defendants Jackson, Sony BMG, and UMG deny that they have released or sold any of the albums listed in paragraph 63.

64.    The copyright notice for Real Niggaz Don't Die failed to mention Johnson's contribution vis-à-vis the pirated or misappropriated sample.

**ANSWER:**    Defendant Capitol admits that copyright notices for "Real Niggaz Don't Die" did not mention Johnson.  Capitol denies that "Real Niggaz Don't Die" contains any pirated or misappropriated sample of "Different Strokes."  Defendants Jackson, Sony BMG, and UMG lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 64.

65.    The infringement or misappropriation described herein is continuing, but Johnson did not learn of it until 2005.

**ANSWER:**    Defendant Capitol denies any infringement or misappropriation. Defendant Capitol lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 65.  Defendants Jackson, Sony BMG, and UMG lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 65.

## PEEP GAME

66.    Tupac Shakur (among others) composed a song entitled "Peep Game".  Tupac Shakur performed Peep Game and a sound recording was made in approximately 1993.

**ANSWER:**    Defendant UMG admits the allegations of paragraph 66.  Defendants Jackson, Sony BMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 66.

67.    Peep Game was released on February 16, 1993 by Interscope Records on an album called Strictly 4 My N.I.G.G.A.Z.  The producer was Bobby Ervin.  The distributing label is Interscope and Amaru Entertainment, Inc.  Interscope and Amaru are owned by UMG.

**ANSWER:**    Defendant UMG admits that "Peep Game" was released in approximately February of 1993, and that it holds an ownership interest in Interscope Records.  UMG denies that it owns Amaru.  UMG lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 67.  Defendants Jackson, Sony BMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 67.

68.    The Peep Game sound recording includes the "Different Strokes" Ensemble twice at approximately 2.55 minutes into the track.

**ANSWER:**    Defendants Jackson, Sony BMG, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 68.

69.    The Ensemble was taken from either the 1967 or the 1972 remix version of Different Strokes.

**ANSWER:**    Defendants Jackson, Sony, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 69.

70.    The inclusion in Peep Game of the Ensemble from Different Strokes was done without Johnson's knowledge or permission.

**ANSWER:**    Defendants Jackson, Sony BMG, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 70.

71.    On information and belief, UMG is the owner of the master recording of the album, Strickly 4 My N.I.G.G.A.Z, which includes "Peep Game" on one track.  UMG is responsible for and has contributed to the mass and widespread sale and dissemination of Peep Game.

**ANSWER:**    Defendant UMG admits that it has an ownership interest in Interscope Records, which owns the master recording of the album "Strickly 4 My N.I.G.G.A.Z."  UMG denies the remaining allegations in paragraph 71.  Defendants Jackson, Sony BMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 71.

72.     The copyright notice for Peep Game failed to mention Johnson's contribution vis-à-vis the pirated or misappropriated sample.

**ANSWER:**     Defendant UMG lacks knowledge or information sufficient to form a belief as to whether the copyright notices for "Peep Game" mentioned Johnson.  UMG denies that "Peep Game" contains any pirated or misappropriated sample of "Different Strokes."  UMG lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 72.  Defendants Jackson, Sony BMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 72.

73.     The infringement or misappropriation described herein is continuing, but Johnson did not learn of it until 2005.

**ANSWER:**     Defendant UMG denies any infringement or misappropriation.  UMG lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 73.  Defendants Jackson, Sony BMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 73.

## NOTHIN' BUT LOVE

74.     Tupac Shakur composed a song entitled Nothin' But Love and performed and recorded Nothin' But Love in approximately 1996.

**ANSWER:**     Defendant UMG admits the allegations of paragraph 74.  Defendants Jackson, Sony BMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 74.

75.     In 1997, Nothin' But Love was released on an album called RU Still Down (Remember Me).

**ANSWER:**     Defendant UMG admits the allegations of paragraph 75.  Defendants Jackson, Sony BMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 75.

76.    The sound recording of Nothin' But Love included the pirated or misappropriated sample of the Ensemble from Johnson's sound recording of Different Strokes.  The pirated or misappropriated sample appears twice at approximately the 3:30 minute mark in the Nothin' But Love sound recording.

**ANSWER:**    Defendant UMG denies that "Nothin' But Love" contains and pirated or misappropriated sample of "Different Strokes."  UMG lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 76.  Defendants Jackson, Sony BMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 76.

77.    The sample was taken from either the 1967 or the 1972 sound recording of Different Strokes.

**ANSWER:**    Defendants Jackson, Sony BMG, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 77.

78.    Johnson did not give permission for the inclusion of any portion of the 1967 or the 1972 Different Strokes' sound recording in Nothin' But Love.

**ANSWER:**    Defendants Jackson, Sony BMG, UMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 78.

79.    The copyright notice for Nothin' But Love failed to mention Johnson's contribution vis-à-vis the pirated or misappropriated sample.

**ANSWER:**    Defendant UMG lacks knowledge or information sufficient to form a belief as to whether copyright notices for "Nothin' But Love" mentioned Johnson.  UMG denies that "Nothin' But Love" contains any pirated or misappropriated sample of "Different Strokes." UMG lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 79.  Defendants Jackson, Sony BMG and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 79.

80.    On information and belief, UMG is responsible for and has contributed to the mass and widespread sale and dissemination of Nothin' But Love.

**ANSWER:**   Defendant UMG denies the allegations of paragraph 80.   Defendants Jackson, Sony BMG and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 80.

81.     In 2005, Johnson first learned that by Nothin' But Love contained a pirated or misappropriated sample of the Different Strokes sound recording.   The infringement or misappropriation by Nothin' But Love is continuing.

**ANSWER:**   Defendant UMG denies that "Nothin' But Love" contains any pirated or misappropriated sample of "Different Strokes" and that the there is any infringement or misappropriation.   Defendants Jackson, Sony BMG, and Capitol lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 81.

### COUNT I - MISAPPROPRIATION-BLOOD ON THE DANCE FLOOR

82.     Paragraph Nos. 1 through 81 are incorporated and realleged as though fully set forth herein.

**ANSWER:**   Defendants' answers to paragraphs 1-81 are hereby reincorporated and realleged as though fully set forth herein.   Defendants UMG and Capitol make no response to Count I, which is not directed at UMG or Capitol.

83.     The Ensemble contained in the 1967 sound recording of Different Strokes and in the 1972 remix of Different Strokes was original and included Johnson's voice recording. Johnson had a legal right to control the use of his voice recording.

**ANSWER:**   Defendants Jackson and Sony BMG deny the allegations of paragraph 83.

84.     Defendants had access to the 1967 sound recording of Different Strokes and to the 1972 remix because it was commercially available in various mediums.

**ANSWER:**   Defendants Jackson and Sony BMG deny that they accessed the 1967 or 1972 recordings of "Different Strokes."   Jackson and Sony BMG lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 79.

85.     Jackson, either personally or through his agents, employees or representatives, misappropriated Johnson's voice recording and misappropriated the Ensemble which was the embodiment of Johnson's original creative work.

**ANSWER:**     Defendants Jackson and Sony BMG deny the allegations of paragraph 85

86.     Johnson contributed the expenses of recording as well as his vocal talent, creativity, time and labor to the creation of the Ensemble.  Johnson benefits commercially from the Ensemble to the extent that he negotiates licenses to artists who want to use it in their works.

**ANSWER:**     Defendants Jackson and Sony BMG lack knowledge or information

sufficient to form a belief as to the truth of the allegations in paragraph 86.

87.     As a result of taking Johnson's voice recording and the Different Strokes Ensemble, Jackson gave Blood On The Dance Floor, Refugee Camp Edit, distinction while avoiding expending the creative resources necessary to develop the distinct sound and without obtaining Johnson's consent or paying him for its use.

**ANSWER:**     Defendants Jackson and Sony BMG deny the allegations of paragraph 87.

88.     As a direct and proximate result of the misappropriation described herein, Defendants have profited by virtue of the unlawful misappropriation in a sum exceeding the sum of $75,000.00.

**ANSWER:**     Defendants Jackson and Sony BMG deny the allegations of paragraph 88.

## COUNT II-UNJUST ENRICHMENT-BLOOD ON THE DANCE FLOOR

89.     Paragraph Nos. 1 through 81 are incorporated and realleged as though fully set forth herein.

**ANSWER:**     Defendants' answers to paragraphs 1-88 are hereby reincorporated and

realleged as though fully set forth herein.  Defendants UMG and Capitol make no response to

Count II, which is not directed at them.

90.     As described herein, Jackson d/b/a Mijac Music and Sony have obtained a benefit by the use of the misappropriated samples which have enhanced the musical work and which benefit includes profits from sales and distribution of the works, obtaining and owning a valuable sound recording copyright in the work, issuing and being compensated for licenses in the work, and other benefits, which would be unjust for them to retain.

**ANSWER:**     Defendants Jackson and Sony BMG deny the allegations of paragraph 90.

## COUNT III-FEDERAL COPYRIGHT INFRINGEMENT
### BLOOD ON THE DANCE FLOOR

91.     Paragraphs One through 90 are incorporated and realleged as though fully stated herein.

**ANSWER:**     Defendants' answers to paragraphs 1-90 are hereby reincorporated and realleged as though fully set forth herein.  Defendants UMG and Capitol make no response to Count III, which is not directed at them.

92.     In the event that the evidence establishes that Jackson, his agents or representatives or Sony took the Different Strokes Ensemble from the 1972 re-mix sound recording, and that such re-mix is sufficiently distinct to be entitled to federal copyright protection, then Johnson is the owner of the sound recording copyright for Different Strokes and Johnson registered his ownership of the sound recording copyright with the United States Copyright Office as described herein.

**ANSWER:**     Defendants Jackson and Sony BMG deny the allegations of paragraph 92.

93.     Among the exclusive rights granted to Johnson under the Copyright Act are the exclusive rights to reproduce the copyrighted recordings and to distribute the copyrighted recordings to the public and to create derivative works.

**ANSWER:**     Defendants Jackson and Sony BMG state that paragraph 93 describes certain provisions of the Copyright Act in very general and simplified terms but denies that Johnson has such rights with respect to the matters at issue in this case.

94.     Johnson has placed proper notice of copyright pursuant to 17 U.S.C. § 401 on the album cover of "Surrounded".

**ANSWER:**     Defendants Jackson and Sony BMG deny the allegations of paragraph 94.

95.     The 1972 re-mix version of Different Strokes was widely available and accessible to each defendant.

**ANSWER:**     Defendants Jackson and Sony BMG deny the allegations of paragraph 95.

96.     On information and belief, Jackson and/or Sony without the permission, authority, or license from Johnson and without any attribution to Johnson, have wrongfully, knowingly, and intentionally copied, reproduced, distributed, and sold throughout the world, including in this district, works which include the Ensemble and/or a sample of Johnson's 1972 sound recording of Different Strokes in violation of Johnson's copyright.

**ANSWER:**    Defendants Jackson and Sony BMG deny the allegations of paragraph 96.

97.    On information and belief, each defendant has, in turn, distributed and sold numerous copies of an infringing work which unlawfully includes a portion of Johnson's 1972 sound recording in Different Strokes throughout the world.  Each violation of Johnson's rights to the 1972 sound recording constitutes a separate and distinct act of copyright infringement.

**ANSWER:**    Defendants Jackson and Sony BMG deny the allegations of paragraph 97.

98.    Defendants' continuing infringement of Johnson's rights in the 1972 re-mix sound recordings has caused and is continuing to cause irreparable injury, loss and damages to Johnson, and unless defendants are restrained from continuing their wrongful infringement of Johnson's rights, the irreparable damages to Johnson will increase without an adequate remedy at law.

**ANSWER:**    Defendants Jackson and Sony BMG deny the allegations of paragraph 98.

99.    As a result of the infringements of Johnson's rights in said work as described herein by defendants, defendants have obtained great income and gains and Johnson has suffered severe and actual financial losses due to the defendants' willful appropriation of Johnson's said composition and recording.

**ANSWER:**    Defendants Jackson and Sony BMG deny the allegations of paragraph 99.

100.    The acts of infringement described herein have been willful, intentional, and in disregard of and with indifference to Johnson's rights.

**ANSWER:**    Defendants Jackson and Sony BMG deny the allegations of paragraph 100.

## COUNT IV - VICARIOUS COPYRIGHT INFRINGEMENT
## BLOOD ON THE DANCE FLOOR

101.    Paragraphs One through 100 are incorporated and realleged as though fully set forth herein.

**ANSWER:**    Defendants' answers to paragraphs 1-100 are hereby reincorporated and realleged as though fully set forth herein.  Defendants UMG and Capitol make no response to Count IV, which is not directed at them.

102.    Jackson and/or Sony are liable as vicarious infringers for the copyright infringement committed by taking the Different Strokes Ensemble.

**ANSWER:**　　Defendants Jackson and Sony BMG deny the allegations of paragraph 102.

103.　　At all relevant times, Defendants had the right and ability to control and/or supervise the infringing conduct, and defendants have had a direct financial interest and have derived substantial financial benefit from the infringements of Johnson's copyrighted sound recording.

**ANSWER:**　　Defendants Jackson and Sony BMG deny the allegations of paragraph 103.

104.　　Defendants have derived substantial benefit from the infringement by selling and distributing significant numbers of their songs without having to pay Johnson anything for his sound recording work.

**ANSWER:**　　Defendants Jackson and Sony BMG deny the allegations of paragraph 104.

105.　　Each violation of Johnson's rights to his copyrighted sound recording constitutes a separate and distinct act of copyright infringement.　Through the conduct described herein, Defendants are vicariously liable for each act of infringement described herein.

**ANSWER:**　　Defendants Jackson and Sony BMG deny the allegations of paragraph 105.

## COUNT V - MISAPPROPRIATION-CRIMINAL MINDED

106.　　Paragraph Nos. 1 through 81 are incorporated and realleged as though fully set forth herein.

**ANSWER:**　　Defendants' answers to paragraphs 1-81 are hereby reincorporated and realleged as though fully set forth herein.　Defendants Jackson, Sony BMG, UMG, and Capitol make no response to Count V, which is not directed at them.

## COUNT VII - UNJUST ENRICHMENT-CRIMINAL MINDED

113.　　Paragraph Nos. 1 through 112 are incorporated and realleged as though fully set forth herein.

**ANSWER:**    Defendants' answers to paragraphs 1-81 and 106 are hereby reincorporated and realleged as though fully set forth herein. Defendants Jackson, Sony BMG, UMG, and Capitol make no response to Count VII, which is not directed at them.

### COUNT VIII-FEDERAL COPYRIGHT INFRINGEMENT-CRIMINAL MINDED

115.    Paragraphs One through 114 are incorporated and realleged as though fully stated herein.

**ANSWER:**    Defendants' answers to paragraphs 1-81, 106, and 113 are hereby reincorporated and realleged as though fully set forth herein. Defendants Jackson, Sony BMG, UMG, and Capitol make no response to Count VIII, which is not directed at them.

### COUNT IX - VICARIOUS COPYRIGHT INFRINGEMENT CRIMINAL MINDED

125.    Paragraphs One through 124 are incorporated and realleged as though fully set forth herein.

**ANSWER:**    Defendants' answers to paragraphs 1-81, 106, 113, and 115 are hereby reincorporated and realleged as though fully set forth herein. Defendants Jackson, Sony BMG, UMG, and Capitol make no response to Count IX, which is not directed at them.

### COUNT X - MISAPPROPRIATION-CRIMINAL BACKGROUND

130.    Paragraph Nos. 1 through 129 are incorporated and realleged as though fully set forth herein.

**ANSWER:**    Defendants' answers to paragraphs 1-81, 106, 113, 115, and 125 are hereby reincorporated and realleged as though fully set forth herein. Defendants Jackson, Sony BMG, UMG, and Capitol make no response to Count X, which is not directed at them.

### COUNT XI-UNJUST ENRICHMENT - CRIMINAL BACKGROUND

137.    Paragraphs One through 136 are incorporated as though fully set forth herein.

**ANSWER:**    Defendants' answers to paragraphs 1-81, 106, 113, 115, 125, and 130 are hereby reincorporated and realleged as though fully set forth herein.  Defendants Jackson, Sony BMG, UMG, and Capitol make no response to Count  XI, which is not directed at them.

## COUNT XII-FEDERAL COPYRIGHT INFRINGEMENT
## CRIMINAL BACKGROUND

139.    Paragraphs One through 138 are incorporated and realleged as though fully stated herein.

**ANSWER:**    Defendants' answers to paragraphs 1-81, 106, 113, 115, 125, 130, and 137 are hereby reincorporated and realleged as though fully set forth herein.  Defendants Jackson, Sony BMG, UMG, and Capitol make no response to Count  XII, which is not directed at them.

## COUNT XIII - VICARIOUS COPYRIGHT INFRINGEMENT
## CRIMINAL BACKGROUND

149.    Paragraphs One through 148 are realleged and incorporated as though fully set forth herein.

**ANSWER:**    Defendants' answers to paragraphs 1-81, 106, 113, 115, 125, 130, 137, and 139 are hereby reincorporated and realleged as though fully set forth herein.  Defendants Jackson, Sony BMG, UMG, and Capitol make no response to Count  XIII, which is not directed at them.

## COUNT XIV - MISAPPROPRIATION-WHO STOLE THE DJ

154.    Paragraph Nos. 1 through 153 are incorporated and realleged as though fully set forth herein.

**ANSWER:**    Defendants' answers to paragraphs 1-106, 113, 115, 125, 130, 137, 139, and 149 are hereby reincorporated and realleged as though fully set forth herein.  Defendants Jackson, UMG, and Capitol make no response to Count  XIV, which is not directed at them.

155.    The Ensemble contained in the 1967 sound recording of Different Strokes and in the 1972 remix of Different Strokes was original and included Johnson's voice recording. Johnson had a legal right to control the use of his voice recording.

**ANSWER:**     Defendant Sony BMG denies the allegations of paragraph 155.

156.     Will Smith, Zomba Enterprises and Sony had access to the 1967 sound recording of Different Strokes and to the 1972 remix because it was commercially available in various mediums.

**ANSWER:**     Defendant Sony BMG denies it accessed the 1967 or 1972 recordings of

"Different Strokes."  Sony BMG lacks knowledge or information sufficient to form a belief as to

the truth of the remaining allegations in paragraph 156.

157.     Defendants misappropriated Johnson's voice recording and misappropriated the

Ensemble which was the embodiment of Johnson's original creative work.

**ANSWER:**     Defendant Sony BMG denies the allegations of paragraph 157.

158.     Johnson contributed the expenses of recording as well as his vocal talent, creativity, time and labor to the creation of the Ensemble.  Johnson benefits commercially from the Ensemble to the extent that he negotiates licenses to artists who want to use it in their works.

**ANSWER:**     Defendant Sony BMG lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 158.

159.     As a result of taking Johnson's voice recording and the Different Strokes Ensemble, Defendants and each of them gave Who Stole The DJ distinction while avoiding expending the creative resources necessary to develop the distinct sound that Defendants' were able to obtain without obtaining Johnson's consent or paying him for its use.

**ANSWER:**     Defendant Sony BMG denies the allegations of paragraph 159.

160.     As a direct and proximate result of the misappropriation described herein, defendants and each of them have obtained unlawful profits by virtue of the unlawful misappropriation which exceeds the sum of $75,000.00.

**ANSWER:**     Defendant Sony BMG denies the allegations of paragraph 160.

### COUNT XV - UNJUST ENRICHMENT-WHO STOLE THE DJ

161.     Paragraph Nos. 1 through 160 are incorporated and realleged as though fully set forth herein.

**ANSWER:**     Defendants' answers to paragraphs 1-106, 113, 115, 125, 130, 137, 139,

149, and 154-60 are hereby reincorporated and realleged as though fully set forth herein.

Defendants Jackson, UMG, and Capitol make no response to Count XV, which is not directed at them.

162.    As described herein, Defendants and each of them have obtained a benefit by the use of the misappropriated samples which have enhanced their musical work, Who Stole The DJ which includes profits from sales and distribution of the works, obtaining and owning a valuable sound recording copyright in the work, issuing and being compensated for licenses in the work, and other benefits, which would be unjust for them to retain.

**ANSWER:**    Defendant Sony BMG denies the allegations of paragraph 162.

## COUNT XVI-FEDERAL COPYRIGHT INFRINGEMENT
## <u>WHO STOLE THE DJ</u>

163.    Paragraphs One through 162 are incorporated and realleged as though fully stated herein.

**ANSWER:**    Defendants' answers to paragraphs 1-106, 113, 115, 125, 130, 137, 139, 149, and 154-62 are hereby reincorporated and realleged as though fully set forth herein.

Defendants Jackson, UMG, and Capitol make no response to Count XVI, which is not directed at them.

164.    In the event that the evidence establishes that Defendants or any of them took the Different Strokes Ensemble from the 1972 remix sound recording, and that such re-mix is sufficiently distinct to be entitled to federal copyright protection, then Johnson is the owner of the sound recording copyright for Different Strokes and Johnson registered his ownership of the sound recording copyright with the United States Copyright Office as described herein.

**ANSWER:**    Defendant Sony BMG denies the allegations of paragraph 164.

165.    Among the exclusive rights granted to Johnson under the Copyright Act are the exclusive rights to reproduce the copyrighted recordings and to distribute the copyrighted recordings to the public and to create derivative works.

**ANSWER:**    Defendant Sony BMG states that paragraph 165 describes certain provisions of the Copyright Act in very general and simplified terms but denies that Johnson has such rights with respect to the matters at issue in this case.

166.    Johnson has placed proper notice of copyright pursuant to 17 U.S.C. § 401 on the album cover of "Surrounded".

**ANSWER:**    Defendant Sony BMG denies the allegations of paragraph 166.

167.    This 1972 re-mix version of Different Strokes was widely available and accessible to each defendant.

**ANSWER:**    Defendant Sony BMG denies the allegations of paragraph 167.

168.    On information and belief, the defendants and each of them, without the permission, authority, or license from Johnson and without any attribution to Johnson, have wrongfully, knowingly, and intentionally copied, reproduced, distributed, and sold throughout the world, including in this district, works which include the Ensemble and/or a sample of Johnson's 1972 sound recording of Different Strokes in violation of Johnson's copyright in Who Stole The DJ.

**ANSWER:**    Defendant Sony BMG denies the allegations of paragraph 168.

169.    On information and belief, each defendant has, in turn, distributed and sold numerous copies of the infringing work which unlawfully includes a portion of Johnson's 1972 sound recording in Different Strokes throughout the world.  Each violation of Johnson's rights to the 1972 sound recording constitutes a separate and distinct act of copyright infringement.

**ANSWER:**    Defendant Sony BMG denies the allegations of paragraph 169.

170.    Defendants' continuing infringement of Johnson's rights in the 1972 re-mix sound recordings has caused and is continuing to cause irreparable injury, loss and damages to Johnson, and unless defendants are restrained from continuing their wrongful infringement of Johnson's rights, the irreparable damages to Johnson will increase without an adequate remedy at law.

**ANSWER:**    Defendant Sony BMG denies the allegations of paragraph 170.

171.    As a result of the infringements of Johnson's rights in said work as described herein by defendants, defendants have obtained great income and gains and Johnson has suffered severe and actual financial losses due to the defendants' willful appropriation of Johnson's said composition and recording.

**ANSWER:**    Defendant Sony BMG denies the allegations of paragraph 171.

172.    The acts of infringement described herein have been willful, intentional, and in disregard of and with indifference to Johnson's rights.

**ANSWER:**    Defendant Sony BMG denies the allegations of paragraph 172.

## COUNT XVII - VICARIOUS COPYRIGHT INFRINGEMENT
## WHO STOLE THE DJ

173.    Paragraphs One through 172 are incorporated and realleged as though fully set forth herein.

**ANSWER:** Defendants' answers to paragraphs 1-106, 113, 115, 125, 130, 137, 139, 149, and 154-72 are hereby reincorporated and realleged as though fully set forth herein. Defendants Jackson, UMG, and Capitol make no response to Count XVII, which is not directed at them.

174. Defendants are liable as vicarious infringers for the copyright infringement committed by taking the Different Strokes Ensemble.

**ANSWER:** Defendant Sony BMG denies the allegations of paragraph 174.

175. At all relevant times, Defendants had the right and ability to control and/or supervise the infringing conduct, and defendants have had a direct financial interest and have derived substantial financial benefit from the infringements of Johnson's copyrighted sound recording.

**ANSWER:** Defendant Sony BMG denies the allegations of paragraph 175.

176. Defendants have derived substantial benefit from the infringement by selling and distributing significant numbers of their songs without having to pay Johnson anything.

**ANSWER:** Defendant Sony BMG denies the allegations of paragraph 176.

177. Each violation of Johnson's rights to his copyrighted sound recording constitutes a separate and distinct act of copyright infringement. Through the conduct described herein, Defendants are vicariously liable for each act of infringement described herein.

**ANSWER:** Defendant Sony BMG denies the allegations of paragraph 177.

## COUNT XVIII - MISAPPROPRIATION- REAL NIGGAZ DON'T DIE

178. Paragraph Nos. 1 through 177 are incorporated and realleged as though fully set forth herein.

**ANSWER:** Defendants' answers to paragraphs 1-106, 113, 115, 125, 130, 137, 139, 149, and 154-77 are hereby reincorporated and realleged as though fully set forth herein. Defendants Jackson, Sony BMG, and UMG make no response to Count XVIII, which is not directed at them.

179. The Ensemble contained in the 1967 sound recording of Different Strokes and in the 1972 remix of Different Strokes was original and included Johnson's voice recording. Johnson had a legal right to control the use of his voice recording.

**ANSWER:**    Defendant Capitol denies the allegations of paragraph 179.

180.    NWA, Capital Records, Antoine Carraby, Andre Young and Compton Records d/b/a Ruthless Records had access to the 1967 sound recording of Different Strokes and to the 1972 remix because it was commercially available in various mediums.

**ANSWER:**    Defendant Capitol denies it accessed the 1967 or 1972 recordings of "Different Strokes." Capitol lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 180.

181.    Defendants misappropriated Johnson's voice recording and misappropriated the Ensemble which was the embodiment of Johnson's original creative work.

**ANSWER:**    Defendant Capitol denies the allegations of paragraph 181.

182.    Johnson contributed the expenses of recording as well as his vocal talent, creativity, time and labor to the creation of the Ensemble. Johnson benefits commercially from the Ensemble to the extent that he negotiates licenses to artists who want to use it in their works.

**ANSWER:**    Defendant Capitol lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 182.

183.    As a result of taking Johnson's voice recording and the Different Strokes Ensemble, Defendants and each of them gave their work distinction while avoiding expending the creative resources necessary to develop the distinct sound that Defendants' were able to obtain without obtaining Johnson's consent or paying him for its use.

**ANSWER:**    Defendant Capitol denies the allegations of paragraph 183.

184.    As a direct and proximate result of the misappropriation described herein, defendants and each of them have obtained unlawful profits by virtue of the unlawful misappropriation which exceeds the sum of $75,000.00.

**ANSWER:**    Defendant Capitol denies the allegations of paragraph 184.

### COUNT XIX - UNJUST ENRICHMENT-REAL NIGGAZ DON'T DIE

185.    Paragraph Nos. 1 through 184 are incorporated and realleged as though fully set forth herein.

**ANSWER:**    Defendants' answers to paragraphs 1-106, 113, 115, 125, 130, 137, 139, 149, and 154-84 are hereby reincorporated and realleged as though fully set forth herein.

Defendants Jackson, Sony BMG, and UMG make no response to Count XIX, which is not directed at them.

186.    As described herein, the partnership N.W.A. its producers Andre Young and Antoine Carraby, Compton Records a/k/a Ruthless Records and Capital Records have obtained a benefit by the use of the misappropriated samples which have enhanced their musical works and which benefit includes profits from sales and distribution of the Real Niggaz Don't Die, have obtained and valuable sound recording copyright in the work, issued and been compensated for licenses in the work, and other benefits, which would be unjust for them to retain.

**ANSWER:**    Defendant Capitol denies the allegations of paragraph 186.

## COUNT XX-FEDERAL COPYRIGHT INFRINGEMENT
## REAL NIGGAZ DON'T DIE

187.    Paragraphs One through 81 are incorporated and realleged as though fully stated herein.

**ANSWER:**    Defendants' answers to paragraphs 1-81 are hereby reincorporated and realleged as though fully set forth herein.  Defendants Jackson, Sony BMG, and UMG make no response to Count XX, which is not directed at them.

188.    In the event that the evidence establishes that Defendants or any of them took the Different Strokes Ensemble from the 1972 remix sound recording, and that such re-mix is sufficiently distinct to be entitled to federal copyright protection, then Johnson is the owner of the sound recording copyright for Different Strokes and Johnson registered his ownership of the sound recording copyright with the United States Copyright Office as described herein.

**ANSWER:**    Defendant Capitol denies the allegations of paragraph 188.

189.    Among the exclusive rights granted to Johnson under the Copyright Act are the exclusive rights to reproduce the copyrighted recordings and to distribute the copyrighted recordings to the public and to create derivative works.

**ANSWER:**    Defendant Capitol states that paragraph 165 describes certain provisions of the Copyright Act in very general and simplified terms but denies that Johnson has such rights with respect to the matters at issue in this case.

190.    Johnson has placed proper notice of copyright pursuant to 17 U.S.C. § 401 on the album cover of "Surrounded".

**ANSWER:**    Defendant Capitol denies the allegations of paragraph 190.

191.    This 1972 re-mix version of Different Strokes was widely available and accessible to each defendant.

**ANSWER:**    Defendant Capitol denies the allegations of paragraph 191.

192.    On information and belief, the defendants and each of them, without the permission, authority, or license from Johnson and without any attribution to Johnson, have wrongfully, knowingly, and intentionally copied, reproduced, distributed, and sold throughout the world, including in this district, works which include the Ensemble and/or a sample of Johnson's 1972 sound recording of Different Strokes in violation of Johnson's copyright in Real Niggaz Don't Die.

**ANSWER:**    Defendant Capitol denies the allegations of paragraph 192.

193.    On information and belief, each defendant has, in turn, distributed and sold numerous copies of an infringing work which unlawfully includes a portion of Johnson's 1972 sound recording in Different Strokes throughout the world.  Each violation of Johnson's rights to the 1972 sound recording constitutes a separate and distinct act of copyright infringement.

**ANSWER:**    Defendant Capitol denies the allegations of paragraph 193.

194.    Defendants' continuing infringement of Johnson's rights in the 1972 re-mix sound recordings has caused and is continuing to cause irreparable injury, loss and damages to Johnson, and unless defendants are restrained from continuing their wrongful infringement of Johnson's rights, the irreparable damages to Johnson will increase without an adequate remedy at law.

**ANSWER:**    Defendant Capitol denies the allegations of paragraph 194.

195.    As a result of the infringements of Johnson's rights in said work as described herein by defendants, defendants have obtained great income and gains and Johnson has suffered severe and actual financial losses due to the defendants' willful appropriation of Johnson's said composition and recording.

**ANSWER:**    Defendant Capitol denies the allegations of paragraph 195.

196.    The acts of infringement described herein have been willful, intentional, and in disregard of and with indifference to Johnson's rights.

**ANSWER:**    Defendant Capitol denies the allegations of paragraph 196.

## COUNT XXI - VICARIOUS COPYRIGHT INFRINGEMENT
## REAL NIGGAZ DON'T DIE

197.    Paragraphs One through 81 are incorporated and realleged as though fully set forth herein.

**ANSWER:**    Defendants' answers to paragraphs 1-81 are hereby reincorporated and realleged as though fully set forth herein.  Defendants Jackson, Sony BMG, and UMG make no response to Count  XXI, which is not directed at them.

198.    Defendants are liable as vicarious infringers for the copyright infringement committed by taking the Different Strokes Ensemble.

**ANSWER:**    Defendant Capitol denies the allegations of paragraph 198.

199.    At all relevant times, Defendants had the right and ability to control and/or supervise the infringing conduct, and defendants have had a direct financial interest and have derived substantial financial benefit from the infringements of Johnson's copyrighted sound recording.

**ANSWER:**    Defendant Capitol denies the allegations of paragraph 199.

200.    Defendants have derived substantial benefit from the infringement by selling and distributing significant numbers of their songs without having to pay Johnson anything for his sound recording work.

**ANSWER:**    Defendant Capitol denies the allegations of paragraph 200.

201.    Each violation of Johnson's rights to his copyrighted sound recording constitutes a separate and distinct act of copyright infringement.  Through the conduct described herein, Defendants are vicariously liable for each act of infringement described herein.

**ANSWER:**    Defendant Capitol denies the allegations of paragraph 201.

## COUNT XXII - MISAPPROPRIATION-NOTHIN' BUT LOVE

202.    Paragraph Nos. 1 through 201 are incorporated and realleged as though fully set forth herein.

**ANSWER:**    Defendants' answers to paragraphs 1-106, 113, 115, 125, 130, 137, 139, 149, and 154-201 are hereby reincorporated and realleged as though fully set forth herein. Defendants Jackson, Sony BMG, and Capitol make no response to Count XXII, which is not directed at them.

203.    The Ensemble contained in the 1967 sound recording of Different Strokes and in the 1972 remix of Different Strokes was original and included Johnson's voice recording. Johnson had a legal right to control the use of his voice recording.

**ANSWER:**    Defendant UMG denies the allegations of paragraph 203.

204.    The Tupac Shakur Estate, Amaru and others unknown at this time, had access to the 1967 sound recording of Different Strokes and to the 1972 remix because it was commercially available in various mediums.

**ANSWER:**    Defendant UMG denies it accessed the 1967 or 1972 recordings of "Different Strokes."  UMG lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 204.

205.    Defendants misappropriated Johnson's voice recording and misappropriated the Ensemble which was the embodiment of Johnson's original creative work.

**ANSWER:**    Defendant UMG denies the allegations of paragraph 205.

206.    Johnson contributed the expenses of recording as well as his vocal talent, creativity, time and labor to the creation of the Ensemble.  Johnson benefits commercially from the Ensemble to the extent that he negotiates licenses to artists who want to use it in their works.

**ANSWER:**    Defendant UMG lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 206.

207.    As a result of taking Johnson's voice recording and the Different Strokes Ensemble, Defendants gave the work distinction while avoiding expending the creative resources necessary to develop the distinct sound that Defendants' were able to obtain without obtaining Johnson's consent or paying him for its use.

**ANSWER:**    Defendant UMG denies the allegations of paragraph 207

208.    As a direct and proximate result of the misappropriation described herein, defendants and each of them have obtained unlawful profits by virtue of the unlawful misappropriation which exceeds the sum of $75,000.00.

**ANSWER:**    Defendant UMG denies the allegations of paragraph 208.

### COUNT XXIII - UNJUST ENRICHMENT- NOTHIN' BUT LOVE

209.    Paragraph Nos. 1 through 208 are incorporated and realleged as though fully set forth herein.

**ANSWER:**    Defendants' answers to paragraphs 1-106, 113, 115, 125, 130, 137, 139, 149, and 154-208 are hereby reincorporated and realleged as though fully set forth herein.

Defendants Jackson, Sony BMG, and Capitol make no response to Count XXIII, which is not

directed at them.

210.    Defendants have obtained a benefit by the use of the misappropriated samples which have enhanced their musical work, Nothin' But Love, which benefit includes profits from sales and distribution of the work, have obtained and own a valuable sound recording copyright in the work, issued and been compensated for licenses in the work, and other benefits, which would be unjust for them to retain.

**ANSWER:**    Defendant UMG denies the allegations of paragraph 210.

### COUNT XXIV-FEDERAL COPYRIGHT INFRINGEMENT<br>NOTHIN' BUT LOVE

211.    Paragraphs One through 210 are incorporated and realleged as though fully stated herein.

**ANSWER:**    Defendants' answers to paragraphs 1-106, 113, 115, 125, 130, 137, 139,

149, and 154-210 are hereby reincorporated and realleged as though fully set forth herein.

Defendants Jackson, Sony BMG, and Capitol make no response to Count XXIV, which is not

directed at them.

212.    In the event that the evidence establishes that Defendants or any of them took the Different Strokes Ensemble from the 1972 remix sound recording, and that such re-mix is sufficiently distinct to be entitled to federal copyright protection, then Johnson is the owner of the sound recording copyright for Different Strokes and Johnson registered his ownership of the sound recording copyright with the United States Copyright Office as described herein.

**ANSWER:**    Defendant UMG denies the allegations of paragraph 212.

213.    Among the exclusive rights granted to Johnson under the Copyright Act are the exclusive rights to reproduce the copyrighted recordings and to distribute the copyrighted recordings to the public and to create derivative works.

**ANSWER:**    Defendant UMG states that paragraph 213 describes certain provisions of

the Copyright Act in very general and simplified terms but denies that Johnson has such rights

with respect to the matters at issue in this case.

214.    Johnson has placed proper notice of copyright pursuant to 17 U.S.C. § 401 on the album cover of "Surrounded".

**ANSWER:**    Defendant UMG denies the allegations of paragraph 214.

215.    This 1972 re-mix version of Different Strokes was widely available and accessible to each defendant.

**ANSWER:**    Defendant UMG denies the allegations of paragraph 215.

216.    On information and belief, the defendants and each of them, without the permission, authority, or license from Johnson and without any attribution to Johnson, have wrongfully, knowingly, and intentionally copied, reproduced, distributed, and sold throughout the world, including in this district, works which include the Ensemble and/or a sample of Johnson's 1972 sound recording of Different Strokes in violation of Johnson's copyright in Nothin' But Love.

**ANSWER:**    Defendant UMG denies the allegations of paragraph 216.

217.    On information and belief, each defendant has, in turn, distributed and sold numerous copies of an infringing work which unlawfully includes a portion of Johnson's 1972 sound recording in Different Strokes throughout the world.  Each violation of Johnson's rights to the 1972 sound recording constitutes a separate and distinct act of copyright infringement.

**ANSWER:**    Defendant UMG denies the allegations of paragraph 217.

218.    Defendants' continuing infringement of Johnson's rights in the 1972 re-mix sound recordings has caused and is continuing to cause irreparable injury, loss and damages to Johnson, and unless defendants are restrained from continuing their wrongful infringement of Johnson's rights, the irreparable damages to Johnson will increase without an adequate remedy at law.

**ANSWER:**    Defendant UMG denies the allegations of paragraph 218.

219.    As a result of the infringements of Johnson's rights in said work as described herein, defendants have obtained great income and gains and Johnson has suffered severe and actual financial losses due to the defendants' willful appropriation of Johnson's said composition and recording.

**ANSWER:**    Defendant UMG denies the allegations of paragraph 219.

220.    The acts of infringement described herein have been willful, intentional, and in disregard of and with indifference to Johnson's rights.

**ANSWER:**    Defendant UMG denies the allegations of paragraph 220.

## COUNT XXV - VICARIOUS COPYRIGHT INFRINGEMENT
## NOTHIN' BUT LOVE

221.    Paragraphs One through 220 are incorporated and realleged as though fully set forth herein.

**ANSWER:**    Defendants' answers to paragraphs 1-106, 113, 115, 125, 130, 137, 139, 149, and 154-220 are hereby reincorporated and realleged as though fully set forth herein. Defendants Jackson, Sony BMG, and Capitol make no response to Count XXV, which is not directed at them.

222.    Defendants are liable as vicarious infringers for the copyright infringement committed by taking the Different Strokes Ensemble.

**ANSWER:**    Defendant UMG denies the allegations of paragraph 222

223.    At all relevant times, Defendants had the right and ability to control and/or supervise the infringing conduct, and defendants have had a direct financial interest and have derived substantial financial benefit from the infringements of Johnson's copyrighted sound recording.

**ANSWER:**    Defendant UMG denies the allegations of paragraph 223.

224.    Defendants have derived substantial benefit from the infringement by selling and distributing significant numbers of their songs without having to pay Johnson anything for his sound recording work.

**ANSWER:**    Defendant UMG denies the allegations of paragraph 224.

225.    Each violation of Johnson's rights to his copyrighted sound recording constitutes a separate and distinct act of copyright infringement.  Through the conduct described herein, Defendants are vicariously liable for each act of infringement described herein.

**ANSWER:**    Defendant UMG denies the allegations of paragraph 225.


## COUNT XXVI - MISAPPROPRIATION-PEEP GAME

226.    Paragraph Nos. 1 through 225 are incorporated and realleged as though fully set forth herein.

**ANSWER:**    Defendants' answers to paragraphs 1-106, 113, 115, 125, 130, 137, 139, 149, and 154-225 are hereby reincorporated and realleged as though fully set forth herein. Defendants Jackson, Sony BMG, and Capitol make no response to Count XXVI, which is not directed at them.

227.    The Ensemble contained in the 1967 sound recording of Different Strokes and in the 1972 remix of Different Strokes was original and included Johnson's voice recording. Johnson had a legal right to control the use of his voice recording.

**ANSWER:**    Defendant UMG denies the allegations of paragraph 227.

228.    Defendants had access to the 1967 sound recording of Different Strokes and to the 1972 remix because it was commercially available in various mediums.

**ANSWER:**    Defendant UMG denies it accessed the 1967 or 1972 recordings of "Different Strokes."  UMG lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 228.

229.    Defendants misappropriated Johnson's voice recording and misappropriated the Ensemble which was the embodiment of Johnson's original creative work.

**ANSWER:**    Defendant UMG denies the allegations of paragraph 229.

230.    Johnson contributed the expenses of recording as well as his vocal talent, creativity, time and labor to the creation of the Ensemble.  Johnson benefits commercially from the Ensemble to the extent that he negotiates licenses to artists who want to use it in their works.

**ANSWER:**    Defendant UMG lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 230.

231.    As a result of taking Johnson's voice recording and the Different Strokes Ensemble, Defendants and each of them gave their work, Peep Game, distinction while avoiding expending the creative resources necessary to develop the distinct sound that Defendants' were able to obtain without obtaining Johnson's consent or paying him for its use.

**ANSWER:**    Defendant UMG denies the allegations of paragraph 231.

232.    As a direct and proximate result of the misappropriation described herein, defendants and each of them have obtained unlawful profits by virtue of the unlawful misappropriation which exceeds the sum of $75,000.00.

**ANSWER:**    Defendant UMG denies the allegations of paragraph 232.

## COUNT XXVII - UNJUST ENRICHMENT- PEEP GAME

233.    Paragraph Nos. 1 through 232 are incorporated and realleged as though fully set forth herein.

**ANSWER:**     Defendants' answers to paragraphs 1-106, 113, 115, 125, 130, 137, 139, 149, and 154-232 are hereby reincorporated and realleged as though fully set forth herein. Defendants Jackson, Sony BMG, and Capitol make no response to Count XXVII, which is not directed at them.

234.     As described herein, Defendants have obtained a benefit by the use of the misappropriated samples which have enhanced their musical works and which benefit includes profits from sales and distribution of the work, Peep Game, have obtained and own a valuable sound recording copyright in the work, issued and been compensated for licenses in the work, and other benefits, which would be unjust for them to retain.

**ANSWER:**     Defendant UMG denies the allegations of paragraph 234.

### COUNT XXVIII-FEDERAL COPYRIGHT INFRINGEMENT
### PEEP GAME

235.     Paragraphs One through 234 are incorporated and realleged as though fully stated herein.

**ANSWER:**     Defendants' answers to paragraphs 1-106, 113, 115, 125, 130, 137, 139, 149, and 154-234 are hereby reincorporated and realleged as though fully set forth herein. Defendants Jackson, Sony BMG, and Capitol make no response to Count XXVIII, which is not directed at them.

236.     In the event that the evidence establishes that Defendants or any of them took the Different Strokes Ensemble from the 1972 remix sound recording, and that such re-mix is sufficiently distinct to be entitled to federal copyright protection, then Johnson is the owner of the sound recording copyright for Different Strokes and Johnson registered his ownership of the sound recording copyright with the United States Copyright Office as described herein.

**ANSWER:**     Defendant UMG denies the allegations of paragraph 236.

237.     Among the exclusive rights granted to Johnson under the Copyright Act are the exclusive rights to reproduce the copyrighted recordings and to distribute the copyrighted recordings to the public and to create derivative works.

**ANSWER:**     Defendant UMG states that paragraph 237 describes certain provisions of the Copyright Act in very general and simplified terms but denies that Johnson has such rights with respect to the matters at issue in this case.

238.    Johnson has placed proper notice of copyright pursuant to 17 U.S.C. § 401 on the album cover of "Surrounded".

**ANSWER:**    Defendant UMG denies the allegations of paragraph 238.

239.    This 1972 re-mix version of Different Strokes was widely available and accessible to each defendant.

**ANSWER:**    Defendant UMG denies the allegations of paragraph 239.

240.    On information and belief, the defendants and each of them, without the permission, authority, or license from Johnson and without any attribution to Johnson, have wrongfully, knowingly, and intentionally copied, reproduced, distributed, and sold throughout the world, including in this district, works which include the Ensemble and/or a sample of Johnson's 1972 sound recording of Different Strokes in violation of Johnson's copyright in Peep Game.

**ANSWER:**    Defendant UMG denies the allegations of paragraph 240.

241.    On information and belief, each defendant has, in turn, distributed and sold numerous copies of an infringing work which unlawfully includes a portion of Johnson's 1972 sound recording in Different Strokes throughout the world.  Each violation of Johnson's rights to the 1972 sound recording constitutes a separate and distinct act of copyright infringement.

**ANSWER:**    Defendant UMG denies the allegations of paragraph 241.

242.    Defendants' continuing infringement of Johnson's rights in the 1972 re-mix sound recordings has caused and is continuing to cause irreparable injury, loss and damages to Johnson, and unless defendants are restrained from continuing their wrongful infringement of Johnson's rights, the irreparable damages to Johnson will increase without an adequate remedy at law.

**ANSWER:**    Defendant UMG denies the allegations of paragraph 242.

243.    As a result of the infringements of Johnson's rights in said work as described herein, defendants have obtained great income and gains and Johnson has suffered severe and actual financial losses due to the defendants' willful appropriation of Johnson's said composition and recording.

**ANSWER:**    Defendant UMG denies the allegations of paragraph 243.

244.    The acts of infringement described herein have been willful, intentional, and in disregard of and with indifference to Johnson's rights.

**ANSWER:**    Defendant UMG denies the allegations of paragraph 244.

## COUNT XXIX - VICARIOUS COPYRIGHT INFRINGEMENT
### PEEP GAME

245.    Paragraphs One through 244 are incorporated and realleged as though fully set forth herein.

**ANSWER:**    Defendants' answers to paragraphs 1-106, 113, 115, 125, 130, 137, 139, 149, and 154-244 are hereby reincorporated and realleged as though fully set forth herein.

Defendants Jackson, Sony BMG, and Capitol make no response to Count XXVIII, which is not directed at them.

246.    Tupac Shakur Estate, Amaru and/or UMG are liable as vicarious infringers for the copyright infringement committed by taking the Different Strokes Ensemble.

**ANSWER:**    Defendant UMG denies the allegations of paragraph 246.

247.    At all relevant times, Defendants had the right and ability to control and/or supervise the infringing conduct, and defendants have had a direct financial interest and have derived substantial financial benefit from the infringements of Johnson's copyrighted sound recording.

**ANSWER:**    Defendant UMG denies the allegations of paragraph 247.

248.    Defendants have derived substantial benefit from the infringement by selling and distributing significant numbers of their songs without having to pay Johnson anything for his sound recording work.

**ANSWER:**    Defendant UMG denies the allegations of paragraph 248.

249.    Each violation of Johnson's rights to his copyrighted sound recording constitutes a separate and distinct act of copyright infringement.  Through the conduct described herein, Defendants are vicariously liable for each act of infringement described herein.

**ANSWER:**    Defendant UMG denies the allegations of paragraph 249.

**WHEREFORE**, Defendants Michael Jackson, Sony BMG Music Entertainment, UMG Recordings, Inc., and Capitol Records, LLC deny that Plaintiff is entitled to any award whatsoever.

## AFFIRMATIVE DEFENSES

1.     Plaintiff's claims are barred by the terms of a Settlement Agreement and Full Release entered into as of July 10, 2007 between Plaintiff, on the one hand, and Peter Wright, the Wright Group, Sunlight Records, Inc., the original Twinight Records, Inc.. Edgewater Music, Inc., and Midday Music, on the other hand.

2.     Plaintiff's claims are barred by the terms of

(a)     a Settlement and Release Agreement dated as of May 2003 between Peter Wright, Sunlight Records, Inc. d/b/a Edgewater Music Co. and Twilight Records, on the one hand, and Sony Music Entertainment, on the other;

(b)     a Mutual Release of Claims dated as of October 19, 2001 between Zomba Enterprises Inc. and Edgewater Music d/b/a Sunlight Records, Inc.;

(c)     a License and Release dated as of October 1, 2001 and effective as of July 23, 2001 between Zomba Recording Corporation and Twilight/Twinight Records;

(d)     a Settlement Agreement and Release dated as of July 1, 2003 between Sunlight Records, Inc. d/b/a Twilight/Twinight Records and Sunlight Records, Inc. d/b/a Edgewater Music, on the one hand, and Comptown Records, Inc. d/b/a Ruthless Records, on the other;

(e)     a Settlement & Release Agreement dated as of September 2, 2003 between Twilight/Twinight Records, Edgewater Music, and Sunlight Records, on the one hand, and Amaru Entertainment, Inc., on the other; and

(f)     other similar agreements of whose existence Defendants Jackson, Sony BMG, UMG, and Capitol are not yet aware.

3.     Plaintiff's claims are barred by the applicable statutes of limitations.

4.     Plaintiff's claims are barred by the doctrine of laches.

5.     Plaintiff's claims are barred by the doctrine of de minimis infringement.

6.     Plaintiff's claims are barred by the doctrine of unclean hands.

7.     Plaintiff's claims are barred by the doctrine of waiver.

8.     Plaintiff's claims are barred by his failure to comply with applicable requirements of the Copyright Act.

9.     Plaintiff's claims are barred by the doctrine of estoppel.

Respectfully submitted,

MICHAEL JACKSON, SONY BMG MUSIC
ENTERTAINMENT; UMG RECORDINGS, INC.;
and CAPITOL RECORDS, INC.

By: _____ s/ C. Steven Tomashefsky _____
            One of Their Attorneys

C. Steven Tomashefsky
JENNER & BLOCK LLP
330 North Wabash Avenue
Chicago, Illinois 60611-7603
Phone:    (312) 222-9350
Fax:        (312-840-7769
stomashefsky@jenner.com