**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SYL JOHNSON, a/k/a Sylvester Thompson, d/b/a Syl-Zel Music, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) | |
| ) | No. 07 C 7288 |
| MICHAEL JACKSON et al., ) ) | |
| Defendants. ) ) | Honorable Marvin E. Aspen |
| ──────────────────────────── ) ) | |
| UMG RECORDINGS, INC., ) ) | |
| Third-Party Plaintiff, ) ) | |
| v. ) ) | |
| SUNLIGHT RECORDS, INC. d/b/a TWILIGHT/TWINIGHT RECORDS and EDGEWATER MUSIC CO., ) ) ) ) | |
| Third-Party Defendants. ) ) ) | |

## THIRD-PARTY COMPLAINT

Defendants and Third-Party Plaintiff UMG Recordings, Inc. ("UMG"), by its attorneys, complains against Sunlight Records, Inc. d/b/a Twilight/Twinight Records and Edgewater Music Co. (collectively, "Sunlight") as follows:

**Nature of the Case**

1.   In this Third-Party Complaint, UMG seeks to enforce the terms of a settlement and license agreement under which Sunlight granted a license permitting the inclusion of samples of a recording entitled "Different Strokes" on recordings by Tupac Shakur.  In the license agreement, Sunlight agreed to indemnify and hold harmless UMG in the event UMG was sued for allegedly infringing "Different Strokes" by any other party.  UMG has now been sued for misappropriation, copyright infringement, and related causes of action by Syl Johnson ("Johnson"), who claims to own the master recordings and copyrights to "Different Strokes."  In connection with the license agreement, Sunlight obtained valuable consideration based on the representation and warranty that Sunlight owned those rights and was legally entitled to license their use.

2.   While UMG does not concede that Johnson has valid claims for misappropriation, infringement, and related causes of action, Sunlight is legally obligated to indemnify UMG for the fees and costs of defending against Johnson's suit and for any judgment Johnson might obtain against UMG.

**Parties**

3.   Third-Party Plaintiff UMG is a Delaware corporation with its principal place of business in California.  UMG is engaged in the business of manufacturing, distributing, and selling musical performances in a variety of media.

4.   Third-Party Defendant Sunlight is an Illinois corporation with its principal place of business in Illinois.  On information and belief, Sunlight's sole shareholder is Peter Wright. Wright has been engaged in the business of promoting, manufacturing, distributing, selling, and licensing musical performances since at least the 1960s.  During the late 1960s and into the

1970s, Wright was a co-owner of the record labels Twilight and Twinight and was the owner of several music publishing companies, including Midday Music and Edgewater Music. Wright formed Sunlight in approximately 1994 to carry on the businesses previously conducted under the Twilight, Twinight, Midday, and Edgewater names.

## Jurisdiction and Venue

5. This Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367 and pursuant to the terms of Fed. R. Civ. P. 14(a)(1), because the claims in this Third-Party Complaint are related to the allegations raised in Plaintiff's Complaint such that these claims constitute the same case or controversy, and because the Third-Party Defendant may be liable to the Third-Party Plaintiff for all or part of the claims against it.

6. This Court also has jurisdiction over these claims pursuant to 28 U.S.C. § 1332 because UMG and Sunlight are citizens of different states, and the matter in controversy exceeds $75,000 exclusive of interest and costs.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the matters in controversy occurred in this District and because Sunlight resides in this District.

## Background

8. In 1967, Syl Johnson recorded a song titled "Different Strokes," which was released as a 45-RPM single on the Twilight label. The label copy states that the song was written by "J. Cameron and J. Zachary" and was published by "Zachron Pub. and Edgewater Music, Inc." Twilight was owned by Peter Wright and Howard Bedno, and Edgewater was owned by Peter Wright.

3

9. In approximately 1968, Wright and Bedno renamed Twilight "Twinight" and incorporated Twinight in Illinois. Twinight's business wound down in the mid-1970s, and in 1980, Wright and Bedno allowed its corporate registration to lapse. Wright then continued the business as an unincorporated proprietorship. In 1994, Wright incorporated Sunlight for the purpose, among other things, of holding assets formerly belonging to Twilight, Twinight, and Edgewater. Wright is Sunlight's sole owner. Bedno is deceased.

10. Over the years, portions of the 1967 recording of "Different Strokes" have been "sampled" by various hip-hop or rap artists.

### The Sunlight Settlement and License Agreements

11. Sunlight claimed that certain hip-hop or rap artists had sampled the 1967 "Different Strokes" recording without its permission. Among those artists against whom Sunlight made that claim was Tupac Shakur, relating to his recordings "Peep Game" and "Nothing But Love."

12. After making its claim relating to the Tupac Shakur recordings, Sunlight proceeded to a negotiate settlement and license agreement that compensated Sunlight for alleged past infringements and licensed the artist and his record labels to sell records including the samples going forward. That license was a September 2, 2003 agreement between Twilight/Twinight Records, Edgewater Music, and Sunlight Records, Inc. and Amaru Entertainment, Inc. relating to the Tupac Shakur recordings of "Peep Game" and "Nothing But Love." The counter party gave good and valuable consideration to Sunlight for the settlements, licenses, and other rights granted.

13. As is stated with more particularity in the following paragraph, the September 2, 2003 agreement contained a provision in which Sunlight represented and warranted that it had

4

full power and authority to settle the claims made and to license the use of "Different Strokes" going forward. In addition, the agreement contained a provision requiring Sunlight to indemnify Amaru Entertainment, Inc. and others from and against any claims, liabilities, and expenses arising from any breach of its warranties.

14.     The September 2, 2003 agreement provided that Sunlight "represent[s] and warrant[s] that [Sunlight is] fully authorized to enter into this Release Agreement and that the alleged inclusion of the Subject Music in the Shakur Masters and the Shakur Songs and the exploitation thereof by the Amaru Parties or otherwise will not infringe upon or violate the rights of any person or entity . . . ." Sunlight further agreed to "indemnify and hold harmless the Amaru Parties and any licensee or designees from and against any and all claims, damages, liabilities, costs, and expenses (including legal costs and reasonable attorneys' fees) arising out of or related to and breach or alleged breach of the representation and warranty made by [Sunlight] in this paragraph 2(b) including, without limitation, any claim by or on behalf of Syl Johnson relating to the subject matter of this Release Agreement." The agreement defined the "Amaru Parties" as including the Universal Music Group. UMG is part of the Universal Music Group.

### Johnson's Infringement Claims

15.     On December 28, 2007, Johnson filed a *pro se* complaint against Universal Music Group and others, alleging copyright infringement based on alleged sampling of "Different Strokes" in, among other recordings, the Tupac Shakur recordings of "Peep Game" and "Nothing But Love." In his complaint, Johnson alleged that he is and has been the sole owner of the composition and 1967 master recording of "Different Strokes."

16. Johnson has also stated that license agreements entered into by Sunlight are not valid because, according to him, Sunlight did not have the right to license Twilight/Twinight recordings by Johnson.

17. Johnson's amended complaint in this matter alleges that Johnson has owned the 1967 sound recording of "Different Strokes" from the beginning. Johnson further alleges that he filed a copyright on a 1972 "re-mix" recording of "Different Strokes" in 1996. Johnson asserts that he is "unsure" whether the alleged samples at issue in this case came from the 1967 or the 1972 sound recordings.

18. Johnson's amended complaint further asserts that he "operates" Twinight Records, Inc. and Edgewater Music, Inc.

19. Johnson's Amended Complaint seeks substantial damages, including compensatory and punitive damages, as well as attorneys' fees, from UMG based on alleged copyright infringement and misappropriation of Johnson's alleged rights in "Different Strokes" through "Peep Game," and "Nothing But Love."

## COUNT I

20. UMG realleges and incorporates the allegations of paragraphs 1-19 herein.

21. Contrary to Sunlight's representations and warranties in the September 2, 2003 agreement, Johnson's lawsuit alleges that Johnson owns all rights to "Different Strokes" and is entitled to assert infringement and misappropriation claims against UMG with respect to alleged sampling in "Peep Game" and "Nothing But Love."

22. Pursuant to the September 2, 2003 agreement, Sunlight is obligated to indemnify UMG for UMG's costs of defending against Johnson's claims in this litigation, including UMG's

6

reasonable attorneys' fees. In the event Johnson were to obtain a judgment against UMG in this matter, Sunlight is further obligated to indemnify UMG for that amount.

WHEREFORE, UMG prays that the Court enter judgment in its favor and against Sunlight for all amounts that UMG may be found liable to Johnson, plus UMG's costs of litigation and its reasonable attorneys' fees.

        Respectfully submitted,

        UMG RECORDINGS, INC.

        By:   s/C. Steven Tomashefsky
              One of Their Attorneys

C. Steven Tomashefsky
William E. Parker
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, Illinois 60611
Tel:   (312) 222-9350
Fax:   (312) 840-7769
stomashefsky@jenner.com
wparker@jenner.com

**CERTIFICATE OF SERVICE**

I, C. Steven Tomashefsky, an attorney, hereby certify that, on May 12, 2008 I caused the foregoing Third-Party Complaint to be served upon the following counsel of record through the Court's ECF notification System.

Cathy A. Pilkington, Esq.
LAW OFFICES OF CATHY A. PILKINGTON
161 N. Clark St., Suite 4700
Chicago, IL  60601
    *Counsel for Plaintiff*


Leah R. Bruno, Esq.
David R. Geerdes, Esq.
SONNENSCHEIN NATH & ROSENTHAL LLP
7800 Sears Tower
233 S. Wacker Drive
Chicago, IL  60606
    *Counsel for Tupac Shakur Estate and Amaru Entertainment, Inc.*


Thomas Jirgal, Esq.
Sharon A. Ceresnie, Esq.
LOEB & LOEB
321 N. Clark St., Suite 2300
Chicago, IL  60610
    *Counsel for Will Smith*


                                        ___s/C. Steven Tomashefsky_____

1655005.1