# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JOHNSON, | ) | |
| | ) | No.: 07CV7288 |
| Plaintiff, | ) | |
| | ) | |
| | ) | Judge Aspen |
| v. | ) | Magistrate Judge Keys |
| | ) | |
| JACKSON, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT AMARU ENTERTAINMENT, INC.'S
## ANSWER AND AFFIRMATIVE DEFENSES

Defendant Amaru Entertainment, Inc. ("Amaru"), through its undersigned attorneys, for

its Answer and Affirmative Defenses to the First Amended Complaint of Plaintiff Syl Johnson

("Johnson"), hereby states as follows:

## JURISDICTION AND VENUE

1.      This action involves misappropriated or pirated samples from Johnson's musical
sound recording, Different Strokes, and claims Illinois common law misappropriation and other
state law claims, or, alternatively, copyright infringement pursuant to the copyright laws of the
United States, 17 U.S.C. § 101, *et seq.*

**ANSWER:**    Amaru admits that Plaintiff purports to assert claims that arise under Illinois

common law misappropriation and other state law claims, or, alternatively, the copyright laws of

the United States, 17 U.S.C. § 101, *et. seq.*  Amaru denies all remaining allegations in Paragraph

1.


2.      This Court has jurisdiction over this matter under 28 U.S.C. § 1367 for the state
law claims and 28 U.S.C. § 1338 (a) for the alternative federal copyright claims.

**ANSWER:**    Amaru admits that Plaintiff purports to assert claims that properly implicate the jurisdiction of this Court.  Amaru denies that Plaintiff's federal claims have merit and therefore denies that this Court has jurisdiction over the state law claims.

3.    Venue is predicated on 28 U.S.C. § 1391 and 1400(a) and venue is proper in this district in that Johnson recorded "Different Strokes" in this district and the infringing works which pirated portions of Johnson's work as described herein were and currently are distributed, marketed, offered for sale and sold in this district.  On information and belief, personal jurisdiction is proper because each Defendant, without consent or permission of the copyright owner, disseminated copyrighted works owned or controlled by Johnson.  On information and belief, illegal dissemination occurred in every jurisdiction in the United States, including the Northern District of Illinois.

**ANSWER:**    Amaru admits that venue is proper in this district.  Amaru denies all allegations in Paragraph 3 to the extent they allege that Amaru has pirated Plaintiff's work.  Amaru does not have sufficient knowledge to admit or deny the allegations regarding Plaintiff's recording of "Different Strokes" or the allegations directed to other Defendants.  Accordingly, Amaru denies these allegations and demands strict proof thereof.  Amaru denies all remaining allegations in Paragraph 3.

## PARTIES

4.    Johnson is a 72-year-old adult citizen of the State of Illinois.  He is engaged in the business of musical performance under the assumed business name of Syl-Zel Music.  Johnson also operates two Illinois corporations, Twinight Records, Inc. and Edgewater Music, Inc. and is engaged in the business of musical composition and publishing.

**ANSWER:**    Amaru does not have sufficient knowledge to admit or deny the allegations of Paragraph 4.  Accordingly, Amaru denies each and every allegation of Paragraph 4 and demands strict proof thereof.

### Michael Jackson

5.    Upon information and belief, defendant Michael Jackson ("Jackson") is an adult citizen of the State of California.  He is engaged in the business of music composition,

publishing and performance.  On information and belief Michael Jackson engages in publishing of music under the assumed name Mijac Music.  Mijac Music is an assumed name for Michael Jackson operating as a music publisher.  The infringing work at issue in this lawsuit is entitled "Blood On The Dance Floor, Refugee Camp Edit."

**ANSWER:**     The allegations of Paragraph 5 are not directed to Amaru, and Amaru does not have sufficient knowledge to admit or deny the allegations of Paragraph 5, which are on that basis denied.

### Will Smith

6.     Upon information and belief, defendant Will Smith ("Smith") is an adult citizen of the State of California.  He is engaged in the business of music composition and performance.  The infringing work by Smith at issue in this lawsuit is entitled "Who Stole The DJ?"

**ANSWER:**     The allegations of Paragraph 6 are not directed to Amaru, and Amaru does not have sufficient knowledge to admit or deny the allegations of Paragraph 6, which are on that basis denied.

### Tupac Shakur Estate

7.     Afeni Shakur, one of the co-administrators of the Estate of Tupac Shakur is a citizen of the State of Georgia ("the Tupac Shakur Estate").  Co-administrator, Richard Fishbein, is a citizen of the State of New York.  The works involving the Tupac Shakur Estate are "Peep Game" and "Nothin' But Love."

**ANSWER:**     Amaru admits that Afeni Shakur is a citizen of the State of Georgia.  Amaru also admits that Afeni Shakur and Richard Fischbein were co-admistrators of the Tupac Shakur Estate.  Amaru does not have sufficient knowledge to admit or deny the allegations of Paragraph 7 that Richard Fischbein is a citizen of New York and therefore denies such allegation.  Amaru denies the allegation that "Peep Game" and "Nothin' But Love" involve the Tupac Shakur Estate.  Further answering, Amaru states that Tupac Shakur recorded both "Peep Game" and "Nothin But Love."

### Lawrence Parker - KRS One

8.      Lawrence Parker, also known as Larry Parker, and professionally known as KRS One ("Parker"), is an adult citizen of the State of California or of the State of New York.  Parker is a rap music artist who is engaged in the business of musical composition and performance. The work involving Parker at issue in this lawsuit is entitled "Criminal Minded."

**ANSWER:**    The allegations of Paragraph 8 are not directed to Amaru, and Amaru does not have sufficient knowledge to admit or deny the allegations of Paragraph 8, which are on that basis denied.

### Pedro Zayas and Christoper Ries

9.      Defendant Pedro Zayas is professionally known as Peedi Crakk and also as Peedi Peedi ("Zayas").   Upon information and belief, Zayas is an adult citizen of the State of Pennsylvania.   He is engaged in the business of musical composition and performance and performed the sound recording for "Criminal Background" at issue in this lawsuit.

**ANSWER:**    The allegations of Paragraph 9 are not directed to Amaru, and Amaru does not have sufficient knowledge to admit or deny the allegations of Paragraph 9, which are on that basis denied.

10.     Defendant Christopher Ries is professionally known as Young Chris ("Ries"). Upon information and belief, Ries is an adult citizen of the State of Pennsylvania.  He is engaged in the business of musical composition and performance and performed the sound recording for "Criminal Background" at issue in this lawsuit.

**ANSWER:**    The allegations of Paragraph 10 are not directed to Amaru, and Amaru does not have sufficient knowledge to admit or deny the allegations of Paragraph 10, which are on that basis denied.

### Sony BMG Music Entertainment, Inc.

11.     Defendant Sony BMG Music Entertainment, Inc. is a Delaware general partnership with its principal place of business in New York ("Sony").   Said defendant is engaged in the business of manufacture, distribution, and sale of music performances in the forms of records, tapes, and compact discs, among other media.

**ANSWER:**    The allegations of Paragraph 11 are not directed to Amaru, and Amaru does not have sufficient knowledge to admit or deny the allegations of Paragraph 11, which are on that basis denied.

### UMG Recordings, Inc.

12.    Defendant UMG Recordings, Inc. is a Delaware corporation with its principal place of business in New York ("UMG").  On information and belief UMG does business as Universal Music Group.  Said defendant is engaged in the business of manufacture, distribution, and sale of music performances in the forms of records, tapes, and compact discs, among other media.  Said defendant is the manufacturer, distributor and seller of certain the recordings at issue in this lawsuit:  Nothin' But Love and Peep Game.

**ANSWER:**    Amaru admits that UMG is engaged in the business of manufacture, distribution and sale of musical performances in various media.  Amaru does not have sufficient knowledge to admit or deny the remaining allegations of Paragraph 12, which are on that basis denied.

### Capital Records, Inc.

13.    Defendant Capitol Records, Inc. is a Delaware corporation with its principal place of business in the State of New York ("Capitol Records").  Its parent corporation is EMI, formerly Grammaphone Record Company.  On information and belief, Capital owns and exploits the master recording to a song entitled Real Niggaz Don't Die which contains a misappropriated or pirated sample from Different Strokes.

**ANSWER:**    The allegations of Paragraph 13 are not directed to Amaru, and Amaru does not have sufficient knowledge to admit or deny the allegations of Paragraph 13, which are on that basis denied.

### Zomba Enterprises, Inc.

14.    Zomba Enterprises, Inc. is a New York corporation with its principal place of business in New York ("Zomba Enterprises").  On information and belief, Zomba Enterprises is the owner of the master recording and copyright for the work at issue in this lawsuit alleged to contain a pirated or misappropriated sample entitled "Criminal Minded" and "Criminal Background".

**ANSWER:**     The allegations of Paragraph 14 are not directed to Amaru, and Amaru does not have sufficient knowledge to admit or deny the allegations of Paragraph 14, which are on that basis denied.

### Amaru Entertainment, Inc.

15.     Defendant Amaru Entertainment, Inc. is a Delaware corporation with its principal place of business in Georgia ("Amaru").  Upon information and belief, said defendant is engaged in the business of manufacture, distribution and sale of music performances in the form of records, tapes, and compact discs, among other media.  Said defendant is the manufacturer, distributor, and seller of recordings for the Tupac Shakur Estate.

**ANSWER:**     Amaru admits that it is a Delaware corporation, but denies that its principal place of business is in Georgia.  Amaru denies that it is a manufacturer or distributor of musical performances but admits it is involved in the distribution and sales of recordings for the Tupac Shakur Estate.

### NWA, ANDRE YOUNG AND ANTOINE CARRABY, COMPTON RECORDS

16.     N.W.A is a partnership which operated between 1991 and 2003 and was composed of Tre Curry (the D.O.C.), Andre Young (Dr.DRE), Eric Wright (Eazy-E), Dine Fekaris, Lorenzo Patterson (M.C. Ren), Antoine Carraby (DJ Yella), and Nick Zesses ("NWA"). None of NWA's partners are Illinois citizens.  Compton Records a/k/a Ruthless Records is a California corporation with its principal place of business in California.  The work involving these defendants is Real Niggaz Don't Die.

**ANSWER:**     The allegations of Paragraph 16 are not directed to Amaru, and Amaru does not have sufficient knowledge to admit or deny the allegations of Paragraph 16, which are on that basis denied.

### JOHNSON'S SONG - DIFFERENT STROKES

17.     On or about July 16, 1967, Johnson hired writers, John Cameron and John Zachary ("the writers"), who created and wrote the musical composition ("the composition") entitled "Different Strokes" in their capacity as songwriters.  The musical composition was wholly original and is copyrightable subject matter.

**ANSWER:**     Amaru does not have sufficient knowledge to admit or deny the allegations of Paragraph 17.   Accordingly, Amaru denies each and every allegation of Paragraph 17, and demands strict proof thereof.

18.     On August 14, 1967, the writers registered the copyright in the musical composition "Different Strokes" with the United States Copyright Office, and secured Certificate of Registration No. EU 9873.  The composition copyright in the words and music was registered to John Cameron and John Zachary.

**ANSWER:**     Amaru does not have sufficient knowledge to admit or deny the allegations of Paragraph 18.   Accordingly, Amaru denies each and every allegation of Paragraph 18, and demands strict proof thereof.

19.     On or about July 16, 1967, Johnson recorded a sound recording entitled "Different Strokes" at a recording studio in Chicago, Illinois.   During the recording session, Johnson experimented with different creative sound combinations and finally settled on the idea to open the song with a combined grunt, laugh and drum beat (the "Ensemble").  The Ensemble gave the "Different Strokes" recording great distinction and popular appeal.  In 1967, "Different Strokes" was released on a 45-RPM in 1967 through Twilight Records ("Twilight").

**ANSWER:**     Amaru does not have sufficient knowledge to admit or deny the allegations of Paragraph 19.   Accordingly, Amaru denies each and every allegation of Paragraph 19, and demands strict proof thereof.

20.     In or about March 1972, Johnson recorded a re-mix version of "Different Strokes" at a recording studio in Chicago, Illinois.  The 1972 re-mix version included the Ensemble as to which Johnson re-recorded his grunt.  Johnson did the editing, sound remixing, equalization, balancing and addition of new sound material which was wholly original with Johnson.

**ANSWER:**     Amaru does not have sufficient knowledge to admit or deny the allegations of Paragraph 20.   Accordingly, Amaru denies each and every allegation of Paragraph 20, and demands strict proof thereof.

21.     The 1972 re-mix version of Different Strokes was released in 1986 through P-Vine records as an LP Album.

**ANSWER:**     Amaru does not have sufficient knowledge to admit or deny the allegations of Paragraph 21.   Accordingly, Amaru denies each and every allegation of Paragraph 21, and demands strict proof thereof.


22.     Johnson obtained a written assignment of the composition copyright from John Zachary effective January 1, 1995.  In 1995, John Cameron was deceased, and Johnson obtained a written assignment of Cameron's interest in the composition copyright from Jennifer Cameron, John Cameron's daughter.

**ANSWER:**     Amaru does not have sufficient knowledge to admit or deny the allegations of Paragraph 22.   Accordingly, Amaru denies each and every allegation of Paragraph 22, and demands strict proof thereof.


23.     On February 26, 1996, Johnson registered his copyright in "Sock It To Me" with the United States Copyright Office and deposited a copy thereof which included the 1972 re-mix of "Different Strokes." Johnson secured Certificate of Registration No. SR0000360-720.

**ANSWER:**     Amaru does not have sufficient knowledge to admit or deny the allegations of Paragraph 23.   Accordingly, Amaru denies each and every allegation of Paragraph 23, and demands strict proof thereof.


24.     On February 14, 1997, Johnson registered "Surrounded" with the United States Copyright Office.

**ANSWER:**     Amaru does not have sufficient knowledge to admit or deny the allegations of Paragraph 24.   Accordingly, Amaru denies each and every allegation of Paragraph 24, and demands strict proof thereof.


25.     Johnson deposited a copy thereof which also included the 1972 re-mix version of Different Strokes.  Johnson obtained Certificate No. SRU-360-891.

**ANSWER:**    Amaru does not have sufficient knowledge to admit or deny the allegations of Paragraph 25.  Accordingly, Amaru denies each and every allegation of Paragraph 25, and demands strict proof thereof.


26.    The 1972 re-mix version of "Different Strokes" features the Ensemble as the beginning of the song with Johnson as the vocalist who provided the "grunt" portion of the Ensemble.

**ANSWER:**    Amaru does not have sufficient knowledge to admit or deny the allegations of Paragraph 26.  Accordingly, Amaru denies each and every allegation of Paragraph 26, and demands strict proof thereof.


## DIGITAL SAMPLING TECHNOLOGY

27.    Digital sampling technology allows the copying of a recorded sound or series of sounds and incorporation of the fragment into the new work.

**ANSWER:**    To the extent Paragraph 27 reflects an allegation of the amended complaint as compared to a prefatory comment, Amaru does not have sufficient knowledge to admit or deny the allegations of Paragraph 27.


28.    The process of digital recording changes sound waves into digital information; specifically, a sound is sent to a transducer (such as a microphone) which converts the sound wave into voltage variations.  The signal is then sent to an analog-to-digital converter.  The converter changes the analog signal into digital information by first measuring the analog voltage at regular intervals.  The resulting "bits" are assigned a binary number representing the intensity of the signal at that time.  A computer stores or processes the resulting sample information.  To hear the sample, the process is reversed so that the voltage variations are converted into audible sound waves.

**ANSWER:**    To the extent Paragraph 28 reflects an allegation of the amended complaint as compared to a prefatory comment, Amaru does not have sufficient knowledge to admit or deny the allegations of Paragraph 28.

29.    The process whereby music samples are pirated and recorded onto the defendant's work requires that the defendant first make a sound recording, then intentionally and deliberately record the music sample onto the defendant's sound recording.  In some cases, the music sample is manipulated by slowing it down, changing the pitch, speed, etc. By engaging in this process, the defendant achieves distinction in the defendant's sound recording without having to spend the resources on creativity to develop the distinctive sound.

**ANSWER:**    To the extent Paragraph 29 reflects an allegation of the amended complaint as compared to a prefatory comment, Amaru denies all allegations in Paragraph 29 to the extent they allege that Amaru has pirated music samples.  Amaru does not have sufficient knowledge to admit or deny the remaining allegations of Paragraph 29.  Accordingly, Amaru denies each and every remaining allegation of Paragraph 29, and demands strict proof thereof.

## PARAGRAPHS 30-65

**ANSWER:**    The allegations of Paragraphs 30-65 are not directed to Amaru, and Amaru does not have sufficient knowledge to admit or deny the allegations of Paragraphs 30-65, which are on that basis denied.  To the extent Paragraphs 30-65 could be deemed to contain allegations directed to Amaru, Amaru denies all such allegations.

## PEEP GAME

66.    Tupac Shakur (among others) composed a song entitled "Peep Game".  Tupac Shakur performed Peep Game and a sound recording was made in approximately 1993.

**ANSWER:**    Admitted.

67.    Peep Game was released on February 16, 1993 by Interscope Records on an album called Strictly 4 My N.I.G.G.A.Z.  The producer was Bobby Ervin.  The distributing label is Interscope and Amaru Entertainment, Inc.  Interscope and Amaru are owned by UMG.

**ANSWER:**    Amaru admits that Peep Game was released in 1993 on an album called Strictly 4 My N.I.G.G.A.Z.  Amaru also admits that Bobby Ervin was a producer.  Amaru denies all remaining allegations in Paragraph 67.

68.    The Peep Game sound recording includes the "Different Strokes" Ensemble twice at approximately 2.55 minutes into the track.

**ANSWER:**    Amaru does not have sufficient knowledge to admit or deny the allegations of Paragraph 68.   Accordingly, Amaru denies each and every allegation of Paragraph 68, and demands strict proof thereof.

69.    The Ensemble was taken from either the 1967 or the 1972 remix version of Different Strokes.

**ANSWER:**    Amaru does not have sufficient knowledge to admit or deny the allegations of Paragraph 69.   Accordingly, Amaru denies each and every allegation of Paragraph 69, and demands strict proof thereof.

70.    The inclusion in Peep Game of the Ensemble from Different Strokes was done without Johnson's knowledge or permission.

**ANSWER:**    Amaru does not have sufficient knowledge to admit or deny the allegations of Paragraph 70.   Accordingly, Amaru denies each and every allegation of Paragraph 70, and demands strict proof thereof.

71.    On information and belief, UMG is the owner of the master recording of the album, Strickly 4 My N.I.G.G.A.Z, which includes "Peep Game" on one track.   UMG is responsible for and has contributed to the mass and widespread sale and dissemination of Peep Game.

**ANSWER:**    Amaru admits that UMG owns the master recording of the album Strickly 4 My N.I.G.G.A.Z.   Amaru does not have sufficient knowledge to admit or deny the remaining allegations of Paragraph 71, which are on that basis denied.

72.    The copyright notice for Peep Game failed to mention Johnson's contribution vis-avis the pirated or misappropriated sample.

**ANSWER:**    Amaru admits that the copyright notice for "Peep Game" does not mention any contribution by Johnson.  Amaru denies all remaining allegations in Paragraph 72.


73.    The infringement or misappropriation described herein is continuing, but Johnson did not learn of it until 2005.

**ANSWER:**    Amaru denies all allegations in Paragraph 73 to the extent they allege that Amaru has infringed or misappropriated Plaintiff's work.  Amaru does not have sufficient knowledge to admit or deny the allegations regarding what or when Plaintiff learned of "Peep Game." Accordingly, Amaru denies these allegations and demands strict proof thereof.  Amaru denies all remaining allegations in Paragraph 73.


## NOTHIN' BUT LOVE

74.    Tupac Shakur composed a song entitled Nothin' But Love and performed and recorded Nothin' But Love in approximately 1996.

**ANSWER:**    Admitted.


75.    In 1997, Nothin' But Love was released on an album called RU Still Down (Remember Me).

**ANSWER:**    Admitted.


76.    The sound recording of Nothin' But Love included the pirated or misappropriated sample of the Ensemble from Johnson's sound recording of Different Strokes.  The pirated or misappropriated sample appears twice at approximately the 3:30 minute mark in the Nothin' But Love sound recording.

**ANSWER:**    Amaru denies all allegations in Paragraph 76 to the extent they allege that Amaru has pirated or misappropriated Plaintiff's work.  Amaru does not have sufficient knowledge to admit or deny the remaining allegations of Paragraph 76.  Accordingly, Amaru denies each and every allegation of Paragraph 76, and demands strict proof thereof.

77.    The sample was taken from either the 1967 or the 1972 sound recording of Different Strokes.

**ANSWER:**    Amaru does not have sufficient knowledge to admit or deny the allegations of Paragraph 77.    Accordingly, Amaru denies each and every allegation of Paragraph 77, and demands strict proof thereof.

78.    Johnson did not give permission for the inclusion of any portion of the 1967 or the 1972 Different Strokes' sound recording in Nothin' But Love.

**ANSWER:**    Amaru does not have sufficient knowledge to admit or deny the allegations of Paragraph 78.    Accordingly, Amaru denies each and every allegation of Paragraph 78, and demands strict proof thereof.

79.    The copyright notice for Nothin' But Love failed to mention Johnson's contribution vis-à-vis the pirated or misappropriated sample.

**ANSWER:**    Amaru admits that the copyright notice for "Nothin' But Love" does not mention any contribution by Johnson.    Amaru denies all remaining allegations in Paragraph 79.

80.    On information and belief, UMG is responsible for and has contributed to the mass and widespread sale and dissemination of Nothin' But Love.

**ANSWER:**    Denied.

81.    In 2005, Johnson first learned that by Nothin' But Love contained a pirated or misappropriated sample of the Different Strokes sound recording.    The infringement or misappropriation by Nothin' But Love is continuing.

**ANSWER:**    Amaru denies all allegations in Paragraph 73 to the extent they allege that Amaru has pirated or misappropriated Plaintiff's work.    Amaru does not have sufficient knowledge to admit or deny the allegations regarding what or when Plaintiff learned of "Nothin' But Love." Accordingly, Amaru denies these allegations and demands strict proof thereof.    Amaru denies all remaining allegations in Paragraph 81.

## PARAGRAPHS 82-201

**ANSWER:**     The allegations of Paragraphs 82-201 are not directed to Amaru, and Amaru does not have sufficient knowledge to admit or deny the allegations of Paragraphs 82-201, which are on that basis denied.  To the extent Paragraphs 82-201 do contain allegations directed to Amaru, Amaru denies all such allegations.

## COUNT XXII - MISAPPROPRIATION-NOTHIN' BUT LOVE

202.     Paragraph Nos. 1 through 201 are incorporated and realleged as though fully set forth herein.

**ANSWER:**     Amaru's answers to Paragraphs 1-201 are incorporated and realleged as though fully set forth herein.

203.     The Ensemble contained in the 1967 sound recording of Different Strokes and in the 1972 remix of Different Strokes was original and included Johnson's voice recording. Johnson had a legal right to control the use of his voice recording.

**ANSWER:**     Amaru does not have sufficient knowledge to admit or deny the allegations of Paragraph 203.  Accordingly, Amaru denies each and every allegation of Paragraph 203, and demands strict proof thereof.

204.     The Tupac Shakur Estate, Amaru and others unknown at this time, had access to the 1967 sound recording of Different Strokes and to the 1972 remix because it was commercially available in various mediums.

**ANSWER:**     Amaru does not have sufficient knowledge to admit or deny the allegations of Paragraph 204.  Accordingly, Amaru denies each and every allegation of Paragraph 204, and demands strict proof thereof.

205.     Defendants misappropriated Johnson's voice recording and misappropriated the Ensemble which was the embodiment of Johnson's original creative work.

**ANSWER:**     Denied.

206.    Johnson contributed the expenses of recording as well as his vocal talent, creativity, time and labor to the creation of the Ensemble.  Johnson benefits commercially from the Ensemble to the extent that he negotiates licenses to artists who want to use it in their works.

**ANSWER:**    Amaru does not have sufficient knowledge to admit or deny the allegations of

Paragraph 206.  Accordingly, Amaru denies each and every allegation of Paragraph 206, and

demands strict proof thereof.


207.    As a result of taking Johnson's voice recording and the Different Strokes Ensemble, Defendants gave the work distinction while avoiding expending the creative resources necessary to develop the distinct sound that Defendants' were able to obtain without obtaining Johnson's consent or paying him for its use.

**ANSWER:**    Denied.


208.    As a direct and proximate result of the misappropriation described herein, defendants and each of them have obtained unlawful profits by virtue of the unlawful misappropriation which exceeds the sum of $75,000.00.

**ANSWER:**    Denied.


## COUNT XXIII - UNJUST ENRICHMENT- NOTHIN' BUT LOVE

209.    Paragraph Nos. 1 through 208 are incorporated and realleged as though fully set forth herein.

**ANSWER:**    Amaru's answers to Paragraphs 1-208 are incorporated and realleged as though

fully set forth herein.


210.    Defendants have obtained a benefit by the use of the misappropriated samples which have enhanced their musical work, Nothin' But Love, which benefit includes profits from sales and distribution of the work, have obtained and own a valuable sound recording copyright in the work, issued and been compensated for licenses in the work, and other benefits, which would be unjust for them to retain.

**ANSWER:**    Denied.

## COUNT XXIV-FEDERAL COPYRIGHT INFRINGEMENT
## <u>NOTHIN' BUT LOVE</u>

211.    Paragraphs One through 210 are incorporated and realleged as though fully stated herein.

**ANSWER:**    Amaru's answers to Paragraphs 1-210 are incorporated and realleged as though fully set forth herein.

212.    In the event that the evidence establishes that Defendants or any of them took the Different Strokes Ensemble from the 1972 re-mix sound recording, and that such re-mix is sufficiently distinct to be entitled to federal copyright protection, then Johnson is the owner of the sound recording copyright for Different Strokes and Johnson registered his ownership of the sound recording copyright with the United States Copyright Office as described herein.

**ANSWER:**    The allegations of  Paragraph 212 state conclusions of law and not any factual allegations, for which no answer is required.  To extent Paragraph 213 alleges factual allegations, Amaru denies each and every allegation of Paragraph 212.

213.    Among the exclusive rights granted to Johnson under the Copyright Act are the exclusive rights to reproduce the copyrighted recordings and to distribute the copyrighted recordings to the public and to create derivative works.

**ANSWER:**    The allegations of  Paragraph 213 state conclusions of law and not any factual allegations, for which no answer is required.  To extent Paragraph 213 alleges factual allegations, Amaru denies each and every allegation of Paragraph 213.

214.    Johnson has placed proper notice of copyright pursuant to 17 U.S.C. § 401 on the album cover of "Surrounded".

**ANSWER:**    The allegations of  Paragraph 214 state conclusions of law and not any factual allegations, for which no answer is required.  To extent Paragraph 214 alleges factual allegations, Amaru denies each and every allegation of Paragraph 214.

215.    This 1972 re-mix version of Different Strokes was widely available and accessible to each defendant.

**ANSWER:**     Amaru does not have sufficient knowledge to admit or deny the allegations of

Paragraph 215.   Accordingly, Amaru denies each and every allegation of Paragraph 215, and

demands strict proof thereof.

216.    On information and belief, the defendants and each of them, without the permission, authority, or license from Johnson and without any attribution to Johnson, have wrongfully, knowingly, and intentionally copied, reproduced, distributed, and sold throughout the world, including in this district, works which include the Ensemble and/or a sample of Johnson's 1972 sound recording of Different Strokes in violation of Johnson's copyright in Nothin' But Love.

**ANSWER:**     The allegations of  Paragraph 216 state conclusions of law and not any factual

allegations, for which no answer is required.  To extent Paragraph 216 alleges factual allegations,

Amaru denies each and every allegation of Paragraph 216.  Amaru specifically denies that it has

knowingly and intentionally distributed any works in violation of Plaintiff's alleged copyright

rights.

217.    On information and belief, each defendant has, in turn, distributed and sold numerous copies of an infringing work which unlawfully includes a portion of Johnson's 1972 sound recording in Different Strokes throughout the world.  Each violation of Johnson's rights to the 1972 sound recording constitutes a separate and distinct act of copyright infringement.

**ANSWER:**     The allegations of  Paragraph 217 state conclusions of law and not any factual

allegations, for which no answer is required.  To extent Paragraph 217 alleges factual allegations,

Amaru denies each and every allegation of Paragraph 217.   Amaru specifically denies all

allegations in Paragraph 217 to the extent they allege that Amaru has infringed or is infringing

Plaintiff's work.

218.    Defendants' continuing infringement of Johnson's rights in the 1972 re-mix sound recordings has caused and is continuing to cause irreparable injury, loss and damages to Johnson, and unless defendants are restrained from continuing their wrongful infringement of Johnson's rights, the irreparable damages to Johnson will increase without an adequate remedy at law.

**ANSWER:**    The allegations of Paragraph 218 state conclusions of law and not any factual allegations, for which no answer is required.  To extent Paragraph 218 alleges factual allegations, Amaru denies each and every allegation of Paragraph 218.   Amaru specifically denies all allegations in Paragraph 218 to the extent they allege that Amaru has infringed or is infringing Plaintiff's work.

219.    As a result of the infringements of Johnson's rights in said work as described herein, defendants have obtained great income and gains and Johnson has suffered severe and actual financial losses due to the defendants' willful appropriation of Johnson's said composition and recording.

**ANSWER:**    Denied.

220.    The acts of infringement described herein have been willful, intentional, and in disregard of and with indifference to Johnson's rights.

**ANSWER:**    Denied.

## COUNT XXV - VICARIOUS COPYRIGHT INFRINGEMENT
## NOTHIN' BUT LOVE

221.    Paragraphs One through 220 are incorporated and realleged as though fully set forth herein.

**ANSWER:**    Amaru's answers to Paragraphs 1-220 are incorporated and realleged as though fully set forth herein.

222.    Defendants are liable as vicarious infringers for the copyright infringement committed by taking the Different Strokes Ensemble.

**ANSWER:**    Denied.

223.    At all relevant times, Defendants had the right and ability to control and/or supervise the infringing conduct, and defendants have had a direct financial interest and have derived substantial financial benefit from the infringements of Johnson's copyrighted sound recording.

**ANSWER:**    Denied.

224.    Defendants have derived substantial benefit from the infringement by selling and distributing significant numbers of their songs without having to pay Johnson anything for his sound recording work.

**ANSWER:**    Denied.

225.    Each violation of Johnson's rights to his copyrighted sound recording constitutes a separate and distinct act of copyright infringement.  Through the conduct described herein, Defendants are vicariously liable for each act of infringement described herein.

**ANSWER:**    Denied.

## COUNT XXVI - MISAPPROPRIATION-PEEP GAME

226.    Paragraph Nos. 1 through 225 are incorporated and realleged as though fully set forth herein.

**ANSWER:**    Amaru's answers to Paragraphs 1-225 are incorporated and realleged as though fully set forth herein.

227.    The Ensemble contained in the 1967 sound recording of Different Strokes and in the 1972 remix of Different Strokes was original and included Johnson's voice recording. Johnson had a legal right to control the use of his voice recording.

**ANSWER:**    Amaru does not have sufficient knowledge to admit or deny the allegations of Paragraph 227.  Accordingly, Amaru denies each and every allegation of Paragraph 227, and demands strict proof thereof.

228.    Defendants had access to the 1967 sound recording of Different Strokes and to the 1972 remix because it was commercially available in various mediums.

**ANSWER:**    Amaru does not have sufficient knowledge to admit or deny the allegations of Paragraph 228.  Accordingly, Amaru denies each and every allegation of Paragraph 228, and demands strict proof thereof.

229.    Defendants misappropriated Johnson's voice recording and misappropriated the Ensemble which was the embodiment of Johnson's original creative work.

**ANSWER:**    Denied.


230.    Johnson contributed the expenses of recording as well as his vocal talent, creativity, time and labor to the creation of the Ensemble.  Johnson benefits commercially from the Ensemble to the extent that he negotiates licenses to artists who want to use it in their works.

**ANSWER:**    Amaru does not have sufficient knowledge to admit or deny the allegations of

Paragraph 230.  Accordingly, Amaru denies each and every allegation of Paragraph 230, and

demands strict proof thereof.


231.    As a result of taking Johnson's voice recording and the Different Strokes Ensemble, Defendants and each of them gave their work, Peep Game, distinction while avoiding expending the creative resources necessary to develop the distinct sound that Defendants' were able to obtain without obtaining Johnson's consent or paying him for its use.

**ANSWER:**    Denied.


232.    As a direct and proximate result of the misappropriation described herein, defendants and each of them have obtained unlawful profits by virtue of the unlawful misappropriation which exceeds the sum of $75,000.00.

**ANSWER:**    Denied.


## COUNT XXVII - UNJUST ENRICHMENT- PEEP GAME

233.    Paragraph Nos. 1 through 232 are incorporated and realleged as though fully set forth herein.

**ANSWER:**    Amaru's answers to Paragraphs 1-232 are incorporated and realleged as though

fully set forth herein.


234.    As described herein, Defendants have obtained a benefit by the use of the misappropriated samples which have enhanced their musical works and which benefit includes profits from sales and distribution of the work, Peep Game, have obtained and own a valuable sound recording copyright in the work, issued and been compensated for licenses in the work, and other benefits, which would be unjust for them to retain.

**ANSWER:**     Denied.


## COUNT XXVIII-FEDERAL COPYRIGHT INFRINGEMENT
## PEEP GAME

235.     Paragraphs One through 234 are incorporated and realleged as though fully stated herein.

**ANSWER:**     Amaru's answers to Paragraphs 1-234 are incorporated and realleged as though

fully set forth herein.


236.     In the event that the evidence establishes that Defendants or any of them took the Different Strokes Ensemble from the 1972 re-mix sound recording, and that such re-mix is sufficiently distinct to be entitled to federal copyright protection, then Johnson is the owner of the sound recording copyright for Different Strokes and Johnson registered his ownership of the sound recording copyright with the United States Copyright Office as described herein.

**ANSWER:**     The allegations of  Paragraph 236 state conclusions of law and not any factual

allegations, for which no answer is required.  To extent Paragraph 236 alleges factual allegations,

Amaru denies each and every allegation of Paragraph 236.


237.     Among the exclusive rights granted to Johnson under the Copyright Act are the exclusive rights to reproduce the copyrighted recordings and to distribute the copyrighted recordings to the public and to create derivative works.

**ANSWER:**     The allegations of Paragraph 237 state conclusions of law and not any factual

allegations, for which no answer is required.  To extent Paragraph 237 alleges factual allegations,

Amaru denies each and every allegation of Paragraph 237.


238.     Johnson has placed proper notice of copyright pursuant to 17 U.S.C. § 401 on the album cover of "Surrounded".

**ANSWER:**     The allegations of Paragraph 238 state conclusions of law and not any factual

allegations, for which no answer is required.  To extent Paragraph 238 alleges factual allegations,

Amaru denies each and every allegation of Paragraph 238.

239.   This 1972 re-mix version of Different Strokes was widely available and accessible to each defendant.

**ANSWER:**   Amaru does not have sufficient knowledge to admit or deny the allegations of

Paragraph 239.   Accordingly, Amaru denies each and every allegation of Paragraph 239, and

demands strict proof thereof.


240.   On information and belief, the defendants and each of them, without the permission, authority, or license from Johnson and without any attribution to Johnson, have wrongfully, knowingly, and intentionally copied, reproduced, distributed, and sold throughout the world, including in this district, works which include the Ensemble and/or a sample of Johnson's 1972 sound recording of Different Strokes in violation of Johnson's copyright in Peep Game.

**ANSWER:**   Denied.


241.   On information and belief, each defendant has, in turn, distributed and sold numerous copies of an infringing work which unlawfully includes a portion of Johnson's 1972 sound recording in Different Strokes throughout the world.   Each violation of Johnson's rights to the 1972 sound recording constitutes a separate and distinct act of copyright infringement.

**ANSWER:**   Denied.


242.   Defendants' continuing infringement of Johnson's rights in the 1972 re-mix sound recordings has caused and is continuing to cause irreparable injury, loss and damages to Johnson, and unless defendants are restrained from continuing their wrongful infringement of Johnson's rights, the irreparable damages to Johnson will increase without an adequate remedy at law.

**ANSWER:**   Denied.


243.   As a result of the infringements of Johnson's rights in said work as described herein, defendants have obtained great income and gains and Johnson has suffered severe and actual financial losses due to the defendants' willful appropriation of Johnson's said composition and recording.

**ANSWER:**   Denied.


244.   The acts of infringement described herein have been willful, intentional, and in disregard of and with indifference to Johnson's rights.

**ANSWER:**    Denied.


## COUNT XXIX - VICARIOUS COPYRIGHT INFRINGEMENT
## PEEP GAME

245.    Paragraphs One through 244 are incorporated and realleged as though fully set forth herein.

**ANSWER:**    Amaru's answers to Paragraphs 1-244 are incorporated and realleged as though

fully set forth herein.


246.    Tupac Shakur Estate, Amaru and/or UMG are liable as vicarious infringers for the copyright infringement committed by taking the Different Strokes Ensemble.

**ANSWER:**    Denied.


247.    At all relevant times, Defendants had the right and ability to control and/or supervise the infringing conduct, and defendants have had a direct financial interest and have derived substantial financial benefit from the infringements of Johnson's copyrighted sound recording.

**ANSWER:**    Denied.


248.    Defendants have derived substantial benefit from the infringement by selling and distributing significant numbers of their songs without having to pay Johnson anything for his sound recording work.

**ANSWER:**    Denied.


249.    Each violation of Johnson's rights to his copyrighted sound recording constitutes a separate and distinct act of copyright infringement.  Through the conduct described herein, Defendants are vicariously liable for each act of infringement described herein.

**ANSWER:**    Denied.


## AFFIRMATIVE DEFENSES

### First Affirmative Defense
### (Release)

Plaintiff's claims are barred because of the existence of a valid and enforceable releases

that release Amaru for any and all liability in connection with Plaintiff's claims. As of July 10, 2007, Plaintiff entered into Settlement Agreement and Full Release with Peter Wright, the Wright Group, Sunlight Records, Inc., Twinight Records, Inc., Edgewater Music, Inc., and Midday Music. As of September 2, 2003, Amaru entered into a Settlement and Release Agreement with Twilight/Twinight Records, Edgewater Music, and Sunlight Records, Inc. These agreements bar Plaintiff's claims.

### Second Affirmative Defense
**(Fair Use)**

Plaintiff's claims are barred because any use by Amaru of any work of Plaintiff's was a fair use under the copyright laws.

### Third Affirmative Defense
**(Express License)**

Plaintiff's claims are barred because any use by Amaru of any work of Plaintiff's was pursuant to an express license.

### Fourth Affirmative Defense
**(Implied License)**

Plaintiff's claims are barred because any use by Amaru of any work of Plaintiff's was pursuant to an implied license.

### Fifth Affirmative Defense
**(Statute of Limitations)**

Plaintiff's claims are barred, in whole or in part, under the applicable statute of limitations.

### Sixth Affirmative Defense
**(Copyright Act Requirements)**

Plaintiff is not entitled to recovery under any of the provisions of the Copyright Act of 1976, 17 U.S.C. in that Plaintiff has failed to comply with the applicable requirements.

### Seventh Affirmative Defense
**(Abandonment)**

Plaintiff's claims are barred because Plaintiff has abandoned the copyright at issue.

### Eighth Affirmative Defense
**(Waiver)**

Plaintiff's claims are barred by the doctrine of waiver.

### Ninth Affirmative Defense
**(Laches)**

Plaintiff's claims are barred by the doctrine of laches.

### Tenth Affirmative Defense
**(Estoppel)**

Plaintiff's claims are barred based on the doctrine of estoppel.

### Eleventh Affirmative Defense
**(Unclean Hands)**

Plaintiff's claims are barred because of Plaintiff's unclean hands.

### Twelfth Affirmative Defense
**(Failure to Mitigate Damages)**

Plaintiff's claims are barred because of Plaintiff's failure to mitigate its damages, if any.

### Thirteenth Affirmative Defense
**(Failure to State a Claim)**

Plaintiff's claims are barred because the Complaint fails to state a claim upon which relief can be granted.

### Fourteenth Affirmative Defense
**(de Minimis Infringement)**

Plaintiff's claims are barred because any alleged infringement of the work at issue was *de minimis*, if at all.

### Fifteenth Affirmative Defense
**(Acquiescence)**

Plaintiff's claims are barred because of Plaintiff's acquiescence.

## <u>Sixteenth Affirmative Defense</u>
**(Consent)**

Plaintiff's claims are barred because of Plaintiff's consent.

Amaru reserves the right to rely on all further affirmative defenses that become available or appear during discovery proceedings in this action, and Amaru reserves the right to amend this Answer for the purpose of asserting any such additional affirmative defenses.

Dated: May 15, 2008                Respectfully submitted by,


                                   /s/ David R. Geerdes
                                   One of the attorneys Amaru Entertainment, Inc.

Eric J. Farber (*Pro Hac Vice* Applicant)      Leah R. Bruno (ARDC No. 6269469)
Kevin F. Rooney (*Pro Hac Vice* Applicant)     David R. Geerdes (ARDC No. 6289557)
PINNACLE LAW GROUP LLP                          SONNENSCHEIN NATH & ROSENTHAL LLP
425 California Street, Suite 1800                7800 Sears Tower
San Francisco, California 94104                  233 S. Wacker Drive
Tel: (415) 394-5700                             Chicago, Illinois 60606-6404
Fax: (415) 394-5003                            Tel: (312) 876-8000
                                               Fax: (312) 876-7934

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 15, 2008 I electronically filed the foregoing ANSWER AND AFFIRMATIVE DEFENSES with the Clerk of the Court using the CM/ECF system which will send notification of such filing to registered parties.


 /s/ David R. Geerdes_____
One of the attorneys for Amaru Entertainment, Inc.

14705468\V-1