# EXHIBIT B

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| SYL JOHNSON, a/k/a Sylvester<br>Thompson, d/b/a Syl-Zel Music | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | No. 07 C 7288 |
| | ) | |
| MICHAEL JACKSON d/b/a MIJAC MUSIC, | ) | Judge Aspen |
| WILL SMITH, AFENI SHAKUR, CO-AMINSTRATOR | ) | |
| OF THE ESTATE OF TUPAC SHAKUR, | ) | |
| LAWRENCE PARKER p/k/a KRS-ONE, | ) | JURY DEMAND |
| PEDRO ZAYAS p/k/a PEEDI CRAKK, | ) | |
| CHRISTOPHER RIES P/K/A YOUNG CHRIS, | ) | |
| SONY BMG MUSIC ENTERTAINMENT, INC., UMG | ) | |
| RECORDINGS, INC. d/b/a UNIVERSAL MUSIC | ) | |
| GROUP, CAPITOL RECORDS, INC., ZOMBA | ) | |
| ENTERPRISES, INC., AMARU ENTERTAINMENT, | ) | |
| INC., N.W.A., a general partnership, COMPTON | ) | |
| RECORDS, INC. d/b/a  RUTHLESS RECORDS, | ) | |
| INC., ANDRE YOUNG, ANTOINE CARRABY, | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

SYL JOHNSON also known as Sylvester Thompson, d/b/a Syl-Zel Music,

Plaintiff herein, complains of defendants MICHAEL JACKSON d/b/a MIJAC

MUSIC, WILL SMITH, AFENI SHAKUR, CO-ADMINISTRATOR FOR THE

ESTATE OF TUPAC SHAKUR, LAWRENCE PARKER p/k/a KRS ONE, PEDRO

ZAYAS, CHRISTOPHER RIES, SONY BMG ENTERTAINMENT, INC., UMG

RECORDINGS, INC., CAPITAL RECORDS, INC., ZOMBA ENTERPRISES, INC.,

AMARU ENTERTAINMENT, INC., N.W.A., a general partnership, ANDRE

YOUNG, ANTOINE CARRABY and COMPTON RECORDS d/b/a RUTHLESS
RECORDS, INC.

## JURISDICTION AND VENUE

1.      This action involves misappropriated or pirated samples from
Johnson's musical sound recording, Different Strokes, and claims Illinois common
law misappropriation and other state law claims, or, alternatively, copyright
infringement pursuant to the copyright laws of the United States, 17 U.S.C. § 101,
*et seq.*

2.      This Court has jurisdiction over this matter under 28 U.S.C. § 1367
for the state law claims and 28 U.S.C. § 1338 (a) for the alternative federal
copyright claims.

3.      Venue is predicated on 28 U.S.C. § 1391 and 1400(a).and venue is
proper in this district in that Johnson recorded "Different Strokes" in this district
and the infringing works which pirated portions of Johnson's work as described
herein were and currently are distributed, marketed, offered for sale and sold in
this district.  On information and belief, personal jurisdiction is proper because
each Defendant, without consent or permission of the copyright owner,
disseminated copyrighted works owned or controlled by Johnson.  On information
and belief, illegal dissemination occurred in every jurisdiction in the United States,
including the Northern District of Illinois.

## PARTIES

4.  Johnson is a 72-year-old adult citizen of the State of Illinois.  He is

engaged in the business of musical performance under the assumed business name of Syl-Zel Music.  Johnson also operates two Illinois corporations, Twinight Records, Inc. and Edgewater Music, Inc. and is engaged in the business of musical composition and publishing.

### Michael Jackson

5.     Upon information and belief, defendant Michael Jackson ("Jackson") is an adult citizen of the State of California.  He is engaged in the business of music composition, publishing and performance.   On information and belief Michael Jackson engages in publishing of music under the assumed name Mijac Music.   Mijac Music is an assumed name for Michael Jackson operating as a music publisher.   The infringing work at issue in this lawsuit is entitled "Blood On The Dance Floor, Refugee Camp Edit."

### Will Smith

6.   Upon information and belief, defendant Will Smith ("Smith") is an adult citizen of the State of California.   He is engaged in the business of music composition and performance.    The infringing work by Smith at issue in this lawsuit is entitled "Who Stole The DJ?"

### Tupac Shakur Estate

7.     Afeni Shakur, one of the co-administrators of the Estate of Tupac Shakur is a citizen of the State of Georgia ("the Tupac Shakur Estate").  Co-administrator, Richard Fishbein, is a citizen of the State of New York.   The works involving the Tupac Shakur Estate are "Peep Game" and "Nothin' But Love."

**Lawrence Parker – KRS One**

8.  Lawrence Parker, also known as Larry Parker, and professionally known as KRS One ("Parker"), is an adult citizen of the State of California or of the State of New York.  Parker is a rap music artist who is engaged in the business of musical composition and performance.  The work involving Parker at issue in this lawsuit is entitled "Criminal Minded."

**Pedro Zayas and Christoper Ries**

9.  Defendant Pedro Zayas is professionally known as Peedi Crakk and also as Peedi Peedi ("Zayas").  Upon information and belief, Zayas is an adult citizen of the State of Pennsylvania.  He is engaged in the business of musical composition and performance and performed the sound recording for "Criminal Background" at issue in this lawsuit.

10.  Defendant Christopher Ries is professionally known as Young Chris ("Ries").  Upon information and belief, Ries is an adult citizen of the State of Pennsylvania.  He is engaged in the business of musical composition and performance and performed the sound recording for "Criminal Background" at issue in this lawsuit.

**Sony BMG Music Entertainment, Inc.**

11.  Defendant Sony BMG Music Entertainment, Inc. is a Delaware general partnership with its principal place of business in New York ("Sony"). Said defendant is engaged in the business of manufacture, distribution, and sale of music performances in the forms of records, tapes, and compact discs, among other media.

### UMG Recordings, Inc.

12.  Defendant UMG Recordings, Inc. is a Delaware corporation with its principal place of business in New York  ("UMG").  On information and belief UMG does business as Universal Music Group.  Said defendant is engaged in the business of manufacture, distribution, and sale of music performances in the forms of records, tapes, and compact discs, among other media.  Said defendant is the manufacturer, distributor and seller of certain the recordings at issue in this lawsuit:  Nothin' But Love and Peep Game.

### Capital Records, Inc.

13.  Defendant Capitol Records, Inc. is a Delaware corporation with its principal place of business in the State of New York ("Capitol Records").  Its parent corporation is EMI, formerly Grammaphone Record Company.  On information and belief, Capital owns and exploits the master recording to a song entitled Real Niggaz Don't Die which contains a misappropriated or pirated sample from Different Strokes.

### Zomba Enterprises, Inc.

14.  Zomba Enterprises, Inc. is a New York corporation with its principal place of business in New York ("Zomba Enterprises").   On information and belief, Zomba Enterprises is the owner of the master recording and copyright for the work at issue in this lawsuit alleged to contain a pirated or misappropriated sample entitled "Criminal Minded" and "Criminal Background".

### Amaru Entertainment, Inc.

5

15.   Defendant Amaru Entertainment, Inc. is a Delaware corporation with its principal place of business in Georgia ("Amaru").   Upon information and belief, said defendant is engaged in the business of manufacture, distribution and sale of music performances in the form of records, tapes, and compact discs, among other media.   Said defendant is the manufacturer, distributor, and seller of recordings for the Tupac Shakur Estate.

### NWA, ANDRE YOUNG AND ANTOINE CARRABY, COMPTON RECORDS

16.   N.W.A is a partnership which operated between 1991 and 2003 And was composed of Tre Curry (the D.O.C.), Andre Young (Dr.DRE), Eric Wright (Eazy-E), Dine Fekaris, Lorenzo Patterson (M.C. Ren), Antoine Carraby (DJ Yella), and Nick Zesses ("NWA").   None of NWA's partners are Illinois citizens. Compton Records a/k/a Ruthless Records is a California corporation with its principal place of business in California.   The work involving these defendants is Real Niggaz Don't Die.

### <u>JOHNSON'S SONG – DIFFERENT STROKES</u>

17.   On or about July 16, 1967, Johnson hired writers, John Cameron and John Zachary ("the writers"), who created and wrote the musical composition ("the composition") entitled "Different Strokes" in their capacity as songwriters. The musical composition was wholly original and is copyrightable subject matter.

18.   On August 14, 1967, the writers registered the copyright in the musical composition "Different Strokes" with the United States Copyright Office, and secured Certificate of Registration No. EU 9873.   The composition copyright in the words and music was registered to John Cameron and John Zachary.

6

19.    On or about July 16, 1967, Johnson recorded a sound recording entitled "Different Strokes" at a recording studio in Chicago, Illinois.  During the recording session, Johnson experimented with different creative sound combinations and finally settled on the idea to open the song with a combined grunt, laugh and drum beat (the "Ensemble").   The Ensemble gave the "Different Strokes" recording great distinction and popular appeal.   In 1967, "Different Strokes" was released on a 45-RPM in 1967 through Twilight Records ("Twilight").

20.    In or about March 1972, Johnson recorded a re-mix version of "Different Strokes" at a recording studio in Chicago, Illinois.  The 1972 re-mix version included the Ensemble as to which Johnson re-recorded his grunt. Johnson did the editing, sound remixing, equalization, balancing and addition of new sound material which was wholly original with Johnson.

21.    The 1972 re-mix version of Different Strokes was released in 1986 through P-Vine records as an LP Album.

22.    Johnson obtained a written assignment of the composition copyright from John Zachary effective January 1, 1995.   In 1995, John Cameron was deceased, and Johnson obtained a written assignment of Cameron's interest in the composition copyright from Jennifer Cameron, John Cameron's daughter.

23.    On February 26, 1996, Johnson registered his copyright in "Sock It To Me" with the United States Copyright Office and deposited a copy thereof which included the 1972 re-mix of "Different Strokes."  Johnson secured Certificate of Registration No. SR0000360-720.

24.  On February 14, 1997, Johnson registered "Surrounded" with the

United States Copyright Office.

25. Johnson deposited a copy thereof which also included the 1972 re-mix version of Different Strokes. Johnson obtained Certificate No. SRU-360-891.

26. The 1972 re-mix version of "Different Strokes" features the Ensemble as the beginning of the song with Johnson as the vocalist who provided the "grunt" portion of the Ensemble.

### DIGITAL SAMPLING TECHNOLOGY

27. Digital sampling technology allows the copying of a recorded sound or series of sounds and incorporation of the fragment into the new work.

28. The process of digital recording changes sound waves into digital information; specifically, a sound is sent to a transducer (such as a microphone) which converts the sound wave into voltage variations. The signal is then sent to an analog-to-digital converter. The converter changes the analog signal into digital information by first measuring the analog voltage at regular intervals. The resulting "bits" are assigned a binary number representing the intensity of the signal at that time. A computer stores or processes the resulting sample information. To hear the sample, the process is reversed so that the voltage variations are converted into audible sound waves.

29. The process whereby music samples are pirated and recorded onto the defendant's work requires that the defendant first make a sound recording, then intentionally and deliberately record the music sample onto the defendant's sound recording. In some cases, the music sample is manipulated by showing it down, changing the pitch, speed, etc. By engaging in this process, the defendant

achieves distinction in the defendant's sound recording without having to spend the resources on creativity to develop the distinctive sound.

## BLOOD ON THE DANCE FLOOR

30.   In 1997, Michael Jackson composed, produced and recorded Blood On The Dance Floor.   At some point after the Blood On The Dance Floor sound recording was made, either personally or through his agents, Jackson utilized digital sampling technology, pirated the Ensemble from Johnson's sound recording of "Different Strokes" and recorded it onto at least one version of Blood On The Dance Floor known as the Refugee Camp Edit.

31.  Johnson lacks information as to whether Jackson took the Ensemble from the 1967 sound recording or from the 1972 re-mix version of Different Strokes.

32.  On information and belief, Johnson has released versions Of Blood On The Dance Floor which did not contain the pirated or misappropriated sample.

33.   Jackson took the Different Strokes Ensemble for the Blood On The Dance Floor Refugee Camp Edit for the purpose of making the song appeal to  a hip-hop audience.

34.     On information and belief, Sony released a compact disc single, maxi-CD single and cassette single containing Blood On The Dance Floor, Refugee Camp Edit.

35.     Neither Jackson, nor any of Jackson's agents or representatives, nor Sony contacted Johnson nor sought a license for the pirated or misappropriated Different Strokes sample.

9

36.    The copyright notice for Blood On The Dance Floor failed to mention Johnson's contribution vis-à-vis the pirated or misappropriated sample.

37.    In 1997, Michael Jackson released an album entitled Blood On The Dance Floor which included The Refugee Camp Edit.  On information and belief, the profits earned from Blood On The Dance Floor, Refugee Camp Edit, exceed $75,000.00.

38.    In 2005, Johnson learned of the pirating of Different Strokes' Ensemble in Blood On The Dance Floor.  Upon learning of this, Johnson bought a CD containing Blood On The Dance Floor, Refugee Camp Edit and confirmed that Blood On The Dance Floor included the Ensemble from Johnson's Different Strokes' sound recording, though Johnson has not yet been able to determine whether the Ensemble was taken from the 1967 sound recording or the 1972 re-mixed version of Different Strokes.

39.    The infringement of Johnson's song "Different Strokes" by Blood On The Dance Floor is a continuing infringement.

### **CRIMINAL MINDED**

40.    In 1987, Parker (together with a since deceased person named Scott  Sterling or Scott LaRock) composed a song entitled "Criminal Minded". "Criminal Minded" was recorded by a group known as Boogie Down Productions and Parker was one of the members.  Parker (among others), produced "Criminal Minded" and it was released March 3, 1987 by B-Boy Records, Inc.  (since merged and now known as Big East Entertainment, Inc.)

10

41.     Since its release in 1987, Criminal Minded has been released on 13 albums.  The albums are:  (1) Criminal Minded (1987); (2) Best of B-Boy Records (2001); (3); Hip Hop Back in the Day (1995); (4) History of Rap, Vol. 1 (1996); (5) Kurtis Blow Presents the History of Rap, Vol. 3: The Golden Age (1997); (6)  Live Hardcore Worldwide (1991); (7) Criminal Minded (Plus Instrumentals) (2001); Ultimate Hip-Hop Album (2003); (8) 80's Hip-Hop Album (2003); (9) 80's Hip Hop Hits (2000); (10)  Man and His Music (1991); (11) Battle For Rap Supremacy; KRS-One v. McSha (1996); (12) Retrospective (Performed by KRS-One (2000); (13) Best of KRS-One (2000).

42.     The Criminal Minded sound recording digitally manipulated the Ensemble by shifting the pitch and speed and repeating the Ensemble pervasively throughout with the intention of giving Criminal Minded distinction and appeal.

43.     The sound recording copyright for the Album entitled Criminal Minded failed to mention Johnson's contribution to the sound recording vis-à-vis the pirated or misappropriated sample.  Johnson learned of the pirated or misappropriated Different Strokes sample in Criminal Minded in 2005.

44.     On information and belief, Zomba Enterprises obtained the publication rights to Criminal Minded and is  responsible for its widespread dissemination and sale.

## CRIMINAL BACKGROUND

45.     On August 5, 2003, Beanie Segal produced a sound recording entitled State Property Presents The Chain Gang, Vol. 2 ("Chain Gang, Vol. 2") which included a song called Criminal Background  composed by Parker, Scott

Sterling, Chad Hamilton, R. Presson, Christopher Reis, J. Thomas, Pedro Zayas and R. Presson.   Criminal Background was performed by Zayas and Ries and released on Roc-a-Fella Records.

46.   Approximately 14.5 seconds into the recording track , the Chain Gang, Vol. 2 sound recording includes a pirated or misappropriated sample of Johnson's grunt (as well as the laugh) from the Different Strokes Ensemble. Johnson lacks information as yet as to whether the sample was misappropriated or pirated from the 1967 or the 1972 sound recording of Different Strokes.

47.   On information and belief, Zomba Enterprise is responsible for or has contributed to the dissemination of Criminal Background.

48.   The copyright notice for Criminal Background failed to mention Johnson's contribution vis-à-vis the pirated or misappropriated sample.

49.   The pirated or misappropriated sample was included in Criminal Background without Johnson's permission or knowledge.  Johnson learned of the pirated or misappropriated sample in Criminal Background in 2005.

### WHO STOLE THE DJ?

50.   In 1991 and in 2000, Quincy Jones produced sound recordings entitled "Who Stole the DJ" as composed by Will Smith and Jeff Townes and performed by DJ Jazzy Jeff and The Fresh Prince.

51.   After recording "Who Stole The DJ", Will Smith or his agents, digitally manipulated the Different Strokes Ensemble, changed the pitch and the speed, and recorded in onto the Who Stole the DJ sound recording.

12

52.     The Sound Recording entitled "Who Stole The DJ" contains approximately one hundred and nine audible instances of the (manipulated) pirated or misappropriated "Different Strokes" Ensemble.  The 109 instances of the Different Strokes Ensemble sample gave "Who Stole The DJ" its distinction and popular appeal.

53.     The Ensemble was included without Johnson's permission or knowledge.   At this juncture in the lawsuit, Johnson is unsure whether the Ensemble was taken from the 1967 or the 1972 Different Strokes re-mix version.

54.     The copyright notice for "Who Stole The DJ" failed to mention Johnson's contribution vis-à-vis the pirated or misappropriated sample.

55.     At least two albums containing "Who Stole The DJ" were released on Jive Records.  The album entitled Before the Millennium contains Who Stole The DJ and was released in 2000.

56.     On information and belief, Who Stole The DJ was a work for hire by Zomba Enterprises.  Sony is the owner of the master recording and is responsible or has contributed to the sale and dissemination of Who Stole The DJ.

57.     The infringement or misappropriation described herein is continuing, but Johnson did not learn of it until 2005.

### REAL NIGGAZ DON'T DIE

58.     Real Niggaz Don't Die was composed by various members of the music partnership known as N.W.A., including Tracy Curry professionally known as D.O.C., Andre Young p/k/a Dr. Dre, Eric Wright (Easy-E) and others.

59.     In 1991 through 2003 Tre Curry (the D.O.C.), Andre Young (Dr.DRE), Eric Wright (Eazy-E), Dine Fekaris, Lorenzo Patterson (M.C. Ren), Antoine Carraby (DJ Yella), and Nick Zesses (operating as NWA) made sound recordings of the song Real Niggaz Don't Die which was produced by Dr. Dre and Yella on Compton a/k/a Ruthless Records.   The Real Niggaz Don't Die sound recording included a sample from the 1972 "Different Strokes" sound recording.

60.     On information and belief, Capital is the owner of the master recording of the infringing work, Real Niggaz Don't Die, and is responsible for or has contributed to the mass and widespread sale and dissemination of Real Niggaz Don't Die.

61.     In approximately 1995, Capital had a dispute with Johnson regarding Johnson's claim of another instance of infringement pertaining to Johnson's Different Strokes sound recording and a Capital release known as King Tee.

62.     Capital thus had knowledge that Johnson was the copyright owner of the "Different Strokes" sound recording.

63.     Defendants have released and sold the following albums which include "Real Niggaz Don't Die" on one of the album's tracks:  (1). Niggaz4Life (1991); (2) Greatest Hits (1996); (3) Greatest Hits (bonus track) (2003); (4) Niggaz4Life [CD/DVD] (2003) (5) Niggaz4Life/100 Miles and Runnin' (2002); (6) Greatest Hitz [Circuit City Exclusive] (2007); (7) Best of N.W.A.: The Strength of Street Knowledge [Bonus DVD] (2007; (8) Efil4Zaggin with 100 Miles/Straight outta Compton (2005); (9) Straight Out of Compton/Niggaz4Life with 100 miles and Running (2003).

64. The copyright notice for Real Niggaz Don't Die failed to mention Johnson's contribution vis-à-vis the pirated or misappropriated sample.

65. The infringement or misappropriation described herein is continuing, but Johnson did not learn of it until 2005.

### PEEP GAME

66. Tupac Shakur (among others) composed a song entitled "Peep Game". Tupac Shakur performed Peep Game and a sound recording was made in approximately 1993.

67. Peep Game was released on February 16, 1993 by Interscope Records on an album called Strictly 4 My N.I.G.G.A.Z. The producer was Bobby Ervin. The distributing label is Interscope and Amaru Entertainment, Inc. Interscope and Amaru are owned by UMG.

68. The Peep Game sound recording includes the "Different Strokes" Ensemble twice at approximately 2.55 minutes into the track.

69. The Ensemble was taken from either the 1967 or the 1972 remix version of Different Strokes.

70. The inclusion in Peep Game of the Ensemble from Different Strokes was done without Johnson's knowledge or permission.

71. On information and belief, UMG is the owner of the master recording of the album, Strickly 4 My N.I.G.G.A.Z, which includes "Peep Game" on one track. UMG is responsible for and has contributed to the mass and widespread sale and dissemination of Peep Game.

72. The copyright notice for Peep Game failed to mention Johnson's

15

contribution vis-avis the pirated or misappropriated sample.

73. The infringement or misappropriation described herein is continuing, but Johnson did not learn of it until 2005.

## NOTHIN' BUT LOVE

74. Tupac Shakur composed a song entitled Nothin' But Love and performed and recorded Nothin' But Love in approximately 1996.

75. In 1997, Nothin' But Love was released on an album called RU Still Down (Remember Me).

76. The sound recording of Nothin' But Love included the pirated or misappropriated sample of the Ensemble from Johnson's sound recording of Different Strokes. The pirated or misappropriated sample appears twice at approximately the 3:30 minute mark in the Nothin' But Love sound recording.

77. The sample was taken from either the 1967 or the 1972 sound recording of Different Strokes.

78. Johnson did not give permission for the inclusion of any portion of the 1967 or the 1972 Different Strokes' sound recording in Nothin' But Love.

79. The copyright notice for Nothin' But Love failed to mention Johnson's contribution vis-à-vis the pirated or misappropriated sample.

80. On information and belief, UMG is responsible for and has contributed to the mass and widespread sale and dissemination of Nothin' But Love.

81. In 2005, Johnson first learned that by Nothin' But Love contained a pirated or misappropriated sample of the Different Strokes sound recording. The infringement or misappropriation by Nothin' But Love is continuing.

16

**COUNT I – MISAPPROPRIATION-BLOOD ON THE DANCE FLOOR**

82.    Paragraph Nos. 1 through 81 are incorporated and realleged as though fully set forth herein.

83.    The Ensemble contained in the 1967 sound recording of Different Strokes and in the 1972 remix of Different Strokes was original and included Johnson's voice recording.  Johnson had a legal right to control the use of his voice recording.

84.    Defendants had access to the 1967 sound recording of Different Strokes and to the 1972 remix because it was commercially available in various mediums.

85.    Jackson, either personally or through his agents, employees or representatives, misappropriated Johnson's voice recording and misappropriated the Ensemble which was the embodiment of Johnson's original creative work.

86.    Johnson contributed the expenses of recording as well as his vocal talent, creativity, time and labor to the creation of the Ensemble.  Johnson benefits commercially from the Ensemble to the extent that he negotiates licenses to artists who want to use it in their works.

87.    As a result of taking Johnson's voice recording and the Different Strokes Ensemble, Jackson gave Blood On The Dance Floor, Refugee Camp Edit, distinction while avoiding expending the

17

creative resources necessary to develop the distinct sound and without obtaining Johnson's consent or paying him for its use.

88. As a direct and proximate result of the misappropriation described herein, Defendants have profited by virtue of the unlawful misappropriation in a sum exceeding the sum of $75,000.00.

**WHEREFORE**, SYL JOHNSON requests that this court enter judgment in his favor and against Defendants MICHAEL JACKSON d/b/a Mijac Music and SONY BMG MUSIC ENTERAINMENT, INC. in an amount to be determined at trial but in excess of $75,000.00 and require disgorgement of profits, damages, punitive damages, costs and fees as may be permitted by law and for such other and further relief as may be equitable and just.

## COUNT II–UNJUST ENRICHMENT–BLOOD ON THE DANCE FLOOR

89. Paragraph Nos. 1 through 81 are incorporated and realleged as though fully set forth herein.

90. As described herein, Jackson d/b/a Mijac Music and Sony have obtained a benefit by the use of the misappropriated samples which have enhanced the musical work and which benefit includes profits from sales and distribution of the works, obtaining and owning a valuable sound recording copyright in the work, issuing and being compensated for licenses in the work, and other benefits, which would be unjust for them to retain.

18

**WHEREFORE**, SYL JOHNSON, Plaintiff herein, requests that this Court enter judgment in his favor and against MICHAEL JACKSON d/b/a MIJAC MUSIC and SONY BMG MUSIC ENTERTAINMENT, INC. in an amount by which each Defendant has been unjustly enriched in an amount to be proved at trial, but in the amount in excess of $75,000.00, for costs and fees as permitted by law and for such other and further relief as may be equitable and just.

### COUNT III-FEDERAL COPYRIGHT INFRINGEMENT
### <u>BLOOD ON THE DANCE FLOOR</u>

91.   Paragraphs One through 90 are incorporated and realleged as though fully stated herein.

92.   In the event that the evidence establishes that Jackson, his agents or representatives or Sony took the Different Strokes Ensemble from the 1972 re-mix sound recording, and that such re-mix is sufficiently distinct to be entitled to federal copyright protection, then Johnson is the owner of the sound recording copyright for Different Strokes and Johnson registered his ownership of the sound recording copyright with the United States Copyright Office as described herein.

93.   Among the exclusive rights granted to Johnson under the Copyright Act are the exclusive rights to reproduce the copyrighted recordings and to distribute the copyrighted recordings to the public and to create derivative works.

19

94.    Johnson has placed proper notice of copyright pursuant to 17 U.S.C. § 401 on the album cover of "Surrounded" .

95.    The 1972 re-mix version of Different Strokes was widely available and accessible to each defendant.

96.    On information and belief, Jackson and/or Sony without the permission, authority, or license from Johnson and without any attribution to Johnson, have wrongfully, knowingly, and intentionally copied, reproduced, distributed, and sold throughout the world, including in this district, works which include the Ensemble and/or a sample of Johnson's 1972 sound recording of Different Strokes in violation of Johnson's copyright.

97.    On information and belief, each defendant has, in turn, distributed and sold numerous copies of an infringing work which unlawfully includes a portion of Johnson's 1972 sound recording in Different Strokes throughout the world. Each violation of Johnson's rights to the 1972 sound recording constitutes a separate and distinct act of copyright infringement.

98.    Defendants' continuing infringement of Johnson's rights in the 1972 re-mix sound recordings has caused and is continuing to cause irreparable injury, loss and damages to Johnson, and unless defendants are restrained from continuing their wrongful infringement of Johnson's rights, the irreparable damages to Johnson will increase without an adequate remedy at law.

99.    As a result of the infringements of Johnson's rights in said work as

described herein by defendants, defendants have obtained great income and gains and Johnson has suffered severe and actual financial losses due to the defendants' willful appropriation of Johnson's said composition and recording.

100.    The acts of infringement described herein have been willful, intentional, and in disregard of and with indifference to Johnson's rights.

**WHEREFORE**, SYL JOHNSON requests judgment against MICHAEL JACKSON d/b/a Mijac Music and SONY BMG MUSIC ENTERTAINMENT, INC. as follows:

A.    Defendants, their agents, servants, employees, attorneys, partners, successors, and assigns, and all persons in active concert or participation with any of them, be permanently enjoined from future instances of infringement of Johnson's sound recording copyright in "Different Strokes" and that the Court order Defendants to pay Johnson 50% of the publishing income on a going forward basis for all future sales and distribution of the infringing work;

B.    Johnson be declared a co-owner in the sound recording copyright in the infringing work; and

C.    Defendants be required to pay Johnson statutory damages pursuant to 17 U.S.C. § 504( c) or, at their election prior to judgment, actual damages and profits as provided in 17 U.S.C. § 504 (b) and to account to Johnson for all gains, profits, and advantages derived by defendants from their infringement of Johnson's rights and work, together with interest on such damages as the court deems appropriate;

D.    Defendants be required to pay Johnson his costs and attorneys' fees pursuant to 17 U.S.C. § 505; and

E.    Defendants be required to provide Johnson with such other relief as the court deems just and proper.

## COUNT IV – VICARIOUS COPYRIGHT INFRINGEMENT
## BLOOD ON THE DANCE FLOOR

101.    Paragraphs One through 100 are incorporated and realleged as though fully set forth herein.

102.    Jackson and/or Sony are liable as vicarious infringers for the copyright infringement committed by taking the Different Strokes Ensemble.

103.    At all relevant times, Defendants had the right and ability to control and/or supervise the infringing conduct, and defendants have had a direct financial interest and have derived substantial financial benefit from the infringements of Johnson's copyrighted sound recording.

104.    Defendants have derived substantial benefit from the infringement by selling and distributing significant numbers of their songs without having to pay Johnson anything for his sound recording work.

105.    Each violation of Johnson's rights to his copyrighted sound recording constitutes a separate and distinct act of copyright infringement.  Through the conduct described herein, Defendants are vicariously liable for each act of infringement described herein.

**WHEREFORE**, SYL JOHNSON requests judgment against MICHAEL JACKSON d/b/a Mijac Music and SONY BMG MUSIC ENTERTAINMENT, INC.

A.     Defendants, their agents, servants, employees, attorneys, partners, successors, and assigns, and all persons in active concert or participation with any of them, be permanently enjoined from future instances of infringement of Johnson's sound recording copyright in "Different Strokes" and that the Court order Defendants to pay Johnson 50% of the publishing income on a going forward basis for all future sales and distribution of the infringing work; and

B.     Johnson be declared a co-owner in the sound recording copyright in the infringing work; and

C.     Defendants be required to pay Johnson statutory damages pursuant to 17 U.S.C. § 504( c) or, at their election prior to judgment, actual damages and profits as provided in 17 U.S.C. § 504 (b) and to account to Johnson for all gains, profits, and advantages derived by defendants from their infringement of Johnson's rights and work, together with interest on such damages as the court deems appropriate;

D. Defendants be required to pay Johnson his costs and attorneys' fees pursuant to 17 U.S.C. § 505; and

E. Defendants be required to provide Johnson with such other relief as the court deems just and proper.

### COUNT V – MISAPPROPRIATION-CRIMINAL MINDED

106. Paragraph Nos. 1 through 81 are incorporated and realleged as though fully set forth herein.

107. The Ensemble contained in the 1967 sound recording of Different Strokes and in the 1972 remix of Different Strokes was

23

original and included Johnson's voice recording. Johnson had a legal right to control the use of his voice recording.

108. Parker and Zomba Enterprises had access to the 1967 sound recording of Different Strokes and to the 1972 remix because it was commercially available in various mediums.

109. Parker and Zomba Enterprises misappropriated Johnson's voice recording and misappropriated the Ensemble which was the embodiment of Johnson's original creative work.

110. Johnson contributed the expenses of recording as well as his vocal talent, creativity, time and labor to the creation of the Ensemble. Johnson benefits commercially from the Ensemble to the extent that he negotiates licenses to artists who want to use it in their works.

111. As a result of taking Johnson's voice recording and the Different Strokes Ensemble, Defendants gave their work distinction while avoiding expending the creative resources necessary to develop the distinct sound that Defendants' were able to obtain without obtaining Johnson's consent or paying him for its use.

112. As a direct and proximate result of the misappropriation described herein, Parker and Zomba Enterprises have obtained unlawful profits by virtue of the unlawful misappropriation which exceed the sum of $75,000.00.

**WHEREFORE**, SYL JOHNSON requests that this court enter judgment in his favor and against LAWRENCE PARKER AND ZOMBA ENTERPRISES, INC. in an amount to be determined at trial but in excess of $75,000.00 and require disgorgement of profits, damages, punitive damages, costs and fees as may be permitted by law and for such other and further relief as may be equitable and just.

### COUNT VII – UNJUST ENRICHMENT-CRIMINAL MINDED

113. Paragraph Nos. 1 through 112 are incorporated and realleged as though fully set forth herein.

114. As described herein, Parker and Zomba Enterprises have obtained a benefit by the use of the misappropriated samples which have enhanced their musical works and which benefit includes profits from sales and distribution of the works, obtaining and owning a valuable sound recording copyright in the work, issuing and being compensated for licenses in the work, and other benefits, which would be unjust for them to retain.

**WHEREFORE**, SYL JOHNSON, Plaintiff herein, requests that this Court enter judgment in his favor and against Defendant LAWRENCE PARKER and ZOMBA ENTERPRISES, INC., in the amount by which each Defendant has been unjustly enriched by pirating Johnson's sound recording sample, in an amount to be proved at trial, but in the amount in excess of $75,000.00, for costs

and fees as permitted by law and for such other and further relief as may be equitable and just.

### COUNT VIII-FEDERAL COPYRIGHT INFRINGEMENT- CRIMINAL MINDED

115. Paragraphs One through 114 are incorporated and realleged as though fully stated herein.

116. In the event that the evidence establishes that Parker or Zomba Enterprises took the Different Strokes Ensemble from the 1972 re-mix sound recording, and that such re-mix is sufficiently distinct to be entitled to federal copyright protection, then Johnson is the owner of the sound recording copyright for Different Strokes and Johnson registered his ownership of the sound recording copyright with the United States Copyright Office as described herein.

117. Among the exclusive rights granted to Johnson under the Copyright Act are the exclusive rights to reproduce the copyrighted recordings and to distribute the copyrighted recordings to the public and to create derivative works.

118. Johnson has placed proper notice of copyright pursuant to 17 U.S.C. § 401 on the album cover of "Surrounded".

119. The 1972 re-mix version of Different Strokes was widely available and accessible to each defendant.

120. On information and belief, the Defendants and each of them, without the permission, authority, or license from Johnson and without any attribution to Johnson, have wrongfully, knowingly, and intentionally copied, reproduced, distributed, and sold throughout the world, including in this district,

works which include the Ensemble and/or a sample of Johnson's 1972 sound recording of Different Strokes in violation of Johnson's copyright.

121.   On information and belief, each defendant has, in turn, distributed and sold numerous copies of an infringing work which unlawfully includes a portion of Johnson's 1972 sound recording in Different Strokes throughout the world. Each violation of Johnson's rights to the 1972 sound recording constitutes a separate and distinct act of copyright infringement.

122.   Defendants' continuing infringement of Johnson's rights in the 1972 re-mix sound recordings has caused and is continuing to cause irreparable injury, loss and damages to Johnson, and unless defendants are restrained from continuing their wrongful infringement of Johnson's rights, the irreparable damages to Johnson will increase without an adequate remedy at law.

123.   As a result of the infringements of Johnson's rights in said work as described herein by defendants, defendants have obtained great income and gains and Johnson has suffered severe and actual financial losses due to the defendants' willful appropriation of Johnson's said composition and recording.

124.   The acts of infringement described herein have been willful, intentional, and in disregard of and with indifference to Johnson's rights.

**WHEREFORE**, Johnson requests judgment against defendants LAWRENCE PARKER and ZOMBA ENTERPRISES, INC as follows:

A.   Defendants, their agents, servants, employees, attorneys, partners, successors, and assigns, and all persons in active concert or participation with any of them, be permanently enjoined from future instances of infringement of

Johnson's sound recording copyright in "Different Strokes" and that the Court order Defendants to pay Johnson 50% of the publishing income on a going forward basis for all future sales and distribution of the infringing work;

B.      Johnson be declared a co-owner in the sound recording copyright in the infringing work; and

C.      Defendants be required to pay Johnson statutory damages pursuant to 17 U.S.C. § 504( c) or, at their election prior to judgment, actual damages and profits as provided in 17 U.S.C. § 504 (b) and to account to Johnson for all gains, profits, and advantages derived by defendants from their infringement of Johnson's rights and work, together with interest on such damages as the court deems appropriate;

D.      Defendants be required to pay Johnson his costs and attorneys' fees pursuant to 17 U.S.C. § 505; and

E.      Defendants be required to provide Johnson with such other relief as the court deems just and proper.

### COUNT IX – VICARIOUS COPYRIGHT INFRINGEMENT
### CRIMINAL MINDED

125.    Paragraphs One through 124 are incorporated and realleged as though fully set forth herein.

126.    Parker and/or Zomba Enterprises are liable as vicarious infringers for the copyright infringement committed by taking the Different Strokes Ensemble.

127.    At all relevant times, Parker and/or Zomba Enterprises had the right and ability to control and/or supervise the infringing conduct, and defendants have

had a direct financial interest and have derived substantial financial benefit from the infringements of Johnson's copyrighted sound recording.

128.    Parker and/or Zomba Enterprises have derived substantial benefit from the infringement by selling and distributing significant numbers of their songs without having to pay Johnson anything for his sound recording work.

129.    Each violation of Johnson's rights to his copyrighted sound recording constitutes a separate and distinct act of copyright infringement.    Through the conduct described herein, Defendants are vicariously liable for each act of infringement described herein.

**WHEREFORE**, SYL JOHNSON requests judgment against LAWRENCE PARKER and ZOMBA ENTERPRISES, INC.  as follows:

A.    Defendants, their agents, servants, employees, attorneys, partners, successors, and assigns, and all persons in active concert or participation with any of them, be permanently enjoined from future instances of infringement of Johnson's sound recording copyright in "Different Strokes" and that the Court order Defendants to pay Johnson 50% of the publishing income on a going forward basis for all future sales and distribution of the infringing work;

B.    Johnson be declared a co-owner in the sound recording copyright in the infringing work; and

C.    Defendants be required to pay Johnson statutory damages pursuant to 17 U.S.C. § 504( c) or, at their election prior to judgment, actual damages and profits as provided in 17 U.S.C. § 504 (b) and to account to Johnson for all gains, profits, and advantages derived by defendants from their infringement of

Johnson's rights and work, together with interest on such damages as the court deems appropriate;

D.     Defendants be required to pay Johnson his costs and attorneys' fees pursuant to 17 U.S.C. § 505; and

E.     Defendants be required to provide Johnson with such other relief as the court deems just and proper.

## COUNT X – MISAPPROPRIATION-CRIMINAL BACKGROUND

130.  Paragraph Nos. 1 through 129 are incorporated and realleged as though fully set forth herein.

131.  The Ensemble contained in the 1967 sound recording of Different Strokes and in the 1972 remix of Different Strokes was original and included Johnson's voice recording.  Johnson had a legal right to control the use of his voice recording.

132.  Zayas, Ries and Zomba Enterprises had access to the 1967 sound recording of Different Strokes and to the 1972 remix because it was commercially available in various mediums.

133.  Defendants misappropriated Johnson's voice recording and misappropriated the Ensemble which was the embodiment of Johnson's original creative work.

134.  Johnson contributed the expenses of recording as well as his vocal talent, creativity, time and labor to the creation of the Ensemble.  Johnson benefits commercially from the Ensemble to the

extent that he negotiates licenses to artists who want to use it in their works.

135.  As a result of taking Johnson's voice recording and the Different Strokes Ensemble, Zayas, Ries and Zomba Enterprises gave Criminal Background distinction while avoiding expending the creative resources necessary to develop the distinct sound that Defendants' were able to obtain without obtaining Johnson's consent or paying him for its use.

136.  As a direct and proximate result of the misappropriation described herein, defendants and each of them have obtained unlawful profits by virtue of the unlawful misappropriation which exceeds the sum of $75,000.00.

**WHEREFORE**, SYL JOHNSON requests that this court enter judgment in his favor and against each Defendant PEDRO ZAYAS and CHRISTOPER RIES and ZOMBA ENTERPRISES, INC., in an amount to be determined at trial but in excess of $75,000.00 and require disgorgement of profits, damages, punitive damages, costs and fees as may be permitted by law and for such other and further relief as may be equitable and just.

## COUNT XI-UNJUST ENRICHMENT – CRIMINAL BACKGROUND

137.  Paragraphs One through 136 are incorporated as though fully set forth herein.

138. As described herein, Defendants and each of them have obtained a benefit by the use of the misappropriated samples which have enhanced their musical works and which benefit includes profits from sales and distribution of the works, obtaining and owning a valuable sound recording copyright in the work, issuing and being compensated for licenses in the work, and other benefits, which would be unjust for them to retain.

**WHEREFORE**, SYL JOHNSON, Plaintiff herein, requests that this Court enter judgment in his favor and against each Defendant named herein PEDRO ZAYAS, CHRISTOPER RIES and ZOMBA ENTERPRISES, INC., in the amount by which each Defendant has been unjustly enriched by misappropriating Johnson's voice recording and sample, in an amount to be proved at trial, but in the amount in excess of $75,000.00, for costs and fees as permitted by law and for such other and further relief as may be equitable and just.

### COUNT XII-FEDERAL COPYRIGHT INFRINGEMENT
### CRIMINAL BACKGROUND

139. Paragraphs One through 138 are incorporated and realleged as though fully stated herein.

140. In the event that the evidence establishes that Defendants or any of them took the Different Strokes Ensemble from the 1972 re-mix sound recording, and that such re-mix is sufficiently distinct to be entitled to federal copyright protection, then Johnson is the owner of the sound recording copyright for Different Strokes and Johnson

registered his ownership of the sound recording copyright with the United States Copyright Office as described herein. 141. Among the exclusive rights granted to Johnson under the Copyright Act are the exclusive rights to reproduce the copyrighted recordings and to distribute the copyrighted recordings to the public and to create derivative works.

142. Johnson has placed proper notice of copyright pursuant to 17 U.S.C. § 401 on the album cover of "Surrounded".

143. This 1972 re-mix version of Different Strokes was widely available and accessible to each defendant.

144. On information and belief, the defendants and each of them, without the permission, authority, or license from Johnson and without any attribution to Johnson, have wrongfully, knowingly, and intentionally copied, reproduced, distributed, and sold throughout the world, including in this district, works which include the Ensemble and/or a sample of Johnson's 1972 sound recording of Different Strokes in violation of Johnson's copyright into Criminal Background.

145. On information and belief, each defendant has, in turn, distributed and sold numerous copies of an infringing work which unlawfully includes a portion of Johnson's 1972 sound recording in Different Strokes throughout the world. Each violation of Johnson's rights to the 1972 sound recording constitutes a separate and distinct act of copyright infringement.

146. Defendants' continuing infringement of Johnson's rights in the 1972 re-mix sound recordings has caused and is continuing to cause irreparable injury,

loss and damages to Johnson, and unless defendants are restrained from continuing their wrongful infringement of Johnson's rights, the irreparable damages to Johnson will increase without an adequate remedy at law.

147.   As a result of the infringements of Johnson's rights in said work as described herein by defendants, defendants have obtained great income and gains and Johnson has suffered severe and actual financial losses due to the defendants' willful appropriation of Johnson's said composition and recording. 148.

The acts of infringement described herein have been willful, intentional, and in disregard of and with indifference to Johnson's rights.

**WHEREFORE**, Johnson requests judgment against PEDRO ZAYAS, CHRISTOPHER RIES and ZOMBA ENTERPRISES, INC. as follows:

A.   Defendants, their agents, servants, employees, attorneys, partners, successors, and assigns, and all persons in active concert or participation with any of them, be permanently enjoined from future instances of infringement of Johnson's sound recording copyright in "Different Strokes" and that the Court order Defendants to pay Johnson 50% of the publishing income on a going forward basis for all future sales and distribution of the infringing work; B.

Johnson be declared a co-owner in the sound recording copyright in the infringing work; and

C.   Defendants be required to pay Johnson statutory damages pursuant to 17 U.S.C. § 504( c) or, at their election prior to judgment, actual damages and profits as provided in 17 U.S.C. § 504 (b) and to account to Johnson for all gains, profits, and advantages derived by defendants from their infringement of

34

Johnson's rights and work, together with interest on such damages as the court deems appropriate;

D.      Defendants be required to pay Johnson his costs and attorneys' fees pursuant to 17 U.S.C. § 505; and

E.      Defendants be required to provide Johnson with such other relief as the court deems just and proper.

## COUNT XIII – VICARIOUS COPYRIGHT INFRINGEMENT
## CRIMINAL BACKGROUND

149.    Paragraphs One through 148 are realleged and incorporated as though fully set forth herein.

150.    Defendants are liable as vicarious infringers for the copyright infringement committed by taking the Different Strokes Ensemble.

151.    At all relevant times, Defendants had the right and ability to control and/or supervise the infringing conduct, and defendants have had a direct financial interest and have derived substantial financial benefit from the infringements of Johnson's copyrighted sound recording.

152.    Defendants have derived substantial benefit from the infringement by selling and distributing significant numbers of their songs without having to pay Johnson anything.

153.    Each violation of Johnson's rights to his copyrighted sound recording constitutes a separate and distinct act of copyright infringement.   Through the conduct described herein, Defendants are vicariously liable for each act of infringement described herein.

**WHEREFORE**, SYL JOHNSON requests judgment against PEDRO ZAYAS, CHRISTOPHER RIES and ZOMBA ENTERPRISES, INC. as follows:

A.     Defendants, their agents, servants, employees, attorneys, partners, successors, and assigns, and all persons in active concert or participation with any of them, be permanently enjoined from future instances of infringement of Johnson's sound recording copyright in "Different Strokes" and that the Court order Defendants to pay Johnson 50% of the publishing income on a going forward basis for all future sales and distribution of the infringing work;

B.     Johnson be declared a co-owner in the sound recording copyright in the infringing work; and

C.     Defendants be required to pay Johnson statutory damages pursuant to 17 U.S.C. § 504( c) or, at their election prior to judgment, actual damages and profits as provided in 17 U.S.C. § 504 (b) and to account to Johnson for all gains, profits, and advantages derived by defendants from their infringement of Johnson's rights and work, together with interest on such damages as the court deems appropriate;

D.     Defendants be required to pay Johnson his costs and attorneys' fees pursuant to 17 U.S.C. § 505; and

E.     Defendants be required to provide Johnson with such other relief as the court deems just and proper.

## COUNT XIV – MISAPPROPRIATION-WHO STOLE THE DJ

154.  Paragraph Nos. 1 through 153 are incorporated and realleged as though fully set forth herein.

155. The Ensemble contained in the 1967 sound recording of Different Strokes and in the 1972 remix of Different Strokes was original and included Johnson's voice recording. Johnson had a legal right to control the use of his voice recording.

156. Will Smith, Zomba Enterprises and Sony had access to the 1967 sound recording of Different Strokes and to the 1972 remix because it was commercially available in various mediums.

157. Defendants misappropriated Johnson's voice recording and misappropriated the Ensemble which was the embodiment of Johnson's original creative work.

158. Johnson contributed the expenses of recording as well as his vocal talent, creativity, time and labor to the creation of the Ensemble. Johnson benefits commercially from the Ensemble to the extent that he negotiates licenses to artists who want to use it in their works.

159. As a result of taking Johnson's voice recording and the Different Strokes Ensemble, Defendants and each of them gave Who Stole The DJ distinction while avoiding expending the creative resources necessary to develop the distinct sound that Defendants' were able to obtain without obtaining Johnson's consent or paying him for its use.

160. As a direct and proximate result of the misappropriation described herein, defendants and each of them have obtained

unlawful profits by virtue of the unlawful misappropriation which exceeds the sum of $75,000.00.

**WHEREFORE**, SYL JOHNSON requests that this court enter judgment in his favor and against each Defendant WILL SMITH, ZOMBA ENTERPRISES, INC. and SONY BMG MUSIC ENTERTAINMENT, INC., in an amount to be determined at trial but in excess of $75,000.00 and require disgorgement of profits, damages, punitive damages, costs and fees as may be permitted by law and for such other and further relief as may be equitable and just.

### COUNT XV – UNJUST ENRICHMENT-WHO STOLE THE DJ

161. Paragraph Nos. 1 through 160 are incorporated and realleged as though fully set forth herein.

162. As described herein, Defendants and each of them have obtained a benefit by the use of the misappropriated samples which have enhanced their musical work, Who Stole The DJ which includes profits from sales and distribution of the works, obtaining and owning a valuable sound recording copyright in the work, issuing and being compensated for licenses in the work, and other benefits, which would be unjust for them to retain.

**WHEREFORE**, SYL JOHNSON, Plaintiff herein, requests that this Court enter judgment in his favor and against each Defendant named herein WILL SMITH, ZOMBA ENTERPRISES, INC. and SONY MUSIC ENTERTAINMENT, INC., in the amount by which each

Defendant has been unjustly enriched by misappropriating Johnson's voice recording and sample, in an amount to be proved at trial, but in the amount in excess of $75,000.00, for costs and fees as permitted by law and for such other and further relief as may be equitable and just.

### COUNT XVI-FEDERAL COPYRIGHT INFRINGEMENT
### <u>WHO STOLE THE DJ</u>

163. Paragraphs One through 162 are incorporated and realleged as though fully stated herein.

164. In the event that the evidence establishes that Defendants or any of them took the Different Strokes Ensemble from the 1972 re-mix sound recording, and that such re-mix is sufficiently distinct to be entitled to federal copyright protection, then Johnson is the owner of the sound recording copyright for Different Strokes and Johnson registered his ownership of the sound recording copyright with the United States Copyright Office as described herein.

165. Among the exclusive rights granted to Johnson under the Copyright Act are the exclusive rights to reproduce the copyrighted recordings and to distribute the copyrighted recordings to the public and to create derivative works.

166. Johnson has placed proper notice of copyright pursuant to 17 U.S.C. § 401 on the album cover of "Surrounded".

167. This 1972 re-mix version of Different Strokes was widely available and accessible to each defendant.

168. On information and belief, the defendants and each of them, without the permission, authority, or license from Johnson and without any attribution to Johnson, have wrongfully, knowingly, and intentionally copied, reproduced, distributed, and sold throughout the world, including in this district, works which include the Ensemble and/or a sample of Johnson's 1972 sound recording of Different Strokes in violation of Johnson's copyright in Who Stole The DJ.

169. On information and belief, each defendant has, in turn, distributed and sold numerous copies of the infringing work which unlawfully includes a portion of Johnson's 1972 sound recording in Different Strokes throughout the world. Each violation of Johnson's rights to the 1972 sound recording constitutes a separate and distinct act of copyright infringement.

170. Defendants' continuing infringement of Johnson's rights in the 1972 re-mix sound recordings has caused and is continuing to cause irreparable injury, loss and damages to Johnson, and unless defendants are restrained from continuing their wrongful infringement of Johnson's rights, the irreparable damages to Johnson will increase without an adequate remedy at law.

171. As a result of the infringements of Johnson's rights in said work as described herein by defendants, defendants have obtained great income and gains and Johnson has suffered severe and actual financial losses due to the defendants' willful appropriation of Johnson's said composition and recording.

172. The acts of infringement described herein have been willful, intentional, and in disregard of and with indifference to Johnson's rights.

**WHEREFORE**, SYL JOHNSON requests judgment against WILL SMITH, ZOMBA ENTERPRISES, INC. and SONY BMG MUSIC ENTERTAINMENT, INC. as follows:

A.      Defendants, their agents, servants, employees, attorneys, partners, successors, and assigns, and all persons in active concert or participation with any of them, be permanently enjoined from future instances of infringement of Johnson's sound recording copyright in "Different Strokes" and that the Court order Defendants to pay Johnson 50% of the publishing income on a going forward basis for all future sales and distribution of the infringing work;

B.      Johnson be declared a co-owner in the sound recording copyright in the infringing work; and

C.      Defendants be required to pay Johnson statutory damages pursuant to 17 U.S.C. § 504( c) or, at their election prior to judgment, actual damages and profits as provided in 17 U.S.C. § 504 (b) and to account to Johnson for all gains, profits, and advantages derived by defendants from their infringement of Johnson's rights and work, together with interest on such damages as the court deems appropriate;

D.      Defendants be required to pay Johnson his costs and attorneys' fees pursuant to 17 U.S.C. § 505; and

E.      Defendants be required to provide Johnson with such other relief as the court deems just and proper.

## COUNT XVII – VICARIOUS COPYRIGHT INFRINGEMENT
## WHO STOLE THE DJ

173. Paragraphs One through 172 are incorporated and realleged as though fully set forth herein.

174. Defendants are liable as vicarious infringers for the copyright infringement committed by taking the Different Strokes Ensemble.

175. At all relevant times, Defendants had the right and ability to control and/or supervise the infringing conduct, and defendants have had a direct financial interest and have derived substantial financial benefit from the infringements of Johnson's copyrighted sound recording.

176. Defendants have derived substantial benefit from the infringement by selling and distributing significant numbers of their songs without having to pay Johnson anything.

177. Each violation of Johnson's rights to his copyrighted sound recording constitutes a separate and distinct act of copyright infringement. Through the conduct described herein, Defendants are vicariously liable for each act of infringement described herein.

**WHEREFORE**, SYL JOHNSON requests judgment against WILL SMITH, ZOMBA ENTERPRISES, INC. and SONY BMG MUSIC ENTERTAINMENT, INC. as follows:

A. Defendants, their agents, servants, employees, attorneys, partners, successors, and assigns, and all persons in active concert or participation with any of them, be permanently enjoined from future instances of infringement of Johnson's sound recording copyright in "Different Strokes" and that the Court

42

order Defendants to pay Johnson 50% of the publishing income on a going forward basis for all future sales and distribution of the infringing work;

B.       Johnson be declared a co-owner in the sound recording copyright in the infringing work; and

C.       Defendants be required to pay Johnson statutory damages pursuant to 17 U.S.C. § 504( c) or, at their election prior to judgment, actual damages and profits as provided in 17 U.S.C. § 504 (b) and to account to Johnson for all gains, profits, and advantages derived by defendants from their infringement of Johnson's rights and work, together with interest on such damages as the court deems appropriate;

D.       Defendants be required to pay Johnson his costs and attorneys' fees pursuant to 17 U.S.C. § 505; and

E.       Defendants be required to provide Johnson with such other relief as the court deems just and proper.

## COUNT XVIII – MISAPPROPRIATION- REAL NIGGAZ DON'T DIE

178.  Paragraph Nos. 1 through 177 are incorporated and realleged as though fully set forth herein.

179.  The Ensemble contained in the 1967 sound recording of Different Strokes and in the 1972 remix of Different Strokes was original and included Johnson's voice recording.  Johnson had a legal right to control the use of his voice recording.

180. NWA, Capital Records, Antoine Carraby, Andre Young and Compton Records d/b/a Ruthless Records had access to the

43

1967 sound recording of Different Strokes and to the 1972 remix because it was commercially available in various mediums.

181. Defendants misappropriated Johnson's voice recording and misappropriated the Ensemble which was the embodiment of Johnson's original creative work.

182. Johnson contributed the expenses of recording as well as his vocal talent, creativity, time and labor to the creation of the Ensemble. Johnson benefits commercially from the Ensemble to the extent that he negotiates licenses to artists who want to use it in their works.

183. As a result of taking Johnson's voice recording and the Different Strokes Ensemble, Defendants and each of them gave their work distinction while avoiding expending the creative resources necessary to develop the distinct sound that Defendants' were able to obtain without obtaining Johnson's consent or paying him for its use.

184. As a direct and proximate result of the misappropriation described herein, defendants and each of them have obtained unlawful profits by virtue of the unlawful misappropriation which exceeds the sum of $75,000.00.

**WHEREFORE**, SYL JOHNSON requests that this court enter judgment in his favor and against each Defendant NWA, Capital Records, Inc., Antoine Carraby, Andre Young and Compton Records d/b/a Ruthless Records, Inc. in an amount to be determined at trial

but in excess of $75,000.00 and require disgorgement of profits, damages, punitive damages, costs and fees as may be permitted by law and for such other and further relief as may be equitable and just.

## COUNT XIX – UNJUST ENRICHMENT-REAL NIGGAZ DON'T DIE

185. Paragraph Nos. 1 through 184 are incorporated and realleged as though fully set forth herein.

186. As described herein, the partnership N.W.A. its producers Andre Young and Antoine Carraby, Compton Records a/k/a Ruthless Records and Capital Records have obtained a benefit by the use of the misappropriated samples which have enhanced their musical works and which benefit includes profits from sales and distribution of the Real Niggaz Don't Die, have obtained and valuable sound recording copyright in the work, issued and been compensated for licenses in the work, and other benefits, which would be unjust for them to retain.

**WHEREFORE**, SYL JOHNSON, Plaintiff herein, requests that this Court enter judgment in his favor and against each Defendant named herein N.W.A., ANTOINE CARRABY, ANDRE YOUNG, COMPTON RECORDS A/K/A RUTHLESS RECORDS and CAPITAL RECORDS, INC., in the amount by which each has been unjustly enriched by misappropriating Johnson's voice recording and sample, in an amount to be proved at trial, but in the amount in excess of

45

$75,000.00, for costs and fees as permitted by law and for such other and further relief as may be equitable and just.

## COUNT XX-FEDERAL COPYRIGHT INFRINGEMENT
## REAL NIGGAZ DON'T DIE

187. Paragraphs One through 81 are incorporated and realleged as though fully stated herein.

188. In the event that the evidence establishes that Defendants or any of them took the Different Strokes Ensemble from the 1972 re-mix sound recording, and that such re-mix is sufficiently distinct to be entitled to federal copyright protection, then Johnson is the owner of the sound recording copyright for Different Strokes and Johnson registered his ownership of the sound recording copyright with the United States Copyright Office as described herein.

189. Among the exclusive rights granted to Johnson under the Copyright Act are the exclusive rights to reproduce the copyrighted recordings and to distribute the copyrighted recordings to the public and to create derivative works.

190. Johnson has placed proper notice of copyright pursuant to 17 U.S.C. § 401 on the album cover of "Surrounded".

191. This 1972 re-mix version of Different Strokes was widely available and accessible to each defendant.

192. On information and belief, the defendants and each of them, without the permission, authority, or license from Johnson and without any attribution to Johnson, have wrongfully, knowingly, and intentionally copied,

46

reproduced, distributed, and sold throughout the world, including in this district, works which include the Ensemble and/or a sample of Johnson's 1972 sound recording of Different Strokes in violation of Johnson's copyright in Real Niggaz Don't Die.

193.    On information and belief, each defendant has, in turn, distributed and sold numerous copies of an infringing work which unlawfully includes a portion of Johnson's 1972 sound recording in Different Strokes throughout the world. Each violation of Johnson's rights to the 1972 sound recording constitutes a separate and distinct act of copyright infringement.

194.    Defendants' continuing infringement of Johnson's rights in the 1972 re-mix sound recordings has caused and is continuing to cause irreparable injury, loss and damages to Johnson, and unless defendants are restrained from continuing their wrongful infringement of Johnson's rights, the irreparable damages to Johnson will increase without an adequate remedy at law.

195.    As a result of the infringements of Johnson's rights in said work as described herein by defendants, defendants have obtained great income and gains and Johnson has suffered severe and actual financial losses due to the defendants' willful appropriation of Johnson's said composition and recording.

196.    The acts of infringement described herein have been willful, intentional, and in disregard of and with indifference to Johnson's rights.

**WHEREFORE**, SYL JOHNSON requests judgment against NWA, ANTOINE CARRABY, ANDRE YOUNG, COMPTON RECORDS, a/k/a Ruthless Records and CAPITAL RECORDS, INC. as follows:

A.    Defendants, their agents, servants, employees, attorneys, partners, successors, and assigns, and all persons in active concert or participation with any of them, be permanently enjoined from future instances of infringement of Johnson's sound recording copyright in "Different Strokes" and that the Court order Defendants to pay Johnson 50% of the publishing income on a going forward basis for all future sales and distribution of the infringing work;

B.    Johnson be declared a co-owner in the sound recording copyright in the infringing work; and

C.    Defendants be required to pay Johnson statutory damages pursuant to 17 U.S.C. § 504( c) or, at their election prior to judgment, actual damages and profits as provided in 17 U.S.C. § 504 (b) and to account to Johnson for all gains, profits, and advantages derived by defendants from their infringement of Johnson's rights and work, together with interest on such damages as the court deems appropriate;

D.    Defendants be required to pay Johnson his costs and attorneys' fees pursuant to 17 U.S.C. § 505; and

E.    Defendants be required to provide Johnson with such other relief as the court deems just and proper.

### COUNT XXI – VICARIOUS COPYRIGHT INFRINGEMENT
### REAL NIGGAZ DON'T DIE

197.  Paragraphs One through 81 are incorporated and realleged as though fully set forth herein.

198.  Defendants are liable as vicarious infringers for the copyright infringement committed by taking the Different Strokes Ensemble.

199. At all relevant times, Defendants had the right and ability to control and/or supervise the infringing conduct, and defendants have had a direct financial interest and have derived substantial financial benefit from the infringements of Johnson's copyrighted sound recording.

200. Defendants have derived substantial benefit from the infringement by selling and distributing significant numbers of their songs without having to pay Johnson anything for his sound recording work.

201. Each violation of Johnson's rights to his copyrighted sound recording constitutes a separate and distinct act of copyright infringement. Through the conduct described herein, Defendants are vicariously liable for each act of infringement described herein.

**WHEREFORE**, SYL JOHNSON requests judgment against NWA, ANTOINE CARRABY, ANDRE YOUNG, COMPTON RECORDS, a/k/a Ruthless Records and CAPITAL RECORDS, INC. as follows:

A. Defendants, their agents, servants, employees, attorneys, partners, successors, and assigns, and all persons in active concert or participation with any of them, be permanently enjoined from future instances of infringement of Johnson's sound recording copyright in "Different Strokes" and that the Court order Defendants to pay Johnson 50% of the publishing income on a going forward basis for all future sales and distribution of the infringing work;

B. Johnson be declared a co-owner in the sound recording copyright in the infringing work; and

C.      Defendants be required to pay Johnson statutory damages pursuant to 17 U.S.C. § 504( c) or, at their election prior to judgment, actual damages and profits as provided in 17 U.S.C. § 504 (b) and to account to Johnson for all gains, profits, and advantages derived by defendants from their infringement of Johnson's rights and work, together with interest on such damages as the court deems appropriate;

D.      Defendants be required to pay Johnson his costs and attorneys' fees pursuant to 17 U.S.C. § 505; and

E.      Defendants be required to provide Johnson with such other relief as the court deems just and proper.

## COUNT XXII – MISAPPROPRIATION—NOTHIN' BUT LOVE

202.  Paragraph Nos. 1 through 201 are incorporated and realleged as though fully set forth herein.

203.  The Ensemble contained in the 1967 sound recording of Different Strokes and in the 1972 remix of Different Strokes was original and included Johnson's voice recording.  Johnson had a legal right to control the use of his voice recording.

204.  The Tupac Shakur Estate, Amaru and others unknown at this time, had access to the 1967 sound recording of Different Strokes and to the 1972 remix because it was commercially available in various mediums.

205. Defendants misappropriated Johnson's voice recording and misappropriated the Ensemble which was the embodiment of Johnson's original creative work.

206. Johnson contributed the expenses of recording as well as his vocal talent, creativity, time and labor to the creation of the Ensemble. Johnson benefits commercially from the Ensemble to the extent that he negotiates licenses to artists who want to use it in their works.

207. As a result of taking Johnson's voice recording and the Different Strokes Ensemble, Defendants gave the work distinction while avoiding expending the creative resources necessary to develop the distinct sound that Defendants' were able to obtain without obtaining Johnson's consent or paying him for its use.

208. As a direct and proximate result of the misappropriation described herein, defendants and each of them have obtained unlawful profits by virtue of the unlawful misappropriation which exceeds the sum of $75,000.00.

**WHEREFORE**, SYL JOHNSON requests that this court enter judgment in his favor and against each Defendant AFENI SHAKUR, CO-ADMINISTRATOR OF ESTATE OF TUPAC SHAKUR, AMARU ENTERTAINMENT, INC. and UMG RECORDINGS, INC., in an amount to be determined at trial but in excess of $75,000.00 and require disgorgement of profits, damages, punitive damages, costs and fees

51

as may be permitted by law and for such other and further relief as may be equitable and just.

### COUNT XXIII – UNJUST ENRICHMENT- NOTHIN' BUT LOVE

209. Paragraph Nos. 1 through 208 are incorporated and realleged as though fully set forth herein.

210. Defendants have obtained a benefit by the use of the misappropriated samples which have enhanced their musical work, Nothin' But Love, which benefit includes profits from sales and distribution of the work, have obtained and own a valuable sound recording copyright in the work, issued and been compensated for licenses in the work, and other benefits, which would be unjust for them to retain.

**WHEREFORE**, SYL JOHNSON, Plaintiff herein, requests that this Court enter judgment in his favor and against each Defendant named herein, AFENI SHAKUR, CO-ADMINISTRATOR FOR TUPAC SHAKUR ESTATE, AMARU ENTERTAINMENT, INC. and UMG RECORDINGS, INC., in the amount by which each has been unjustly enriched by misappropriating Johnson's voice recording and sample, in an amount to be proved at trial, but in the amount in excess of $75,000.00, for costs and fees as permitted by law and for such other and further relief as may be equitable and just.

## COUNT XXIV-FEDERAL COPYRIGHT INFRINGEMENT
## NOTHIN' BUT LOVE

211. Paragraphs One through 210 are incorporated and realleged as though fully stated herein.

212. In the event that the evidence establishes that Defendants or any of them took the Different Strokes Ensemble from the 1972 re-mix sound recording, and that such re-mix is sufficiently distinct to be entitled to federal copyright protection, then Johnson is the owner of the sound recording copyright for Different Strokes and Johnson registered his ownership of the sound recording copyright with the United States Copyright Office as described herein.

213. Among the exclusive rights granted to Johnson under the Copyright Act are the exclusive rights to reproduce the copyrighted recordings and to distribute the copyrighted recordings to the public and to create derivative works.

214. Johnson has placed proper notice of copyright pursuant to 17 U.S.C. § 401 on the album cover of "Surrounded".

215. This 1972 re-mix version of Different Strokes was widely available and accessible to each defendant.

216. On information and belief, the defendants and each of them, without the permission, authority, or license from Johnson and without any attribution to Johnson, have wrongfully, knowingly, and intentionally copied, reproduced, distributed, and sold throughout the world, including in this district, works which include the Ensemble and/or a sample of Johnson's 1972 sound

53

recording of Different Strokes in violation of Johnson's copyright in Nothin' But Love.

217.    On information and belief, each defendant has, in turn, distributed and sold numerous copies of an infringing work which unlawfully includes a portion of Johnson's 1972 sound recording in Different Strokes throughout the world. Each violation of Johnson's rights to the 1972 sound recording constitutes a separate and distinct act of copyright infringement.

218.    Defendants' continuing infringement of Johnson's rights in the 1972 re-mix sound recordings has caused and is continuing to cause irreparable injury, loss and damages to Johnson, and unless defendants are restrained from continuing their wrongful infringement of Johnson's rights, the irreparable damages to Johnson will increase without an adequate remedy at law.

219.    As a result of the infringements of Johnson's rights in said work as described herein, defendants have obtained great income and gains and Johnson has suffered severe and actual financial losses due to the defendants' willful appropriation of Johnson's said composition and recording.

220.    The acts of infringement described herein have been willful, intentional, and in disregard of and with indifference to Johnson's rights.

**WHEREFORE**, Johnson requests judgment against AFENI SHAKUR, CO-ADMINISTRATOR FOR TUPAC SHAKUR ESTATE, AMARU ENTERTAINMENT, INC. and UMG RECORDINGS, INC., as follows:

A.    Defendants, their agents, servants, employees, attorneys, partners, successors, and assigns, and all persons in active concert or participation with any

of them, be permanently enjoined from future instances of infringement of Johnson's sound recording copyright in "Different Strokes" and that the Court order Defendants to pay Johnson 50% of the publishing income on a going forward basis for all future sales and distribution of the infringing work;

B.     Johnson be declared a co-owner in the sound recording copyright in the infringing work; and

C.     Defendants be required to pay Johnson statutory damages pursuant to 17 U.S.C. § 504( c) or, at their election prior to judgment, actual damages and profits as provided in 17 U.S.C. § 504 (b) and to account to Johnson for all gains, profits, and advantages derived by defendants from their infringement of Johnson's rights and work, together with interest on such damages as the court deems appropriate;

D.     Defendants be required to pay Johnson his costs and attorneys' fees pursuant to 17 U.S.C. § 505; and

E.     Defendants be required to provide Johnson with such other relief as the court deems just and proper.

## COUNT XXV – VICARIOUS COPYRIGHT INFRINGEMENT
### NOTHIN' BUT LOVE

221.   Paragraphs One through 220 are incorporated and realleged as though fully set forth herein.

222.   Defendants are liable as vicarious infringers for the copyright infringement committed by taking the Different Strokes Ensemble.

223.   At all relevant times, Defendants had the right and ability to control and/or supervise the infringing conduct, and defendants have had a direct financial

interest and have derived substantial financial benefit from the infringements of Johnson's copyrighted sound recording.

224.   Defendants have derived substantial benefit from the infringement by selling and distributing significant numbers of their songs without having to pay Johnson anything for his sound recording work.

225.   Each violation of Johnson's rights to his copyrighted sound recording constitutes a separate and distinct act of copyright infringement.   Through the conduct described herein, Defendants are vicariously liable for each act of infringement described herein.

**WHEREFORE**, Johnson requests judgment against AFENI SHAKUR, CO-ADMINISTRATOR FOR TUPAC SHAKUR ESTATE, AMARU ENTERTAINMENT, INC. and UMG RECORDINGS, INC. as follows:

A.      Defendants, their agents, servants, employees, attorneys, partners, successors, and assigns, and all persons in active concert or participation with any of them, be permanently enjoined from future instances of infringement of Johnson's sound recording copyright in "Different Strokes" and that the Court order Defendants to pay Johnson 50% of the publishing income on a going forward basis for all future sales and distribution of the infringing work;

B.      Johnson be declared a co-owner in the sound recording copyright in the infringing work; and

C.      Defendants be required to pay Johnson statutory damages pursuant to 17 U.S.C. § 504( c) or, at their election prior to judgment, actual damages and profits as provided in 17 U.S.C. § 504 (b) and to account to Johnson for all gains,

profits, and advantages derived by defendants from their infringement of Johnson's rights and work, together with interest on such damages as the court deems appropriate;

D.   Defendants be required to pay Johnson his costs and attorneys' fees pursuant to 17 U.S.C. § 505; and

E.   Defendants be required to provide Johnson with such other relief as the court deems just and proper.

### COUNT XXVI – MISAPPROPRIATION—PEEP GAME

226.   Paragraph Nos. 1 through 225 are incorporated and realleged as though fully set forth herein.

227.   The Ensemble contained in the 1967 sound recording of Different Strokes and in the 1972 remix of Different Strokes was original and included Johnson's voice recording.  Johnson had a legal right to control the use of his voice recording.

228.   Defendants had access to the 1967 sound recording of Different Strokes and to the 1972 remix because it was commercially available in various mediums.

229.   Defendants misappropriated Johnson's voice recording and misappropriated the Ensemble which was the embodiment of Johnson's original creative work.

230.   Johnson contributed the expenses of recording as well as his vocal talent, creativity, time and labor to the creation of the Ensemble.  Johnson benefits commercially from the Ensemble to the

extent that he negotiates licenses to artists who want to use it in their works.

231. As a result of taking Johnson's voice recording and the Different Strokes Ensemble, Defendants and each of them gave their work, Peep Game, distinction while avoiding expending the creative resources necessary to develop the distinct sound that Defendants' were able to obtain without obtaining Johnson's consent or paying him for its use.

232. As a direct and proximate result of the misappropriation described herein, defendants and each of them have obtained unlawful profits by virtue of the unlawful misappropriation which exceeds the sum of $75,000.00.

**WHEREFORE**, SYL JOHNSON requests that this court enter judgment in his favor and against each Defendant, AFENI SHAKUR, CO-ADMINISTRATOR OF TUPAC SHAKUR ESTATE, AMARU ENTERTAINMENT and UMG RECORDINGS, INC. in an amount to be determined at trial but in excess of $75,000.00 and require disgorgement of profits, damages, punitive damages, costs and fees as may be permitted by law and for such other and further relief as may be equitable and just.

### COUNT XXVII – UNJUST ENRICHMENT- PEEP GAME

233. Paragraph Nos. 1 through 232 are incorporated and realleged as though fully set forth herein.

58

234. As described herein, Defendants have obtained a benefit by the use of the misappropriated samples which have enhanced their musical works and which benefit includes profits from sales and distribution of the work, Peep Game, have obtained and own a valuable sound recording copyright in the work, issued and been compensated for licenses in the work, and other benefits, which would be unjust for them to retain.

**WHEREFORE**, SYL JOHNSON, Plaintiff herein, requests that this Court enter judgment in his favor and against each Defendant named herein AFENI SHAKUR, CO-ADMINISTRATOR OF TUPAC SHAKUR ESTATE and AMARU ENTERTAINMENT in the amount by which each has been unjustly enriched by misappropriating Johnson's voice recording and sample, in an amount to be proved at trial, but in the amount in excess of $75,000.00, for costs and fees as permitted by law and for such other and further relief as may be equitable and just.

### COUNT XXVIII-FEDERAL COPYRIGHT INFRINGEMENT
### PEEP GAME

235. Paragraphs One through 234 are incorporated and realleged as though fully stated herein.

236. In the event that the evidence establishes that Defendants or any of them took the Different Strokes Ensemble from the 1972 re-mix sound recording, and that such re-mix is sufficiently distinct to be entitled to federal copyright protection, then Johnson is the owner of

the sound recording copyright for Different Strokes and Johnson registered his ownership of the sound recording copyright with the United States Copyright Office as described herein.

237.   Among the exclusive rights granted to Johnson under the Copyright Act are the exclusive rights to reproduce the copyrighted recordings and to distribute the copyrighted recordings to the public and to create derivative works.

238.   Johnson has placed proper notice of copyright pursuant to 17 U.S.C. § 401 on the album cover of "Surrounded".

239.   This 1972 re-mix version of Different Strokes was widely available and accessible to each defendant.

240.   On information and belief, the defendants and each of them, without the permission, authority, or license from Johnson and without any attribution to Johnson, have wrongfully, knowingly, and intentionally copied, reproduced, distributed, and sold throughout the world, including in this district, works which include the Ensemble and/or a sample of Johnson's 1972 sound recording of Different Strokes in violation of Johnson's copyright in Peep Game.

241.   On information and belief, each defendant has, in turn, distributed and sold numerous copies of an infringing work which unlawfully includes a portion of Johnson's 1972 sound recording in Different Strokes throughout the world. Each violation of Johnson's rights to the 1972 sound recording constitutes a separate and distinct act of copyright infringement.

242.   Defendants' continuing infringement of Johnson's rights in the 1972

re-mix sound recordings has caused and is continuing to cause irreparable injury, loss and damages to Johnson, and unless defendants are restrained from continuing their wrongful infringement of Johnson's rights, the irreparable damages to Johnson will increase without an adequate remedy at law.

243.   As a result of the infringements of Johnson's rights in said work as described herein, defendants have obtained great income and gains and Johnson has suffered severe and actual financial losses due to the defendants' willful appropriation of Johnson's said composition and recording.

244.   The acts of infringement described herein have been willful, intentional, and in disregard of and with indifference to Johnson's rights.

**WHEREFORE**, Johnson requests judgment against Defendants AFENI SHAKUR, CO-ADMINISTRATOR OF TUPAC SHAKUR ESTATE and AMARU ENTERTAINMENT, INC. as follows:

A.   Defendants, their agents, servants, employees, attorneys, partners, successors, and assigns, and all persons in active concert or participation with any of them, be permanently enjoined from future instances of infringement of Johnson's sound recording copyright in "Different Strokes" and that the Court order Defendants to pay Johnson 50% of the publishing income on a going forward basis for all future sales and distribution of the infringing work;

B.   Johnson be declared a co-owner in the sound recording copyright in the infringing work; and

C.   Defendants be required to pay Johnson statutory damages pursuant to 17 U.S.C. § 504( c) or, at their election prior to judgment, actual damages and

profits as provided in 17 U.S.C. § 504 (b) and to account to Johnson for all gains, profits, and advantages derived by defendants from their infringement of Johnson's rights and work, together with interest on such damages as the court deems appropriate;

D.     Defendants be required to pay Johnson his costs and attorneys' fees pursuant to 17 U.S.C. § 505; and

E.     Defendants be required to provide Johnson with such other relief as the court deems just and proper.

## COUNT XXIX – VICARIOUS COPYRIGHT INFRINGEMENT
### PEEP GAME

245.    Paragraphs One through 244 are incorporated and realleged as though fully set forth herein.

246.    Tupac Shakur Estate, Amaru and/or UMG are liable as vicarious infringers for the copyright infringement committed by taking the Different Strokes Ensemble.

247.    At all relevant times, Defendants had the right and ability to control and/or supervise the infringing conduct, and defendants have had a direct financial interest and have derived substantial financial benefit from the infringements of Johnson's copyrighted sound recording.

248.    Defendants have derived substantial benefit from the infringement by selling and distributing significant numbers of their songs without having to pay Johnson anything for his sound recording work.

249.    Each violation of Johnson's rights to his copyrighted sound recording constitutes a separate and distinct act of copyright infringement.  Through the

conduct described herein, Defendants are vicariously liable for each act of infringement described herein.

**WHEREFORE**, Johnson requests judgment against Defendants AFENI SHAKUR, CO-ADMINISTRATOR OF TUPAC SHAKUR ESTATE, AMARU ENTERTAINMENT, INC. and UMG RECORDINGS, INC. as follows:

A.      Defendants, their agents, servants, employees, attorneys, partners, successors, and assigns, and all persons in active concert or participation with any of them, be permanently enjoined from future instances of infringement of Johnson's sound recording copyright in "Different Strokes" and that the Court order Defendants to pay Johnson 50% of the publishing income on a going forward basis for all future sales and distribution of the infringing work;

B.      Johnson be declared a co-owner in the sound recording copyright in the infringing work; and

C.      Defendants be required to pay Johnson statutory damages pursuant to 17 U.S.C. § 504( c) or, at their election prior to judgment, actual damages and profits as provided in 17 U.S.C. § 504 (b) and to account to Johnson for all gains, profits, and advantages derived by defendants from their infringement of Johnson's rights and work, together with interest on such damages as the court deems appropriate;

D.      Defendants be required to pay Johnson his costs and attorneys' fees pursuant to 17 U.S.C. § 505; and

E.      Defendants be required to provide Johnson with such other relief as

the court deems just and proper.

Plaintiff hereby demands a trial by jury on all issues triable by a jury.

SYL JOHNSON, a/k/a Sylvester Thompson,
d/b/a Syl-Zel Music, Plaintiff herein

By   s/ Cathy A. Pilkington
        One Of His Attorneys

Cathy A. Pilkington, Esq.
Lance B. Johnson, Esq.
LAW OFFICES OF CATHY A. PILKINGTON
161 North Clark Street, Suite 4700
Chicago, Illinois  60601
312-346-2762