UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHNSON,<br><br>        Plaintiff,<br><br>    v.<br><br>JACKSON, et al.<br><br>        Defendants.<br>_____<br><br>CAPITOL RECORDS, LLC,<br><br>        Third Party Plaintiff,<br><br>    v.<br><br>SUNLIGHT RECORDS, INC. d/b/a<br>TWILIGHT/TWINIGHT RECORDS and<br>EDGEWATER MUSIC CO.; and COMPTOWN<br>RECORDS, INC.<br><br>        Third Party Defendants. | No.: 07CV7288<br><br>Judge Aspen<br>Magistrate Judge Keys |

**THIRD PARTY DEFENDANT COMPTOWN ENTERTAINMENT, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO CAPITOL RECORDS, LLC'S THIRD PARTY COMPLAINT**

Defendant Comptown Records, Inc. ("Comptown"), through its undersigned attorneys, for its Answer and Affirmative Defenses to the Third Party Complaint of Third Party Plaintiff Capitol Records, LLC ("Capitol"), hereby states as follows:

**Nature of the Case**

1. In this Third-Party Complaint, Capitols (*sic*) seek to enforce the terms of settlement and license agreements under which Sunlight granted licenses permitting the inclusion of samples of a recording entitled "Different Strokes" on recordings by the group N.W.A. In the license agreements, Sunlight agreed to indemnify and hold harmless Capitol and Comptown in the event Capitol or Comptown was sued for infringing "Different Strokes" by any other party. In a separate agreement, Comptown agreed to indemnify Capitol in the event Capitol was sued

for infringing any material supplied to it by Comptown. Capitol has now been sued for misappropriation, copyright infringement, and related causes of action by Syl Johnson ("Johnson"), who claims to own the master recordings and copyrights to "Different Strokes." In connection with the license agreements, Sunlight and Comptown obtained valuable consideration based on the representation that they owned those rights and were legally entitled to license their use.

**ANSWER:** Comptown admits that Capitol seeks to enforce the terms of an agreement between Sunlight Records, Inc. d/b/a Twilight/Twinight Records and Edgewater Music Co. (hereinafter "Sunlight") and Comptown (hereinafter referred to as the "Sunlight Agreement") whereby Sunlight granted licenses permitting the inclusion of samples of a recording entitled "Different Strokes" on recordings by the group N.W.A.  Comptown admits that pursuant to the Sunlight Agreement, Sunlight agreed to indemnify and hold harmless Comptown in the event Comptown was sued for infringing "Different Strokes" by any other party.  Comptown admits that Capitol has now been sued for misappropriation, copyright infringement, and related causes of action by Syl Johnson ("Johnson"), who claims to own the master recordings and copyrights to "Different Strokes." Comptown admits that Sunlight obtained valuable consideration based on the representation that they owned those rights and were legally entitled to license their use.  Comptown also admits that it entered into an indemnification agreement with Capitol.  Comptown denies all remaining allegations in Paragraph 1 and demands strict proof thereof.

     2.     While Capitol does not concede that Johnson has valid claims for misappropriation, infringement, and related causes of action, Sunlight is legally obligated to indemnify Comptown and Capitol, and Comptown is legally obligated to indemnify Capitol, for the fees and costs of defending against Johnson's suit and for any judgment Johnson might obtain against Capitol.

**ANSWER:** Comptown admits that Capitol does not concede that Johnson has valid claims for misappropriation, infringement, and related causes of action.  Comptown admits that Sunlight is legally obligated to indemnify Comptown.  Comptown does not have sufficient knowledge to

admit or deny the allegations whether Sunlight is legally obligated to indemnify Capitol, which are on that basis denied. Comptown denies each and every remaining allegations of Paragraph 2.

### Parties

3. Third-Party Plaintiff Capitol is a Delaware limited liability company with its principal place of business in New York. Capitol is engaged in the business of manufacturing, distributing, and selling musical performances in a variety of media.

**ANSWER:** Comptown does not have sufficient knowledge to admit or deny the allegations of Paragraph 3. Accordingly, Comptown denies each and every allegation of Paragraph 3 and demands strict proof thereof.

4. Third-Party Defendant Sunlight is an Illinois corporation with its principal place of business in Illinois. On information and belief, Sunlight's sole shareholder is Peter Wright. Wright has been engaged in the business of promoting, manufacturing, distributing, selling, and licensing musical performances since at least the 1960s. During the late 1960s and into the 1970s, Wright was a co-owner of the record labels Twilight and Twinight and was the owner of several music publishing companies, including Midday Music and Edgewater Music. Wright formed Sunlight in approximately 1994 to carry on the businesses previously conducted under the Twilight, Twinight, Midday, and Edgewater names.

**ANSWER:** The allegations of Paragraph 4 are not directed to Comptown, and Comptown does not have sufficient knowledge to admit or deny the allegations of Paragraph 4, which are on that basis denied.

5. Third-Party Defendant Comptown is, on information and belief, a California corporation with its principal place of business in California. Comptown is, on information and belief, the successor to Ruthless Records ("Ruthless"), which was, on information and belief, an unincorporated d/b/a for the late Eric Wright, who was a member of the group N.W.A. On information and belief, in January 1992 Wright transferred all the assets and liabilities of Ruthless to Comptown, of which he was then the sole shareholder. On July 1, 1988, Ruthless entered into a Production Agreement with Priority Records, Inc. ("Priority"), pursuant to which Ruthless was to furnish N.W.A. recordings to Priority for distribution. In the Production Agreement, Ruthless represented and warranted to Priority that the recordings it would furnish would not "violate or infringe the rights of any Person." Ruthless further agreed to indemnify Priority and any of its licensees "from and against any and all claims, damages, liabilities, costs and expenses, including legal expenses and reasonable counsel fees, arising out of any breach by

[Ruthless] of any warranty, representation or agreement made by [Ruthless] herein." Capitol is a successor to Priority's interests with respect to recordings by N.W.A.

**ANSWER:**    Comptown admits that it is a California corporation with its principal place of business in California.  Comptown admits that it is the successor to Ruthless Records ("Ruthless") a company representing the interests of Eric Wright.  Comptown also admits that Eric Wright was a former member of the group N.W.A.  Comptown further admits that in January 1992 Wright transferred all the assets and liabilities of Ruthless to Comptown.  Comptown does not have sufficient knowledge to admit or deny the remaining allegations of Paragraph 5.  Accordingly, Comptown denies the remaining allegations of Paragraph 5..

### Jurisdiction and Venue

6.    This Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C.§ 1367 and pursuant to the terms of Fed. R. Civ. P. 14(a)(1), because the claims in this Third-Party Complaint are related to the allegations raised in Capitol's Complaint such that these claims constitute the same case or controversy, and because the Third-Party Defendants may be liable to the Third-Party Plaintiff for all or part of the claims against them.

**ANSWER:**    Comptown admits that Capitol purports to assert claims that properly implicate the jurisdiction of this Court.  The remaining allegations of Paragraph 6 state conclusions of law and not any factual allegations, for which no answer is required.  To the extent the remaining allegations of Paragraph 6 state factual allegations, Comptown denies the remaining allegations of Paragraph 6.

7.    This Court also has jurisdiction over these claims pursuant to 28 U.S.C. § 1332 because the Capitol, on the one hand, and Sunlight and Comptown, on the other, are citizens of different states and the matter in controversy exceeds $75,000 exclusive of interest and costs.

**ANSWER:**    Comptown admits that Capitol purports to assert claims that properly implicate the jurisdiction of this Court.  The remaining allegations of Paragraph 7 state conclusions of law and not any factual allegations, for which no answer is required.  To the extent the remaining

allegations of Paragraph 7 state factual allegations, Comptown denies the remaining allegations of Paragraph 7.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the matters in controversy occurred in this District and because Sunlight is subject to personal jurisdiction in this District.

**ANSWER:** The allegations of Paragraph 8 state conclusions of law and not any factual allegations, for which no answer is required. Notwithstanding, Comptown admits that venue is proper in this district and that Sunlight is subject to personal jurisdiction in this District.

### Background

9. In 1967, Syl Johnson recorded a song titled "Different Strokes," which was released as a 45-RPM single on the Twilight label. The label copy states that the song was written by "J. Cameron and J. Zachary" and was published by "Zachron Pub. and Edgewater Music, Inc." Twilight was owned by Peter Wright and Howard Bedno, and Edgewater was owned by Peter Wright.

**ANSWER:** Comptown does not have sufficient knowledge to admit or deny the allegations of Paragraph 9. Accordingly, Comptown denies each and every allegation of Paragraph 9 and demands strict proof thereof.

10. In approximately 1968, Wright and Bedno renamed Twilight "Twinight" and incorporated Twinight in Illinois. Twinight's business wound down in the mid-1970s, and in 1980, Wright and Bedno allowed its corporate registration to lapse. Wright then continued the business as an unincorporated proprietorship. In 1994, Wright incorporated Sunlight for the purpose, among other things, of holding assets formerly belonging to Twilight, Twinight, and Edgewater. Wright is Sunlight's sole owner. Bedno is deceased.

**ANSWER:** Comptown does not have sufficient knowledge to admit or deny the allegations of Paragraph 10. Accordingly, Comptown denies each and every allegation of Paragraph 10 and demands strict proof thereof.

11.     Over the years, portions of the 1967 recording of "Different Strokes" have been "sampled" by various hip-hop or rap artists.

**ANSWER:**   Comptown does not have sufficient knowledge to admit or deny the allegations of Paragraph 11.  Accordingly, Comptown denies each and every allegation of Paragraph 11 and demands strict proof thereof.

### The Sunlight Settlement and License Agreements

12.     Sunlight claimed that certain hip-hop or rap artists had sampled the 1967 "Different Strokes" recording without their permission. Among those artists against whom Sunlight made that claim was the group N.W.A., relating to its recording "Real Niggaz Don't Die."

**ANSWER:**   Comptown admits the allegations contained in Paragraph 12.

13.     After making its claim relating to the N.W.A. recording, Sunlight proceeded to negotiate settlement and license agreements that compensated Sunlight for alleged past infringements and licensed the artists and their record labels to sell records including the samples going forward. That license was a July 1, 2003 agreement between Sunlight Records, Inc. d/b/a Twilight/Twinight Records and Sunlight Records, Inc. d/b/a Edgewater Music and Comptown Records, Inc. d/b/a Ruthless Records relating to the N.W.A. recording of "Real Niggaz Don't Die."  Comptown gave good and valuable consideration to Sunlight for the settlements, licenses,and other rights granted.

**ANSWER:**   Comptown admits that Sunlight negotiated the July 1, 2003 Sunlight Agreement which compensated Sunlight for alleged past infringements and licensed Comptown to sell records including the samples going forward.  Comptown admits the July 1, 2003 agreement specifically included the N.W.A. recording of "Real Niggaz Don't Die."  Comptown admits that it gave good and valuable consideration to Sunlight for the settlements, licenses, and other rights granted.  Comptown denies any remaining allegations in Paragraph 13 and demands strict proof thereof.

14.     As is stated with more particularity in the following paragraph, the July 1, 2003 agreement contained a provision in which Sunlight represented and warranted that it had full power and authority to settle the claims made and to license the use of "Different Strokes" going

- 6 -

forward. In addition, the agreement contained a provision requiring Sunlight to indemnify Comptown from and against any claims, liabilities, and expenses arising from any breach of its warranties.

**ANSWER:** Comptown admits the allegations in Paragraph 14.

15. The July 1, 2003 agreement provided that Sunlight "represents and warrants that Sunlight owns and controls 100% of all rights (including all copyrights) in and to the Composition and the Sampled Master [of "Different Strokes"], has the right to enter into this agreement and to grant to Comptown each and every right granted to Comptown herein and that the use of the Composition and the Sample Master [of "Different Strokes"] contemplated hereunder will not violate the rights of any third party." The agreement further provided that Sunlight shall indemnify and hold Comptown free and harmless from any and all claims, liabilities, costs, losses, damages, or expenses, including reasonable attorneys' fees, arising out of any breach or failure to perform of any covenants and warranties made by Sunlight hereunder." As has been explained above, Capitol is entitled to the benefit of the rights granted to Comptown in the July 1, 2003 agreement with respect to the N.W.A. recording of "Real Niggaz Don't Die."

**ANSWER:** Comptown admits that the July 1, 2003 agreement provided that Sunlight "represents and warrants that Sunlight owns and controls 100% of all rights (including all copyrights) in and to the Composition and the Sampled Master [of "Different Strokes"], has the right to enter into this agreement and to grant to Comptown each and every right granted to Comptown herein and that the use of the Composition and the Sample Master [of "Different Strokes"] contemplated hereunder will not violate the rights of any third party." Comptown also admits that the agreement further provided that Sunlight shall indemnify and hold Comptown free and harmless from any and all claims, liabilities, costs, losses, damages, or expenses, including reasonable attorneys' fees, arising out of any breach or failure to perform of any covenants and warranties made by Sunlight hereunder." The remaining allegations of Paragraph 15 state conclusions of law and not any factual allegations, for which no answer is required. To extent the remaining allegations of Paragraph 15 alleges factual allegations, Comptown denies such allegations.

## Johnson's Infringement Claims

16.     On December 28, 2007, Johnson filed a *pro se* complaint against "EMI/Capitol Records" and others, alleging copyright infringement based on alleged sampling of "Different Strokes" in, among other recordings, the N.W.A. recording of "Real Niggas Don't Die." In his complaint, Johnson alleged that he is and has been the sole owner of the composition and 1967 master recording of "Different Strokes."

**ANSWER:**     Comptown admits that on December 28, 2007, Johnson filed a *pro se* complaint against "EMI/Capitol Records" and others, alleging copyright infringement based on alleged sampling of "Different Strokes" in, among other recordings, the N.W.A. recording of "Real Niggas Don't Die." Comptown admits that in his complaint, Johnson alleged that he is and has been the sole owner of the composition and 1967 master recording of "Different Strokes."

17.     Johnson has also stated that license agreements entered into by Sunlight are not valid because, according to him, Sunlight did not have the right to license Twilight/Twinight recordings by Johnson.

**ANSWER:**     Comptown admits that Johnson has stated that license agreements entered into by Sunlight are not valid because, according to him, Sunlight did not have the right to license Twilight/Twinight recordings by Johnson.

18.     Johnson's amended complaint in this matter alleges that Johnson has owned the 1967 sound recording of "Different Strokes" from the beginning. Johnson further alleges that he filed a copyright on a 1972 "re-mix" recording of "Different Strokes" in 1996. Johnson asserts that he is "unsure" whether the alleged samples at issue in this case came from the 1967 or the 1972 sound recordings.

**ANSWER:**     Comptown admits that Johnson's amended complaint in this matter alleges that Johnson has owned the 1967 sound recording of "Different Strokes" from the beginning. Comptown admits that Johnson further alleges that he filed a copyright on a 1972 "re-mix" recording of "Different Strokes" in 1996. Comptown admits that Johnson asserts that he is "unsure" whether the alleged samples at issue in this case came from the 1967 or the 1972 sound recordings.

19.     Johnson's amended complaint further asserts that he "operates" Twinight Records, Inc. and Edgewater Music, Inc.

**ANSWER:**     Comptown admits that Johnson's amended complaint further asserts that he "operates" Twinight Records, Inc. and Edgewater Music, Inc.

20.     Johnson's Amended Complaint seeks substantial damages, including compensatory and punitive damages, as well as attorneys' fees, from Capitol based on alleged copyright infringement and misappropriation of Johnson's alleged rights in "Different Strokes" through "Real Niggaz Don't Die."

**ANSWER:**     Comptown admits Johnson's Amended Complaint seeks substantial damages, including compensatory and punitive damages, as well as attorneys' fees, from Capitol based on alleged copyright infringement and misappropriation of Johnson's alleged rights in "Different Strokes" through "Real Niggaz Don't Die."

## COUNT I
### (Against Sunlight)

21.     Capitol realleges and incorporates the allegations of paragraphs 1-20 herein.

**ANSWER:**     Comptown's answers to Paragraphs 1-20 are incorporated and realleged as though fully set forth herein.

22.     Contrary to Sunlight's representations and warranties in the July 1, 2003 agreement, Johnson's lawsuit alleges that Johnson owns all rights to "Different Strokes" and is entitled to assert infringement and misappropriation claims against Capitol with respect to alleged sampling in "Real Niggaz Don't Die."

**ANSWER:**     Comptown admits that contrary to Sunlight's representations and warranties in the July 1, 2003 agreement, Johnson's lawsuit alleges that Johnson owns all rights to "Different Strokes" and is entitled to assert infringement and misappropriation claims against Capitol with respect to alleged sampling in "Real Niggaz Don't Die."

23. Pursuant to the July 1, 2003 agreement, Sunlight is obligated to indemnify Capitol, as an intended beneficiary, for Capitol's costs of defending against Johnson's claims in this litigation, including Capitol's reasonable attorneys' fees. In the event Johnson were to obtain a judgment against Capitol in this matter, Sunlight is further obligated to indemnify Capitol for that amount.

**ANSWER:** The allegations of Paragraph 23 are not directed to Comptown, and Comptown does not have sufficient knowledge to admit or deny the allegations of Paragraph 23, which are on that basis denied. To the extent Paragraph 23 could be deemed to contain allegations directed to Comptown, Comptown denies all such allegations.

## COUNT II
### (Against Comptown)

24. Capitol realleges and incorporates the allegations of paragraphs 1-20 herein.

**ANSWER:** Comptown's answers to Paragraphs 1-20 are incorporated and realleged as though fully set forth herein.

25. Contrary to Comptown's representations and warranties in the July 1, 1988 Production Agreement, as amended, Johnson's lawsuit alleges that Johnson owns rights to "Different Strokes" and is entitled to assert infringement and misappropriation claims against Capitol with respect to alleged sampling in "Real Niggaz Don't Die."

**ANSWER:** Comptown admits that contrary to Sunlight's representations and warranties in the July 1, 2003 agreement, Johnson's lawsuit alleges that Johnson owns all rights to "Different Strokes" and is entitled to assert infringement and misappropriation claims against Capitol with respect to alleged sampling in "Real Niggaz Don't Die."

26. Pursuant to the July 1, 1988 Production Agreement, in the event Johnson were to obtain a judgment against Capitol in this matter, Comptown is obligated to indemnify Capitol for Capitol's costs of defending against Johnson's claims in this litigation and for the amount of any judgment Johnson might obtain from Capitol. Capitol has tendered its defense to Comptown, which Comptown has refused to accept.

**ANSWER:** Comptown admits that Capitol has tendered its defense to the company which it has not agreed to accept. The remaining allegations of Paragraph 16 state conclusions of law

and not any factual allegations, for which no answer is required. To extent the remaining allegations of Paragraph 26 state factual allegations, Comptown denies each and every allegation of Paragraph 26.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense
### (Release)

Capitol's claims are barred because of the existence of a valid and enforceable release that releases Comptown for any and all liability in connection with Capitol's claims.

### Second Affirmative Defense
### (Fair Use)

Capitol's claims are barred because any use by Comptown of any work of Plaintiff's was a fair use under the copyright laws.

### Third Affirmative Defense
### (Express License)

Capitol's claims are barred because any use by Comptown of any work of Plaintiff's was pursuant to an express license.

### Fourth Affirmative Defense
### (Implied License)

Capitol's claims are barred because any use by Comptown of any work of Plaintiff's was pursuant to an implied license.

### Fifth Affirmative Defense
### (Statute of Limitations)

Capitol's claims are barred, in whole or in part, under the applicable statute of limitations.

### Sixth Affirmative Defense
### (Lack of Ownership)

Plaintiff Johnson is not entitled to recovery under any of the provisions of the Copyright

Act of 1976, 17 U.S.C. in that Plaintiff Johnson is not the lawful owner of the copyright at issue.

### Seventh Affirmative Defense
### (Abandonment)

Capitol's claims are barred because Plaintiff has abandoned the copyright at issue.

### Eighth Affirmative Defense
### (Estoppel)

Capitol's claims are barred based on the doctrine of estoppel.

### Ninth Affirmative Defense
### (Unclean Hands)

Capitol's claims are barred because of Capitol's unclean hands.

### Tenth Affirmative Defense
### (Failure to Mitigate Damages)

Capitol's claims are barred because of Capitol's failure to mitigate its damages, if any.

### Eleventh Affirmative Defense
### (Failure to State a Claim)

Capitol's claims are barred because the Complaint fails to state a claim upon which relief can be granted.

Dated: June 20, 2008　　　　　　　　　　Respectfully submitted by,

　　　　　　　　　　　　　　　　　　　/s/ Leah R. Bruno
　　　　　　　　　　　　　　　　　　　One of the attorneys Comptown Entertainment, Inc.

| | |
|---|---|
| Eric J. Farber (*Pro Hac Vice* Admitted) | |
| Kevin F. Rooney (*Pro Hac Vice* Admitted) | Leah R. Bruno (ARDC No. 6269469) |
| PINNACLE LAW GROUP LLP | David R. Geerdes (ARDC No. 6289557) |
| 425 California Street, Suite 1800 | SONNENSCHEIN NATH & ROSENTHAL LLP |
| San Francisco, California 94104 | 7800 Sears Tower |
| Tel: (415) 394-5700 | 233 S. Wacker Drive |
| Fax: (415) 394-5003 | Chicago, Illinois 60606-6404 |
| | Tel: (312) 876-8000 |
| | Fax: (312) 876-7934 |

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2008 I electronically filed the foregoing THIRD PARTY DEFENDANT COMPTOWN ENTERTAINMENT, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO CAPITOL RECORDS, LLC'S THIRD PARTY COMPLAINT with the Clerk of the Court using the CM/ECF system which will send notification of such filing to registered parties.

  /s/ Leah R. Bruno
One of the attorneys for Comptown Entertainment, Inc.

12441643