UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SYL JOHNSON, a/k/a Sylvester Thompson, d/b/a Syl-Zel Music,<br><br>        Plaintiff,<br><br>v.<br><br>MICHAEL JACKSON et al.,<br><br>        Defendants.<br>_____<br><br>UMG RECORDINGS, INC.,<br><br>        Third-Party Plaintiff,<br><br>v.<br><br>SUNLIGHT RECORDS, INC. d/b/a TWILIGHT/TWINIGHT RECORDS and EDGEWATER MUSIC CO.,<br><br>        Third-Party Defendants. | No. 07 C 7288<br><br>Honorable Marvin E. Aspen |

**SUNLIGHT'S ANSWER TO THIRD-PARTY COMPLAINT OF UMG RECORDINGS, INC. AND AFFIRMATIVE DEFENSES**

        Third-Party Defendant Sunlight Records, Inc. d/b/a Twilight/Twinight Records and Edgewater Music Co. ("Sunlight") through its undersigned attorney, for its Answer to Third-Party Complaint of UMG Recordings, Inc. ("UMG") states as follows:

## Nature of the Case

1. In this Third-Party Complaint, UMG seeks to enforce the terms of a settlement and license agreement under which Sunlight granted a license permitting the inclusion of samples of a recording entitled "Different Strokes" on recordings by Tupac Shakur. In the license agreement, Sunlight agreed to indemnify and hold harmless UMG in the event UMG was sued for allegedly infringing "Different Strokes" by any other party. UMG has now been sued for misappropriation, copyright infringement, and related causes of action by Syl Johnson ("Johnson"), who claims to own the master recordings and copyrights to "Different Strokes." In connection with the license agreement, Sunlight obtained valuable consideration based on the representation and warranty that Sunlight owned those rights and was legally entitled to license their use.

ANSWER: Sunlight admits that UMG seeks to enforce the terms of settlement and license agreements under which Sunlight granted licenses permitting the inclusion of samples of a recording entitled "Different Strokes" on recordings by Tupac Shakur. Sunlight admits the agreement contained indemnification provisions. Sunlight admits that UMG has been sued for misappropriation, copyright infringement, and related causes of action by Syl Johnson ("Johnson"), who claims to own the master recordings and copyrights to "Different Strokes." Sunlight admits that it obtained valuable consideration in exchange for licensing the rights. Sunlight denies all remaining allegations.

2. While UMG does not concede that Johnson has valid claims for misappropriation, infringement, and related causes of action, Sunlight is legally obligated to indemnify UMG for the fees and costs of defending against Johnson's suit and for any judgment Johnson might obtain against UMG.

ANSWER: Sunlight admits UMG does not concede that Johnson has valid claims for misappropriation, infringement, and related causes of action. Sunlight denies the remaining allegations.

## Parties

3. Third-Party Plaintiff UMG is a Delaware corporation with its principal place of business in California. UMG is engaged in the business of manufacturing, distributing, and selling musical performances in a variety of media.

ANSWER: Sunlight admits that UMG is in the entertainment business, but lacks sufficient information to admit or deny the remaining allegations and therefore denies the same and demands strict proof thereof. Answering further, Sunlight admits that the Secretary of State of Delaware lists UMG Recordings, Inc as a Delaware corporation.

4. Third-Party Defendant Sunlight is an Illinois corporation with its principal place of business in Illinois. On information and belief, Sunlight's sole shareholder is Peter Wright. Wright has been engaged in the business of promoting, manufacturing, distributing, selling, and licensing musical performances since at least the 1960s. During the late 1960s and into the 1970s, Wright was a co-owner of the record labels Twilight and Twinight and was the owner of several music publishing companies, including Midday Music and Edgewater Music. Wright formed Sunlight in approximately 1994 to carry on the businesses previously conducted under the Twilight, Twinight, Midday, and Edgewater names.

ANSWER: Sunlight admits the allegations contained in paragraph 4.

## Jurisdiction and Venue

5. This Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367 and pursuant to the terms of Fed. R. Civ. P. 14(a)(1), because the claims in this Third-

Party Complaint are related to the allegations raised in Plaintiff's Complaint such that these claims constitute the same case or controversy, and because the Third-Party Defendant may be liable to the Third-Party Plaintiff for all or part of the claims against it.

ANSWER: Sunlight admits that other parties purport to assert claims that properly implicate the jurisdiction of this court. The remaining allegations state conclusions of law to which no answer is required. To the extent the remaining allegations of paragraph 5 state factual allegations, Sunlight denies the remaining allegations. Answering further, Sunlight specifically denies that there is supplemental jurisdiction because there is no federal jurisdiction under 17 U.S.C, section 101. It denies federal jurisdiction under 17 U.S.C., section 101 because (1) the sound recording licensed from Sunlight was recorded in 1967, prior to February 15, 1972, the time sound recordings were first afforded federal copyright protection, and thus there can be no federal copyright jurisdiction pertaining to claims made pertaining to the sound recording as a matter of law; and (2) because the sampled "grunt, laugh and drumbeat" was admittedly not composed by Zachary and Cameron nor contained in the composition copyrighted but first added as part of the performance on the sound recording and was therefore only a part of the sound recording (Paragraph 19 of Johnson's Complaint). Therefore, the case lacks federal subject matter jurisdiction based upon federal copyright law.

6. This Court also has jurisdiction over these claims pursuant to 28 U.S.C. § 1332 because UMG and Sunlight are citizens of different states, and the matter in controversy exceeds $75,000 exclusive of interest and costs.

ANSWER: Sunlight lacks sufficient knowledge to admit or deny and therefore denies the same. Answering further, Sunlight states that the amount of plaintiff's claims are diminimis.

7.  Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the matters in controversy occurred in this District and because Sunlight resides in this District.

ANSWER:    Sunlight admits the allegations contained in paragraph 7.

### Background

8.  In 1967, Syl Johnson recorded a song titled "Different Strokes," which was released as a 45-RPM single on the Twilight label. The label copy states that the song was written by "J. Cameron and J. Zachary" and was published by "Zachron Pub. and Edgewater Music, Inc." Twilight was owned by Peter Wright and Howard Bedno, and Edgewater was owned by Peter Wright.

ANSWER:    Sunlight admits the allegations contained in paragraph 8.

9.  In approximately 1968, Wright and Bedno renamed Twilight "Twinight" and incorporated Twinight in Illinois. Twinight's business wound down in the mid-1970s, and in 1980, Wright and Bedno allowed its corporate registration to lapse. Wright then continued the business as an unincorporated proprietorship. In 1994, Wright incorporated Sunlight for the purpose, among other things, of holding assets formerly belonging to Twilight, Twinight, and Edgewater. Wright is Sunlight's sole owner. Bedno is deceased.

ANSWER:    Sunlight admits the allegations contained in paragraph 9.

10. Over the years, portions of the 1967 recording of "Different Strokes" have been "sampled" by various hip-hop or rap artists.

ANSWER:    Sunlight admits the allegations contained in paragraph 10.

**The Sunlight Settlement and License Agreements**

11. Sunlight claimed that certain hip-hop or rap artists had sampled the 1967 "Different Strokes" recording without its permission. Among those artists against whom Sunlight made that claim was Tupac Shakur, relating to his recordings "Peep Game" and "Nothing But Love."

ANSWER: Sunlight admits the allegations contained in paragraph 11.

12. After making its claim relating to the Tupac Shakur recordings, Sunlight proceeded to negotiate settlement and license agreement that compensated Sunlight for alleged past infringements and licensed the artist and his record labels to sell records including the samples going forward. That license was a September 2, 2003 agreement between Twilight/Twinight Records, Edgewater Music, and Sunlight Records, Inc. and Amaru Entertainment, Inc. relating to the Tupac Shakur recordings of "Peep Game" and "Nothing But Love." The counter party gave good and valuable consideration to Sunlight for the settlements, licenses, and other rights granted.

ANSWER: Sunlight admits the allegations contained in paragraph 12.

13. As is stated with more particularity in the following paragraph, the September 2, 2003 agreement contained a provision in which Sunlight represented and warranted that it had full power and authority to settle the claims made and to license the use of "Different Strokes" going forward. In addition, the agreement contained a provision requiring Sunlight to indemnify Amaru Entertainment, Inc. and others from and against any claims, liabilities, and expenses arising from any breach of its warranties.

ANSWER: Sunlight denies that paragraph 13 fairly and accurately sets forth the provisions in which Sunlight made representations and warranties and therefore denies the same,

and states that these provisions speak for themselves. Further Sunlight states that Sunlight, as owner, had the right to settle the claims made and to license the use of "Different Strokes" going forward and that it did not breach any of its warranties. Sunlight denies the remaining allegations.

14.     The September 2, 2003 agreement provided that Sunlight "represent[s] and warrant[s] that [Sunlight is] fully authorized to enter into this Release Agreement and that the alleged inclusion of the Subject Music in the Shakur Masters and the Shakur Songs and the exploitation thereof by the Amaru Parties or otherwise will not infringe upon or violate the rights of any person or entity . . . ."  Sunlight further agreed to "indemnify and hold harmless the Amaru Parties and any licensee or designees from and against any and all claims, damages, liabilities, costs, and expenses (including legal costs and reasonable attorneys' fees) arising out of or related to and breach or alleged breach of the representation and warranty made by [Sunlight] in this paragraph 2(b) including, without limitation, any claim by or on behalf of Syl Johnson relating to the subject matter of this Release Agreement."  The agreement defined the "Amaru Parties" as including the Universal Music Group.  UMG is part of the Universal Music Group.

ANSWER:    Sunlight admits the first sentence of paragraph 14.  Answering further with respect to the first sentence, Sunlight states that it had the right to enter into the agreement and that the use of the Composition and Sampled Master did not violate the rights of any third party. Sunlight admits the second sentence of paragraph 14 but denies that it breached or failed to perform any covenants and warranties it made. Sunlight denies the remaining allegations.

### Johnson's Infringement Claims

15. On December 28, 2007, Johnson filed a *pro se* complaint against Universal Music Group and others, alleging copyright infringement based on alleged sampling of "Different Strokes" in, among other recordings, the Tupac Shakur recordings of "Peep Game" and "Nothing But Love." In his complaint, Johnson alleged that he is and has been the sole owner of the composition and 1967 master recording of "Different Strokes."

ANSWER: Sunlight admits that, on December 28, 2007, Johnson filed a *pro se* complaint against Universal Music Group and others, alleging copyright infringement based on alleged sampling of "Different Strokes" in, among other recordings, the Tupac Shakur recordings of "Peep Game" and "Nothing But Love." Sunlight admits that in his complaint, Johnson alleged that he is and has been the sole owner of the composition and 1967 master recording of "Different Strokes." Sunlight states further that it denies Johnson's allegations.

16. Johnson has also stated that license agreements entered into by Sunlight are not valid because, according to him, Sunlight did not have the right to license Twilight/Twinight recordings by Johnson.

ANSWER: Sunlight does not have knowledge sufficient to admit or deny the exact statement to which Third Party Plaintiff is referring, or to the words used, or to the context there, and therefore Sunlight denies the same, and demands strict proof thereof.

17. Johnson's amended complaint in this matter alleges that Johnson has owned the 1967 sound recording of "Different Strokes" from the beginning. Johnson further alleges that he filed a copyright on a 1972 "re-mix" recording of "Different Strokes" in 1996. Johnson asserts that he is "unsure" whether the alleged samples at issue in this case came from the 1967 or the 1972 sound recordings.

ANSWER:   Sunlight admits that Johnson's amended complaint in this matter alleges that Johnson has owned the 1967 sound recording of "Different Strokes" from the beginning, that Johnson further alleges that he filed a copyright on a 1972 "re-mix" recording of "Different Strokes" in 1996 and that Johnson asserts that he is "unsure" whether the alleged samples at issue in this case came from the 1967 or the 1972 sound recordings. Answering further, Sunlight denies Johnson's allegations.

18.   Johnson's amended complaint further asserts that he "operates" Twinight Records, Inc. and Edgewater Music, Inc.

ANSWER:   Sunlight admits that Johnson's amended complaint further asserts that he "operates" Twinight Records, Inc. and Edgewater Music, Inc. Sunlight denies Johnson's allegations and assertions.

19.   Johnson's Amended Complaint seeks substantial damages, including compensatory and punitive damages, as well as attorneys' fees, from UMG based on alleged copyright infringement and misappropriation of Johnson's alleged rights in "Different Strokes" through "Peep Game," and "Nothing But Love."

ANSWER:   Sunlight admits the allegations contained in paragraph 19.

## COUNT I

20.   UMG realleges and incorporates the allegations of paragraphs 1-19 herein.

ANSWER: Sunlight realleges and incorporates its answers to paragraphs 1-19 herein.

21.   Contrary to Sunlight's representations and warranties in the September 2, 2003 agreement, Johnson's lawsuit alleges that Johnson owns all rights to "Different Strokes" and is entitled to assert infringement and misappropriation claims against UMG with respect to alleged sampling in "Peep Game" and "Nothing But Love."

ANSWER: Sunlight admits that Johnson's lawsuit alleges that Johnson owns all rights to "Different Strokes" and is entitled to assert infringement and misappropriation claims against UMG with respect to alleged sampling "Peep Game" and "Nothing But Love", but states the remaining allegations are legal conclusions, and therefore denies the same.

22. Pursuant to the September 2, 2003 agreement, Sunlight is obligated to indemnify UMG for UMG's costs of defending against Johnson's claims in this litigation, including UMG's reasonable attorneys' fees. In the event Johnson were to obtain a judgment against UMG in this matter, Sunlight is further obligated to indemnify UMG for that amount.

ANSWER: Sunlight denies the allegations contained in paragraph 22.

WHEREFORE, Third-Party Defendant Sunlight Records, Inc. d/b/a Twilight/Twinight Records and Edgewater Music, prays that this court dismiss the Third-Party Complaint at Third Party Plaintiff's cost.

**Affirmative Defenses**

1. Third Party Defendant's Claim is not entitled to recovery because Plaintiff's underlying claims are barred because of the existence of a valid and enforceable release entered into on July 10, 2007 between Plaintiff, on the one hand, and Peter Wright, the Wright Group, Sunlight Records, Inc., the original Twinight Records, Edgewater Music, Inc., and Midday Music, on the other hand.

2. The claims are barred because Sunlight owned the sound recording and publishing rights to "Different Strokes", not plaintiff.

3. The claims are barred, in whole or in part, under the applicable statute of limitations.

4. The claims are barred by Third Party Plaintiff's failure to mitigate damages, if

any.

Dated: August 15, 2008                              Respectfully submitted by,

|  | /s/ Christ S. Stacey<br>ARDC No. 06183378<br><br>Law Office of Christ S. Stacey<br>19 S. LaSalle Street, Suite 1400<br>Chicago, IL 60603<br>Tel: (312) 781-9455<br>Fax: (312) 781-9455<br>Email: css-law@msn.com |
|---|---|

**CERTIFICATE OF SERVICE**

I hereby certify that on August 15, 2008, I electronically filed the foregoing **SUNLIGHT'S ANSWER TO THIRD-PARTY COMPLAINT OF UMG RECORDINGS, INC. AND AFFIRMATIVE DEFENSES** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to registered parties.


/s/ Christ S. Stacey
ARDC No. 06183378

Law Office of Christ S. Stacey
19 S. LaSalle Street, Suite 1400
Chicago, IL 60603
Tel: (312) 781-9455
Fax: (312) 781-9455
Email: css-law@msn.com