**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SYL JOHNSON, a/k/a Sylvester Thompson, d/b/a Syl-Zel Music, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) |
| MICHAEL JACKSON et al., | )   No. 07 C 7288<br>) |
| Defendants. | )   Honorable Marvin E. Aspen<br>)<br>) |
| ──────────────────────────── | ) |
| SONY BMG MUSIC ENTERTAINMENT, | )<br>) |
| Third-Party Plaintiff, | )<br>) |
| v. | )<br>) |
| PETER WRIGHT; and SUNLIGHT RECORDS, INC. d/b/a TWILIGHT/TWINIGHT RECORDS and EDGEWATER MUSIC CO., | )<br>)<br>)<br>)<br>) |
| Third-Party Defendants. | )<br>) |

**SUNLIGHT AND WRIGHT'S ANSWER TO THIRD-PARTY COMPLAINT OF SONY BMG MUSIC ENTERTAINMENT AND AFFIRMATIVE DEFENSES**

Third-Party Defendant Sunlight Records, Inc. d/b/a Twilight/Twinight Records and Edgewater Music Co. ("Sunlight") and Peter Wright, ("Wright") through their undersigned attorney, for their Answer to Third-Party Complaint of Sony BMG Music Entertainment ("Sony BMG") state as follows:

## Nature of the Case

1.      In this Third-Party Complaint, Sony BMG seeks to enforce the terms of several settlement and license agreements under which Wright and Sunlight granted a license permitting the inclusion of samples of a recording entitled "Different Strokes" on recordings by Michael Jackson and Will Smith. In the license agreement, Wright and Sunlight agreed to indemnify and hold harmless Sony BMG in the event Sony BMG was sued by any other party alleging infringement of "Different Strokes." Sony BMG has now been sued for misappropriation, copyright infringement, and related causes of action by Syl Johnson ("Johnson"), who claims to own the master recordings and copyrights to "Different Strokes." In connection with the license agreement, Wright and Sunlight obtained valuable consideration based on the representation and warranty that Wright and Sunlight owned those rights and were legally entitled to license their use.

ANSWER:    Sunlight and Wright admit that Sony BMG seeks to enforce the terms of settlement and license agreements under which Sunlight granted licenses permitting the inclusion of samples of a recording entitled "Different Strokes" on recordings by Michael Jackson and Will Smith. Sunlight and Wright admit the agreement contained indemnification provisions. Sunlight and Wright admit that Sony BMG has been sued for misappropriation, copyright infringement, and related causes of action by Syl Johnson ("Johnson"), who claims to own the master recordings and copyrights to "Different Strokes." Sunlight and Wright admit that Sunlight obtained valuable consideration in exchange for licensing the rights. Sunlight and Wright deny all remaining allegations.

2.      While Sony BMG does not concede that Johnson has valid claims for misappropriation, infringement, and related causes of action, Wright and Sunlight are legally obligated to indemnify Sony BMG for the fees and costs of defending against Johnson's suit and for any judgment Johnson might obtain against Sony BMG.

ANSWER:    Sunlight and Wright admit that Sony BMG does not concede that Johnson has valid claims for misappropriation, infringement, and related causes of action. Sunlight and Wright deny the remaining allegations.

**Parties**

3.      Third-Party Plaintiff Sony BMG is a Delaware general partnership with its principal place of business in New York.  None of Sony BMG's partners is a citizen of the state of Illinois.  Sony BMG is engaged in the business of manufacturing, distributing, and selling musical performances in a variety of media.  Sony BMG is a successor in interest to Sony Music Entertainment Inc. ("Sony Music").

ANSWER:    Sunlight and Wright lack sufficient knowledge to admit or deny; therefore, Sunlight and Wright deny the allegations contained in paragraph 3 and demand strict proof thereof.

4.      Third-Party Defendant Wright is a citizen of Illinois.  Wright has been engaged in the business of promoting, manufacturing, distributing, selling, and licensing musical performances since at least the 1960s.  During the late 1960s and into the 1970s, Wright was a co-owner of the record labels Twilight and Twinight and was the owner of several music publishing companies, including Midday Music and Edgewater Music.

ANSWER:    Sunlight and Wright admit the allegations contained in paragraph 4.

5.  Third-Party Defendant Sunlight is an Illinois corporation with its principal place of business in Illinois. Wright formed Sunlight in approximately 1994 to carry on the businesses previously conducted under the Twilight, Twinight, Midday, and Edgewater names.

ANSWER: Sunlight and Wright admit the allegations contained in paragraph 5.

### Jurisdiction and Venue

6.  This Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367 and pursuant to the terms of Fed. R. Civ. P. 14(a)(1), because the claims in this Third-Party Complaint are related to the allegations raised in Plaintiff's Complaint such that these claims constitute the same case or controversy, and because the Third-Party Defendants may be liable to the Third-Party Plaintiff for all or part of the claims against it.

ANSWER: Sunlight and Wright admit that other parties purport to assert claims that properly implicate the jurisdiction of this court. The remaining allegations state conclusions of law to which no answer is required. To the extent the remaining allegations of paragraph 6 state factual allegations, Sunlight and Wright deny the remaining allegations. Answering further, Sunlight and Wright specifically deny that there is supplemental jurisdiction because there is no federal jurisdiction under 17 U.S.C, section 101. They deny federal jurisdiction under 17 U.S.C., section 101 because (1) the sound recording licensed from Sunlight was recorded in 1967, prior to February 15, 1972, the time sound recordings were first afforded federal copyright protection, and thus there can be no federal copyright jurisdiction pertaining to claims made pertaining to the sound recording as a matter of law; and (2) because the sampled "grunt, laugh and drumbeat" was admittedly not composed by Zachary and Cameron nor contained in the composition copyrighted but first added as part of the performance on the sound recording and was therefore only a part of the sound recording (Paragraph 19 of Johnson's

Complaint). Therefore, the case lacks federal subject matter jurisdiction based upon federal copyright law.

7.   This Court also has jurisdiction over these claims pursuant to 28 U.S.C. § 1332 because the Sony BMG and Wright/Sunlight are citizens of different states, and the matter in controversy exceeds $75,000 exclusive of interest and costs.

ANSWER:   Sunlight and Wright lack sufficient knowledge to admit or deny and therefore deny the same. Answering further, Sunlight and Wright state that the amount of plaintiff's claims is diminimis.

8.   Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the matters in controversy occurred in this District and because Wright and Sunlight reside in this District.

ANSWER:   Sunlight and Wright admit the allegations contained in paragraph 8.

**Background**

9.   In 1967, Syl Johnson recorded a song titled "Different Strokes," which was released as a 45-RPM single on the Twilight label. The label copy states that the song was written by "J. Cameron and J. Zachary" and was published by "Zachron Pub. and Edgewater Music, Inc." Twilight was owned by Peter Wright and Howard Bedno, and Edgewater was owned by Peter Wright.

ANSWER:   Sunlight and Wright admit the allegations contained in paragraph 9.

10.   In approximately 1968, Wright and Bedno renamed Twilight "Twinight" and incorporated Twinight in Illinois. Twinight's business wound down in the mid-1970s, and in 1980, Wright and Bedno allowed its corporate registration to lapse. Wright then continued the business as an unincorporated proprietorship. In 1994, Wright incorporated Sunlight for the

purpose, among other things, of holding assets formerly belonging to Twilight, Twinight, and Edgewater. Wright is Sunlight's sole owner. Bedno is deceased.

ANSWER: Sunlight and Wright admit the allegations contained in paragraph 10.

11. Over the years, portions of the 1967 recording of "Different Strokes" have been "sampled" by various hip-hop or rap artists.

ANSWER: Sunlight and Wright admit the allegations contained in paragraph 11.

### The Wright/Sunlight Settlement and License Agreements

12. Wright and Sunlight claimed that certain hip-hop or rap artists had sampled the 1967 "Different Strokes" recording without their permission. Among those artists against whom Wright and Sunlight made that claim were:

> (a) Michael Jackson, relating to his recording "Blood on the Dance Floor/Refugee Camp Edit"; and
>
> (b) Will Smith relating to his recording "Who Stole the DJ?."

ANSWER: Sunlight and Wright admit that Sunlight claimed that certain hip-hop or rap artists had sampled the 1967 "Different Strokes" recording without their permission.

13. After making their claims relating to the Michael Jackson and Will Smith recordings, Wright and Sunlight proceeded to negotiate settlement and license agreements that compensated Wright and Sunlight for alleged past infringements and licensed the artists and their record labels to sell records including the samples going forward. Those licenses were:

> (a) An October 1, 2001 agreement between Twilight/Twinight Records and Zomba Recording Corporation relating to the Will Smith recording of "Who Stole the DJ?";
>
> (b) An October 19, 2001 agreement between Edgewater Music d/b/a Sunlight Records, Inc. and Zomba Enterprises Inc. relating to the Will Smith recording of "Who Stole the DJ?" and

6

  (c) A May 2003 agreement between Peter Wright and Sunlight Records, Inc. d/b/a Edgewater Music Co. and Twilight Records and Sony Music Entertainment Inc. relating to the Michael Jackson recording of "Blood on the Dance Floor/Refugee Camp Edit."

In each case, the counter party gave good and valuable consideration to Wright or Sunlight for the settlements, licenses, and other rights granted.

  ANSWER: Sunlight and Wright admit that after Sunlight made its claim relating to the Michael Jackson and Will Smith recordings, Sunlight proceeded to negotiate settlement and license agreements that compensated Sunlight for alleged past infringements and licensed the artists and their record labels to sell records including the samples going forward. Those licenses were:

  (a) An October 1, 2001 agreement between Twilight/Twinight Records and Zomba Recording Corporation relating to the Will Smith recording of "Who Stole the DJ?";

  (b) An October 19, 2001 agreement between Sunlight Records, Inc., d/b/a Edgewater Music, incorrectly identified as Edgewater Music d/b/a Sunlight Records, Inc. on the one hand, and Zomba Enterprises Inc., on the other, relating to the Will Smith recording of "Who Stole the DJ?" and

  (c) A May 2003 agreement between Peter Wright and Sunlight Records, Inc. d/b/a Edgewater Music Co. and Twilight Records and Sony Music Entertainment Inc. relating to the Michael Jackson recording of "Blood on the Dance Floor/Refugee Camp Edit."

Sunlight and Wright admit that in each case, the counter party gave good and valuable consideration to Sunlight for the settlements and licenses. Sunlight and Wright deny the remaining allegations of paragraph 13.

  14. As is stated with more particularity in the following paragraphs, each of the agreements listed in the preceding paragraph contained a provision in which Wright or Sunlight or both represented and warranted that they had full power and authority to settle the claims

made and to license the use of "Different Strokes" going forward.  In addition, each of those agreements contained a provision requiring Wright or Sunlight or both to indemnify the settling parties from and against any claims, liabilities, and expenses arising from any breach of their warranties.

  ANSWER:  Sunlight and Wright deny that paragraph 14 fairly and accurately sets forth the provisions in which Sunlight and/or Wright or both made representations and warranties and therefore deny the same, and states that these provisions speak for themselves. Further states that Sunlight, as owner, had the right to settle the claims made and to license the use of "Different Strokes" going forward and that it and Wright did not breach any of its warranties.

  15. The October 1, 2001 agreement provided that Sunlight represented and warranted that it "has the exclusive right and authority to enter into this agreement" and "is the owner of all right, title, and interest in and to the Master [recording of "Different Strokes], including without limitation the copyrights thereto" and that "the rights granted by [Sunlight] under this agreement will not infringe on the rights of any third party" and that "the Zomba Parties will not be required to make any payment whatsoever for the use of the Sample, except [to Sunlight]."  The agreement further provided that Sunlight "will indemnify and hold the Zomba Parties harmless from any and all claims, damages, losses, judgments and liabilities arising from or in connection with the breach or claim of breach of any warranty, representation or agreement made by [Sunlight] under this agreement."  The agreement defined the "Zomba Parties" as "Zomba [Recording Corporation], its licensees, affiliates, successors, assigns, principals, directors, officers, employees and agents."  Sony BMG is the parent of Zomba Recording LLC, a successor

and assign of Zomba Recording Corporation with respect to the Will Smith recording of "Who Stole the DJ?"

ANSWER:　　Sunlight and Wright admit the first sentence of paragraph 15. Answering further with respect to the first sentence, Sunlight states that it was the owner and had the right to enter into the agreement, and that the use of the Composition and Sampled Master did not violate the rights of any third party. Sunlight and Wright admit the second sentence of paragraph 15 but denies that Sunlight breached or failed to perform any covenants and warranties it made. Sunlight and Wright deny the third sentence.

16.　　The October 19, 2001 agreement provided that Sunlight "represents and warrants that it is the sole and lawful owner of all right, title, and interest in and to every claim and each of the other matters which they purport to release herein" and that it "is the sole owner of the copyright in the Composition [of "Different Strokes"]" and that Sunlight "has the authority to make the representations, warranties and covenants and to give the releases provided for in this Release." Sunlight further agreed to "indemnify, defend and hold [Zomba Enterprises Inc.] harmless against and in respect of any claims, losses, damages or expenses, including, without limitation, reasonable attorneys' fees and litigation costs . . . which arise from or relate to any breach of, or failure by Indemnitor to perform, and of Indemnitor's representations, warranties or promises in this Release . . . ." The agreement further provided that, "[w]ithout limitation of the foregoing, [Sunlight] as Indemnitor shall indemnify [Zomba Enterprises Inc.] as Indemnitee for any Damages which arise from or relate to any third party who asserts rights in the Composition [of "Different Strokes"]." Sony BMG is a beneficiary of the October 19, 2001 agreement with respect to the Will Smith recording of "Who Stole the DJ?"

9

ANSWER: Sunlight and Wright deny that paragraph 16 fairly and accurately sets forth the provisions of the agreement. Further, paragraph 16 contains conclusions of law and not factual allegations which do not require answer. To the extent that paragraph 16 states factual allegations, Sunlight and Wright deny the same.

17. The May 2003 agreement provided that Wright and Sunlight represented and warranted that they had the "irrevocable right, power, title, and authority . . . to grant the rights and interests granted herein," that any use by Sony Music of "Different Strokes" in connection with "Blood on the Dance Floor/Refugee Camp Edit" "will not infringe upon or violate the rights of any person or entity," that Sony Music "will not be required to make any payments (other than the payments specified in paragraph 1 of this Agreement) in connection with the inclusion of ["Different Strokes"] into ["Blood on the Dance Floor/Refugee Camp Edit"], and that Wright and Sunlight "are the sole owners, authors, and composers of ["Different Strokes"] and all the copyright rights therein." The agreement further provided that Wright and Sunlight would "indemnify and hold harmless Sony [Music] and any of its respective affiliated persons or entities, from and against any and all claims, damages, liabilities, costs and expenses (including legal costs and reasonable counsel fees) arising out of any breach or alleged breach of any representation, warranty, obligation or undertaking by [Wright and Sunlight] hereunder."

ANSWER: Sunlight and Wright admit the first sentence of paragraph 17. Answering further with respect to the first sentence, Sunlight and Wright state that they had the right to enter into the agreement and that the use of "Different Strokes" in connection with "Blood on the Dance Floor/Refugee Camp Edit" did not violate the rights of any third party. Sunlight and Wright admit the second sentence of paragraph 17 but deny that Sunlight and Wright breached or failed to perform any covenants and warranties they made.

**Johnson's Infringement Claims**

18.   On December 28, 2007, Johnson filed a *pro se* complaint against Sony BMG and others, alleging copyright infringement based on alleged sampling of "Different Strokes" in, among other recordings, the Michael Jackson recording of "Blood on the Dance Floor" and the Will Smith recording of "Who Stole the DJ?" In his complaint, Johnson alleged that he is and has been the sole owner of the composition and 1967 master recording of "Different Strokes."

ANSWER:   Sunlight and Wright admits that on December 28, 2007, Johnson filed a *pro se* complaint against "EMI/Capitol Records" and others, alleging copyright infringement based on alleged sampling of "Different Strokes" in, among other recordings, the Michael Jackson recording of "Blood on the Dance Floor" and the Will Smith recording of "Who Stole the DJ?" Sunlight and Wright admit that in his complaint, Johnson alleged that he is and has been the sole owner of the composition and 1967 master recording of "Different Strokes." Sunlight and Wright state further that they deny Johnson's allegations.

19.   Johnson has also stated that license agreements entered into by Wright and Sunlight are not valid because, according to him, Wright and Sunlight did not have the right to license Twilight/Twinight recordings by Johnson.

ANSWER:   Sunlight and Wright do not have knowledge sufficient to admit or deny of the exact statement to which Third Party Plaintiff is referring, or to the words used, or to the context there, and therefore Sunlight and Wright deny the same, and demand strict proof thereof.

20.   Johnson's amended complaint in this matter alleges that Johnson has owned the 1967 sound recording of "Different Strokes" since 1967. Johnson further alleges that he filed a copyright on a 1972 "re-mix" recording of "Different Strokes" in 1996. Johnson asserts that he

is "unsure" whether the alleged samples at issue in this case came from the 1967 or the 1972 sound recordings.

ANSWER: Sunlight and Wright admit that Johnson's amended complaint in this matter alleges that Johnson has owned the 1967 sound recording of "Different Strokes" from the beginning, that Johnson further alleges that he filed a copyright on a 1972 "re-mix" recording of "Different Strokes" in 1996 and that Johnson asserts that he is "unsure" whether the alleged samples at issue in this case came from the 1967 or the 1972 sound recordings. Answering further, Sunlight and Wright deny Johnson's allegations.

21. Johnson's amended complaint further asserts that he "operates" Twinight Records, Inc. and Edgewater Music, Inc.

ANSWER: Sunlight and Wright admit that Johnson's amended complaint further asserts that he "operates" Twinight Records, Inc. and Edgewater Music, Inc. Sunlight and Wright deny Johnson's allegations and assertions.

22. Johnson's Amended Complaint seeks substantial damages, including compensatory and punitive damages, as well as attorneys' fees, from Sony BMG based on alleged copyright infringement and misappropriation of Johnson's alleged rights in "Different Strokes" through "Blood on the Dance Floor/Refugee Camp Edit" and "Who Stole the DJ?"

ANSWER: Sunlight and Wright admit the allegations contained in paragraph 22.

## **COUNT I**

23. Sony BMG realleges and incorporates the allegations of paragraphs 1-22 herein.

ANSWER: Sunlight and Wright reallege and incorporate their answers to paragraphs 1-22 herein.

24.     Contrary to Wright's and Sunlight's representations and warranties in the October 1, 2001, October 19, 2001, and May 2003 agreements, Johnson's lawsuit alleges that Johnson owns all rights to "Different Strokes" and is entitled to assert infringement and misappropriation claims against Sony BMG with respect to alleged sampling in "Blood on the Dance Floor/Refugee Camp Edit" and "Who Stole the DJ?."

ANSWER:     Sunlight and Wright admit that Johnson's lawsuit alleges that Johnson owns all rights to "Different Strokes" and is entitled to assert infringement and misappropriation against Sony BMG with respect to alleged sampling in "Blood on the Dance Floor/Refugee Camp Edit" and "Who Stole the DJ?," but state the remaining allegations are legal conclusions, and therefore deny the same and demand strict proof thereof.

25.     Pursuant to the October 1, 2001, October 19, 2001, and May 2003 agreements, Wright and Sunlight are obligated to indemnify Sony BMG for Sony BMG's costs of defending against Johnson's claims in this litigation, including Sony BMG's reasonable attorneys' fees. In the event Johnson were to obtain a judgment against Sony BMG in this matter, Wright and Sunlight are further obligated to indemnify Sony BMG for that amount.

ANSWER: Sunlight and Wright deny the allegations contained in paragraph 25.

WHEREFORE, Third-Party Defendant Sunlight Records, Inc. d/b/a Twilight/Twinight Records and Edgewater Music, and Peter Wright pray that this court dismiss the Third-Party Complaint at Third Party Plaintiff's cost.

**Affirmative Defenses**

1.     Third Party Defendant's Claim is not entitled to recovery because Plaintiff's underlying claims are barred because of the existence of a valid and enforceable release entered into on July 10, 2007 between Plaintiff, on the one hand, and Peter Wright, the Wright Group,

Sunlight Records, Inc., the original Twinight Records, Edgewater Music, Inc., and Midday Music, on the other hand.

    2.    The claims are barred because Sunlight owned the sound recording and publishing rights to "Different Strokes", not plaintiff.

    3.    The claims are barred, in whole or in part, under the applicable statute of limitations.

    4.    The claims are barred by Third Party plaintiff's failure to mitigate damages, if any.

Dated: August 15, 2008                            Respectfully submitted by,

|  | /s/ Christ S. Stacey<br>ARDC No. 06183378<br><br>Law Office of Christ S. Stacey<br>19 S. LaSalle Street, Suite 1400<br>Chicago, IL 60603<br>Tel: (312) 781-9455<br>Fax: (312) 781-9455<br>Email: css-law@msn.com |
|---|---|

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2008, I electronically filed the foregoing **SUNLIGHT AND WRIGHT'S ANSWER TO THIRD-PARTY COMPLAINT OF SONY BMG MUSIC ENTERTAINMENT. AND AFFIRMATIVE DEFENSES** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to registered parties.


/s/ Christ S. Stacey
ARDC No. 06183378

Law Office of Christ S. Stacey
19 S. LaSalle Street, Suite 1400
Chicago, IL 60603
Tel: (312) 781-9455
Fax: (312) 781-9455
Email: css-law@msn.com