UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SYL JOHNSON, a/k/a Sylvester Thompson, d/b/a Syl-Zel Music,<br><br>            Plaintiff,<br><br>v.<br><br>MICHAEL JACKSON et al.,<br><br>            Defendants.<br>_____<br><br>CAPITOL RECORDS, LLC,<br><br>            Third-Party Plaintiff,<br><br>v.<br><br>SUNLIGHT RECORDS, INC. d/b/a TWILIGHT/TWINIGHT RECORDS and EDGEWATER MUSIC CO.; and COMPTOWN RECORDS, INC.,<br><br>            Third-Party Defendants. | No. 07 C 7288<br><br>Honorable Marvin E. Aspen |

**SUNLIGHT'S ANSWER TO THIRD-PARTY COMPLAINT OF CAPITOL RECORDS, LLC. AND AFFIRMATIVE DEFENSES**

Third-Party Defendant Sunlight Records, Inc. d/b/a Twilight/Twinight Records and Edgewater Music Co. (collectively, "Sunlight") through its undersigned attorney, for its Answer to Third-Party Complaint of Capitol Records, LLC (formerly known as Capitol Records, Inc.) ("Capitol"), states as follows:

## Nature of the Case

1.  In this Third-Party Complaint, Capitols [*sic*] seek [*sic*] to enforce the terms of settlement and license agreements under which Sunlight granted licenses permitting the inclusion of samples of a recording entitled "Different Strokes" on recordings by the group N.W.A. In the license agreements, Sunlight agreed to indemnify and hold harmless Capitol and Comptown in the event Capitol or Comptown was sued for infringing "Different Strokes" by any other party. In a separate agreement, Comptown agreed to indemnify Capitol in the event Capitol was sued for infringing any material supplied to it by Comptown. Capitol has now been sued for misappropriation, copyright infringement, and related causes of action by Syl Johnson ("Johnson"), who claims to own the master recordings and copyrights to "Different Strokes." In connection with the license agreements, Sunlight and Comptown obtained valuable consideration based on the representation that they owned those rights and were legally entitled to license their use.

ANSWER: Sunlight admits that Capitol seeks to enforce the terms of settlement and license agreements under which Sunlight granted licenses permitting the inclusion of samples of a recording entitled "Different Strokes" on recordings by the group N.W.A. Sunlight admits the agreement contained indemnification provisions. Sunlight does not have sufficient knowledge to admit or deny that, in a separate agreement, Comptown agreed to indemnify Capitol in the event Capitol was sued for infringing any material supplied to it by Comptown. Sunlight admits that Capitol has been sued for misappropriation, copyright infringement, and related causes of action by Syl Johnson ("Johnson"), who claims to own the master recordings and copyrights to "Different Strokes." Sunlight admits that it obtained valuable consideration in exchange for licensing the rights. Sunlight denies all remaining allegations.

2.      While Capitol does not concede that Johnson has valid claims for misappropriation, infringement, and related causes of action, Sunlight is legally obligated to indemnify Comptown and Capitol, and Comptown is legally obligated to indemnify Capitol, for the fees and costs of defending against Johnson's suit and for any judgment Johnson might obtain against Capitol.

ANSWER:    Sunlight admits Capitol does not concede that Johnson has valid claims for misappropriation, infringement, and related causes of action. Sunlight denies the remaining allegations.

**Parties**

3.      Third-Party Plaintiff Capitol is a Delaware limited liability company with its principal place of business in New York.  Capitol is engaged in the business of manufacturing, distributing, and selling musical performances in a variety of media.

ANSWER:    Sunlight admits that Capitol is engaged in the record business, but lacks sufficient information to admit or deny the remaining allegations and therefore denies the same and demands strict proof thereof. Answering further, Sunlight admits that the Secretary of State of Delaware lists Capitol Records, LLC, as a Delaware limited liability company.

4.      Third-Party Defendant Sunlight is an Illinois corporation with its principal place of business in Illinois.  On information and belief, Sunlight's sole shareholder is Peter Wright. Wright has been engaged in the business of promoting, manufacturing, distributing, selling, and licensing musical performances since at least the 1960s.  During the late 1960s and into the 1970s, Wright was a co-owner of the record labels Twilight and Twinight and was the owner of several music publishing companies, including Midday Music and Edgewater Music.  Wright

formed Sunlight in approximately 1994 to carry on the businesses previously conducted under the Twilight, Twinight, Midday, and Edgewater names.

  ANSWER: Sunlight admits the allegations contained in paragraph 4.

  5. Third-Party Defendant Comptown is, on information and belief, a California corporation with its principal place of business in California. Comptown is, on information and belief, the successor to Ruthless Records ("Ruthless"), which was, on information and belief, an unincorporated d/b/a for the late Eric Wright, who was a member of the group N.W.A. On information and belief, in January 1992 Wright transferred all the assets and liabilities of Ruthless to Comptown, of which he was then the sole shareholder. On July 1, 1988, Ruthless entered into a Production Agreement with Priority Records, Inc. ("Priority"), pursuant to which Ruthless was to furnish N.W.A. recordings to Priority for distribution. In the Production Agreement, Ruthless represented and warranted to Priority that the recordings it would furnish would not "violate or infringe the rights of any Person." Ruthless further agreed to indemnify Priority and any of its licensees "from and against any and all claims, damages, liabilities, costs and expenses, including legal expenses and reasonable counsel fees, arising out of any breach by [Ruthless] of any warranty, representation or agreement made by [Ruthless] herein." Capitol is a successor to Priority's interests with respect to recordings by N.W.A.

  ANSWER: The allegations are not directed against Sunlight. Sunlight lacks sufficient knowledge to admit or deny the allegations contained in paragraph 5, and therefore denies the same and demands strict proof thereof. Answering further, Sunlight admits that the Secretary of State of California lists Comptown Records, Inc., as a California Corporation.

**Jurisdiction and Venue**

6.      This Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367 and pursuant to the terms of Fed. R. Civ. P. 14(a)(1), because the claims in this Third-Party Complaint are related to the allegations raised in Plaintiff's Complaint such that these claims constitute the same case or controversy, and because the Third-Party Defendants may be liable to the Third-Party Plaintiff for all or part of the claims against them.

        ANSWER:    Sunlight admits that other parties purport to assert claims that properly implicate the jurisdiction of this court. The remaining allegations state conclusions of law to which no answer is required. To the extent the remaining allegations of paragraph 6 state factual allegations, Sunlight denies the remaining allegations. Answering further, Sunlight specifically denies that there is supplemental jurisdiction because there is no federal jurisdiction under 17 U.S.C, section 101. It denies federal jurisdiction under 17 U.S.C., section 101 because (1) the sound recording licensed from Sunlight was recorded in 1967, prior to February 15, 1972, the time sound recordings were first afforded federal copyright protection, and thus there can be no federal copyright jurisdiction pertaining to claims made pertaining to the sound recording as a matter of law; and (2) because the sampled "grunt, laugh and drumbeat" was admittedly not composed by Zachary and Cameron nor contained in the composition copyrighted but first added as part of the performance on the sound recording and was therefore only a part of the sound recording (Paragraph 19 of Johnson's Complaint). Therefore, the case lacks federal subject matter jurisdiction based upon federal copyright law.

7.      This Court also has jurisdiction over these claims pursuant to 28 U.S.C. § 1332 because Capitol, on the one hand, and Sunlight and Comptown, on the other, are citizens of different states and the matter in controversy exceeds $75,000 exclusive of interest and costs.

ANSWER: Sunlight lacks sufficient knowledge to admit or deny and therefore denies the same. Specifically, Sunlight lacks sufficient knowledge as to the citizenship of the members of the alleged Delaware limited liability company, and therefore lacks sufficient knowledge to admit or deny and thus denies the same and demands strict proof thereof. Answering further, Sunlight states that the amount of plaintiff's claims are diminimis.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the matters in controversy occurred in this District and because Sunlight is subject to personal jurisdiction in this District.

ANSWER: Sunlight admits the allegations contained in paragraph 8.

## Background

9. In 1967, Syl Johnson recorded a song titled "Different Strokes," which was released as a 45-RPM single on the Twilight label. The label copy states that the song was written by "J. Cameron and J. Zachary" and was published by "Zachron Pub. and Edgewater Music, Inc." Twilight was owned by Peter Wright and Howard Bedno, and Edgewater was owned by Peter Wright.

ANSWER: Sunlight admits the allegations contained in paragraph 9.

10. In approximately 1968, Wright and Bedno renamed Twilight "Twinight" and incorporated Twinight in Illinois. Twinight's business wound down in the mid-1970s, and in 1980, Wright and Bedno allowed its corporate registration to lapse. Wright then continued the business as an unincorporated proprietorship. In 1994, Wright incorporated Sunlight for the purpose, among other things, of holding assets formerly belonging to Twilight, Twinight, and Edgewater. Wright is Sunlight's sole owner. Bedno is deceased.

ANSWER: Sunlight admits the allegations contained in paragraph 10.

11.     Over the years, portions of the 1967 recording of "Different Strokes" have been "sampled" by various hip-hop or rap artists.

ANSWER:    Sunlight admits the allegations contained in paragraph 11.

### The Sunlight Settlement and License Agreements

12.     Sunlight claimed that certain hip-hop or rap artists had sampled the 1967 "Different Strokes" recording without their permission. Among those artists against whom Sunlight made that claim was the group N.W.A., relating to its recording "Real Niggaz Don't Die."

ANSWER:    Sunlight admits the allegations contained in paragraph 12.

13.     After making its claim relating to the N.W.A. recording, Sunlight proceeded to negotiate settlement and license agreements that compensated Sunlight for alleged past infringements and licensed the artists and their record labels to sell records including the samples going forward. That license was A (sic) July 1, 2003 agreement between Sunlight Records, Inc. d/b/a Twilight/Twinight Records and Sunlight Records, Inc. d/b/a Edgewater Music and Comptown Records, Inc. d/b/a Ruthless Records relating to the N.W.A. recording of "Real Niggaz Don't Die." Comptown gave good and valuable consideration to Sunlight for the settlements, licenses, and other rights granted.

ANSWER:    Sunlight admits the allegations contained in paragraph 13.[1]

14.     As is stated with more particularity in the following paragraph, the July 1, 2003 agreement contained a provision in which Sunlight represented and warranted that it had full power and authority to settle the claims made and to license the use of "Different Strokes" going

---

[1] This answer assumes that the paragraph states, in pertinent part, "That license was a July 1, 2003 agreement" and that the capital "A" is a typographical error.

forward. In addition, the agreement contained a provision requiring Sunlight to indemnify Comptown from and against any claims, liabilities, and expenses arising from any breach of its warranties.

ANSWER: Sunlight denies that paragraph 14 fairly and accurately sets forth the provisions in which Sunlight made representations and warranties and therefore denies the same, and states that these provisions speak for themselves. Further Sunlight states that Sunlight, as owner, had the right to settle the claims made and to license the use of "Different Strokes" going forward and that it did not breach any of its warranties. Sunlight admits that there was an indemnification provision. Sunlight denies the remaining allegations.

15. The July 1, 2003 agreement provided that Sunlight "represents and warrants that Sunlight owns and controls 100% of all rights (including all copyrights) in and to the Composition and the Sampled Master [of "Different Strokes"], has the right to enter into this agreement and to grant to Comptown each and every right granted to Comptown herein and that the use of the Composition and the Sample Master [of "Different Strokes"] contemplated hereunder will not violate the rights of any third party." The agreement further provided that Sunlight shall indemnify and hold Comptown free and harmless from any and all claims, liabilities, costs, losses, damages, or expenses, including reasonable attorneys' fees, arising out of any breach or failure to perform of any covenants and warranties made by Sunlight hereunder." As has been explained above, Capitol is entitled to the benefit of the rights granted to Comptown in the July 1, 2003 agreement with respect to the N.W.A. recording of "Real Niggaz Don't Die."

ANSWER: Sunlight admits the first sentence of paragraph 15. Answering further with respect to the first sentence, Sunlight states that it had the right to enter into the agreement

and that the use of the Composition and Sampled Master did not violate the rights of any third party. Sunlight admits the second sentence of paragraph 15 but denies that it breached or failed to perform any covenants and warranties it made. Sunlight lacks sufficient knowledge to admit or deny the third sentence of paragraph 15 and therefore denies the same and demands strict proof thereof.

### Johnson's Infringement Claims

16.    On December 28, 2007, Johnson filed a *pro se* complaint against "EMI/Capitol Records" and others, alleging copyright infringement based on alleged sampling of "Different Strokes" in, among other recordings, the N.W.A. recording of "Real Niggas Don't Die." In his complaint, Johnson alleged that he is and has been the sole owner of the composition and 1967 master recording of "Different Strokes."

ANSWER:    Sunlight admits that on December 28, 2007, Johnson filed a *pro se* complaint against "EMI/Capitol Records" and others, alleging copyright infringement based on alleged sampling of "Different Strokes" in, among other recordings, the N.W.A. recording of "Real Niggas Don't Die." Sunlight admits that in his complaint, Johnson alleged that he is and has been the sole owner of the composition and 1967 master recording of "Different Strokes." Sunlight states further that it denies Johnson's allegations.

17.    Johnson has also stated that license agreements entered into by Sunlight are not valid because, according to him, Sunlight did not have the right to license Twilight/Twinight recordings by Johnson.

ANSWER:    Sunlight does not have knowledge sufficient to admit or deny of the exact statement to which Third Party Plaintiff is referring, or to the words used, or to the context there, and therefore Sunlight denies the same, and demands strict proof thereof.

18. Johnson's amended complaint in this matter alleges that Johnson has owned the 1967 sound recording of "Different Strokes" from the beginning. Johnson further alleges that he filed a copyright on a 1972 "re-mix" recording of "Different Strokes" in 1996. Johnson asserts that he is "unsure" whether the alleged samples at issue in this case came from the 1967 or the 1972 sound recordings.

ANSWER: Sunlight admits that Johnson's amended complaint in this matter alleges that Johnson has owned the 1967 sound recording of "Different Strokes" from the beginning, that Johnson further alleges that he filed a copyright on a 1972 "re-mix" recording of "Different Strokes" in 1996 and that Johnson asserts that he is "unsure" whether the alleged samples at issue in this case came from the 1967 or the 1972 sound recordings. Answering further, Sunlight denies Johnson's allegations.

19. Johnson's amended complaint further asserts that he "operates" Twinight Records, Inc. and Edgewater Music, Inc.

ANSWER: Sunlight admits that Johnson's amended complaint further asserts that he "operates" Twinight Records, Inc. and Edgewater Music, Inc. Sunlight denies Johnson's allegations and assertions.

20. Johnson's Amended Complaint seeks substantial damages, including compensatory and punitive damages, as well as attorneys' fees, from Capitol based on alleged copyright infringement and misappropriation of Johnson's alleged rights in "Different Strokes" through "Real Niggaz Don't Die."

ANSWER: Sunlight admits the allegations contained in paragraph 20.

## COUNT I
**(Against Sunlight)**

21. Capitol realleges and incorporates the allegations of paragraphs 1-20 herein.

ANSWER: Sunlight realleges and incorporates its answers to paragraphs 1-20 herein.

22. Contrary to Sunlight's representations and warranties in the July 1, 2003 agreement, Johnson's lawsuit alleges that Johnson owns all rights to "Different Strokes" and is entitled to assert infringement and misappropriation claims against Capitol with respect to alleged sampling in "Real Niggaz Don't Die."

ANSWER: Sunlight admits that Johnson's lawsuit alleges that Johnson owns all rights to "Different Strokes" and is entitled to assert infringement and misappropriation claims against Capitol with respect to alleged sampling in "Real Niggaz Don't Die," but states the remaining allegations are legal conclusions, and therefore denies the same.

23. Pursuant to the July 1, 2003 agreement, Sunlight is obligated to indemnify Capitol, as an intended beneficiary, for Capitol's costs of defending against Johnson's claims in this litigation, including Capitol's reasonable attorneys' fees. In the event Johnson were to obtain a judgment against Capitol in this matter, Sunlight is further obligated to indemnify Capitol for that amount.

ANSWER: Sunlight denies the allegations contained in paragraph 23.

WHEREFORE, Third-Party Defendant Sunlight Records, Inc. d/b/a Twilight/Twinight Records and Edgewater Music, prays that this court dismiss the Third-Party Complaint at Third Party Plaintiff's cost.

## COUNT II
**(Against Comptown)**

Count II is not directed at Sunlight; therefore Sunlight makes no answer thereto.

**Affirmative Defenses**

11

1. Third Party Defendant's Claim is not entitled to recovery because Plaintiff's underlying claims are barred because of the existence of a valid and enforceable release entered into on July 10, 2007 between Plaintiff, on the one hand, and Peter Wright, the Wright Group, Sunlight Records, Inc., the original Twinight Records, Edgewater Music, Inc., and Midday Music, on the other hand.

2. The claims are barred because Sunlight owned the sound recording and publishing rights to "Different Strokes", not plaintiff.

3. The claims are barred, in whole or in part, under the applicable statute of limitations.

4. The claims are barred by Third Party plaintiff's failure to mitigate damages, if any.

Dated: August 15, 2008                                    Respectfully submitted by,

|  | /s/ Christ S. Stacey<br>ARDC No. 06183378<br><br>Law Office of Christ S. Stacey<br>19 S. LaSalle Street, Suite 1400<br>Chicago, IL 60603<br>Tel: (312) 781-9455<br>Fax: (312) 781-9455<br>Email: css-law@msn.com |
|---|---|

**CERTIFICATE OF SERVICE**

I hereby certify that on August 15, 2008, I electronically filed the foregoing **SUNLIGHT'S ANSWER TO THIRD-PARTY COMPLAINT OF CAPITOL RECORDS, LLC. AND AFFIRMATIVE DEFENSES** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to registered parties.


/s/ Christ S. Stacey
ARDC No. 06183378

Law Office of Christ S. Stacey
19 S. LaSalle Street, Suite 1400
Chicago, IL 60603
Tel: (312) 781-9455
Fax: (312) 781-9455
Email: css-law@msn.com