# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| SYL JOHNSON, | ) | |
| Plaintiff, | ) | No.: 07CV7288 |
| | ) | |
| v. | ) | Judge Aspen |
| | ) | Magistrate Judge Keys |
| MICHAEL JACKSON, et al. | ) | |
| Defendants. | ) | |
| AMARU ENTERTAINMENT, INC., | ) | |
| Third-Party Plaintiffs, | ) | |
| v. | ) | |
| SUNLIGHT RECORDS, INC. d/b/a TWILIGHT/ TWINIGHT RECORDS and EDGEWATER MUSIC | ) | |
| Defendants. | ) | |

## SUNLIGHT RECORDS, INC.'S ANSWER TO THIRD-PARTY COMPLAINT OF AMARU ENTERTAINMENT, INC. AND AFFIRMATIVE DEFENSES

Third-Party Defendant Sunlight Records, Inc., d/b/a Twilight/Twinight Records and Edgewater Music ("Sunlight"), through its undersigned attorney, for its Answer to Third-Party Complaint of Amaru Entertainment, Inc. ("Amaru"), hereby states as follows:

1.    In this Third-Party Complaint, Amaru seeks to enforce the terms of a settlement and license agreement under which Sunlight granted a license permitting the inclusion of samples of a recording known as "Different Strokes" on recordings by Tupac Shakur. As discussed in detail below, under the terms of this settlement and license agreement, Sunlight agreed to indemnify Amaru in the event Amaru was sued for any alleged infringement regarding "Different Strokes." Sunlight obtained valuable consideration based on the representation and warranty that Sunlight

owned the rights to "Different Strokes" and was legally entitled to license those rights.

ANSWER:     Sunlight admits that Amaru seeks to enforce the terms of a settlement and license agreement under which Sunlight granted a license permitting the inclusion of samples of a recording known as "Different Strokes" on recordings by Tupac Shakur. Sunlight admits the agreement contained indemnification provisions. Sunlight admits that it obtained valuable consideration in exchange for licensing the rights. Sunlight denies all remaining allegations.

2.     Amaru has been sued by Syl Johnson who claims to own the master recordings and copyrights of "Different Strokes."  In his Complaint, Johnson has attempted to allege claims for copyright infringement, misappropriation as well as other additional related claims.

ANSWER:     Sunlights admits the allegations contained in paragraph 2.

3.      While Amaru contests that Johnson has any valid claims, Sunlight is legally obligated to indemnify Amaru for any judgment Johnson might obtain against Amaru as well as the fees and costs of defending this action.

ANSWER:     Sunlight admits Amaru does not concede that Johnson has valid claims for misappropriation, infringement, and related causes of action. Sunlight denies the remaining allegations.

## Parties

4.     Third-Party Plaintiff Amaru is a corporation organized and existing under the laws of Delaware with its principal place of business in California.

ANSWER:     Sunlight lacks sufficient information to admit or deny the allegations and demands strict proof thereof. Answering further, Sunlight admits that the Secretary of State of Delaware lists Amaru as a Delaware corporation.

5.     Third-Party Defendant Sunlight is an Illinois corporation with its principal place of

2

business in Chicago, Illinois.

ANSWER:    Sunlight admits the allegations contained in paragraph 5.

6.    Sunlight does business under its own name as well as under the names Twilight/Twinight Records and Edgewater Music.

ANSWER:    Sunlight admits the allegations contained in paragraph 6.

## Jurisdiction and Venue

7.    This Court's exercise of supplemental jurisdiction over these claims is proper pursuant to 28 U.S.C. § 1367 and Federal Rule of Civil Procedure 14(a)(1), as this Third-Party Complaint is related to the allegations raised in Plaintiff Johnson's Complaint such that these claims constitute the same case or controversy, and because Sunlight may be liable to Amaru for all or part of the claims against it.

ANSWER:    Sunlight admits that other parties purport to assert claims that properly implicate the jurisdiction of this court. The remaining allegations state conclusions of law to which no answer is required. To the extent the remaining allegations of paragraph 7 state factual allegations, Sunlight denies the remaining allegations. Answering further, Sunlight specifically denies that there is supplemental jurisdiction because there is no federal jurisdiction under 17 U.S.C, section 101. It denies federal jurisdiction under 17 U.S.C., section 101 because (1) the sound recording licensed from Sunlight was recorded in 1967, prior to February 15, 1972, the time sound recordings were first afforded federal copyright protection, and thus there can be no federal copyright jurisdiction pertaining to claims made pertaining to the sound recording as a matter of law; and (2) because the sampled "grunt, laugh and drumbeat" was admittedly not composed by Zachary and Cameron nor contained in the composition copyrighted but first added as part of the performance on the sound

3

recording and was therefore only a part of the sound recording (Paragraph 19 of Johnson's Complaint). Therefore, the case lacks federal subject matter jurisdiction based upon federal copyright law.

8.    This Court has personal jurisdiction over Sunlight as it is incorporated in Illinois and does business in this district.

ANSWER:    Sunlight admits the allegations contained in paragraph 8.

9.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the matters between the parties occurred in this district.

ANSWER:    Sunlight admits the allegations contained in paragraph 9.

## Background

10.    On August 5, 2003, Sunlight, through its counsel, contacted Universal Music Group regarding the alleged sampling of "Different Strokes" by songs including "Peep Game" and "Nothing But Love?"

ANSWER:    Sunlight admits that its counsel contacted Universal Music Group regarding the alleged sampling of "Different Strokes" by songs including "Peep Game" and "Nothing But Love?", but denies the remaining allegations of paragraph 10.

11.    The dispute regarding "Peep Game" and "Nothing But Love?" was referred to and handled by Amaru.

ANSWER:    Sunlight has insufficient information to admit or deny, and therefore denies and demands strict proof thereof.

12.    In order to resolve the dispute, and without admitting liability, Amaru and Sunlight entered into a Settlement & Release Agreement dated September 2, 2003 (the "Release

4

Agreement"), attached hereto as Exhibit A.

ANSWER:    Sunlight admits the allegations contained in paragraph 12.

13.    The Release Agreement relates to the alleged sampling of "Different Strokes" by Amaru in two master recordings featuring the performances of Tupac Shakur respectively entitled, "Peep Game" and "Nothing But Love?" (the "Shakur Masters").

ANSWER:    Sunlight admits the allegations contained in paragraph 13.

14.    The Release Agreement at Paragraph 2.a. grants Amaru the right to "exploit, manufacture, sell, reproduce, adapt, distribute, transmit, broadcast, cable cast and/or otherwise exploit the Shakur Masters" and the songs contained thereon in any manner or configuration and the right to permit others to do so as well.  (Ex. A at ¶ 2.a.)

ANSWER:    Sunlight admits the allegations contained in paragraph 14.

15.    In Paragraph 2.b. of the Release Agreement, Sunlight represented and warranted that it was "fully authorized to enter into th[e] Release Agreement" and that the use of "Different Strokes" in the Shakur Masters would "not infringe upon or violate the rights of any person or entity."  (Ex. A at ¶ 2.b.)

ANSWER:    Sunlight admits the allegations contained in paragraph 15.

16.    Sunlight further agreed to indemnify and hold Amaru harmless "from and against any and all claims, damages, liabilities, costs, and expenses (including legal costs and reasonable attorneys' fees)" arising out of any alleged breach of Sunlight's representations and warranties, "including, without limitation, any claim by or on behalf of Syl Johnson" relating to the use of "Different Strokes" in the Shakur Masters.  (Ex. A. at ¶ 2.b.)

ANSWER:    Sunlight admits the allegations contained in paragraph 16 but denies that it breached any representations or warranties.

5

17.    The Release Agreement was executed in consideration for the mutual covenants of the parties and $10,000 paid by Amaru to Sunlight.  (Ex. A. at ¶ 1.a.)

ANSWER:    Sunlight admits the allegations contained in paragraph 17.

### Syl Johnson's Claim Against Amaru

18.    On December 28, 2007, Syl Johnson filed a Complaint against Amaru and other parties.

ANSWER:    Sunlight admits the allegations contained in paragraph 18.

19.    Before Amaru was required to file a responsive pleading, Johnson sought and was granted leave to file an amended complaint.

ANSWER:    Sunlight admits the allegations contained in paragraph 19.

20.    On April 1, 2008, Johnson filed a First Amended Complaint ("Amended Complaint") against Amaru and other parties, attached hereto as Exhibit B.

ANSWER:    Sunlight admits the allegations contained in paragraph 20.

21.    In the Amended Complaint, Johnson alleges that he owns enforceable rights with regards to copyrights covering "Different Strokes."  (*See, e.g.*, Ex. B ¶¶ 212, 236.)

ANSWER:    Sunlight admits the allegations contained in paragraph 21 but denies that Johnson, in fact, owned enforceable rights with respect to any federal copyrights covering "Different Strokes".

22.    In the Amended Complaint, Johnson asserts copyright infringement and related claims against Amaru for its use of "Different Strokes" in the Shakur Masters.  (*See, e.g.*, Ex. B ¶¶ 202-249.)

ANSWER:    Sunlight admits the allegations contained in paragraph 22.   Answering further, Johnson had no rights which could be infringed upon.

6

23.    Johnson is seeking substantial damages including compensatory and punitive damages, as well as attorneys' fees, from Amaru.

ANSWER:    Sunlight admits the allegations contained in paragraph 23.

24.    Amaru maintains that it has not committed any wrongful conduct as alleged in the Amended Complaint, that it is not liable for any damages to Johnson, and that Johnson is not entitled to any relief.

ANSWER:    Sunlight admits the allegations contained in paragraph 24.

25.    On February 21, 2008, counsel for Amaru sent a letter to counsel for Sunlight informing him that Amaru will be seeking indemnification for any and all damages, liabilities, costs, losses and expenses incurred as a result of Johnson's claims.

ANSWER:    Sunlight admits the allegations contained in paragraph 25.

## COUNT I
### Claim for Indemnification

26.    Amaru adopts and reavers the allegations of the foregoing paragraphs 1 through 25 and further alleges that:

ANSWER:    Sunlight realleges and incorporates its answers to paragraphs 1 through 25 herein.

27.    The Release Agreement is a valid and enforceable contract.

ANSWER:    Sunlight admits the allegations contained in paragraph 27.

28.    Amaru performed all of its obligations pursuant to the Release Agreement.

ANSWER:    Sunlight admits the allegations contained in paragraph 28.

29.    While Amaru maintains that it is not liable for any of the claims asserted in Johnson's Complaint, Sunlight is obligated to indemnify Amaru for any and all damages, liabilities, costs,

7

losses and expenses, including legal costs and attorneys' fees, arising out of the Johnson Amended Complaint.

ANSWER:    Sunlight admits that Amaru is not liable for any of the claims asserted in Johnson's Amended Complaint, but denies the remaining allegations contained in paragraph 29.

WHEREFORE, Third-Party Defendant Sunlight Records, Inc. d/b/a Twilight/Twinight Records and Edgewater Music, prays that this court dismiss the Third-Party Complaint at Third Party Plaintiff's cost.

## Affirmative Defenses

1.    Third Party Defendant's Claim is not entitled to recovery because Plaintiff's underlying claims are barred because of the existence of a valid and enforceable release entered into on July 10, 2007 between Plaintiff, on the one hand, and Peter Wright, the Wright Group, Sunlight Records, Inc., the original Twinight Records, Edgewater Music, Inc., and Midday Music, on the other hand.

2.    The claims are barred because Sunlight owned the sound recording and publishing rights to "Different Strokes", not plaintiff.

3.    The claims are barred, in whole or in part, under the applicable statute of limitations.

4.    The claims are barred by Third Party plaintiff's failure to mitigate damages, if any.

Dated: August 15, 2008                    Respectfully submitted by,

/s/ Christ S. Stacey
ARDC No. 06183378

8

Law Office of Christ S. Stacey
19 S. LaSalle Street, Suite 1400
Chicago, IL 60603
Tel: (312) 781-9455
Fax: (312) 781-9455
Email: css-law@msn.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 15, 2008, I electronically filed the **<u>SUNLIGHT RECORDS, INC.'S ANSWER TO THIRD-PARTY COMPLAINT OF AMARU ENTERTAINMENT, INC. AND AFFIRMATIVE DEFENSES</u>** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to registered parties.

/s/ Christ S. Stacey
ARDC No. 06183378

Law Office of Christ S. Stacey
19 S. LaSalle Street, Suite 1400
Chicago, IL 60603
Tel: (312) 781-9455
Fax: (312) 781-9455
Email: css-law@msn.com