## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| SYL JOHNSON, a/k/a Sylvester Thompson, d/b/a Syl-Zel Music, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | No. 07 C 7288 |
| MICHAEL JACKSON d/b/a MIJAC MUSIC, WILL SMITH, AFENI SHAKUR, CO-ADMINISTRATOR OF THE ESTATE OF TUPAC SHAKUR, LAWRENCE PARKER p/k/a KRS-ONE, PEDRO ZAYAS p/k/a PEEDI CRAKK, CHRISTOPHER RIES P/K/A YOUNG CHRIS, SONY BMG MUSIC ENTERTAINMENT, INC., UMG RECORDINGS, INC. d/b/a UNIVERSAL MUSIC GROUP, CAPITOL RECORDS, INC., ZOMBA ENTERPRISES, INC., AMARU ENTERTAINMENT, INC., N.W.A., a general partnership, COMPTON RECORDS, INC. d/b/a RUTHLESS RECORDS, INC., ANDRE YOUNG, ANTOINE CARRABY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Honorable Marvin E. Aspen |
| Defendants. | ) ) | |

## ANSWER
## OF LAWRENCE PARKER
## TO FIRST AMENDED COMPLAINT

Defendant Lawrence Parker ("Parker"), known professionally as KRS-One through his

attorneys, hereby answer the First Amended Complaint as to himself as follows:

## JURISDICTION AND VENUE

1.      This action involves misappropriated or pirated samples from Johnson's musical sound recording, Different Strokes, and claims Illinois common law misappropriation and other state law claims, or, alternatively, copyright infringement pursuant to the copyright laws of the United States, 17 U.S.C. § 101, *et seq.*

**ANSWER:**    Defendant Parker admits that this action purports to involve the claims described in paragraph 1.  Parker denies that those claims have any merit.

2.    This Court has jurisdiction over this matter under 28 U.S.C. § 1367 for the state law claims and 28 U.S.C. § 1338 (a) for the alternative federal copyright claims.

**ANSWER:**    Defendant Parker admits that this Court has jurisdiction over the federal copyright claims in this matter pursuant to 28 U.S.C. § 1338(a).  Parker denies that the plaintiff's copyright claims have merit and therefore states that this Court should decline to exercise jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

3.    Venue is predicated on 28 U.S.C. § 1391 and 1400(a) and venue is proper in this district in that Johnson recorded "Different Strokes" in this district and the infringing works which pirated portions of Johnson's work as described herein were and currently are distributed, marketed, offered for sale and sold in this district.  On information and belief, personal jurisdiction is proper because each Defendant, without consent or permission of the copyright owner, disseminated copyrighted works owned or controlled by Johnson.  On information and belief, illegal dissemination occurred in every jurisdiction in the United States, including the Northern District of Illinois.

**ANSWER:**    Defendant Parker admits that venue and personal jurisdiction are proper in this District.

**PARTIES**

4.    Johnson is a 72-year-old adult citizen of the State of Illinois.  He is engaged in the business of musical performance under the assumed business name of Syl-Zel Music.  Johnson also operates two Illinois corporations, Twinight Records, Inc. and Edgewater Music, Inc. and is engaged in the business of musical composition and publishing.

**ANSWER:**    Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4.

**Michael Jackson**

5.    Upon information and belief, defendant Michael Jackson ("Jackson") is an adult citizen of the State of California.  He is engaged in the business of music composition, publishing and performance.  On information and belief Michael Jackson engages in publishing of music under the assumed name Mijac Music.  Mijac Music is an assumed name for Michael Jackson operating as a music publisher.  The infringing work at issue in this lawsuit is entitled "Blood On The Dance Floor, Refugee Camp Edit."

**ANSWER:**     Defendant Parker admits on information and belief that Michael Jackson is an adult and that he is engaged in the business of music composition, publishing and performance.  Parker lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 5.

### Will Smith

6.     Upon information and belief, defendant Will Smith ("Smith") is an adult citizen of the State of California.  He is engaged in the business of music composition and performance. The infringing work by Smith at issue in this lawsuit is entitled "Who Stole The DJ?"

**ANSWER:**     Defendant Parker admits on information and belief that Will Smith is an adult and that he is engaged in the business of music composition and performance.  Parker lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 6.

### Tupac Shakur Estate

7.     Afeni Shakur, one of the co-administrators of the Estate of Tupac Shakur is a citizen of the State of Georgia ("the Tupac Shakur Estate").  Co-administrator, Richard Fishbein, is a citizen of the State of New York.  The works involving the Tupac Shakur Estate are "Peep Game" and "Nothin' But Love."

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7.

### Lawrence Parker - KRS One

8.     Lawrence Parker, also known as Larry Parker, and professionally known as KRS One ("Parker"), is an adult citizen of the State of California or of the State of New York.  Parker is a rap music artist who is engaged in the business of musical composition and performance. The work involving Parker at issue in this lawsuit is entitled "Criminal Minded."

**ANSWER:**     Defendant Parker admits that he is professionally known as KRS-One, that he is an adult citizen of the State of California and that he is an artist engaged in musical composition and performance of rap music.  Parker denies the remaining allegations in paragraph 8.

### Pedro Zayas and Christoper [*sic*] Ries

9.      Defendant Pedro Zayas is professionally known as Peedi Crakk and also as Peedi Peedi ("Zayas").  Upon information and belief, Zayas is an adult citizen of the State of Pennsylvania.  He is engaged in the business of musical composition and performance and performed the sound recording for "Criminal Background" at issue in this lawsuit.

<u>**ANSWER:**</u>    Defendant Parker admits upon information and belief that Pedro Zayas has been known professionally as Peedi Crakk and is professionally known as Peedi Peedi and that he is an adult who is engaged in the business of music composition and performance.  Parker lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 9.

10.      Defendant Christopher Ries is professionally known as Young Chris ("Ries"). Upon information and belief, Ries is an adult citizen of the State of Pennsylvania.  He is engaged in the business of musical composition and performance and performed the sound recording for "Criminal Background" at issue in this lawsuit.

<u>**ANSWER:**</u>    Defendant Parker admits upon information and belief that Christopher Ries is known professionally as Young Chris and that he is an adult who is engaged in the business of music composition and performance.  Parker lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 10.

### Sony BMG Music Entertainment, Inc.

11.      Defendant Sony BMG Music Entertainment, Inc. is a Delaware general partnership with its principal place of business in New York ("Sony").  Said defendant is engaged in the business of manufacture, distribution, and sale of music performances in the forms of records, tapes, and compact discs, among other media.

<u>**ANSWER:**</u>    Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11.

### UMG Recordings, Inc.

12.      Defendant UMG Recordings, Inc. is a Delaware corporation with its principal place of business in New York ("UMG").  On information and belief UMG does business as

Universal Music Group. Said defendant is engaged in the business of manufacture, distribution, and sale of music performances in the forms of records, tapes, and compact discs, among other media. Said defendant is the manufacturer, distributor and seller of certain the recordings at issue in this lawsuit: Nothin' But Love and Peep Game.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12.

### Capital [sic] Records, Inc.

13.     Defendant Capitol Records, Inc. is a Delaware corporation with its principal place of business in the State of New York ("Capitol Records"). Its parent corporation is EMI, formerly Grammaphone Record Company. On information and belief, Capital owns and exploits the master recording to a song entitled Real Niggaz Don't Die which contains a misappropriated or pirated sample from Different Strokes.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13.

### Zomba Enterprises, Inc.

14.     Zomba Enterprises, Inc. is a New York corporation with its principal place of business in New York ("Zomba Enterprises"). On information and belief, Zomba Enterprises is the owner of the master recording and copyright for the work at issue in this lawsuit alleged to contain a pirated or misappropriated sample entitled "Criminal Minded" and "Criminal Background".

**ANSWER:**     Defendant Parker admits that Zomba Enterprises is the owner of the master recording and sound recording copyright for the work "Criminal Minded." Parker lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 14.

### Amaru Entertainment, Inc.

15.     Defendant Amaru Entertainment, Inc. is a Delaware corporation with its principal place of business in Georgia ("Amaru"). Upon information and belief, said defendant is engaged in the business of manufacture, distribution and sale of music performances in the form of records, tapes, and compact discs, among other media. Said defendant is the manufacturer, distributor, and seller of recordings for the Tupac Shakur Estate.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15.

### NWA, ANDRE YOUNG AND ANTOINE CARRABY, COMPTON RECORDS

16.     N.W.A is a partnership which operated between 1991 and 2003 and was composed of Tre Curry (the D.O.C.), Andre Young (Dr. DRE), Eric Wright (Eazy-E), Dine Fekaris, Lorenzo Patterson (M.C. Ren), Antoine Carraby (DJ Yella), and Nick Zesses ("NWA"). None of NWA's partners are Illinois citizens.  Compton Records a/k/a Ruthless Records is a California corporation with its principal place of business in California.  The work involving these defendants is Real Niggaz Don't Die.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16.

### JOHNSON'S SONG - DIFFERENT STROKES

17.     On or about July 16, 1967, Johnson hired writers, John Cameron and John Zachary ("the writers"), who created and wrote the musical composition ("the composition") entitled "Different Strokes" in their capacity as songwriters.  The musical composition was wholly original and is copyrightable subject matter.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17.

18.     On August 14, 1967, the writers registered the copyright in the musical composition "Different Strokes" with the United States Copyright Office, and secured Certificate of Registration No. EU 9873.  The composition copyright in the words and music was registered to John Cameron and John Zachary.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18.

19.     On or about July 16, 1967, Johnson recorded a sound recording entitled "Different Strokes" at a recording studio in Chicago, Illinois.  During the recording session, Johnson experimented with different creative sound combinations and finally settled on the idea to open the song with a combined grunt, laugh and drum beat (the "Ensemble").  The Ensemble gave the "Different Strokes" recording great distinction and popular appeal.  In 1967, "Different Strokes" was released on a 45-RPM in 1967 through Twilight Records ("Twilight").

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19.

20.     In or about March 1972, Johnson recorded a re-mix version of "Different Strokes" at a recording studio in Chicago, Illinois.  The 1972 re-mix version included the Ensemble as to which Johnson re-recorded his grunt.  Johnson did the editing, sound remixing, equalization, balancing and addition of new sound material which was wholly original with Johnson.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20.

21.     The 1972 re-mix version of Different Strokes was released in 1986 through P-Vine records as an LP Album.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21.

22.     Johnson obtained a written assignment of the composition copyright from John Zachary effective January 1, 1995.  In 1995, John Cameron was deceased, and Johnson obtained a written assignment of Cameron's interest in the composition copyright from Jennifer Cameron, John Cameron's daughter.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22.

23.     On February 26, 1996, Johnson registered his copyright in "Sock It To Me" with the United States Copyright Office and deposited a copy thereof which included the 1972 re-mix of "Different Strokes."  Johnson secured Certificate of Registration No. SR0000360-720.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23.

24.     On February 14, 1997, Johnson registered "Surrounded" with the United States Copyright Office.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24.

25.     Johnson deposited a copy thereof which also included the 1972 re-mix version of Different Strokes.  Johnson obtained Certificate No. SRU-360-891.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25.

26.     The 1972 re-mix version of "Different Strokes" features the Ensemble as the beginning of the song with Johnson as the vocalist who provided the "grunt" portion of the Ensemble.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26.

## DIGITAL SAMPLING TECHNOLOGY

27.     Digital sampling technology allows the copying of a recorded sound or series of sounds and incorporation of the fragment into the new work.

**ANSWER:**     Defendant Parker admits the allegations of paragraph 27.

28.     The process of digital recording changes sound waves into digital information; specifically, a sound is sent to a transducer (such as a microphone) which converts the sound wave into voltage variations.  The signal is then sent to an analog-to-digital converter.  The converter changes the analog signal into digital information by first measuring the analog voltage at regular intervals.  The resulting "bits" are assigned a binary number representing the intensity of the signal at that time.  A computer stores or processes the resulting sample information.  To hear the sample, the process is reversed so that the voltage variations are converted into audible sound waves.

**ANSWER:**     Defendant Parker admits on information and belief the allegations of paragraph 28 with the qualification that it is a very general and simplistic description of digital recording technology.

29.     The process whereby music samples are pirated and recorded onto the defendant's work requires that the defendant first make a sound recording, then intentionally and deliberately record the music sample onto the defendant's sound recording.  In some cases, the music sample is manipulated by showing it down, changing the pitch, speed, etc.  By engaging in this process, the defendant achieves distinction in the defendant's sound recording without having to spend the resources on creativity to develop the distinctive sound.

**ANSWER:**     Defendant Parker denies the allegations of paragraph 29.

## BLOOD ON THE DANCE FLOOR

30.     In 1997, Michael Jackson composed, produced and recorded Blood On The Dance Floor.  At some point after the Blood On The Dance Floor sound recording was made,

8

either personally or through his agents, Jackson utilized digital sampling technology, pirated the Ensemble from Johnson's sound recording of "Different Strokes" and recorded it onto at least one version of Blood On The Dance Floor known as the Refugee Camp Edit.

**ANSWER:**   Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30.

31.     Johnson lacks information as to whether Jackson took the Ensemble from the 1967 sound recording or from the 1972 re-mix version of Different Strokes.

**ANSWER:**   Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31.

32.     On information and belief, Johnson has released versions of Blood On The Dance Floor which did not contain the pirated or misappropriated sample.

**ANSWER:**   Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32.

33.     Jackson took the Different Strokes Ensemble for the Blood On The Dance Floor Refugee Camp Edit for the purpose of making the song appeal to a hip-hop audience.

**ANSWER:**   Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 33.

34.     On information and belief, Sony BMG released a compact disc single, maxi-CD single and cassette single containing Blood On The Dance Floor, Refugee Camp Edit.

**ANSWER:**   Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 34.

35.     Neither Jackson, nor any of Jackson's agents or representatives, nor Sony contacted Johnson nor sought a license for the pirated or misappropriated Different Strokes sample.

**ANSWER:**   Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 35.

36.     The copyright notice for Blood On The Dance Floor failed to mention Johnson's contribution vis-à-vis the pirated or misappropriated sample.

**ANSWER:**    Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 36.

37.    In 1997, Michael Jackson released an album entitled Blood On The Dance Floor which included The Refugee Camp Edit.  On information and belief, the profits earned from Blood On The Dance Floor, Refugee Camp Edit, exceed $75,000.00.

**ANSWER:**    Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 37.

38.    In 2005, Johnson learned of the pirating of Different Strokes' Ensemble in Blood On The Dance Floor.  Upon learning of this, Johnson bought a CD containing Blood On The Dance Floor, Refugee Camp Edit and confirmed that Blood On The Dance Floor included the Ensemble from Johnson's Different Strokes' sound recording, though Johnson has not yet been able to determine whether the Ensemble was taken from the 1967 sound recording or the 1972 remixed version of Different Strokes.

**ANSWER:**    Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 38.

39.    The infringement of Johnson's song "Different Strokes" by Blood On The Dance Floor is a continuing infringement.

**ANSWER:**    Defendant Parker makes no answer to paragraph 39, as it asserts a legal conclusion not directed at him.


**CRIMINAL MINDED**

40.    In 1987, Parker (together with a since deceased person named Scott Sterling or Scott LaRock) composed a song entitled "Criminal Minded".  "Criminal Minded" was recorded by a group known as Boogie Down Productions and Parker was one of the members.  Parker (among others), produced "Criminal Minded" and it was released March 3, 1987 by B-Boy Records, Inc. (since merged and now known as Big East Entertainment, Inc.)

**ANSWER:**    Defendant Parker admits the allegations in paragraph 40, except that he lacks knowledge or information sufficient to form a belief as to the truth of the allegation that B-Boy Records, Inc. has merged and is now known as Bug East Entertainment, Inc.

41.     Since its release in 1987, Criminal Minded has been released on 13 albums.  The albums are: (1) Criminal Minded (1987); (2) Best of B-Boy Records (2001); (3); Hip Hop Back in the Day (1995); (4) History of Rap, Vol. 1 (1996); (5) Kurtis Blow Presents the History of Rap, Vol. 3: The Golden Age (1997); (6) Live Hardcore Worldwide (1991); (7) Criminal Minded (Plus Instrumentals) (2001); Ultimate Hip-Hop Album (2003); (8) 80's Hip-Hop Album (2003); (9) 80's Hip Hop Hits (2000); (10) Man and His Music (1991); (11) Battle For Rap Supremacy; KRS-One v. McSha (1996); (12) Retrospective (Performed by KRS-One (2000); (13) Best of KRS-One (2000).

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 41.

42.     The Criminal Minded sound recording digitally manipulated the Ensemble by shifting the pitch and speed and repeating the Ensemble pervasively throughout with the intention of giving Criminal Minded distinction and appeal.

**ANSWER:**     Defendant Parker denies the allegations in paragraph 41.

43.     The sound recording copyright for the Album entitled Criminal Minded failed to mention Johnson's contribution to the sound recording vis-à-vis the pirated or misappropriated sample.  Johnson learned of the pirated or misappropriated Different Strokes sample in Criminal Minded in 2005.

**ANSWER:**     Defendant Parker admits that the sound recording copyright for the album

entitled "Criminal Minded" does not mention Johnson.  Parker lacks knowledge or information

sufficient to form a belief as to the truth of the allegations as to what Johnson learned or when he

learned it.  Parker denies the remaining allegations in paragraph 43.

44.     On information and belief, Zomba Enterprises obtained the publication rights to Criminal Minded and is responsible for its widespread dissemination and sale.

**ANSWER:**     Defendant Parker admits the allegations in paragraph 44.

## CRIMINAL BACKGROUND

45.     On August 5, 2003, Beanie Segal produced a sound recording entitled State Property Presents The Chain Gang, Vol. 2 ("Chain Gang, Vol. 2") which included a song called Criminal Background composed by Parker, Scott Sterling, Chad Hamilton, R. Presson, Christopher Reis, J. Thomas, Pedro Zayas and R. Presson.  Criminal Background was performed by Zayas and Ries and released on Roc-a-Fella Records.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 45.

46.     Approximately 14.5 seconds into the recording track, the Chain Gang, Vol. 2 sound recording includes a pirated or misappropriated sample of Johnson's grunt (as well as the laugh) from the Different Strokes Ensemble.  Johnson lacks information as yet as to whether the sample was misappropriated or pirated from the 1967 or the 1972 sound recording of Different Strokes.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 46.

47.     On information and belief, Zomba Enterprise is responsible for or has contributed to the dissemination of Criminal Background.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 47.

48.     The copyright notice for Criminal Background failed to mention Johnson's contribution vis-à-vis the pirated or misappropriated sample.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 48.

49.     The pirated or misappropriated sample was included in Criminal Background without Johnson's permission or knowledge.  Johnson learned of the pirated or misappropriated sample in Criminal Background in 2005.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 49.


**WHO STOLE THE DJ?**

50.     In 1991 and in 2000, Quincy Jones produced sound recordings entitled "Who Stole the DJ" as composed by Will Smith and Jeff Townes and performed by DJ Jazzy Jeff and The Fresh Prince.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 50.

51.     After recording "Who Stole The DJ", Will Smith or his agents, digitally manipulated the Different Strokes Ensemble, changed the pitch and the speed, and recorded in [sic] onto the Who Stole the DJ sound recording.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 51.

52.     The Sound Recording entitled "Who Stole The DJ" contains approximately one hundred and nine audible instances of the (manipulated) pirated or misappropriated "Different Strokes" Ensemble.  The 109 instances of the Different Strokes Ensemble sample gave "Who Stole The DJ" its distinction and popular appeal.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 52.

53.     The Ensemble was included without Johnson's permission or knowledge.  At this juncture in the lawsuit, Johnson is unsure whether the Ensemble was taken from the 1967 or the 1972 Different Strokes re-mix version.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 53.

54.     The copyright notice for "Who Stole The DJ" failed to mention Johnson's contribution vis-à-vis the pirated or misappropriated sample.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 54.

55.     At least two albums containing "Who Stole The DJ" were released on Jive Records.  The album entitled Before the Millennium contains Who Stole The DJ and was released in 2000.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 55.

56.     On information and belief, Who Stole The DJ was a work for hire by Zomba Enterprises.  Sony is the owner of the master recording and is responsible or has contributed to the sale and dissemination of Who Stole The DJ.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 56.

57.     The infringement or misappropriation described herein is continuing, but Johnson did not learn of it until 2005.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 57.


## REAL NIGGAZ DON'T DIE

58.     Real Niggaz Don't Die was composed by various members of the music partnership known as N.W.A., including Tracy [*sic*] Curry professionally known as D.O.C., Andre Young p/k/a Dr. Dre, Eric Wright (Easy-E) and others.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 58.

59.     In 1991 through 2003 Tre Curry (the D.O.C.), Andre Young (Dr. DRE), Eric Wright (Eazy-E), Dine [*sic*] Fekaris, Lorenzo Patterson (M.C. Ren), Antoine Carraby (DJ Yella), and Nick Zesses (operating as NWA) made sound recordings of the song Real Niggaz Don't Die which was produced by Dr. Dre and Yella on Compton a/k/a Ruthless Records.  The Real Niggaz Don't Die sound recording included a sample from the 1972 "Different Strokes" sound recording.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 59.

60.     On information and belief, Capital is the owner of the master recording of the infringing work, Real Niggaz Don't Die, and is responsible for or has contributed to the mass and widespread sale and dissemination of Real Niggaz Don't Die.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 60.

61.     In approximately 1995, Capital had a dispute with Johnson regarding Johnson's claim of another instance of infringement pertaining to Johnson's Different Strokes sound recording and a Capital release known as King Tee.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 61.

62.     Capital thus had knowledge that Johnson was the copyright owner of the "Different Strokes" sound recording.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 62.

63.     Defendants have released and sold the following albums which include "Real Niggaz Don't Die" on one of the album's tracks: (1) Niggaz4Life (1991); (2) Greatest Hits (1996); (3) Greatest Hits (bonus track) (2003); (4) Niggaz4Life [CD/DVD] (2003) (5) Niggaz4Life/100 Miles and Runnin' (2002); (6) Greatest Hitz [Circuit City Exclusive] (2007); (7) Best of N.W.A.: The Strength of Street Knowledge [Bonus DVD] (2007; (8) Efil4Zaggin with 100 Miles/Straight outta Compton (2005); (9) Straight Out of Compton/Niggaz4Life with 100 miles and Running (2003).

**ANSWER:**     Defendant Parker denies that he has released or sold any of the albums listed in paragraph 63.

64.     The copyright notice for Real Niggaz Don't Die failed to mention Johnson's contribution vis-à-vis the pirated or misappropriated sample.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 64.

65.     The infringement or misappropriation described herein is continuing, but Johnson did not learn of it until 2005.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 65.

## PEEP GAME

66.     Tupac Shakur (among others) composed a song entitled "Peep Game".  Tupac Shakur performed Peep Game and a sound recording was made in approximately 1993.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 66.

67.     Peep Game was released on February 16, 1993 by Interscope Records on an album called Strictly 4 My N.I.G.G.A.Z.  The producer was Bobby Ervin.  The distributing label is Interscope and Amaru Entertainment, Inc.  Interscope and Amaru are owned by UMG.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 67.

68.     The Peep Game sound recording includes the "Different Strokes" Ensemble twice at approximately 2.55 minutes into the track.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 68.

69.     The Ensemble was taken from either the 1967 or the 1972 remix version of Different Strokes.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 69.

70.     The inclusion in Peep Game of the Ensemble from Different Strokes was done without Johnson's knowledge or permission.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 70.

71.     On information and belief, UMG is the owner of the master recording of the album, Strictly 4 My N.I.G.G.A.Z, which includes "Peep Game" on one track.   UMG is responsible for and has contributed to the mass and widespread sale and dissemination of Peep Game.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 71.

72.     The copyright notice for Peep Game failed to mention Johnson's contribution vis-à-vis the pirated or misappropriated sample.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 72.

73.     The infringement or misappropriation described herein is continuing, but Johnson did not learn of it until 2005.

**ANSWER:**     Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 73.

## NOTHIN' BUT LOVE

74.    Tupac Shakur composed a song entitled Nothin' But Love and performed and recorded Nothin' But Love in approximately 1996.

**ANSWER:**    Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 74.

75.    In 1997, Nothin' But Love was released on an album called RU Still Down (Remember Me).

**ANSWER:**    Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 75.

76.    The sound recording of Nothin' But Love included the pirated or misappropriated sample of the Ensemble from Johnson's sound recording of Different Strokes. The pirated or misappropriated sample appears twice at approximately the 3:30 minute mark in the Nothin' But Love sound recording.

**ANSWER:**    Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 76.

77.    The sample was taken from either the 1967 or the 1972 sound recording of Different Strokes.

**ANSWER:**    Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 77.

78.    Johnson did not give permission for the inclusion of any portion of the 1967 or the 1972 Different Strokes' sound recording in Nothin' But Love.

**ANSWER:**    Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 78.

79.    The copyright notice for Nothin' But Love failed to mention Johnson's contribution vis-à-vis the pirated or misappropriated sample.

**ANSWER:**    Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 79.

80.    On information and belief, UMG is responsible for and has contributed to the mass and widespread sale and dissemination of Nothin' But Love.

**ANSWER:**    Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 80.

81.    In 2005, Johnson first learned that by Nothin' But Love contained a pirated or misappropriated sample of the Different Strokes sound recording.    The infringement or misappropriation by Nothin' But Love is continuing.

**ANSWER:**    Defendant Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 81.


### COUNT I - MISAPPROPRIATION-BLOOD ON THE DANCE FLOOR

82.    Paragraph Nos. 1 through 81 are incorporated and realleged as though fully set forth herein.

**ANSWER:**    Defendant Parker's answers to paragraphs 1-81 are hereby reincorporated and realleged as though fully set forth herein.  Parker makes no response to Count I, which is not directed at him.

### COUNT II-UNJUST ENRICHMENT-BLOOD ON THE DANCE FLOOR

89.    Paragraph Nos. 1 through 81 are incorporated and realleged as though fully set forth herein.

**ANSWER:**    Defendant Parker's answers to paragraphs 1-81 are hereby reincorporated and realleged as though fully set forth herein.  Parker makes no response to Count II, which is not directed at him.

### COUNT III-FEDERAL COPYRIGHT INFRINGEMENT
### BLOOD ON THE DANCE FLOOR

91.    Paragraphs One through 90 are incorporated and realleged as though fully stated herein.

**ANSWER:**    Defendant Parker's answers to paragraphs 1-90 are hereby reincorporated and realleged as though fully set forth herein.  Parker makes no response to Count III, which is not directed at him.

## COUNT IV - VICARIOUS COPYRIGHT INFRINGEMENT
## BLOOD ON THE DANCE FLOOR

101.    Paragraphs One through 100 are incorporated and realleged as though fully set forth herein.

**ANSWER:**    Defendant Parker's answers to paragraphs 1-100 are hereby reincorporated and realleged as though fully set forth herein.  Parker makes no response to Count IV, which is not directed at him.

## COUNT V - MISAPPROPRIATION-CRIMINAL MINDED

106.    Paragraph Nos. 1 through 81 are incorporated and realleged as though fully set forth herein.

**ANSWER:**    Defendant Parker's answers to paragraphs 1-81 are hereby reincorporated and realleged as though fully set forth herein.

107.    The Ensemble contained in the 1967 sound recording of  Different Strokes and in the 1972 remix of Different Strokes was  original and included Johnson's voice recording. Johnson had a legal right to control the use of his voice recording.

**ANSWER:**    Parker denies the allegations of paragraph 107.

108.    Parker and Zomba Enterprises had access to the 1967 sound recording of Different Strokes and to the 1972 remix because it was commercially available in various mediums.

**ANSWER:**    Parker lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 108.

109.    Parker and Zomba Enterprises misappropriated Johnson's voice recording and misappropriated the Ensemble which was the embodiment of Johnson's original creative work.

**ANSWER:**    Parker denies the allegations of paragraph 108.

110.    Johnson contributed the expenses of recording as well as his vocal talent, creativity, time and labor to the creation of the Ensemble. Johnson benefits commercially from the Ensemble to the extent that he negotiates licenses to artists who want to use it in their works.

**ANSWER:**    Parker lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 110.

111.    As a result of taking Johnson's voice recording and the Different Strokes Ensemble, Defendants gave their work distinction while avoiding expending the creative resources necessary to develop the distinct sound that Defendants' were able to obtain without obtaining Johnson's consent or paying him for its use.

**ANSWER:**    Parker denies the allegations of paragraph 111.

112.    As a direct and proximate result of the misappropriation described herein, Parker and Zomba Enterprises have obtained unlawful profits by virtue of the unlawful misappropriation which exceed the sum of $75,000.00.

**ANSWER:**    Parker denies the allegations of paragraph 112.

## COUNT VII - UNJUST ENRICHMENT-CRIMINAL MINDED

113.    Paragraph Nos. 1 through 112 are incorporated and realleged as though fully set forth herein.

**ANSWER:**    Defendant Parker's answers to paragraphs 1-112 are hereby reincorporated

and realleged as though fully set forth herein.

114.    As described herein, Parker and Zomba Enterprises have obtained a benefit by the use of the misappropriated samples which have enhanced their musical works and which benefit includes profits from sales and distribution of the works, obtaining and owning a valuable sound recording copyright in the work, issuing and being compensated for licenses in the work, and other benefits, which would be unjust for them to retain.

**ANSWER:**    Parker denies the allegations of paragraph 114.

## COUNT VIII-FEDERAL COPYRIGHT INFRINGEMENT-
## CRIMINAL MINDED

115.    Paragraphs One through 114 are incorporated and realleged as though fully stated herein.

**ANSWER:**    Defendant Parker's answers to paragraphs 1-114 are hereby reincorporated

and realleged as though fully set forth herein.

116.    In the event that the evidence establishes that Parker or Zomba Enterprises took the Different Strokes Ensemble from the 1972 re-mix sound recording, and that such re-mix is sufficiently distinct to be entitled to federal copyright protection, then Johnson is the owner of the sound recording copyright for Different Strokes and Johnson registered his ownership of the sound recording copyright with the United States Copyright Office as described herein.

**ANSWER:**    Parker denies the allegations of paragraph 116.

117.    Among the exclusive rights granted to Johnson under the Copyright Act are the exclusive rights to reproduce the copyrighted recordings and to distribute the copyrighted recordings to the public and to create derivative works.

**ANSWER:**    Parker states that paragraph 117 describes certain provisions of the

Copyright Act in very general and simplified terms but denies that Johnson has such rights with

respect to the matters at issue in this case.

118.    Johnson has placed proper notice of copyright pursuant to 17 U.S.C. § 401 on the album cover of "Surrounded".

**ANSWER:**    Parker lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 118.


119.    The 1972 re-mix version of Different Strokes was widely available and accessible to each defendant.

**ANSWER:**    Parker lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 119.

120.    On information and belief, the Defendants and each of them, without the permission, authority, or license from Johnson and without any attribution to Johnson, have wrongfully, knowingly, and intentionally copied, reproduced, distributed, and sold throughout

the world, including in this district, works which include the Ensemble and/or a sample of Johnson's 1972 sound recording of Different Strokes in violation of Johnson's copyright.

    **ANSWER:**    Parker denies the allegations of paragraph 120.

    121.    On information and belief, each defendant has, in turn, distributed and sold numerous copies of an infringing work which unlawfully includes a portion of Johnson's 1972 sound recording in Different Strokes throughout the world. Each violation of Johnson's rights to the 1972 sound recording constitutes a separate and distinct act of copyright infringement.

    **ANSWER:**    Parker denies the allegations of paragraph 121.

    122.    Defendants' continuing infringement of Johnson's rights in the 1972 re-mix sound recordings has caused and is continuing to cause irreparable injury, loss and damages to Johnson, and unless defendants are restrained from continuing their wrongful infringement of Johnson's rights, the irreparable damages to Johnson will increase without an adequate remedy at law.

    **ANSWER:**    Parker denies the allegations of paragraph 122.

    123.    As a result of the infringements of Johnson's rights in said work as described herein by defendants, defendants have obtained great income and gains and Johnson has suffered severe and actual financial losses due to the defendants' willful appropriation of Johnson's said composition and recording.

    **ANSWER:**    Parker denies the allegations of paragraph 123.

    124.    The acts of infringement described herein have been willful, intentional, and in disregard of and with indifference to Johnson's rights.

    **ANSWER:**    Parker denies the allegations of paragraph 124.

## COUNT IX - VICARIOUS COPYRIGHT INFRINGEMENT
## CRIMINAL MINDED

    125.    Paragraphs One through 124 are incorporated and realleged as though fully set forth herein.

    **ANSWER:**    Defendant Parker's answers to paragraphs 1-124 are hereby reincorporated

and realleged as though fully set forth herein.

    126.    Parker and/or Zomba Enterprises are liable as vicarious infringers for the copyright infringement committed by taking the Different Strokes Ensemble.

    **ANSWER:**    Parker denies the allegations of paragraph 126.

127.    At all relevant times, Parker and/or Zomba Enterprises had the right and ability to control and/or supervise the infringing conduct, and defendants had a direct financial interest and have derived substantial financial benefit from the infringements of Johnson's copyrighted sound recording.

**ANSWER:**    Parker denies the allegations of paragraph 127.

128.    Parker and/or Zomba Enterprises have derived substantial benefit from the infringement by selling and distributing significant numbers of their songs without having to pay Johnson anything for his sound recording work.

**ANSWER:**    Parker denies the allegations of paragraph 128.

129.    Each violation of Johnson's rights to his copyrighted sound recording constitutes a separate and distinct act of copyright infringement. Through the conduct described herein, Defendants are vicariously liable for each act of infringement described herein.

**ANSWER:**    Parker denies the allegations of paragraph 129.

## COUNT X - MISAPPROPRIATION-CRIMINAL BACKGROUND

130.    Paragraph Nos. 1 through 129 are incorporated and realleged as though fully set forth herein.

**ANSWER:**    Defendant Parker's answers to paragraphs 1-129 are hereby reincorporated and realleged as though fully set forth herein.  Parker makes no response to Count X, which is not directed at him.

## COUNT XI-UNJUST ENRICHMENT - CRIMINAL BACKGROUND

137.    Paragraphs One through 136 are incorporated as though fully set forth herein.

**ANSWER:**    Defendant Parker's answers to paragraphs 1-136 are hereby reincorporated and realleged as though fully set forth herein.  Parker makes no response to Count  XI, which is not directed at him.

## COUNT XII-FEDERAL COPYRIGHT INFRINGEMENT
## CRIMINAL BACKGROUND

139.    Paragraphs One through 138 are incorporated and realleged as though fully stated herein.

**ANSWER:**     Defendant Parker's answers to paragraphs 1-38 are hereby reincorporated and realleged as though fully set forth herein.  Parker makes no response to Count  XII, which is not directed at him.

### COUNT XIII - VICARIOUS COPYRIGHT INFRINGEMENT CRIMINAL BACKGROUND

149.     Paragraphs One through 148 are realleged and incorporated as though fully set forth herein.

**ANSWER:**     Defendant Parker's answers to paragraphs 1-148 are hereby reincorporated and realleged as though fully set forth herein.  Parker makes no response to Count  XIII, which is not directed at him.

### COUNT XIV - MISAPPROPRIATION-WHO STOLE THE DJ

154.     Paragraph Nos. 1 through 153 are incorporated and realleged as though fully set forth herein.

**ANSWER:**     Defendant Parker's answers to paragraphs 1-153 are hereby reincorporated and realleged as though fully set forth herein.  Parker makes no response to Count  XIV, which is not directed at him.

### COUNT XV - UNJUST ENRICHMENT-WHO STOLE THE DJ

161.     Paragraph Nos. 1 through 160 are incorporated and realleged as though fully set forth herein.

**ANSWER:**     Defendant Parker's answers to paragraphs 1-160 are hereby reincorporated and realleged as though fully set forth herein.  Parker makes no response to Count  XV, which is not directed at him.

### COUNT XVI-FEDERAL COPYRIGHT INFRINGEMENT WHO STOLE THE DJ

163.     Paragraphs One through 162 are incorporated and realleged as though fully stated herein.

**ANSWER:**    Defendant Parker's answers to paragraphs 1-162 are hereby reincorporated and realleged as though fully set forth herein.  Parker makes no response to Count  XVI, which is not directed at him.

### COUNT XVII - VICARIOUS COPYRIGHT INFRINGEMENT
### WHO STOLE THE DJ

173.    Paragraphs One through 172 are incorporated and realleged as though fully set forth herein.

**ANSWER:**    Defendant Parker's answers to paragraphs 1-172 are hereby reincorporated and realleged as though fully set forth herein.  Parker makes no response to Count  XVII, which is not directed at him.

### COUNT XVIII - MISAPPROPRIATION- REAL NIGGAZ DON'T DIE

178.    Paragraph Nos. 1 through 177 are incorporated and realleged as though fully set forth herein.

**ANSWER:**    Defendant Parker's answers to paragraphs 1-177 are hereby reincorporated and realleged as though fully set forth herein.  Parker makes no response to Count  XVIII, which is not directed at him.

### COUNT XIX - UNJUST ENRICHMENT-REAL NIGGAZ DON'T DIE

185.    Paragraph Nos. 1 through 184 are incorporated and realleged as though fully set forth herein.

**ANSWER:**    Defendant Parker's answers to paragraphs 1-184 are hereby reincorporated and realleged as though fully set forth herein.  Parker makes no response to Count  XIX, which is not directed at him.

### COUNT XX-FEDERAL COPYRIGHT INFRINGEMENT
### REAL NIGGAZ DON'T DIE

187.    Paragraphs One through 81 are incorporated and realleged as though fully stated herein.

**ANSWER:**    Defendant Parker's answers to paragraphs 1-81 are hereby reincorporated and realleged as though fully set forth herein.  Parker makes no response to Count  XX, which is not directed at him.

### COUNT XXI - VICARIOUS COPYRIGHT INFRINGEMENT
### REAL NIGGAZ DON'T DIE

197.    Paragraphs One through 81 are incorporated and realleged as though fully set forth herein.

**ANSWER:**    Defendant Parker's answers to paragraphs 1-81 are hereby reincorporated and realleged as though fully set forth herein.  Parker makes no response to Count  XXI, which is not directed at him.

### COUNT XXII - MISAPPROPRIATION-NOTHIN' BUT LOVE

202.    Paragraph Nos. 1 through 201 are incorporated and realleged as though fully set forth herein.

**ANSWER:**    Defendant Parker's answers to paragraphs 1-201 are hereby reincorporated and realleged as though fully set forth herein.  Parker makes no response to Count  XXI, which is not directed at him.

### COUNT XXIII - UNJUST ENRICHMENT- NOTHIN' BUT LOVE

209.    Paragraph Nos. 1 through 208 are incorporated and realleged as though fully set forth herein.

**ANSWER:**    Defendant Parker's answers to paragraphs 1-208 are hereby reincorporated and realleged as though fully set forth herein.  Parker makes no response to Count  XXIII, which is not directed at him.

### COUNT XXIV-FEDERAL COPYRIGHT INFRINGEMENT
### NOTHIN' BUT LOVE

211.    Paragraphs One through 210 are incorporated and realleged as though fully stated herein.

**ANSWER:**     Defendant Parker's answers to paragraphs 1-210 are hereby reincorporated and realleged as though fully set forth herein.  Parker makes no response to Count  XXIV, which is not directed at him.

### COUNT XXV - VICARIOUS COPYRIGHT INFRINGEMENT
### NOTHIN' BUT LOVE

221.     Paragraphs One through 220 are incorporated and realleged as though fully set forth herein.

**ANSWER:**     Defendant Parker's answers to paragraphs 1-220 are hereby reincorporated and realleged as though fully set forth herein.  Parker makes no response to Count  XXV, which is not directed at him.

### COUNT XXVI - MISAPPROPRIATION-PEEP GAME

226.     Paragraph Nos. 1 through 225 are incorporated and realleged as though fully set forth herein.

**ANSWER:**     Defendant Parker's answers to paragraphs 1-225 are hereby reincorporated and realleged as though fully set forth herein.  Parker makes no response to Count  XXVI, which is not directed at him.

### COUNT XXVII - UNJUST ENRICHMENT- PEEP GAME

233.     Paragraph Nos. 1 through 232 are incorporated and realleged as though fully set forth herein.

**ANSWER:**     Defendant Parker's answers to paragraphs 1-232 are hereby reincorporated and realleged as though fully set forth herein.  Parker makes no response to Count  XXVII, which is not directed at him.

### COUNT XXVIII-FEDERAL COPYRIGHT INFRINGEMENT
### PEEP GAME

235.     Paragraphs One through 234 are incorporated and realleged as though fully stated herein.

**ANSWER:**    Defendant Parker's answers to paragraphs 1-234 are hereby reincorporated and realleged as though fully set forth herein.  Parker makes no response to Count  XXVIII, which is not directed at him.

## COUNT XXIX - VICARIOUS COPYRIGHT INFRINGEMENT
## PEEP GAME

245.    Paragraphs One through 244 are incorporated and realleged as though fully set forth herein.

**ANSWER:**    Defendant Parker's answers to paragraphs 1-244 are hereby reincorporated and realleged as though fully set forth herein.  Parker makes no response to Count  XXIX, which is not directed at him.

**WHEREFORE**, Defendant Lawrence Parker deny that Plaintiff is entitled to any award whatsoever.


## AFFIRMATIVE DEFENSES^

1.    Plaintiff's claims are barred by the terms of a Settlement Agreement and Full Release entered into as of July 10, 2007 between Plaintiff, on the one hand, and Peter Wright, the Wright Group, Sunlight Records, Inc., the original Twinight Records, Inc.. Edgewater Music, Inc., and Midday Music, on the other hand.

2.    Plaintiff's claims are barred by the terms of

(a)    a Mutual Release of Claims dated as of October 19, 2001 between Zomba Enterprises Inc. and Edgewater Music d/b/a Sunlight Records, Inc.;

(b)    a Master Recording Sample Clearance License made as of October 1, 2001 Zomba Recording Corporation and  Twilight/Twinight Records; and

(c)    other similar agreements of whose existence Defendants Jackson, Sony BMG, UMG, and Capitol are not yet aware.

3.    Plaintiff's claims are barred by the applicable statutes of limitations.

4.    Plaintiff's claims are barred by the doctrine of laches.

5.    Plaintiff's claims are barred by the doctrine of de minimis infringement.

6.    Plaintiff's claims are barred by the doctrine of unclean hands.

7.      Plaintiff's claims are barred by the doctrine of waiver.

8.      Plaintiff's claims are barred by his failure to comply with applicable requirements of the Copyright Act.

9.      Plaintiff's claims are barred by the doctrine of estoppel.


Respectfully submitted,

LAWRENCE PARKER

By:_____s/ C. Steven Tomashefsky_____
              One of His Attorneys

C. Steven Tomashefsky (IL 6191855)
William E. Parker (IL 6293524)
JENNER & BLOCK LLP
330 North Wabash Avenue
Chicago, Illinois 60611-7603
Phone:      (312) 222-9350
Fax:         (312) 840-7769
stomashefsky@jenner.com

## **CERTIFICATE OF SERVICE**

C. Steven Tomashefsky, an attorney, hereby certifies that on September 8, 2008 he caused the foregoing Answer and Affirmative Defenses to First Amended Complaint to be filed electronically via the Court's ECF System, which will effect electronic service on all counsel of record.

       s/C. Steven Tomashefsky